**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| NICOLE JENNINGS WADE, JONATHAN D. GRUNBERG, and G. TAYLOR WILSON, | Case No. |
| Plaintiffs, | **VERIFIED COMPLAINT FOR DEFAMATION** |
| v. | |
| L. LIN WOOD, | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

COME NOW Plaintiffs NICOLE JENNINGS WADE ("Wade"), JONATHAN D. GRUNBERG ("Grunberg"), and G. TAYLOR WILSON ("Wilson") (collectively, "Plaintiffs"), and state their Verified Complaint for Defamation against Defendant L. LIN WOOD ("Wood"), as follows:

## INTRODUCTION

1.     This is a defamation action against Defendant Wood for his malicious and knowingly false accusations to his then 800,000 social media followers that Plaintiffs committed the crime of extortion and attempted extortion when Plaintiffs tried to privately resolve their disputes with Defendant Wood after leaving his law firm on February 14, 2020.

2.     In reality, in the midst of negotiations following the parties' split, Defendant Wood made a torrent of threats against Plaintiffs—e.g., to prosecute them criminally, seek their disbarment, destroy them financially and professionally, and attack them "in the court of public opinion," all for claims that Wood invented out of whole cloth while he reneged on three separate agreements made by the parties. Plaintiffs never made any similar threats to Wood.  Instead, Plaintiffs chose to make a private written demand for settlement of their claims without the need to pursue civil litigation.   Indeed, conspicuously absent from the communications from Plaintiffs to Defendant Wood or his counsel is any threat to take any action against Wood or his law firm other than to pursue civil litigation.

3.     As a firsthand source, Defendant Wood's fabricated accusations were made with knowledge of falsity and with a reckless disregard for the truth, in part for his own stated purpose of attempting to "destroy" Plaintiffs, and "to get you [Plaintiffs] back to where you belong. Broke and essentially homeless." Exemplifying his actual malice, Wood himself privately acknowledged that Plaintiffs did not engage in any wrongdoing prior to making the very public false accusations at issue here.

4.     In addition, Defendant Wood made many fantastical and obviously false and defamatory statements about Plaintiffs, including, for instance, that they

are "deep state" communists being paid by nefarious actors to bring litigation against him.    Plaintiffs assert this defamation claim for Defendant Wood's indisputably knowing false statements of fact that Plaintiffs are guilty of criminal conduct for which Wood asserts Plaintiffs should be disbarred from the practice of law.

## PARTIES

5.    Plaintiff Wade is an individual resident of the State of Georgia, who resides in Dekalb County, Georgia.

6.    Plaintiff Grunberg is an individual resident of the State of Georgia, who resides in Fulton County, Georgia.

7.    Plaintiff Wilson is an individual resident of the State of Tennessee, who resides in Davidson County, Tennessee.

8.    Defendant Wood is an individual resident of the State of South Carolina, who resides and can be served at 300 Cotton Hall Road, Yemassee, South Carolina 29945.

## JURISDICTION AND VENUE

9.    There exists complete diversity of citizenship between Plaintiffs on the one hand and Defendant on the other hand.

10.    The amount in controversy exceeds $75,000, exclusive of interest, costs, and attorneys' fees.

11.    Therefore, this Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1).

12.    Venue is proper in the United States District Court for the Northern District of Georgia, Atlanta Division, pursuant to 28 U.S.C. §§ 1391(b)-(c) because Plaintiffs Wade and Grunberg reside in this judicial district and because all Plaintiffs resided in this District when a substantial part of the events giving rise to the claims herein occurred.

13.    This Court has personal jurisdiction over Defendant Wood pursuant to O.C.G.A. § 9-10-91(a) because he transacts business within the State of Georgia sufficient to anticipate being haled into court in the State of Georgia.

14.    This Court also has personal jurisdiction over Defendant Wood pursuant to O.C.G.A. § 9-10-91(c) because he transacts business in Georgia and has committed a tort outside of Georgia directed at Georgia residents.

15.    Personal jurisdiction over Defendant Wood exists, in part, because Wood is an attorney licensed to practice law in the State of Georgia, where he maintains a law office as stated on the State Bar's website.

16.    Prior to February 2021, Defendant Wood had lived in Atlanta and practiced law there for over 40 years.

17.    This Court further has personal jurisdiction over Defendant Wood because his defamation of Plaintiffs has been directed specifically toward the State of Georgia, including false and defamatory accusations used by Defendant Wood in an explicit effort to have Plaintiffs sanctioned and/or disbarred by the Georgia State Bar.

18.    This Court further has personal jurisdiction over Defendant Wood because he has attempted to give credibility to his defamatory accusations against Plaintiffs by relying on his status as an attorney licensed to practice law in the State of Georgia.

19.    Sufficient contacts exist with respect to Defendant Wood, his law practice, and the claims at issue in this case to satisfy the requirements of due process as to Defendant Wood.

## FACTUAL ALLEGATIONS

### Background of the Law Firms

20.    Plaintiffs Wade and Grunberg are attorneys licensed to practice law in the State of Georgia.

21.    Plaintiff Wilson is an attorney licensed to practice law in the States of Georgia and Tennessee.

22.     Defendant Wood is an attorney licensed to practice law in the State of Georgia, and at all relevant times, Wood has practiced law as the sole shareholder of L. Lin Wood, P.C. ("LLW PC").

23.     Prior to February 14, 2020, the three Plaintiffs worked together with Wood as lawyers for LLW PC for several years.

24.     On February 14, 2020, Plaintiffs determined that they could no longer practice law with Defendant Wood, and they left the law firm.

25.     Since leaving LLW PC, Plaintiffs have practiced law together in a firm called Wade, Grunberg & Wilson, LLC, a Georgia limited liability corporation with its principal place of business in Fulton County, Atlanta, Georgia ("WGW").

What Constitutes Extortion

26.      Under Georgia law, "threats to sue cannot constitute criminal extortion," and specifically, writing a demand letter seeking to settle a matter before pursuing public litigation is not extortion. *See State v. Cohen*, 302 Ga. 616, 623 (2017); *see also* O.C.G.A. § 16-8-16.

The Settlement Agreements and Their Negotiation

27.     Neither Plaintiffs nor their counsel have ever made any statement to Defendant Wood or his counsel that could possibly be construed as extortion. Plaintiffs merely made a private demand to settle claims prior to pursuing litigation.

28.     Plaintiffs did not make any statements or threats to release any information to anyone outside of the potential court proceedings if Defendant Wood did not settle Plaintiffs' meritorious claims.

29.     At the time Plaintiffs left Defendant Wood's law firm, LLW PC, on February 14, 2020, multiple cases on which Plaintiffs had been working had resolved but had not yet been funded.  The parties had already agreed to fee splits on each of the cases that had already been resolved. Other cases on which Plaintiffs had been working had not yet resolved.

30.     Immediately following Plaintiffs' departure from LLW PC, Defendant Wood began threatening each Plaintiff civilly, criminally, personally, physically, professionally, and/or financially via a multitude of false statements and vile and profane threats to Plaintiffs, many of which were copied to third parties.

31.     As one example only, the night Plaintiffs left LLW PC on February 14, Defendant Wood sent an email to Plaintiffs, copying various third parties, stating that Plaintiffs "have now subjected yourself and your families to the fact that you all are guilty of federal crimes," "are going to be ruined financially, if necessary, in civil and criminal lawsuit[s]," "are in fucking serious criminal and civil exposure," that Wood "will be setting up a meeting next week with the US Attorney for the Northern District of Georgia," that "God Almighty told me [Wood] to get you back to where

7

you belong[,] [b]roke and essentially homeless," that Wood "will make sure you never practice law again ever if you do not admit your sins, all of them by 10:30 am," and ended the e-mail by instructing to "Save your child. Save your wife. Save your life."[1]

32.    Similarly, on February 17, 2020, Defendant Wood left a voicemail for Plaintiff Wilson threatening criminal action for made-up crimes allegedly committed by Plaintiffs and others, telling him, for example, that: "You better get your ass a **criminal** defense lawyer. Jonathan Grunberg better get him one. Nicole Wade sure as hell better get herself one…. I got it all, Taylor…. The **FBI is on you**…. They're gonna mirror image my hard drive today. Y'all are fucked…."

33.    Plaintiff Wilson texted Mr. Wood in response, and Mr. Wood responded to him that he is "going to jail," as follows:

---

[1] Because of the content of this and other electronic correspondence referenced herein, including with respect to third parties, Plaintiffs do not attach them but will provide them to the Court if it so orders.



34.    Defendant Wood left additional voicemails for Plaintiffs Wilson and Grunberg on February 17 in which he accused Plaintiffs of engaging in various crimes and stating that they were going to be "criminal defendant[s]," that they would be "behind bars," that "the FBI was going to be knocking on your door," and that they "need to go get a criminal defense lawyer."

35.    On February 17, shortly following these threats, the parties reached an agreement for the allocation of all fees earned but not yet collected by LLW PC on those cases which had already resolved.  Prior to reaching that agreement, Plaintiffs had not even stated to Defendant Wood that they possessed any kind of claims against him.

36.    During their conversation, although Plaintiffs offered concessions on the amounts previously agreed, Defendant Wood insisted that they receive the higher amounts that reflected their agreements on the already resolved cases.

37.    The parties subsequently documented their agreement via e-mail (the "February 17 Agreement").

38.    Shortly after, however, Defendant Wood began contacting Plaintiffs to advise that he would not honor the February 17 Agreement and instead demanded that Plaintiffs either take over LLW PC's lease or pay him and/or LLW PC hundreds of thousands of dollars in satisfaction of LLW PC's ongoing business and lease obligations.  In short, Defendant Wood stated that he would withhold "every dime of your … money against your liability until the end of that lease" unless Plaintiffs renegotiated the deal.  The lease was in the name only of LLW PC as tenant, with no personal guarantees.

39.    Continuing his "negotiation" tactics, Defendant Wood promptly began threatening Plaintiffs again, with made-up false accusations and threats against their careers in the same e-mail in which he solicited a re-negotiated resolution.  On February 19, 2022, Wood e-mailed, among many other things, that "I am going to make certain that your … heinous misconduct will be fully addressed in a court of law and in the court of public opinion" and then specifically requested "a settlement proposal … to avoid the embarrassment and damage to your own careers."

40.    Similarly, on March 4, 2020, in an e-mail to Plaintiffs' counsel with the subject "Resolution," Mr. Wood openly threatened Plaintiffs' law licenses based on

vague and made-up accusations of criminal conduct: "Under the circumstances, your clients are guilty of numerous crimes which, if brought to the attention of the State Bar of Georgia would likely result in their disbarment.  I have additional evidence supporting the truth of your clients' unlawful and illegal conduct…. I suspect that after your client[s] read this email, they shall not rest well for many nights to come…. Your clients shall be required to pay their 75% of the lease obligations even if they find themselves prohibited from engaging in the practice of law in the State of Georgia in the future."

41.    On March 17, 2020, after negotiation by lawyers for each side, the parties executed a formal written settlement agreement (the "March 17 Agreement"), in which they agreed to the exact same fee split set forth in the February 17 Agreement, but Plaintiffs agreed to contribute $285,000 from the fees owed to them to buy out a portion of LLW PC's lease, among other things.

42.    The Settlement Agreement included releases and a merger clause and was intended by Plaintiffs to resolve all outstanding issues between Plaintiffs and Defendant Wood arising from Plaintiffs' departure from LLW PC.  Defendant Wood had other ideas.

43.    It is in this context—i.e., Plaintiffs agreeing to renegotiate a deal already made, to accept significantly less in compensation, and to give Wood a

release for their existing tort claims—that Defendant Wood has accused Plaintiffs of extortion in negotiating the March 17 Agreement.

<u>Breach of the March 17 Agreement by Wood and LLW PC</u>

44.    In late July 2020, the initial payments came due from Defendant Wood and LLW PC to Plaintiffs pursuant to the terms of the March 17 Agreement.

45.    The first of these payments was a liquidated amount specified in the March 17 Agreement representing Plaintiffs' share of attorneys' fees for three cases that had settled prior to Plaintiffs' departure from LLW PC, payment of which was triggered by Defendant Wood's receipt of the last of those three settlement payments in July 2020.

46.    Another payment also came due in July 2020 for a percentage of the fee for a case that settled after Plaintiffs' departure, and Plaintiffs did not know (and to this day do not know) the amount owed to them for that case because the settlement is confidential, and Defendant Wood has refused to disclose the amount due to Plaintiffs pursuant to the percentage allocation in the March 17 Agreement.

47.    Payments for other matters called for by the March 17 Agreement remained outstanding at that time because the fees had not yet been collected.

48.    On or about July 24, 2020, Defendant Wood and LLW PC advised Plaintiffs that they would not honor the terms of the March 17 Agreement and that

they refused to make the required payments of fees that had been allocated to Plaintiffs.

49. Two days later, Defendant Wood again threatened Plaintiffs with criminal prosecution—for the same made-up computer fraud he had previously accused them of and then retracted—via text to Plaintiff Grunberg, and then claimed it was an accidental message:



50. In response, Plaintiffs demanded that Defendant Wood and LLW PC comply with the terms of the March 17 Agreement and make the required payments—the liquidated payment plus the unknown amount for the recently settled case.

51. As is common practice, prior to filing a lawsuit to enforce the terms of the March 17 Agreement and seek damages for Defendant Wood and LLW PC's then-apparent fraud, Plaintiffs provided to counsel for Wood and LLW PC a draft of a complaint that they were prepared to file.

52.     The draft complaint demonstrated clearly that Plaintiffs had valid claims against Defendant Wood and LLW PC for breach of contract and fraud, although Plaintiffs also had the option of seeking to rescind the March 17 Agreement and pursue claims against Wood, *inter alia*, for (1) breach of the February 17 Agreement, (2) defamation, (3) assault/battery, and (4) intentional infliction of emotional distress.

53.     In response, Defendant Wood made false and defamatory statements to various third parties, including clients, co-counsel, and colleagues of Plaintiffs, again contending that Plaintiffs were criminals and were attempting to extort him.

54.     Following these false accusations, Plaintiffs made a final attempt to resolve the dispute with Defendant Wood and LLW PC—which had now ballooned beyond the amount initially owed—by making a global settlement demand to Defendants' counsel of $1,250,000 (the "Settlement Demand").

55.     The Settlement Demand represented a compromise that would have resolved all of Plaintiffs' potential claims for damages against Defendant Wood and LLW PC, and included, among other consideration:

- the known liquidated payment currently due under the March 17 Agreement for $932,949.99 (excluding payment toward the LLW PC lease);

14

- the unknown amount currently due under the March 17 Agreement for the case that had recently settled—the amount of which Defendant Wood would not disclose—which Plaintiffs reasonably estimated to be $165,000;

- a "buy-out" of the future amount due from Wood and LLW PC under the March 17 Agreement for another case that had not yet settled, so as to end their dealings with one another with finality, which Plaintiffs reasonably estimated to be worth $165,000;

- damages incurred by Plaintiffs as a result of the breach of the March 17 Agreement;

- compensation for Defendant Wood and LLW PC's fraud in connection with the March 17 Agreement;

- compensation for Defendant Wood's defamation of Plaintiffs, including to Plaintiffs' own clients and co-counsel;

- compensation for Defendant Wood's violation of the non-disparagement provision of the March 17 Agreement; and

- attorneys' fees and expenses incurred by Plaintiffs following Wood's repudiation of the February 17 Agreement.

56.     Thus, the Settlement Demand of $1,250,000 represented a discount on the estimated amount that Wood and LLW PC owed Plaintiffs just for the fees for the settled cases and expected settlements, not even taking into account the amounts they were liable for as a result of the contractual breach, defamation, attorneys' fees, and other elements of damages.

57.     Moreover, in addition to the above considerations, at the time the Settlement Demand was made, Plaintiffs had the option of seeking to rescind the Settlement Agreement for fraud and seek damages for, among other things, claims otherwise released in the parties' March 17 Agreement.

58.     In short, Defendant Wood knew that Plaintiffs' Settlement Demand was an attempt to settle much more than merely the liquidated amounts Wood had agreed to pay in the March 17 Agreement.

59.     Plaintiffs provided to Defendant Wood their Settlement Demand approximately one week prior to filing suit. And after negotiated extensions of the time at which Plaintiffs would file suit, Plaintiffs' deadline for a response from Wood was August 31, 2020, at 12:00 p.m.  After Defendant Wood had a week to assess the Settlement Demand, he waited until August 31, 2020, at 11:44 a.m. to propose binding arbitration on only the breach of contract claim (i.e., excluding the

fraud claim) in lieu of litigation, without any counteroffer to resolve their disputes. Plaintiffs filed suit in response.

60.    The purported basis on which Defendant Wood refused to honor the March 17 Agreement was that Plaintiffs were not actually lawyers of his law firm at any relevant time but were instead merely in an "office sharing" arrangement. On that made-up basis, Defendant Wood asserted that Rule 1.5(e) of the Georgia Professional Rules of Conduct required client consent and that one of his clients— from whom the bulk of the fees were earned—refused consent.

61.    Defendant Wood asserted the absurd position that Plaintiffs were not lawyers of his firm when they worked on the underlying matters, despite the fact that by any measure, Plaintiffs were lawyers of LLW PC—including, by way of just a few examples, because LLW PC held Plaintiffs out as partners of the firm on its website, via email addresses at linwoodlaw.com, via business cards, by having Plaintiffs make court appearances on behalf of LLW PC (and no other firm) including in more cases than Wood himself during the preceding two years, and by Defendant Wood's representations to courts, clients, and the public that Plaintiffs were his "law partners."  Indeed, Defendant Wood even changed the name of the law firm to "Wood, Wilson, Grunberg & Wade" a few weeks prior to Plaintiffs' departure.

62.     In fact, Plaintiffs later obtained unequivocal evidence that Defendant Wood planned the fraud in advance, including that while the parties negotiated the March 17 Agreement, Defendant Wood arranged to have the client withhold consent when the payments came due.

63.     Between February 22, 2020, and March 4, 2020, Defendant Wood implored his co-counsel for this client, in pertinent part, as follows:

> I need for you and the [client] to state in writing that the [client] do not and shall not agree that any fees due to my PC be divided with any other lawyer except on a quantum mer[uit] basis…. In short, I need your help and the help of [the client] to nip this nonsense in the bud quickly and quietly…. Will you help me?

***

> I would like to ask you to consider preparing a letter from you to [Plaintiffs' counsel] and a letter signed by [the client] … making clear that it is there [sic] express directive that no fees be paid to Taylor, Jonathan, and Nicole that exceed a quantum meruit basis regardless of any agreement I made or attempted to make… This needs to be nipped in the bud and quickly so… If they realize they are not going to receive [the fees from the client's representation], they will have NO ability to finance their frivolous claims….

***

> Their problem on those cases is that they did not keep up with their hours and can only reconstruct them after the fact of settlement…. Any monies I offer them shall be in excess of the monies they are fairly entitled to under the law and the statement of our clients $0…. A legitimate argument could be made that the fair and respectful amount I should offer these people … is quantum meruit only … which under the law and agreed to by my clients will be worth $0 since th[ey] cannot legitimately reconstruct their hours in any of those cases.

64.     Those e-mails notwithstanding, Defendant Wood's fraudulent intent to dishonor the settlement agreement was already clear as of July 24, 2020, including because he attempted to include a false factual recital in the March 17 Agreement to substantiate his subsequent basis for not abiding the agreement.  Specifically, Wood sought an agreement stating Plaintiffs were not lawyers of LLW PC, but Plaintiffs refused, and the Agreement ultimately stated that Plaintiffs "never held any ownership interest in L. Lin Wood, P.C. (hereinafter 'LLW PC') but have worked as lawyers of L. Lin Wood, P.C. on cases since 2018." Even as changed, it was plain in retrospect that Defendant Wood was attempting to manipulate the parties' history to fit his subsequent goal.

65.     In short, unlike Defendant Wood, Plaintiffs had significant meritorious civil claims against Defendant Wood at the time they made the March 17 Agreement and the Settlement Demand, and they never threatened Wood in any manner—they only advised him of their intention to pursue meritorious civil litigation.  Plaintiffs did not (1) threaten to have Wood criminally prosecuted, (2) threaten to cause a public official to undertake a prosecution of Wood, (3) threaten to file Bar complaints against Wood, (4) threaten to disseminate any defamatory accusations about Wood to third parties, (5) threaten to assault Wood, or (6) undertake any other action which might be deemed extortion.

<u>Fulton County Litigation</u>

66.     When Defendant Wood and LLW PC refused to make any payment whatsoever to Plaintiffs, Plaintiffs filed their lawsuit on August 31, 2020, and that action is currently pending in the Superior Court of Fulton County, Georgia, Case No. 2020CV339937 (the "Fulton County Litigation").

67.     On September 20, 2020, Plaintiffs filed their First Amended Complaint in the Fulton County Litigation, which asserted six counts against Defendant Wood and LLW PC: (1) Breach of Contract; (2) Fraud and Fraudulent Inducement; (3) Breach of Non-Disparagement Clause; (4) Emergency Injunction for the Specific Performance of the Non-Disparagement Clause; (5) Punitive Damages; and (6) Attorneys' Fees.

68.     The trial court in the Fulton County Litigation granted Plaintiffs a preliminary injunction preventing Defendant Wood from disparaging them in violation of the March 17 Agreement, which has been affirmed by the Georgia Court of Appeals.

69.     No other claims have been fully adjudicated.

70.     Defendant Wood has not filed any motion challenging Plaintiffs' claims for Breach of Contract, Breach of Non-Disparagement Clause, and Attorneys' Fees.

Defendant Wood's Defamation of Plaintiffs

71.     Defendant Wood has made numerous disparaging statements about each of the Plaintiffs and their law firm, WGW, over a period of more than two years.

72.     In an effort to shield himself from liability, Wood occasionally went so far as to label his accusations of criminal conduct against Plaintiffs as "opinion."

73.     However, Defendant Wood's statements about Plaintiffs at issue in this case are undeniably false and defamatory statements of fact.

74.     There is no pending claim for any of the false and defamatory statements identified herein.

75.     Defendant Wood posts on the social media platform Telegram under his username "L. Lin Wood."

76.     Defendant Wood has two Telegram "channels" through which he broadcasts his posts publicly and directly to subscribers of those channels.

77.     Posts on public channels are accessible via web searches and are indexed by search engines. *See*, *e.g.*, https://telegram.org/tour/channels (last visited March 10, 2022).

78.     Only administrators can post to channels, but there is an option for the administrator to turn on comments for posts on a channel.  *Id.*

21

79.     Wood's primary public channel is called "Lin Wood Speaks Truth" and as of March 10, 2022, he has just over 666,000 subscribers, down substantially from the number of subscribers he had previously while defaming Plaintiffs. *See* https://t.me/linwoodspeakstruth.  Comments are turned off on this channel.

80.     Wood's second public channel is called "Reply to Lin Wood" and has nearly 100,000 subscribers.  *See* https://t.me/replytolinwood.   Comments are permitted on this channel, which claims that "[t]his channel is for Lin Wood followers to be able to reply to him with words of support, love, and encouragement."

81.     All of Defendant Wood's posts to the Lin Wood Speaks Truth channel are cross-posted in the Reply to Lin Wood channel so that his "followers" can post comments on Wood's posts and he can respond to them.

82.     Defendant Wood posted the following false and defamatory statements regarding Plaintiffs on his Telegram channels on May 12, 2021[2]:

---

[2] *See* https://t.me/linwoodspeakstruth/2383 (last visited Feb. 25, 2022).

 **Lin Wood** 

I will no longer be silent about the frivolous fraud lawsuit filed against me.

In an effort to extort money from me, Nicole J. Wade, Jonathan D. Grunberg, and G. Taylor Wilson of the Atlanta law firm of Wade, Grunberg, & Wilson, LLC interfered with my relationship with my children, contributing to my children violating God's commandment that my children honor their father.

I had come choice words for these extortionists. I am hot-blooded, especially when someone messes with my children.

I told these extortionist lawyers that they were not messing with Lin Wood, they were messing with Almighty God. I spoke truth. God will deal with them for their actions involving my children.

These extortionist lawyers also were threatening my efforts to get President Trump to award Richard Jewell the Presidential Medal of Freedom posthumously with their false claims about my mental health (which they admitted were false in March 17, 2020 in the settlement agreement).

You do not mess with my children or Richard Jewell.

Now you know the context for my hot-blooded comments to these extortionist lawyers who should be disbarred. The public should file bar complaints against them with the State Bar of Georgia.

It is time to shine light on the darkness.

Thanks for listening to the TRUTH.

t.me/linwoodspeakstruth/2383   169.9K ⊚   May 12, 2021 at 12:10

83.     As shown in the snapshot, the above post received at least 169,900 views.[3]

---

[3] In each instance, the number of views referenced herein refers only to those views on Wood's primary channel rather than adding views on his reply channel.

84.     Defendant Wood ran for Chair of the South Carolina Republican Party in 2021.

85.     During his campaign, Defendant Wood made public appearances during which he discussed Plaintiffs.

86.     During his campaign, Defendant Wood gave a campaign speech, which he subsequently posted to his Telegram channels on May 13, 2021, in which he uttered a variety of false and defamatory statements of and concerning Plaintiffs, including that they engaged in extortion, as follows:[4]

> I'm gonna tell you the truth about that lawsuit.  These people tried to extort money out of me that they didn't have and didn't, didn't, didn't deserve. . . . So the truth of the matter is it was an extortionist type attempt by these lawyers …

87.     As shown in the snapshot of Defendant Wood's post to Telegram, his post containing the above speech has received at least 170,000 views.

88.     Defendant Wood posted the following false and defamatory statements regarding Plaintiffs in succession (i.e., they form a thread) on his Telegram channels on May 19, 2021[5]:

_____

[4] The speech as posted by Wood may be found at the following link, which speech is incorporated herein by reference: https://t.me/linwoodspeakstruth/2443 (last visited Feb. 25, 2022).

[5] *See* https://t.me/linwoodspeakstruth/2574; https://t.me/linwoodspeakstruth/2575; https://t.me/linwoodspeakstruth/2576; https://t.me/linwoodspeakstruth/2577; and https://t.me/linwoodspeakstruth/2578 (last visited Feb. 25, 2022).

 **Lin Wood** 

I believe a large number of my followers are well informed and possess and exercise a high degree of common sense.

That is why I love to ask you questions to receive the benefit of your responses!

Here is a hypothetical:

Person A claims you owe $600K on a contract. You say that you cannot pay unless certain legal and ethical conditions are met.

Person A then threatens to file a salacious and frivolous fraud claim that falsely smears you in addition to a breach of contract claim UNLESS you immediately pay Person A $1.2M.

Does that sound like criminal extortion to you?

Asking for a friend.

t.me/linwoodspeakstruth/2574          199.3K 👁
                          edited  May 19, 2021 at 12:11

 **Lin Wood** 

Here is a couple of follow ups to the criminal extortion question above.

If you believe Person A is attempting to criminally extort you, (a) do you think Person A's lawyer is also guilty of the crime if the lawyer for Person A conveys the extortion attempt in a letter? and (b) if Person A is a lawyer, should both Person A and Person A's lawyer be subject to potential disbarment for engaging in an attempt to criminally extort you?

Asking for the same friend.

t.me/linwoodspeakstruth/2575   186.0K 👁  May 19, 2021 at 12:20



**Lin Wood** 

Wow!!! Take a look at this written email below from Andy Beall of Buckley/Beall, the attorney for Nicole J. Wade, Jonathan D. Grunberg, and G. Taylor Wilson of the Atlanta law firm of Wade, Grunberg, & Wilson, LLC!!!

t.me/linwoodspeakstruth/2576   175.6K ⊙   May 19, 2021 at 12:47

**Lin Wood** ◀



t.me/linwoodspeakstruth/2577   174.6K ⊙   May 19, 2021 at 12:49

 **Lin Wood** 

Under new rules of the State Bar of Georgia (conveniently passed on January 9 so that non-clients from any state could file Bar complaints against me), concerned citizens can file Bar complaints against lawyers who they believe have violated disciplinary rules or engaged in possible criminal conduct (such as attempted extortion).

To file a complaint against any Georgia lawyer, you do not need to be a client nor reside in Georgia. You just have to have information about a Georgia lawyer that concerns you and you feel needs to be investigated.

Here is the link which I provide as a public service.

By the way, Andy, Nicole, Jonathan, & Taylor are Georgia lawyers.

P.S. ALL the power in this country was bestowed by Almighty God to We The People.

https://www.gabar.org/forthepublic/fileacomplaint.cfm
t.me/linwoodspeakstruth/2578                179.4K 👁
                              edited  May 19, 2021 at 12:57

89.    When a telegram user clicks on the above snapshot, the following clear image appears:

**From:** Andrew Beal <ABeal@buckleybeal.com> **Sent:** Wednesday, August 26 2020 9:10 PM **To:** Marquardt, Chris <Chris.Marquardt@alston.com>; Burby, Joey <Joey.Burby@alston.com> **Subject:** Settlement Demand

**EXTERNAL SENDER – Proceed with caution**

Chris and Joey

As we discussed this afternoon, the parties are engaging in settlement discussions by exchanging written offers of terms.  This offer will remain open until 5:00 pm Eastern tomorrow, Thursday August 27.

Here is our proposal.  Your client pays my clients $1,250,000.00 immediately in satisfaction of the existing claims my clients intend to file and which you have reviewed, to buy them out of the existing settlement agreement, attorney's fees for this matter, and claims for defamation and breach of non-disparagement based upon today's events.  Further, your client will withdraw from the ███████████████ cases and the ███ ███████ matters ████████████████ provided each client consents and will issue a retraction for his libel and slander in the form below to all persons he contacted today.   My clients will remit no fees to your client, and your client will have no further responsibilities to make any payments to my clients.  Your client will acknowledge responsibility for the Lease and the parties will execute mutual releases.  Nothing further is required.

Retraction:  "I wanted to take this opportunity to contact you and personally retract the statements I made about my former partners:  Nicole Wade, Jonathan Grunberg and Taylor Wilson.  I was angry, and those statements are not true."

Drew

**ANDREW M. BEAL**

Buckley Beal, LLP

Bank of America Plaza, Suite 3900

90.     As shown above, the posts contained in the above paragraph received at least 914,900 views combined.

91.     Defendant Wood posted the following false and defamatory statements regarding Plaintiffs on his Telegram channels on May 20, 2021[6]:

---

[6] *See* https://t.me/linwoodspeakstruth/2598 (last visited Feb. 25, 2022).





**Lin Wood**

Yesterday, I posted the email below and suggested that in my opinion, this demand by Atlanta lawyer Andy Beall of Buckley/Beall and Atlanta lawyers Nicole J. Wade, Jonathan D. Grunberg, and G. Taylor Wilson of Wade, Grunberg, & Wilson, LLC constituted an attempt to extort me.

I know some other lawyers who agree with my opinion.

Today, Andy Beall filed papers with the Court accusing me of wrongdoing for stating my opinion which by the way is a fully protected opinion under the First Amendment.

Wow! Andy, Nicole, Jonathan, and Taylor apparently do not believe in freedom of speech.

I do believe in freedom of speech and I will never stop fighting for free speech and the Bill of Rights.

t.me/linwoodspeakstruth/2598    166.8K 👁    May 20, 2021 at 18:14

92.     As shown in the snapshot, the above post received at least 166,800 views.

93.     Defendant Wood posted the following false and defamatory statements regarding Plaintiffs on his Telegram channels on May 26, 2021[7]:

---

[7] *See* https://t.me/linwoodspeakstruth/2703 and https://t.me/linwoodspeakstruth/2704 (last visited Feb. 25, 2022).



**Lin Wood** 

Today I had to respond to 50 Requests for Admission filed by "Dandy Andy" Beal of Buckley/Beal, the lawyer for Nicole J. Wade, Jonathan D. Grunberg, and G. Taylor Wilson of the Atlanta law firm of Wade, Grunberg, & Wilson, LLC.

As a trial lawyer with 43 years experience, I know you have to review these requests carefully in order to frame a correct and truthful response. Sometimes, the response includes protected expressions of opinions.

Below is a an example of a response to a Request for Admission. This example happens to be my response to WGW's request number 50!

t.me/linwoodspeakstruth/2703   162.5K ⊙   May 26, 2021 at 20:18



t.me/linwoodspeakstruth/2704   160.4K ⊙   May 26, 2021 at 20:18

94.    When a user clicks on the snapshot, the following clear image appears:

**REQUEST FOR ADMISSION NO. 50:**

Admit that you contacted clients or former clients to discuss the lawsuit filed by Plaintiffs against you, and during these communications you referred to the Plaintiffs' suit as extortion and used words to state or imply that Plaintiffs were dishonest.

**RESPONSE TO REQUEST FOR ADMISSION NO. 50:**

Mr. Wood admits that he contacted clients in privileged communications concerning the frivolous lawsuit which Plaintiffs were threatening to file against Mr. Wood and L. Lin Wood, P.C. In Mr. Wood's opinion, Plaintiffs committed the crime of attempted extortion and Mr. Wood is still considering whether to pursue criminal actions against Plaintiffs and their counsel. Further, in Mr. Wood's opinion. Plaintiffs are dishonest and unfit to practice law. Except to the extent admitted herein, Request No. 50 is denied.

Respectfully submitted this 26th day of May, 2021.

95.     As shown in the snapshot, the posts contained in the above paragraph received at least 322,900 views combined.

96.     During the Fulton County Litigation, Defendant Wood noticed the depositions of Plaintiffs.   Because Defendant Wood's above posts regarding Plaintiffs were engendering physical threats of harm toward Plaintiffs—both in public messages and direct messages—because Defendant Wood's followers were suggesting they would attend the depositions in person, because Defendant Wood was publicizing the location of the depositions, because Defendant Wood refused to move the depositions to an agreed safe location, and because the deposition notices were signed only by a lawyer not authorized to practice law in the State of Georgia,

Plaintiffs did not attend the depositions after providing notice to Defendant Wood and filing a motion for protective order.

97.     Plaintiffs' decision not to appear for depositions did not stop Defendant Wood from pretending they were depositions and giving three lengthy sililoquies "on the record" so that he could subsequently post on Telegram his "depositions" in which he made a variety of false and defamatory accusations against Plaintiffs.

98.     Between June 16, 2021, and June 18, 2021, Defendant Wood posted to his Telegram channels the videos and transcripts of his own screeds, which he falsely characterized as "depositions," accusing Plaintiffs of extortion, among other things, with the posts receiving a combined 1,135,200 views, as follows[8]:

<u>Wood's Video Speech Regarding Wade</u>

a. [T]hese accusations against me … were filed for an attempt to do nothing more than to smear me, and to **extort** from me monies that the Plaintiffs … are not entitled to recover. (Transcript at 7-8).

b. So then I had these lawyers trying to threaten me that they were going to make public their accusations about my mental health … It was an

---

[8] A true and correct copy of each transcript and video as posted by Wood may be found at the following links, each of which are incorporated herein by reference: https://t.me/linwoodspeakstruth/3198 (145,900 views); https://t.me/linwoodspeakstruth/3192 (145,300 views); https://t.me/linwoodspeakstruth/3229 (202,100 views); https://t.me/linwoodspeakstruth/3260 (156,000 views); https://t.me/linwoodspeakstruth/3267 (163,300 views); https://t.me/linwoodspeakstruth/3268 (163,400 views); and https://t.me/linwoodspeakstruth/3279 (159,200 views) (last visited Feb. 25, 2022).

**extortion** played by these lawyers.  When I finally made the mistake of making a deal with them, all of a sudden my mental health was fine. They signed a settlement agreement stating that on information and belief, that I was mentally competent in all respects and had been for the many months before then.  It was **extortion**. (*Id.* at 11-12).[9]

c. I recommended to the client through his local counsel that they agree to the deal that I had presented even though I knew it was **extortion**. (*Id.* at 12).

d. They presented me with a draft of their lawsuit, which in the fraud portion of the case went into detail about issues that arose out of their interference with my children's relationship with me, where they were actively taking steps and doing things that in essence had my children not honoring their father…. They put that stuff in the fraud complaint among other things that were scandalous, irrelevant, immaterial, to even a fraud claim.  They did that to smear me and to try to get me to pay this money.  I didn't do it.  I told them to file it. (*Id.* at 14-15).[10]

e. I was trying to help them even though they had tried to **extort** me. (*Id.* at 18).

f. You don't use the court system to **extort** people. (*Id.* at 21).

---

[9] To be clear, Plaintiffs never "threaten[ed] … to make public their accusations about [Wood's] mental health."  To the contrary, apparently Wood feels that his own actions as alleged in Plaintiffs' Fulton County Litigation reflect on his mental health. Further, Plaintiffs merely agreed upon information and belief in the March 17 Agreement, based on Wood's and his counsel's representations, that he was legally competent, including to execute the agreement.

[10] Plaintiffs actually took painstaking efforts to remove and redact any reference to Wood's children, by context clue or otherwise, in their complaint, including by not attaching exhibits to their complaint.  Further, Wood did not tell Plaintiffs to file their complaint; he solicited arbitration.

<u>Wood's Video Speech Regarding Wilson</u>

g.  I wanted to ask Mr. Taylor why they told me instead of paying them some $600,000, that they wanted to now have me pay them $1.5 million, and if I didn't, they were going to file this lawsuit they sent to try to smear me name. They were trying to **extort** me.  Almost **blackmail** me. $1.5 million? How did the value of the case go up three times?  I told them to file it.  They did.  The law does not sanction lawyers' engaging in such conduct to try to **extort** money from another party based on threats of filing frivolous and smears in a lawsuit. (Transcript at 20).

<u>Wood's Video Speech Regarding Grunberg</u>

h.  But I wanted to ask him about Rule 1.5 where the Bar requires that I get [the client's] consent to a lawsuit that I settled for him … and a second lawsuit I settled with him … his consent to giving these lawyers their unfortunately – it's the truth – **extortion** that they tried to successfully, now unsuccessfully obtain from me. (Transcript at 16-17).

i.  I was willing to live up the agreement even though it was **extortion**. (*Id.* at 18).

j.  I also wanted to ask him about some of the specifics in that complaint. Because they told me if I didn't agree to pay them $1.5 million, 1.25 in cash, and to pay for their share of the office lease … that if I didn't pay $1.5 million to him immediately, he was going to sue that case and … smear my name, have that complaint circulated all over the country for people to attack me and to accuse me and to smear my reputation. That's **blackmail**. That's **extortion**, in my view. (*Id.* at 20).

k.  Never heard another word about it [when Defendant Wood assaulted Grunberg] from the boy until I – all of sudden, to try to **extort** me, he puts in a claim that I assaulted him. (*Id.* at 23-24).

l.   I don't know how Jonathan knows anything about it [when Defendant Wood assaulted Wilson], but nothing was ever said about it[11] after the event until they put it into this lawsuit where they tried to **extort** me to have me pay them $1.5 million in a case that even they claim is worth only $647,000, after they get the benefit of the $280,000 that I was to pay for their share of the lease.  They owe me $280,000. (*Id.* at 25-26).

99.   Thus, Defendant Wood has accused Plaintiffs of criminal extortion and attempted extortion in connection with both the underlying March 17 Agreement and their subsequent Settlement Demand when Defendant Wood breached the March 17 Agreement.  Neither can be supported by any evidence.

100.   Defendant Wood posted publicly to his—at the time—approximately 850,000 followers his accusations that Plaintiffs, for example:

a.   acted "[i]n an effort to extort money from me,"

b.   "tried to extort money out of me,"

c.   committed "criminal extortion,"

d.   should be "subject to potential disbarment for engaging in an attempt to criminally extort" him,

e.   "committed the crime of attempted extortion and Mr. Wood is still considering whether to pursue criminal actions against

---

[11] Wood has admitted to both on recording after they occurred.

Plaintiffs and their counsel," "engaged in criminal conduct (such as attempted extortion)"; and

f.      are "extortionists" and "extortionist lawyers."

101.    Defendant Wood bolstered his defamatory accusations by asserting that "I know some other lawyers who agree with my opinion," by referencing the fact that he is "a trial lawyer with 43 years experience," by lying about and misrepresenting the underlying facts regarding his accusation of extortion, by soliciting Bar complaints against Plaintiffs, and by stating that their actions should result in disbarment.

102.    Under certain circumstances, accusing an opposing party in litigation of "extortion" can be considered rhetorical hyperbole, because the party is not truly accusing the other party of a criminal activity but instead is merely characterizing the litigation as extortion.

103.    In this case, however, Defendant Wood has in fact accused Plaintiffs of the crime of extortion and attempted extortion.

104.    For instance, Defendant Wood stated that he was "considering whether to pursue criminal action against Plaintiffs," and repeatedly called his accusation "true."

105. Defendant Wood further stated that he was "filing a grievance complaint against Wade, Wilson & Grunberg individually . . . so that they can be investigated and the matter reviewed by the GA State Bar."

106. He also urged his followers to file complaints with the Georgia Bar as a result of their purportedly criminal behavior.

107. Because Defendant Wood accused Plaintiffs of committing a crime for which they should be disbarred and/or criminally prosecuted, as opposed to merely characterizing their litigation negatively, his defamatory accusations are not protected as rhetorical hyperbole.  *See*, *e.g.*, *Friedman v. Blumberg L.P.*, 884 F.3d 83, 97 (2d Cir. 2017) ("This statement can be read as something other than a characterization of [plaintiff]'s underlying lawsuit against [defendant] and is reasonably susceptible to a defamatory meaning—that [plaintiff] actually committed the criminal act of extortion—a statement that is capable of being proven false.").

108. Defendant Wood's accusations are not protected opinion as a result of his use of the phrase "in my opinion" at times, because he made accusations of fact that are capable of being proven true or false.  *See*, *e.g.*, *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19 (1990) ("Simply couching such statements in terms of opinion does not dispel these implications; and the statement, 'In my opinion Jones is a liar,' can cause as much damage to reputation as the statement, 'Jones is a liar.'").

## CAUSE OF ACTION FOR DEFAMATION

109.   Plaintiffs incorporate by reference paragraphs 1 through 108 of this Verified Complaint as if fully stated herein.

110.   Through his social media posts on Telegram between May 12 and June 18, 2021, and in the context set forth above, Defendant Wood published the following false and defamatory statements about Plaintiffs (collectively, the "Defamatory Statements"):

a)   "In an effort to extort money from me, Nicole J. Wade, Jonathan D. Grunberg, and G. Taylor Wilson of the Atlanta law firm of Wade, Grunberg & Wilson, LLC interfered with my relationship with my children…. I had some choice words for these extortionists…. I told these extortionist lawyers … These extortionist lawyers … these extortionist lawyers who should be disbarred." (May 12) (*see* ¶ 82)

b)   "I'm gonna tell you the truth about that lawsuit.  These people tried to extort money out of me that they didn't have and didn't deserve…. So the truth of the matter is it was an extortionist type attempt by these lawyers." (May 13) (*see* ¶ 86)

c)   "Does that sound like criminal extortion to you?" (May 19 at 12:11 pm) (*see* ¶ 88)

d)   "If you believe Person A is attempting to criminally extort you …if Person A is a lawyer, should . . . Person A . . . be subject to potential disbarment for engaging in an attempt to criminally extort you?" (May 19 at 12:20 pm) (*see* ¶ 88)

e) "[C]oncerned citizens can file Bar complaints against lawyers who they believe have violated disciplinary rules or engaged in possible criminal conduct (such as attempted extortion). . . . Here is the link which I provide as a public service.  By the way, . . . Nicole, Jonathan & Taylor are Georgia lawyers." (May 19 at 12:54 pm) (*see* ¶ 88)

f) "Yesterday, I posted the email below and suggested that in my opinion, this demand by . . . Atlanta lawyers Nicole J. Wade, Jonathan D. Grunberg, and G. Taylor Wilson of Wade, Grunberg, & Wilson, LLC constituted an attempt to extort me." (May 20) (*see* ¶ 91)

g) "Plaintiffs committed the crime of attempted extortion and Mr. Wood is still considering whether to pursue criminal actions against Plaintiffs. . . ." (May 26) (*see* ¶¶ 93-94)

h) "These accusations against me … were filed for an attempt … to extort from me monies that the Plaintiffs … are not entitled to recover." (June 16) (*see* ¶ 98(a))

i) "So then I had these lawyers trying to threaten me that they were going to make public their accusations about my mental health…. It was an extortion played by these lawyers…. It was extortion." (June 16) (*see* ¶ 98(b))

j) "I recommended to the client through his local counsel, that they agree to the deal even though I knew it was extortion." (June 16) (*see* ¶ 98(c))

k)   "They presented me with a draft of their lawsuit, which in the fraud portion of the case went into detail about issues that arose out of their interference with my children's relationship with me … They put that stuff in the fraud complaint among other things that were scandalous, irrelevant, immaterial, to even a fraud claim.  They did that to smear me and to try to get me to pay this money." (June 16) (*see* ¶ 98(d))

l)   "I was trying to help them even though they had tried to extort me." (June 16) (*see* ¶ 98(e))

m)   "You don't use the court system to extort people." (June 16) (*see* ¶ 98(f))

n)   "They were trying to extort me. Almost blackmail me….  The law does not sanction lawyers' engaging in such conduct to try to extort money from another party…" (June 18) (*see* ¶ 98(g))

o)   "[T]heir unfortunately – it's the truth – extortion that they tried to successfully, now unsuccessfully obtain from me." (June 18) (*see* ¶ 98(h))

p)   "I was willing to live up to the agreement even though it was extortion." (June 18). (*see* ¶ 98(i))

q)   "Because they told me if I didn't agree to pay them $1.5 million, 1.25 in cash, and to pay for their share of the office lease … that if I didn't pay $1.5 million to him immediately, he was going to sue that case and … smear my name, have that complaint circulated all over the country for people to attack me and to accuse me and to smear my reputation. That's blackmail. That's extortion, in my view." (June 18) (*see* ¶ 98(j))

r)   "Never heard another word about it from the boy until I – all of a sudden, to try to extort me, he puts in a claim that I assaulted him." (June 18) (*see* ¶ 98(k))

s)    "[N]othing was ever said about it after the event until … they tried to extort me to have me pay them $1.5 million in a case that even they claim is worth only $647,000…" (June 18) (*see* ¶ 98(l))

111.   In accordance with O.C.G.A. § 51-5-11(a), at least seven days prior to the filing of this lawsuit, on March 8, 2022, Plaintiffs demanded in writing that Defendant Wood retract the Defamatory Statements. A true and correct copy of that retraction demand is attached hereto as *Exhibit A*.

112.   Defendant Wood has failed and refused to retract the Defamatory Statements.

113.   Defendant Wood published the Defamatory Statements to third parties without privilege.

114.   The statements set forth in Paragraph 110 (a)-(s) are of and concerning Plaintiffs.

115.   The Defamatory Statements are false.

116.   The Defamatory Statements are defamatory per se.

117.   Defendant Wood published the Defamatory Statements negligently and with actual malice, i.e., knowledge that the Defamatory Statements were false or with reckless disregard for their falsity.

118.   Defendant Wood knew that the Defamatory Statements were false because Wood, as a firsthand source, knew that Plaintiffs did not make any

statements or threats which could amount to extortion in any of their dealings with him, specifically including the negotiation of the March 17 Agreement and in connection with the August Settlement Demand.

119.   Defendant Wood knew that the Defamatory Statements were false, including because he omitted and otherwise misrepresented factual information— for which he is a firsthand source—demonstrating that the Settlement Demand made by Plaintiffs prior to initiating the Fulton County Litigation was a reasonable pre-suit demand to resolve disputed and meritorious claims.

120.   Defendant Wood knew that the Defamatory Statements were false, including because, as a lawyer, he omitted and otherwise misrepresented legal information—for which he is a firsthand source—demonstrating that the Settlement Demand made by Plaintiffs was merely a reasonable pre-suit demand to resolve disputed and meritorious claims.

121.   Defendant Wood knew that the Defamatory Statements were false, including because, as a firsthand source, he fabricated information to support his false and defamatory accusations against Plaintiffs.

122.   For instance, and without limitation, Defendant Wood knew that Plaintiffs' Settlement Demand was not merely to resolve a $647,000 breach of contract, but an offer for a global resolution that included amounts for (1) the

liquidated sum already known to be owed to Plaintiffs ($932,949.99 not including the payment for the LLW PC lease); (2) an additional fee which was already owed by Wood but was unliquidated and unknown to Plaintiffs, but which they reasonably believed  was at least $165,000; (3) to buy Plaintiffs out of remaining contingency fees for pending cases, which Plaintiffs reasonably believed would amount to at least $165,000; (4) fraud by Defendant Wood; (5) defamation by Defendant Wood; (6) breach of Defendant Wood's non-disparagement obligations under the March 17 Agreement; (7) attorneys' fees; and (8) the option to rescind the March 17 Agreement and seek a variety of damages in contract and tort, i.e., a new release of claims.

123.  For instance, and without limitation, Defendant Wood knew that—contrary to his Defamatory Statements—Plaintiffs never threatened the conduct he described, in their draft complaint or otherwise.  Indeed, directly contrary to Wood's claims, Plaintiffs never threatened to publicly accuse him of being mentally ill nor did they publicly describe any apparent issues he was having with his children, even in their complaint against him.  Instead, Plaintiffs' Fulton County Litigation complaint described their dealings, mostly in Wood's own words, and Plaintiffs took painstaking efforts to remove any reference to Wood's health and his children.

124.    Defendant Wood negligently, recklessly, and/or with knowledge of falsity published the Defamatory Statements, including because Defendant Wood knew that Plaintiffs did not make any of the threats identified as extortion under Georgia law, and to the contrary, actually made concessions each time Wood reneged on an agreement.

125.    Defendant Wood knew that the Defamatory Statements were false, including because on February 18, 2020, one day after the parties' February 17 Agreement, Wood admitted in an e-mail to Plaintiffs and third parties that:

> The primary purpose of this e-mail is [to] correct and retract some very hurtful and false accusations that I recently made against … my current law partners and employees.  In the worst example of a defamer, I published accusatory statements with incomplete information and out of anger, coupled with a tired brain and body…. Allow me to make clear that in all of the recipients of this email, there is not a dishonest or criminal bone in any of their bodies. I say this unequivocally and in direct contradiction to any suggestions or accusations or statements that I may have made against anyone on this email…. The recent emails to which I refer are the worst examples of the failure by an individual – ME – to pursue truth and achieve justice.  My statements against the identified individuals were not true and inflicted an injustice upon them … I want to make it very clear that the individuals who were falsely accused are innocent of any wrongdoing and are encouraged to seek any further remedies against me for my wrongdoing…

126.    Defendant Wood negligently and recklessly published the Defamatory Statements, including by failing to conduct a reasonable investigation prior to publication by, without limitation, failing to consider or knowingly disregarding evidence that was available to him.

127.   There exists significant circumstantial evidence demonstrating Defendant Wood's knowledge of falsity and reckless disregard for the truth and that all such statements were made with the deliberate intent to harm Plaintiffs.

128.   Defendant Wood negligently, recklessly, and/or with knowledge of falsity published the Defamatory Statements, including because he has a known bias, hostility, and animus against Plaintiffs. Indeed, his accusations against Plaintiffs merely form part of a continuing course of conduct which, in his own words, are designed to "destroy" Plaintiffs and render them "broke and essentially homeless."

129.   Defendant Wood negligently and recklessly published the Defamatory Statements, including because he has made a vast number of false and defamatory accusations about Plaintiffs which were made up out of whole cloth, demonstrating his pre-conceived narrative in a deliberate attempt to harm Plaintiffs.  For instance, Defendant Wood has made a variety of false claims regarding Plaintiffs, such as that they are being financed by nefarious actors to pursue litigation against him, that they are members of the so-called "Deep State," and that their litigation against him is motivated by some political agenda tied to, e.g., Black Lives Matter.

130.   Defendant Wood negligently and recklessly published the Defamatory Statements, including because—the same day that Wood received Plaintiffs'

retraction demand on March 8, 2022—he again published an accusation of extortion and claimed, not that it was true, but that it was a protected opinion.[12]

131.   Defendant Wood negligently and recklessly published the Defamatory Statements, including because he repeatedly made threats to destroy Plaintiffs in the court of public opinion, demonstrating a pre-conceived effort to falsely defame Plaintiffs.

132.   At bottom, Defendant Wood, as a lawyer with over 40 years of experience, knew and recklessly disregarded that the Defamatory Statements were false because he knew that Plaintiffs had a variety of meritorious claims against him and that they therefore had a right to make a demand for settlement of those meritorious claims.

133.   Indeed, for all his other statements, Defendant Wood has acknowledged that Plaintiffs have a meritorious claim for breach of contract against him.

134.   Defendant Wood knew that the Defamatory Statements were false, including because one of his Telegram posts admitted that Plaintiffs' Settlement

---

[12] He also accused Plaintiffs of engaging in a concerted effort in "lawfare" with State Bar organizations and the United States Court of Appeals for the Eleventh Circuit, and he communicated that they are in some manner being paid "dark money" to do it.  *See* https://t.me/linwoodspeakstruth/10288; https://t.me/linwoodspeakstruth/10289; https://t.me/linwoodspeakstruth/10290; https://t.me/linwoodspeakstruth/10291; and https://t.me/linwoodspeakstruth/10292.

Demand was based on additional claims beyond the liquidated amount owed under the March 17 Agreement, but for which he nonetheless misrepresented their claims and the law[13]:



135.   The Defamatory Statements constitute defamation per se, for which compensatory damages are presumed as a matter of law.

136.   Plaintiffs have suffered actual damages as a direct result of the Defamatory Statements about them, including to their reputation.

---

[13] Defendant Wood's "Defamation 101" is entirely off target.  Wood had no privilege to defame Plaintiffs, and he defamed them to their colleagues as well as clients.

137.   Plaintiffs have suffered actual damages as a direct result of the Defamatory Statements about them, including emotional and mental distress.

138.   For instance, with prior notice that his posts about Plaintiffs had previously resulted in threats of harm to Plaintiffs,[14] Defendant Wood has delighted in the knowledge that the very posts at issue in this case resulted in significant, repeated threats of physical harm to Plaintiffs.[15]   For example, Wood's followers responded to Wood's comments about Plaintiffs both online and with direct communications through e-mail, telephone, and social media with messages such as the following:

---

[14] For instance, following previous posts by Wood asking his followers to research Plaintiffs and their counsel to ascertain their alleged (but non-existent) political, communist agenda, Plaintiffs' and their lawyers' information ended up on the infamous 8kun/8chan website with requests for "Anons" to do a "deep dive" into their personal information.

[15] At some unknown point in time after May 2021, Defendant Wood's reply channel was apparently scrubbed of all comments by his followers on previous posts.  The excerpts in this paragraph were previously preserved by Plaintiffs.

**Erik**
I'd love to see these traitors dead   10:02 AM

**Penny Griggs**                                        Reply
│ **Belinda**
│ Yes we are. Only thing, I'm  in W. TN.. Keep me informed if ther...

Same here, right on the TN river, but I can be in Nashville in 1 1/2
hr. This Patriot is ready to "go to war"!                    9:47 AM

🌟 🌟 🐉 Iguana Haffun 🌟 🌟 🇺🇸 
Hi Lin, if you could kindly place the home address of these bad
folk for us millions of patriotic Americans to have then that would
be great. Also, feel free to mail the bad folk another set of
underwear cause they're gonna shit their pants.              9:17 PM

Nicole, Jonathan and Taylor:
He speaks for millions and we approve this message. We DO NOT
approve assault on the 1st amendment and some of us love the
2nd one as well!                                            7:09 AM

**Lillith**                                        Reply
Time to finish the job.   1:31 AM

**Brandqn**                                        Reply
Let's end this movie 🇺🇸 🐸 💪🏾   5:46 AM 

**Earl E. Wischmeier**                              Reply
Lin they're barking up the wrong tree they're messing with the
wrong dude, you have millions of people supporting you!

I was in the crowd on January 6th Washington DC!

There was no Insurrection there was no riot that was a poorly
done soap opera play that happened while Donald Trump was still
speaking.

If necessary Lin, I'm sure could gather up a million or so of our
friends and visit Georgia if necessary.

Just to have a picnic:)

And while we're in the neighborhood we could go have a picnic in
South Carolina perhaps?                                    9:22 PM

49

**How Can We Help?:** You sir aren't a Chilayin Jew, you are a fucking faggot Jew soy boy snowflake. Get a fucking life you low life piece of shit. And a really shitty lawyer I hear. You would be nowhere if it weren't for Lin Wood. Go out back and eat a bullet you spineless fuckhead.



139.   As requested in the "ReadyOrNot" post requesting "PICTURES – close up shots – so we can recognize them at their kids schools and games," Defendant Wood obliged with respect to Plaintiffs Wilson and Grunberg, who are the two Plaintiffs with small children:



140.   In connection with posting the "transcripts" of his own diatribes that he mischaracterized as "depositions," Defendant Wood also posted Plaintiff Wade's picture and delighted in the threats he was inciting toward Plaintiffs, including by "doxxing" Wade, which had the expected consequences, including, as examples:



141.   Defendant Wood had previously acknowledged threats such as these, and seemed to openly encourage them when he posted as follows on May 19, 2021 (the same time in which he was accusing Plaintiffs of extortion):



142.   Plaintiffs are entitled to an award of compensatory damages against Defendant Wood in an amount to be proven at trial.

143.   Defendant Wood published the Defamatory Statements in a deliberate attempt to cause harm to Plaintiffs.

144.   Defendant Wood published the Defamatory Statements with actual malice and common law malice, thereby entitling Plaintiffs to an award of punitive damages.

145.   Defendant Wood's conduct in publishing the Defamatory Statements was outrageous and willful, demonstrating that entire want of care that raises a conscious indifference to consequences.

146.   Defendant Wood published the Defamatory Statements without privilege because he published them with actual malice and not in good faith.

147.   Plaintiffs are entitled to an award of punitive damages against Defendant Wood.

148.   Defendant Wood has acted in bad faith, has been stubbornly litigious, and has caused Plaintiffs unnecessary trouble and expense by making and refusing to retract his Defamatory Statements, and Plaintiffs are entitled to recovery of attorneys' fees pursuant to O.C.G.A. § 13-6-11.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court grant Plaintiffs the following relief against Defendant Wood:

A.   Compensatory damages in an amount to be proven at trial in excess of $75,000;

B.   An award of attorneys' fees and costs, including pursuant to O.C.G.A. § 13-6-11, in an amount to be proven at trial;

C.   An award of punitive damages in an amount to be proven at trial; and

D.      Such other relief as the Court deems just and proper.


This 17th day of March, 2022.

/s/*Andrew M. Beal*

Andrew M. Beal
abeal@buckleybeal.com
Georgia Bar No. 043842
Milinda Brown
mbrown@buckleybeal.com
Georgia Bar No. 363307

BUCKLEY BEAL LLP
600 Peachtree Street, NE
Suite 3900
Atlanta, Georgia 30308
T: (404) 781-1100
F: (404) 688-2988
***Attorneys for Plaintiffs***

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all counts so triable.

This 17th day of March, 2022.

/s/ *Andrew M. Beal*
Andrew M. Beal
abeal@buckleybeal.com
Georgia Bar No. 043842
Milinda Brown
mbrown@buckleybeal.com
Georgia Bar No. 363307

BUCKLEY BEAL LLP
600 Peachtree Street, NE
Suite 3900
Atlanta, Georgia 30308
T: (404) 781-1100
F: (404) 688-2988
*Attorneys for Plaintiffs*

## CERTIFICATION UNDER L.R. 7.1D.

Pursuant to Northern District of Georgia Civil Local Rule 7.1D, the

undersigned counsel certifies that this VERIFIED COMPLAINT FOR

DEFAMATION is a computer document and was prepared in Times New Roman

14-point font, as mandated in Local Rule 5.1C.

This 17th day of March, 2022.

/s/ *Andrew M. Beal*
Andrew M. Beal
abeal@buckleybeal.com
Georgia Bar No. 043842
Milinda Brown
mbrown@buckleybeal.com
Georgia Bar No. 363307

BUCKLEY BEAL LLP
600 Peachtree Street, NE
Suite 3900
Atlanta, Georgia 30308
T: (404) 781-1100
F: (404) 688-2988
***Attorneys for Plaintiffs***