EXHIBIT "B"

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| NICOLE JENNINGS WADE, JONATHAN D. GRUNBERG, and G. TAYLOR WILSON,<br><br>        Plaintiffs,<br><br>   v.<br><br>L. LIN WOOD,<br><br>        Defendant. | Case No. 1:22-cv-1073-MLB |

## <u>DECLARATION OF NICOLE JENNINGS WADE</u>

I, Nicole Jennings Wade, declare as follows:

1.  I am one of the plaintiffs in this action.  I have personal knowledge of the facts set forth in this declaration, am over 18 years of age, and am otherwise competent to make this declaration.

2.  I submit this declaration in support of Plaintiffs' Motion for Partial Summary Judgment.

1

3. This is a true and correct screenshot of a post made by Defendant

Wood to his Telegram channel, Lin Wood Speaks Truth, on May 12, 2021:



4. This is a true and correct transcription of an excerpt of a speech made

by Defendant Wood that he posted in video form to his Telegram channel, Lin Wood

Speaks Truth, on May 13, 2021:

> I'm gonna tell you the truth about that lawsuit. These people tried to
> extort money out of me that they didn't have and didn't, didn't, didn't
> deserve. . . . So the truth of the matter is it was an extortionist type
> attempt by these lawyers …

5.      This is a true and correct screenshot of a post made by Defendant Wood to his Telegram channel, Lin Wood Speaks Truth, on May 19, 2021, at 12:11 pm:



6.      This is a true and correct copy of a screenshot of a post made by Defendant Wood to his Telegram channel, Lin Wood Speaks Truth, on May 19, 2021, at 12:20 pm:



7.    This is a true and correct copy of a screenshot of a post made by Defendant Wood to his Telegram channel, Lin Wood Speaks Truth, on May 19, 2021, at 12:47 pm:



8.    This is a true and correct copy of a screenshot of a post made by Defendant Wood to his Telegram channel, Lin Wood Speaks Truth, on May 19, 2021, at 12:49 pm:



9.    This is a true and correct screenshot of the image that appears when you click on the image embedded in the post shown in ¶ 8 above:



10.     This is a true and correct copy of a screenshot of a post made by Defendant Wood to his Telegram channel, Lin Wood Speaks Truth, on May 19, 2021, at 12:57 pm:



11.   This is a true and correct copy of a screenshot of a post made by Defendant Wood to his Telegram channel, Lin Wood Speaks Truth, on May 20, 2021, under which he reposted the image from ¶ 9 above:



12.   This is a true and correct copy of a screenshot of a post made by Defendant Wood to his Telegram channel, Lin Wood Speaks Truth, on May 26, 2021, at 8:18 pm:



13.    This is a true and correct copy of a screenshot of a post made by Defendant Wood to his Telegram channel, Lin Wood Speaks Truth, on May 26, 2021, at 8:18 pm:



14.    This is a true and correct screenshot of the image that appears when you click on the image embedded in the post shown in ¶ 13 above:

> **REQUEST FOR ADMISSION NO. 50:**
>
>      Admit that you contacted clients or former clients to discuss the lawsuit filed by Plaintiffs against you, and during these communications you referred to the Plaintiffs' suit as extortion and used words to state or imply that Plaintiffs were dishonest.
>
> **RESPONSE TO REQUEST FOR ADMISSION NO. 50:**
>
>      Mr. Wood admits that he contacted clients in privileged communications concerning the frivolous lawsuit which Plaintiffs were threatening to file against Mr. Wood and L. Lin Wood, P.C. In Mr. Wood's opinion, Plaintiffs committed the crime of attempted extortion and Mr. Wood is still considering whether to pursue criminal actions against Plaintiffs and their counsel. Further, in Mr. Wood's opinion. Plaintiffs are dishonest and unfit to practice law. Except to the extent admitted herein, Request No. 50 is denied.
>
>      Respectfully submitted this 26th day of May, 2021.

15.     Attached as Exhibit 1 is a true and correct copy of Plaintiffs' First Requests for Admissions to Defendant Wood dated July 19, 2022.

16.     Attached as Exhibit 2 is a true and correct copy of Defendant's Responses to Plaintiffs' First Request for Admissions dated August 31, 2022 (Dkt. 38).

17.     Attached as Exhibit 3 is a true and correct copy of a transcript of a purported "deposition" of me dated June 16, 2021, that Defendant Wood posted to his Telegram channel, Lin Wood Speaks Truth, on June 16, 2021.  Defendant Wood posted the transcript as well as the videotape of the proceedings.

18.     Attached as Exhibit 4 is a true and correct copy of a transcript of a purported "deposition" of Taylor Wilson dated June 17, 2021, that Defendant Wood posted to his Telegram channel, Lin Wood Speaks Truth, on June 18, 2021. Defendant Wood posted the videotape of the proceedings on June 17, 2021.

19.     Attached as Exhibit 5 is a true and correct copy of a transcript of a purported "deposition" of Jonathan Grunberg dated June 18, 2021, that Defendant Wood posted to his Telegram channel, Lin Wood Speaks Truth, on June 18, 2021. Defendant Wood posted the transcript as well as the videotape of the proceedings.

20.     The transcripts attached as Exhibits 3, 4, and 5 are actually Videotaped Certificates of Non-Appearance of Taylor, Jonathan, and me—we did not appear

because we had previously filed a Motion for Protective Order regarding the depositions. Aside from a few brief comments from others who were present, virtually all of the colloquy on the record is from Defendant Wood. The transcript of my nonappearance is actually a rough draft instead of a final transcript.

21.    Jonathan, Taylor, and I worked with Lin at L. Lin Wood, P.C. (the "Firm") for several years prior to February 14, 2020, at which time we found it necessary to part ways with Lin and the Firm.

22.    The lease for the Firm was solely in the name of the Firm—although Jonathan, Taylor, and I signed as "partners" of the Firm, there were no individual guaranties for the lease.

23.    On February 14, 2020, after we advised Lin that we were leaving, he had building security escort us out of the office at 5:00 pm and then had the building change the locks.

24.    On February 17, 2020, Jonathan, Taylor and I had a phone call with Lin during which we reached agreements on how to divide ongoing client responsibilities and also on the distributions that we would receive from the Firm's contingency fee in cases that had already settled prior to our departure from the Firm but that had not yet been funded. The agreement is confirmed in an email, which is Exhibit 6 to Lin's deposition and attached to our Brief at Exhibit A, tab 6.

25.     Both sides engaged lawyers, and on Friday, March 13, 2020, at 4:40 pm, Lin's lawyers emailed us an offer with a draft term sheet, advising us that it was non-negotiable and that the offer would expire the following day (Saturday) at 5 pm. This is a true and correct screenshot of the email from Lin's lawyer:

**From:** "Marquardt, Chris" <Chris.Marquardt@alston.com>
**Date:** March 13, 2020 at 3:40:18 PM CDT
**To:** Andrew Beal <ABeal@buckleybeal.com>
**Cc:** "Burby, Joey" <Joey.Burby@alston.com>
**Subject: Confidential Settlement Communication**

Drew:

Thanks for getting on the phone with me last evening, and for following up with a revised settlement proposal from your clients. I'm pleased to see the productive movement from both sides, and I hope that we are now at the point to cut a final deal.

To that end, attached is a final settlement term sheet. It has been approved by our client. Lin has instructed us to make clear that this is a non-negotiable, last-and-final settlement offer. You and I have both been doing this for a long time. I note, for what it's worth, that I do not agree to characterize an offer in that way unless it is 100% certain that my client will not negotiate any additional terms. That is where we are in this dispute.

Lin also instructed us to make clear that this offer will expire at 5pm tomorrow (Saturday March 14th) if not accepted by your clients by that time. To accept the offer, please have each of your clients sign on the spaces at the bottom of the term sheet. If we have a deal, Joey and I will prepare a formal settlement agreement draft for your review, to be signed by the parties no later than close of business on Wednesday March 18th.

We believe that this is a very fair and reasonable resolution of the clients' various issues. We hope your clients view it the same way. Lin asked me to mention again that he truly does want each of your clients to be successful, and that once this agreement is signed and the parties move forward he fully intends to keep them high on his list for referrals of future matters.

I look forward to hearing back from you soon. Thanks.

Christopher C. Marquardt
Alston & Bird LLP
1201 West Peachtree Street
Atlanta GA 30309-3424
(404) 881-7827 direct
(404) 253-8741 e-fax
chris.marquardt@alston.com

We agreed and executed the term sheet the next day after a few edits.

26.   On March 17, 2020, Lin's lawyers emailed us a draft settlement agreement, to be signed that day, and told us that we would be able to access the office once it was executed. (Lin had prevented us from accessing the office after we were locked out on February 14—despite claiming that he told the building to let us in—and we had been unable to retrieve our client files, personal belongings, or furniture despite numerous requests to Lin, to his lawyers, and to the building.) This is a true and correct copy of the email from Lin's lawyer:

**From:** "Marquardt, Chris" <Chris.Marquardt@alston.com>
**Date:** March 17, 2020 at 12:37:38 PM EDT
**To:** Andrew Beal <ABeal@buckleybeal.com>
**Cc:** "Burby, Joey" <Joey.Burby@alston.com>
**Subject: Wood Settlement Agreement (AB draft 3-17-2020)**

Drew:

Attached is our draft of the settlement agreement. I know you're in and out of sessions at mediation, and will be flipping this to your clients. This agreement has been discussed at length with our client, and he is ready to sign this afternoon once your clients sign. Once signed, they can get access to the office space for move-out, and Joey will be there to facilitate. I'll call again in a moment to discuss. Thanks.

Christopher C. Marquardt
Alston & Bird LLP
1201 West Peachtree Street
Atlanta GA 30309-3424
(404) 881-7827 direct
(404) 253-8741 e-fax
chris.marquardt@alston.com

After exchanging a few edits, Jonathan, Taylor, and I executed the settlement agreement, which resolved all outstanding issues between the parties, that same day. That agreement is Exhibit 12 to Lin's deposition and is attached to our Brief at Exhibit A, tab 12.

27.    In addition to including the same fee distributions that we had agreed to on February 17, the March 17 agreement provided for Lin to retain $285,000 of the fees due to us as payment toward the lease and also provided for us to receive a percentage of any fees collected for two cases that had not yet settled but for which we had completed all of the substantive work.

28.    The March 17 agreement specified that $647,949.99 was to be wired to our checking account within 72 hours after Lin received the Firm's fee for the largest of the cases.   The dollar amount was calculated by adding together our fee distribution for the three cases that had settled and subtracting the amount that Lin was retaining for the Lease payment. For the two cases that had not yet settled, the March 17 agreement provided that Lin would pay us our percentages of the Firm's contingency fee within 72 hours after receiving the Firm's fee.

29.    The largest of the cases was to be paid on or about July 24, 2020.

30.    On July 24, 2020, Lin's lawyer sent us a letter telling us that he was not going to make the required payments to us, ostensibly because client consent was required under Rule 1.5(e) of the ethical rules, and the client did not agree to the payments—despite the fact that client consent clearly was not required since our share came from the Fee's total share as a result of work we performed while we were lawyers of the Firm. Rule 1.5 clearly states that "[p]aragraph e does not prohibit

or regulate the division of fees to be received in the future for work done when lawyers were previously associated in a law firm." The July 24 letter is Exhibit 13 to Lin's deposition and is attached to our Brief at Exhibit A, tab 13.

31.     Also on July 24, 2020, we learned from media reports that one of the two cases that had not yet settled as of March 17 had also settled and was being funded on or about July 24, 2020.  The settlement was confidential, and we did not know the amount of the settlement.

32.     Our lawyer responded on our behalf to Lin's lawyer via correspondence on August 7, advising him that Lin was in breach of the contract and had obviously committed fraud, as his position made it clear that he never intended to perform under the March 17 agreement by paying us. Our lawyer requested that Lin immediately wire us the amount owed under the March settlement agreement, advising that our offer would remain open until August 10. A true and correct copy of this correspondence is attached hereto as Exhibit 6.

33.     Lin continued to refuse to pay us what we were owed under the March 17 agreement.

34.     On August 25, 2020, our lawyer communicated with Lin's lawyer, and on our behalf, advised him that we were planning to file a lawsuit for breach of contract and fraud if Lin did not pay us what we were owed. Upon request to wait

and try to settle it, our lawyer agreed to share our complaint if Lin would agree not to pre-emptively sue us.  He had previously threatened repeatedly to file civil and/or criminal lawsuits against us.

35.    After his lawyer agreed that Lin would not pre-emptively sue us, our lawyer emailed him our complaint, advising him that we would not file it before August 27, 2020, at 5:00 pm.  A true and correct copy of this email is attached hereto as Exhibit 7.

36.    We did not include any monetary demand with the draft complaint; at that point we had asked only that Lin pay us what he and the Firm owed us under the March 17 agreement.

37.    At around 7:00 am the following day, on August 26, Lin began calling certain of our mutual clients and co-counsel to accuse us of being extortionists. I know this because I spoke to one client who said Lin had told her that morning that we were extortionists and who urged us not to sue Lin, and because Lin copied me on an email to another client in which he said that Jonathan, Taylor, and I were planning to sue him in a lawsuit "intended to extort money . . . that they did not earn. . . ." He further stated that "I intend to expose Nicole and her partners publicly."

38.    Our lawyer spoke with Lin's counsel that afternoon to ask on our behalf that Lin cease from defaming and disparaging us. They agreed to exchange written

offers to try to resolve the dispute. At 5:18 pm that afternoon, our lawyer sent an

email on our behalf containing an offer to resolve all outstanding issues for $1.25

million.  Those issues included our claims for breach of contract for failure to pay

us the liquidated amount due, fraud, defamation, breach of the non-disparagement

agreement, breach of the agreement for failure to pay us the percentage amount due,

and a buy-out of the future obligation to pay us a percentage amount for the unsettled

case. Lin later published that email on Telegram, and a true and correct copy of the

email is attached hereto as Exhibit 8.

  39. Although we did not know the dollar amount we were entitled to for the

newly settled case, we were able to make an educated estimate based on the largest

of the cases that had settled prior to our departure because the case was essentially

the same case for the same client, just against a different defendant. Lin had always

said that he thought the newly settled case was worth more, and I know he told the

opposing party's counsel in the previously settled case that our client would not

settle with any other defendants for less than what that defendant had paid.

  40. Our lawyer's email indicated that the $1.25 million offer would remain

open until 5:00 pm on Thursday, August 27, which was the date we had previously

indicated we would file the complaint if we could not reach an agreement.

41.     On August 27, following a request from Lin's counsel, we extended the deadline until noon on Monday, August 31, a copy of which is attached hereto as Exhibit 9.

42.     On that same day, our counsel sent Lin a retraction demand for the false statements he made to our clients and co-counsel on August 26.

43.     Lin rejected our offer via letter sent on 11:44 am on August 31, without even making a counteroffer, a copy of which is attached hereto as Exhibit 10.

44.     We filed our lawsuit in Fulton County Superior Court immediately after receiving Lin's letter rejecting our offer. Our initial Verified Complaint—the one we had shared with Lin on August 25—included claims for breach of contract, fraud, punitive damages, and attorneys' fees.

45.     Ten days later, on September 10, we filed an Amended Complaint in which we added a claim for breach of the non-disparagement clause in the March 17 settlement agreement and sought an emergency injunction for specific performance of the non-disparagement clause.  That lawsuit remains pending.

46.     On October 8, 2020, the court in the Fulton County litigation issued an injunction enjoining Lin from breaching the non-disparagement clause.

47.     In May 2021, Lin began posting the accusations of extortion set forth in ¶¶ 3-14 above and in Exhibits 3-6 hereto.

48.     On March 22, 2022, we sent Lin a retraction demand for all of the accusations of extortion set forth in ¶¶ 3-14 above and in Exhibits 3-6 hereto. A true and correct copy of that letter is attached to our Complaint in this case as Exhibit A. (Dkt. 1-4 at 4-12).

49.     I have never threatened to disclose any information about Lin to anyone.

50.     I have never threatened to interfere with Lin's family, with his children, or with his efforts on behalf of Richard Jewell.

51.     Through counsel, I advised Lin that Jonathan, Taylor, and I would sue him if we could not settle our claims against him, but that was not a "threat."

52.     Lin filed a grievance against me with the Georgia State Bar, and after he encouraged his followers to file grievances against me, a number of them filed grievances as well claiming that I had extorted Lin. All of the grievances were dismissed.

53.     I acted in good faith in submitting the settlement offer to Lin on August 26, 2021, because the amount we requested in settlement was a reasonable request to settle the numerous claims we had against Lin at that point.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing testimony is true and correct to the best of my personal knowledge.

17

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing testimony is true and correct to the best of my personal knowledge.

Executed this 17th day of April, 2023, in Atlanta, Georgia.

_____
Nicole Jennings Wade

EXHIBIT "1"

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| NICOLE JENNINGS WADE, JONATHAN D. GRUNBERG, and G. TAYLOR WILSON, | Case No. 1:22-cv-1073-MLB |
| Plaintiffs, | |
| v. | |
| L. LIN WOOD, | |
| Defendant. | |

## PLAINTIFFS' FIRST REQUESTS FOR ADMISSION TO DEFENDANT

Pursuant to Federal Rule of Civil Procedure 36, Plaintiffs serve the following

First Requests for Admission on Defendant L. Lin Wood, which are to be answered

in writing within 30 days of service.

## DEFINITIONS

A.      The terms "You," "Your," or "Defendant" shall refer to Defendant L.

Lin Wood ("Wood"), his agents, his employees, and/or others you have directed.

## REQUESTS FOR ADMISSION

1.

Please admit that You posted the following on the social media platform

Telegram on or about May 12, 2021:

1

 **Lin Wood**

I will no longer be silent about the frivolous fraud lawsuit filed against me.

In an effort to extort money from me, Nicole J. Wade, Jonathan D. Grunberg, and G. Taylor Wilson of the Atlanta law firm of Wade, Grunberg, & Wilson, LLC interfered with my relationship with my children, contributing to my children violating God's commandment that my children honor their father.

I had come choice words for these extortionists. I am hot-blooded, especially when someone messes with my children.

I told these extortionist lawyers that they were not messing with Lin Wood, they were messing with Almighty God. I spoke truth. God will deal with them for their actions involving my children.

These extortionist lawyers also were threatening my efforts to get President Trump to award Richard Jewell the Presidential Medal of Freedom posthumously with their false claims about my mental health (which they admitted were false in March 17, 2020 in the settlement agreement).

You do not mess with my children or Richard Jewell.

Now you know the context for my hot-blooded comments to these extortionist lawyers who should be disbarred. The public should file bar complaints against them with the State Bar of Georgia.

It is time to shine light on the darkness.

Thanks for listening to the TRUTH.

t.me/linwoodspeakstruth/2383   169.9K ⊙   May 12, 2021 at 12:10

2.

Please admit that You posted the following statements on the social media platform Telegram on or about May 13, 2021:

"I'm gonna tell you the truth about that lawsuit. These people tried to extort money out of me that they didn't have and didn't, didn't, didn't deserve. . . . So the truth of the matter is it was an extortionist type

attempt by these lawyers …"

3.

Please admit that You posted the following on the social media platform

Telegram on or about May 19, 2021:



4.

Please admit that You posted the following on the social media platform

Telegram on or about May 19, 2021:



5.

Please admit that You posted the following on the social media platform

Telegram on or about May 19, 2021:

 **Lin Wood** 

Under new rules of the State Bar of Georgia (conveniently passed on January 9 so that non-clients from any state could file Bar complaints against me), concerned citizens can file Bar complaints against lawyers who they believe have violated disciplinary rules or engaged in possible criminal conduct (such as attempted extortion).

To file a complaint against any Georgia lawyer, you do not need to be a client nor reside in Georgia. You just have to have information about a Georgia lawyer that concerns you and you feel needs to be investigated.

Here is the link which I provide as a public service.

By the way, Andy, Nicole, Jonathan, & Taylor are Georgia lawyers.

P.S. ALL the power in this country was bestowed by Almighty God to We The People.

https://www.gabar.org/forthepublic/fileacomplaint.cfm

t.me/linwoodspeakstruth/2578                            179.4K ⊙

edited  May 19, 2021 at 12:57

6.

Please admit that You posted the following on the social media platform Telegram on or about May 20, 2021:



**Lin Wood** 

Yesterday, I posted the email below and suggested that in my opinion, this demand by Atlanta lawyer Andy Beall of Buckley/Beall and Atlanta lawyers Nicole J. Wade, Jonathan D. Grunberg, and G. Taylor Wilson of Wade, Grunberg, & Wilson, LLC constituted an attempt to extort me.

I know some other lawyers who agree with my opinion.

Today, Andy Beall filed papers with the Court accusing me of wrongdoing for stating my opinion which by the way is a fully protected opinion under the First Amendment.

Wow! Andy, Nicole, Jonathan, and Taylor apparently do not believe in freedom of speech.

I do believe in freedom of speech and I will never stop fighting for free speech and the Bill of Rights.

t.me/linwoodspeakstruth/2598   166.8K ⊙   May 20, 2021 at 18:14

7.

Please admit that You posted the following on the social media platform Telegram on or about May 26, 2021:

**REQUEST FOR ADMISSION NO. 50:**

Admit that you contacted clients or former clients to discuss the lawsuit filed by Plaintiffs against you, and during these communications you referred to the Plaintiffs' suit as extortion and used words to state or imply that Plaintiffs were dishonest.

**RESPONSE TO REQUEST FOR ADMISSION NO. 50:**

Mr. Wood admits that he contacted clients in privileged communications concerning the frivolous lawsuit which Plaintiffs were threatening to file against Mr. Wood and L. Lin Wood, P.C. In Mr. Wood's opinion, Plaintiffs committed the crime of attempted extortion and Mr. Wood is still considering whether to pursue criminal actions against Plaintiffs and their counsel. Further, in Mr. Wood's opinion. Plaintiffs are dishonest and unfit to practice law. Except to the extent admitted herein, Request No. 50 is denied.

Respectfully submitted this 26th day of May, 2021.

8.

Please admit that You posted the following on the social media platform Telegram on or about June 16, 2021:



9.

Please admit that the post in Request No. 8 above is a link to the transcript of the deposition for Nicole Wade.

7

10.

Please admit that You posted the following on the social media platform

Telegram on or about June 16, 2021:



11.

Please admit that the post in Request No. 10 above is a video of the deposition

for Nicole Wade.

12.

Please admit that You posted the following on the social media platform

Telegram on or about June 16, 2021:



13.

Please admit that You posted the following on the social media platform

Telegram on or about June 18, 2021:



14.

Please admit that the post in Request No. 13 above is a link to the transcript

of the deposition for Taylor Wilson.

15.

Please admit that You posted the following on the social media platform

Telegram on or about June 17, 2021:



16.

Please admit that the post in Request No. 15 above is a video of the deposition for Taylor Wilson.

17.

Please admit that You posted the following on the social media platform Telegram on or about June 18, 2021:



18.

Please admit that You posted the following on the social media platform

Telegram on or about June 18, 2021:



19.

Please admit that the posts in Request Nos. 17 and 18 above are videos of the

deposition for Jonathan Grunberg.

20.

Please admit that You posted the following on the social media platform

Telegram on or about June 18, 2021:



21.

Please admit that the post in Request No. 20 above is a link to the transcript

of the deposition for Jonathan Grunberg.

22.

Please admit that You posted a video and written transcript (Telegram posts

referenced in Requests No. 8 and 10 above) thereof containing the following

statement by You on the social media platform Telegram on or about June 16, 2021:

"These accusations against me are unfounded, they are frivolous, they were

filed for an attempt to do nothing more than to smear me, and to extort from

12

me monies that the Plaintiffs, Nicole J. Wade, Jonathan D. Grunberg, and G. Taylor Wilson are not entitled to recover."[1]

23.

Please admit that You posted a video and written transcript thereof containing the following statements by You on the social media platform Telegram on or about June 16, 2021:

> "So then I had these lawyers trying to threaten me that they were going to make public their accusations about my mental health at a time when I was scheduled to meet with President Trump to discuss whether the President would award to Richard Jewell the Presidential Metal of Freedom. I also was in the middle of cases against every major member of the media, including CNN and the Washington Post, ABC, NBC, CBS, Gannett, Rolling Stone for Nicholas Sandmann, and I told these lawyers they needed to stop the foolishness about my mental health because it would harm Richard Jewell

---

[1] For the convenience of counsel, the referenced statement may be found at page 7 of 29 of the transcript posted on June 16, 2021. *See* Request No. 8; *see also* https://t.me/linwoodspeakstruth/3198.

13

potentially, or it would harm Nicholas Sandmann, and there was no basis in fact for such accusations. It was an extortion played by these lawyers."[2]

24.

Please admit that You posted a video and written transcript thereof containing the following statement by You on the social media platform Telegram on or about June 16, 2021:

"I recommended to the client through his local counsel, that they agree to the deal even though I knew it was extortion."[3]

25.

Please admit that You posted a video and written transcript thereof containing the following statements by You on the social media platform Telegram on or about June 16, 2021:

"They presented me with a draft of their lawsuit, which in the fraud portion of the case went into detail about issues that arose out of their interference with my children's relationship with me, where they were actively taking

_____

[2] For the convenience of counsel, the referenced statement may be found at page 11 of 29 of the transcript posted on June 16, 2021. *See* Request No. 8; *see also* https://t.me/linwoodspeakstruth/3198.

[3] For the convenience of counsel, the referenced statement may be found at page 12 of 29 of the transcript posted on June 16, 2021. *See* Request No. 8; *see also* https://t.me/linwoodspeakstruth/3198.

steps and doing things that in essence had my children not honoring their father. That is a violation of one of God's commandments. I know at one point in time, I told them, I said you are not messing with Lin Wood, you are messing with Almighty God. It's his commandment, not mine. They put that stuff in the fraud complaint among other things that were scandalous, irrelevant, immaterial, to even a fraud claim.  They did that to smear me and to try to get me to pay this money."[4]

26.

Please admit that You posted a video and written transcript thereof containing the following statement by You on the social media platform Telegram on or about June 16, 2021:

"I was trying to help them even though they had tried to extort me."[5]

_____

[4] For the convenience of counsel, the referenced statement may be found at pages 14-15 of 29 of the transcript posted on June 16, 2021. *See* Request No. 8; *see also* https://t.me/linwoodspeaksth/3198.

[5] For the convenience of counsel, the referenced statement may be found at page 18 of 29 of the transcript posted on June 16, 2021. *See* Request No. 8; *see also* https://t.me/linwoodspeaksth/3198.

27.

Please admit that You posted a video and written transcript thereof
containing the following statement by You on the social media platform Telegram
on or about June 16, 2021:

"You don't use the court system to extort people."[6]

28.

Please admit that You posted a video and written transcript thereof containing
the following statements by You on the social media platform Telegram on or about
June 18, 2021:

"They were trying to extort me. Almost blackmail me. $1.5 million? How
did the value of the case go up three times? I told them to file it. They did.
The law does not sanction lawyers' engaging in such conduct to try to extort
money from another party based on threats of filing frivolous and smears in
a lawsuit. It shouldn't be tolerated."[7]

---

[6] For the convenience of counsel, the referenced statement may be found at page
21 of 29 of the transcript posted on June 16, 2021. *See* Request No. 8; *see also*
https://t.me/linwoodspeakstruth/3198.

[7] For the convenience of counsel, the referenced statement may be found at page
20 of 26 of the transcript posted on June 18, 2021. *See* Request No. 13; *see also*
https://t.me/linwoodspeakstruth/3260.

29.

Please admit that You posted a video and written transcript thereof containing the following statement by You on the social media platform Telegram on or about June 18, 2021:

"[T]heir unfortunately – it's the truth – extortion that they tried to successfully, now unsuccessfully obtain from me."[8]

30.

Please admit that You posted a video and written transcript thereof containing the following statement by You on the social media platform Telegram on or about June 18, 2021:

"I was willing to live up to the agreement even though it was extortion."[9]

31.

Please admit that You posted a video and written transcript thereof containing the following statements by You on the social media platform Telegram on or about June 18, 2021:

---

[8] For the convenience of counsel, the referenced statement may be found at page 17 of 46 of the transcript posted on June 18, 2021. *See* Request No. 20; *see also* https://t.me/linwoodspeakstruth/3279.

[9] For the convenience of counsel, the referenced statement may be found at page 18 of 46 of the transcript posted on June 18, 2021. *See* Request No. 20; *see also* https://t.me/linwoodspeakstruth/3279.

17

"Because they told me if I didn't agree to pay them $1.5 million, 1.25 in cash, and to pay for their share of the office lease -- which the building had told them they owed three-fourths of -- we had an office-sharing arrangement -- that if I didn't pay $1.5 million to him immediately, he was going to sue that case and, you know, in essence, listen, do exactly what he did, smear my name, have that complaint circulated all over the country for people to attack me and to accuse me and to smear my reputation. That's blackmail. That's extortion, in my view."[10]

32.

Please admit that You posted a video and written transcript thereof containing the following statement by You on the social media platform Telegram on or about June 18, 2021:

"Never heard another word about it from the boy until I -- all of a sudden, to try to extort me, he puts in a claim that I assaulted him."[11]

---

[10] For the convenience of counsel, the referenced statement may be found at pages 20-21 of 46 of the transcript posted on June 18, 2021. *See* Request No. 20; *see also* https://t.me/linwoodspeakstruth/3279.

[11] For the convenience of counsel, the referenced statement may be found at page 23 of 46 of the transcript posted on June 18, 2021. *See* Request No. 20; *see also* https://t.me/linwoodspeakstruth/3279.

33.

Please admit that You posted a video and written transcript thereof containing the following statement by You on the social media platform Telegram on or about June 18, 2021:

"I don't know how Jonathan knows anything about it, but nothing was ever said about it after the event until they put it into this lawsuit where they tried to extort me to have me pay them $1.5 million in a case that even they claim is only worth $647,000, after they get the benefit of $280,000 that I was to pay for their share of the lease."[12]

34.

Admit that Plaintiffs did not attempt to extort You at any time.

35.

Admit that Plaintiffs did not extort You at any time.

36.

Admit that You received correspondence from Plaintiffs' counsel Andrew M. Beal dated March 8, 2022, demanding that You retract Your defamatory statements regarding Plaintiffs.

---

[12] For the convenience of counsel, the referenced statement may be found at page 26 of 46 of the transcript posted on June 18, 2021. *See* Request No. 20; *see also* https://t.me/linwoodspeakstruth/3279.

37.

Admit that you received Plaintiffs' demand for retraction dated March 8, 2022.

38.

Admit that you responded to Plaintiffs' demand for retraction by email on or around March 15th, 2022 at 10:59 a.m.

39.

Admit that you have not withdrawn or retracted any of your statements that the Plaintiffs are extortionists or have committed extortion of you.

40.

Please admit that You have the means to post content to the Telegram channel https://t.me/linwoodspeakstruth.

41.

Please admit that You have the means to remove content from the Telegram channel https://t.me/linwoodspeakstruth.

42.

Please admit that You have control over the Telegram channel https://t.me/replytolinwood.

43.

Please admit that You have the means to post content to the Telegram

channel https://t.me/replytolinwood.

44.

Please admit that You have the means to remove content from the Telegram

channel https://t.me/replytolinwood.

This 19th day of July, 2022.

/s/*Andrew M. Beal*
Andrew M. Beal
abeal@buckleybeal.com
Georgia Bar No. 043842
Milinda Brown
mbrown@buckleybeal.com
Georgia Bar No. 363307

BUCKLEY BEAL LLP
600 Peachtree Street, NE
Suite 3900
Atlanta, Georgia 30308
T: (404) 781-1100
F: (404) 688-2988
***Attorneys for Plaintiffs***

## <u>CERTIFICATION UNDER L.R. 7.1D.</u>

Pursuant to Northern District of Georgia Civil Local Rule 7.1D, the undersigned counsel certifies that this PLAINTIFFS' FIRST REQUESTS FOR ADMISSION TO DEFENDANT is a computer document and was prepared in Times New Roman 14-point font, as mandated in Local Rule 5.1C.

This 19th day of July, 2022.

/s/ *Andrew M. Beal*
Andrew M. Beal
abeal@buckleybeal.com
Georgia Bar No. 043842
Milinda Brown
mbrown@buckleybeal.com
Georgia Bar No. 363307

BUCKLEY BEAL LLP
600 Peachtree Street, NE
Suite 3900
Atlanta, Georgia 30308
T: (404) 781-1100
F: (404) 688-2988
***Attorneys for Plaintiffs***

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

NICOLE JENNINGS WADE,                    Case No. 1:22-cv-1073-MLB
JONATHAN D. GRUNBERG, and
G. TAYLOR WILSON,

        Plaintiffs,

   v.

L. LIN WOOD,

        Defendant.

**CERTIFICATE OF SERVICE**

I hereby certify that on this day, I served *Plaintiffs' First Requests for Admission to Defendant* by sending same to Defendant's attorneys of record in the above-captioned matter via United States Mail, postage pre-paid, and via electronic mail, as follows:

R. Christopher Harrison
Downey &Cleveland, LLP
288 Washington Avenue
Marietta, GA 30060
harrison@downeycleveland.com

L. Lin Wood
L. Lin Wood, P.C.
P.O. Box 52584
Atl, GA 30355
lwood@linwoodlaw.com

23

Ibrahim Reyes
Reyes Lawyers, P.A.
236 Valencia Avenue
Coral Gables, FL 33134
ireyes@reyeslawyers.com

Respectfully submitted, this the 19th day of July, 2022.

/s/ *Andrew M. Beal*

Andrew M. Beal
Georgia Bar No. 043842
abeal@buckleybeal.com
Milinda L. Brown
Georgia Bar No. 363307
mbrown@buckleybeal.com

BUCKLEY BEAL, LLP
600 Peachtree Street, NE
Suite 3900
Atlanta, Georgia 30308
T: (404) 781-1100
F: (404) 688-2988
*Counsel for Plaintiffs*

EXHIBIT "2"

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| NICOLE JENNINGS WADE, | ) | |
| JONATHAN D. GRUNBERG, and | ) | |
| G. TAYLOR WILSON | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION |
| v. | ) | |
| | ) | |
| L. LIN WOOD, | ) | FILE NO. 1:22-CV-01073 |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## <u>DEFENDANT'S RESPONSES TO PLAINTIFFS' FIRST REQUEST FOR ADMISSIONS</u>

COMES NOW, Defendant L. LIN WOOD, and responds to Plaintiffs' First Request for Admissions as follows:

### 1.

Defendant admits the averments contained in paragraph 1 of Plaintiffs' Request for Admissions.

### 2.

Defendant admits the averments contained in paragraph 2 of Plaintiffs' Request for Admissions.

### 3.

Defendant admits the averments contained in paragraph 3 of Plaintiffs'

Request for Admissions.

4.

Defendant admits the averments contained in paragraph 4 of Plaintiffs' Request for Admissions.

5.

Defendant admits the averments contained in paragraph 5 of Plaintiffs' Request for Admissions.

6.

Defendant admits the averments contained in paragraph 6 of Plaintiffs' Request for Admissions.

7.

Defendant admits the averments contained in paragraph 7 of Plaintiffs' Request for Admissions.

8.

Defendant admits the averments contained in paragraph 8 of Plaintiffs' Request for Admissions.

9.

Defendant admits the averments contained in paragraph 9 of Plaintiffs' Request for Admissions.

10.

Defendant admits the averments contained in paragraph 10 of Plaintiffs'
Request for Admissions.

11.

Defendant admits the averments contained in paragraph 11 of Plaintiffs'
Request for Admissions.

12.

Defendant admits the averments contained in paragraph 12 of Plaintiffs'
Request for Admissions.

13.

Defendant admits the averments contained in paragraph 13 of Plaintiffs'
Request for Admissions.

14.

Defendant admits the averments contained in paragraph 14 of Plaintiffs'
Request for Admissions.

15.

Defendant admits the averments contained in paragraph 15 of Plaintiffs'
Request for Admissions.

16.

Defendant admits the averments contained in paragraph 16 of Plaintiffs'

Request for Admissions.

17.

Defendant admits the averments contained in paragraph 17 of Plaintiffs' Request for Admissions.

18.

Defendant admits the averments contained in paragraph 18 of Plaintiffs' Request for Admissions.

19.

Defendant admits the averments contained in paragraph 19 of Plaintiffs' Request for Admissions.

20.

Defendant admits the averments contained in paragraph 20 of Plaintiffs' Request for Admissions.

21.

Defendant admits the averments contained in paragraph 21 of Plaintiffs' Request for Admissions.

22.

Defendant admits the averments contained in paragraph 22 of Plaintiffs' Request for Admissions.

23.

Defendant admits the averments contained in paragraph 23 of Plaintiffs' Request for Admissions.

24.

Defendant admits the averments contained in paragraph 24 of Plaintiffs' Request for Admissions.

25.

Defendant admits the averments contained in paragraph 25 of Plaintiffs' Request for Admissions.

26.

Defendant admits the averments contained in paragraph 26 of Plaintiffs' Request for Admissions.

27.

Defendant admits the averments contained in paragraph 27 of Plaintiffs' Request for Admissions.

28.

Defendant admits the averments contained in paragraph 28 of Plaintiffs' Request for Admissions.

29.

Defendant admits the averments contained in paragraph 29 of Plaintiffs'

Request for Admissions.

30.

Defendant admits the averments contained in paragraph 30 of Plaintiffs' Request for Admissions.

31.

Defendant admits the averments contained in paragraph 31 of Plaintiffs' Request for Admissions.

32.

Defendant admits the averments contained in paragraph 32 of Plaintiffs' Request for Admissions.

33.

Defendant admits the averments contained in paragraph 33 of Plaintiffs' Request for Admissions.

34.

Defendant denies the averments contained in paragraph 34 of Plaintiffs' Request for Admissions.

35.

Defendant denies the averments contained in paragraph 35 of Plaintiffs' Request for Admissions.

36.

Defendant admits the averments contained in paragraph 36 of Plaintiffs' Request for Admissions.

37.

Defendant admits the averments contained in paragraph 37 of Plaintiffs' Request for Admissions.

38.

Defendant admits the averments contained in paragraph 38 of Plaintiffs' Request for Admissions.

39.

Defendant admits the averments contained in paragraph 39 of Plaintiffs' Request for Admissions.

40.

Defendant admits the averments contained in paragraph 40 of Plaintiffs' Request for Admissions.

41.

Defendant admits the averments contained in paragraph 41 of Plaintiffs' Request for Admissions.

42.

Defendant admits the averments contained in paragraph 42 of Plaintiffs'

Request for Admissions.

43.

Defendant admits the averments contained in paragraph 43 of Plaintiffs'
Request for Admissions.

44.

Defendant admits the averments contained in paragraph 44 of Plaintiffs'
Request for Admissions.

This 31st day of August, 2022.

Respectfully submitted,

**DOWNEY & CLEVELAND, LLP**

By: /s/ R. CHRISTOPHER HARRISON
    R. CHRISTOPHER HARRISON
    Georgia State Bar No. 333199
    harrison@downeycleveland.com
    Attorney for Defendant

Downey & Cleveland, LLP
288 Washington Avenue
Marietta, GA 30060-1979
T: 770-422-3233
F: 770-423-4199

**L. LIN WOOD, P.C.**

By: /s/ L. LIN WOOD
    L. Lin Wood
    Georgia State Bar No. 774588
    lwood@linwoodlaw.com

L. Lin Wood, P.C.
P.O. Box 52584
Atlanta, GA 30355
T: 404-891-1402
F: 404-506-9111

**REYES LAWYERS, P.A.**

By:/s/ IBRAHIM REYES
    Ibrahim Reyes
    Florida State Bar No. 581798
    ireyes@reyeslawyers.com

Reyes Lawyers, P.A.
236 Valencia Avenue
Coral Gables, FL 33134
T: 305-445-0011
F: 305-445-1181

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D) of the Northern District of Georgia, I hereby certify that this pleading has been prepared in compliance with Local Rule 5.1(C) using 14-point Times New Roman Font.

Respectfully submitted,

**DOWNEY & CLEVELAND, LLP**

By: __/s/ R. Christopher Harrison
R. CHRISTOPHER HARRISON
Georgia State Bar No. 333199
harrison@downeycleveland.com
Attorneys for Defendant

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day served the following counsel of record with a true and correct copy of the foregoing pleading via electronic service and/or by depositing said copy in the United States Mail, with sufficient postage affixed thereon, and properly addressed to the following:

Andrew M. Beal, Esq.
Milinda Brown, Esq.
Buckley Beal LLP
600 Peachtree Street, NE
Suite 3900
Atlanta, GA 30308

This 31st day of August, 2022.

**DOWNEY & CLEVELAND, LLP**

By: __/s/ R. Christopher Harrison
R. CHRISTOPHER HARRISON
Georgia State Bar No. 333199

1

IN THE SUPERIOR COURT OF FULTON COUNTY

STATE OF GEORGIA

————————————————

NICOLE WADE; JONATHAN        :
GRUNBERG; TAYLOR WILSON;  :
WADE, GRUNBERG & WILSON,  :
LLC,                    :
       Plaintiffs,  :
               :
vs.                    :
            :
L. LIN WOOD AND L. LIN     :
WOOD, P.C.,               :
      Defendants.  : No. 2020-CV-339937

————————————————

WITNESS:  NICOLE WADE (NO SHOW)

PAGES:   1 through 28

PLACE:   Huseby Litigation
      1201 West Peachtree Street, NW
      One Atlantic Center
      Suite 2300
      Atlanta, Georgia 30309

DATE:   Wednesday, June 16, 2021

TIME:   9:00 a.m.

Court Reporter:  CELESTE PERLA, CSR, MERIT

2

1   APPEARANCES OF COUNSEL:

2   On behalf of the Plaintiffs:

3     ANDREW M. BEAL, ESQUIRE
      Buckley Beal, LLP
4      600 Peachtree Street, NE
      Suite 3900
5      Atlanta, Georgia 30308
      abeal@buckleybeal.com
6      (Not Present)

7   On behalf of Defendants:

8     L. LIN WOOD, ESQUIRE
      And
9     JOHN EXUM, ESQUIRE
      L. Lin Wood, PC
10     Suite 2400
      Regions Plaza
11     1180 West Peachtree Street, NW
      Atlanta, Georgia 30309
12     lwood@linwoodlaw.com

13     And

14     IBRAHIM REYES, ESQUIRE
      Reyes Lawyers, P.A.
15     236 Valencia Avenue
      Coral Gables, Florida 33134
16     ireyes@reyeslawyers.com

17   Also Present:

18     Alex Gallo, Videographer
      Mitch Lash
19     Roberto Barros

20

21

22

23

24

25

3

1                   C O N T E N T S

2     WITNESSES:                         PAGE

3     NICOLE WADE (No Show)

4         By Mr. Reyes              4

5         By Mr. Wood               5

6                        ***

7

8                    EXHIBITS

9     EXHIBITS:              MARKED RECEIVED

10     No Exhibits Marked

11

12

13

14

15

16

17

18

19

20

21

22

23

24

4

1            -----------

2            VIDEO OPERATOR:  This will be

3    tape number one to the videotaped

4    deposition of Nicole Wade, taken in the

5    matter of Nicole Wade, et al versus L.

6    Lin Wood.

7            Today's deposition is being

8    held on June 16th, 2021, and the time

9    is now 9:22 a.m.

10            Will all counsel please

11    introduce themselves for the record.

12            MR. WOOD:  My name is Lin Wood

13    I am the Defendant and also counsel for

14    both Defendants, myself and my law firm

15    L. Lin Wood, PC.

16            MR. REYES:  This is Ibrahim

17    Reyes, I represent the Defendants.

18            MR. EXUM:  This is John Exum,

19    I am a summer associate at L. Lin Wood,

20    PC.

21            MR. REYES:  We noticed for a

22    deposition the deponent Nicole Wade on

23    May 10th, 2021.  Her counsel asked that

24    the deposition be changed to another

25        place because their office was too

                          5


1         small, so we served an Amended Notice

2         of Deposition on Nicole Wade on June

3         2nd, 2021, two weeks ago.

4              A Motion for Protective Order

5         was filed by the Plaintiffs naturally,

6         which is a Protective Order and not

7         self executing, there was no hearing

8         and no order, so we are here in the and

9         the deponent and her lawyers are not

10        here.

11             It is 9:24 a.m.  The

12        deposition was noticed for 9 a.m.

13             MR. WOOD:  So this is Mr.

14        Wood.

15             The importance of this

16        deposition was well known to Nicole

17        Wade and her lawyer Andy Beal of

18        Buckley Beal in Atlanta, Georgia,

19        because they were aware that the

20        allegations, unproven allegations in

21        this lawsuit filed against me and my

22        professional corporation, were being

23        relied upon by the State Bar of Georgia

24        Grievance Committee to bring an action

25   against me seeking to discipline me

6

1    even up to the penalty of disbarment.

2    The State Bar of Georgia agreed that

3    they would not consider my case until

4    July, and the State Bar of Georgia

5    wanted the benefit of reading the

6    deposition testimony of Nicole J Wade,

7    Jonathan D. Grunberg and G. Taylor

8    Wilson to evaluate the lawsuit that

9    they filed against me.

10        We contend that the lawsuit

11    filed against me in a civil case has no

12    relevance and cannot as a matter of law

13    be used by the State Bar of Georgia

14    because their unproven accusations.

15    Nonetheless, it would have been

16    critically important to my defense with

17    the State Bar, to have these

18    depositions taken of record and

19    provided to the State Bar by the end of

20    June.  Now because Ms. Wade has chosen

21    not to show up, we are going to have to

22    ask the State Bar to extend the time so

23    that we can get these depositions taken

24    and the testimony represented to the

25      State Bar, which I believe will show

7

1       that these accusations against me are

2       unfounded, they are frivolous, they

3       were filed for an attempt to do nothing

4       more than to smear me, and to extort

5       from me monies that the Plaintiffs,

6       Nicole J. Wade, Jonathan D. Grunberg,

7       and G. Taylor Wilson are not entitled

8       to recover.

9           So I expected clearly the

10      testimony in the case from Nicole Wade

11      to show, that Nicole Wade has known me

12      since 2006 when I joined the law firm

13      of Powell, Goldstein and became lead

14      counsel in a case filed by certain

15      individuals against SunTrust Bank.

16      SunTrust Bank asked me to be the lead

17      counsel in the case, Nicole had been

18      working on it for a number of years and

19      she worked under me, and we had a very

20      successful result for SunTrust Bank.

21          I used Nicole during the time

22      period I was a lawyer at Powell,

23      Goldstein, which lawyer became Bryan,

24      Cave, I used her in a number of case to

25    help me.  She is a smart lawyer, too

8

1     smart to have filed this frivolous

2     lawsuit, that is why I wanted to ask

3     her about it today.

4            Around 2011, I left Bryan,

5     Cave to start my own firm again to

6     handle a whistleblower case against

7     Divata, a case that four years later

8     resolved for the largest amount of

9     money ever paid in a non-intervened

10    false claims act case, $495,000,000.00.

11           I also in my new firm had

12    handled a case against Halifax, another

13    whistleblower case that had resolved in

14    2014 for $92,000,000.00, the largest

15    start case ever resolved in the United

16    States.

17           Nicole, and I would have asked

18    her about this today, had a very

19    checkered history at Powell, Goldstein

20    and Bryan, Cave.  I am not going to go

21    into that for purposes of the record

22    other than to say, that we had sought

23    the personnel file of Ms. Wade and she

24    objected to its production.  We will

25   continue to insist that it be produced.

9

1         Nicole for reasons I think

2    would have been evident today from the

3    testimony, had to leave Bryan, Cave in

4    2015.  She started her own law firm,

5    Wade Law, LLC, and came and talked to

6    me about it, and I recognized having

7    started my own law firm back in 1983

8    and restarted my firm again in 2011,

9    that it was very difficult and

10   expensive to start a law firm, even a

11   small firm.  So I offered to Nicole an

12   opportunity to come to my office and to

13   share space with me so that she would

14   have no cost initially for lease, she

15   would have no cost for a receptionist,

16   an administrative assistant, I tried to

17   help her.  She was never a partner in

18   my law firm, L. Lin Wood, PC.

19         I am not going to go into the

20   background of Jonathan Grunberg and G.

21   Taylor Wilson, but we will do that

22   tomorrow and Friday if they show up for

23   the depositions.

24         When their came a time that I

25        had recovered a significant fee for a

10

1        client and I had used Nicole to help me

2        on a case by case basis in her law

3        firm, as I did with Jonathan and

4        Taylor, they had their own law firms,

5        Grunberg & Wilson, LLC, I believe

6        Taylor has G. Taylor Wilson, PC and

7        Jonathan Grunberg has Jonathan D.

8        Grunberg, PC, they were never members

9        or partners of my law firm.  They did

10        share space with me.  I did ask them to

11        help me on a case by case basis and we

12        would always reach an agreement on how

13        they would be compensated.

14              I had a case settle, a case

15        for ███████████ against CNN and

16        these three lawyers had done some work

17        on it, not much, and then they did not

18        made an agreement with me about how to

19        be compensated.  The long story short,

20        is there was a dispute about what they

21        should receive.  They wanted to receive

22        upwards of $900,000.00, and when that

23        issue came up, they started telling

24        people that I needed mental healthcare

25   treatment.  My children have been

11

1     saying things similar to that because I

2     had apparently talked too much about my

3     faith in God, and I think it scared my

4     kids because I felt secure about my

5     life.  So then I had these lawyers

6     trying to threaten me that they were

7     going to make public their accusations

8     about my mental health at a time when I

9     was scheduled to meet with President

10    Trump to discuss whether the President

11    would award to Richard Jewell the

12    Presidential Metal of Freedom.  I also

13    was in the middle of cases against

14    every major member of the media,

15    including CNN and the Washington Post,

16    ABC, NBC, CBS, Gannett, Rolling Stone

17    for █████████████, and I told these

18    lawyers they needed to stop the

19    foolishness about my mental health

20    because it would harm Richard Jewell

21    potentially, or it would harm Nicholas

22    Sandmann, and there was no basis in

23    fact for such accusations.  It was an

24    extortion played by these lawyers.

25        When I finally made the mistake of

12

1        making a deal with them, all of a

2        sudden my mental health was fine.  They

3        signed a settlement agreement stating

4        that on information and belief, that I

5        was mentally competent in all aspects

6        and had been for the many months before

7        then.  It was extortion.

8                I had a law firm draw up a fee

9        sharing agreement, Alston & Bird.

10       Well, they missed the fact that the law

11       in Georgia requires client consent.

12       They didn't tell me about that until

13       almost two months after I had entered

14       into the agreement with Wade, Grunberg

15       & Wilson.  And so when it came time for

16       the case to be settled, the client had

17       to consent to what they were going to

18       be paid.  I recommended to the client

19       through his local counsel, that they

20       agree to the deal that I had presented

21       even though I knew it was extortion.  I

22       just wanted to be rid of these people.

23       The client insisted that before he

24       could make a decision, he wanted to see

25      their time records to make sure that

13

1       the fee was reasonable in relationship

2       to the services rendered.  That is the

3       law in Kentucky, that is the law in

4       Georgia.  Instead of presenting him

5       with the timesheets as required by the

6       Professional Canons of Ethics because

7       they are the client's records, Wade and

8       Grunberg and Wilson refused to produce

9       them, I believe, and I would have asked

10      Nicole today about why she didn't

11      produce them.  And I think the answer

12      would have been because either they

13      didn't keep them as they were required

14      to do or that they showed that their

15      time in the case was minimal.

16      Nonetheless, instead of providing the

17      client with the records, these people

18      turned around and sued me for breach of

19      contract.  A contract that I admit I

20      should not have entered into, but that

21      I did enter into in good faith and that

22      I adhered to, to the letter, and was

23      trying to make sure that the Bar rule

24      requiring client consent was followed.

25        So instead of giving the client the

14

1         records as he requested, a violation of

2         the Bar rule, they sued me for breach

3         of contract, even though I had lived up

4         to the agreement, had lived up to the

5         Bar rules and they had not.

6              And then I was informed by

7         them that not only were they going to

8         sue me for breach of contract, they

9         were going to sue me for fraud in the

10        inducement claiming that I never

11        intended to pay them.  That was made up

12        by the whole cloth.  They presented me

13        with a draft of their lawsuit, which in

14        the fraud portion of the case went into

15        detail about issues that arose out of

16        their interference with my children's

17        relationship with me, where they were

18        actively taking steps and doing things

19        that in essence had my children not

20        honoring their father.  That is a

21        violation of one of God's commandments.

22        I know at one point in time, I told

23        them, I said you are not messing with

24        Lin Wood, you are messing with Almighty

25    God.  It's his commandment, not mine.

                            15


1     They put that stuff in the fraud

2     complaint among other things that were

3     scandalous, irrelevant, immaterial, to

4     even a fraud claim.  They did that to

5     smear me and to try to get me to pay

6     them this money.  I didn't do it.  I

7     told them to file it.

8              They filed it and since the

9     time they filed it, that Complaint has

10     been utilized across the nation by

11     people who are enemies to President

12     Trump, that are enemies of mine.  I

13     don't have a lot of friends in the

14     media, check my record.  I wanted to

15     ask Nicole about that today.  They

16     claim that I assaulted Jonathan

17     Grunberg.  The Bar of Georgia is

18     saying, well, you -- they say you

19     assaulted Jonathan Grunberg.  I wanted

20     to ask her what she knew about that,

21     because I know exactly what happened in

22     October of 2019, in California at the

23     Beverly Hilton Hotel.

24              When Jonathan was with me in

25        depositions in a against Elon Musk, and

16

1         we finished the day's depositions, I

2         went back to the hotel, I went to look

3         for my briefcase which had everything

4         in it I needed and I couldn't find it.

5         And in a panic I had basically gone to

6         every possible place in the hotel I

7         could have been looking for it,

8         checking with the front desk repeatedly

9         and calling Jonathan Grunberg to find

10        out if he had it.  He didn't answer the

11        call, didn't return my messages.  I

12        probably left him 10 messages over the

13        course of an hour.  Someone then told

14        me they thought they had seen him

15        downstairs.  I went downstairs and he

16        was sitting in a restaurant with a full

17        meal next to a beautiful fountain of

18        water with his phone turned out.  Now,

19        any lawyer that knows when you take a

20        young lawyer with you out of town on

21        deposition, you leave your phone on

22        because you don't know when the boss is

23        going to call, especially when you know

24        the next morning early you have got

25    depositions, and you should that the

17

1    boss' briefcase is in your room locked

2    up.  So when I found him, I had some

3    choice words to say to him.  Told him

4    to get up off the table, get in the

5    elevator and get my briefcase.  He got

6    on the elevator, he bowed up his chest,

7    stuck it against my chest and I shoved

8    him and I said, you do that again I

9    will whip your ass.  Now, if anybody

10   assaulted anybody, he assaulted me.  He

11   created the problem, but the Bar Exam

12   is accusing me of assault.  Nicole

13   would tell you that she doesn't know

14   what happened that day.  The only

15   people that know what happened that day

16   are Jonathan Grunberg and Lin Wood, and

17   we have a dispute about what occurred.

18   Why in the world with the Bar

19   Association try to discipline me in a

20   disputed accusation that will never be

21   proven, and what would assault have to

22   do with fraud?  Nothing.  What would my

23   conversations about my faith in God and

24   my children have to do with fraud?

25      Nothing.  They claim I never intended

18

1       to pay them.  They don't tell the truth

2       to people.  I wanted to make Nicole

3       confront the truth, that after the

4       agreement was entered into and we found

5       out the payment would be delayed due to

6       Covid, I offered these young lawyers a

7       $500,000.00 line of credit to help them

8       sustain themselves until the money

9       under the agreement could be paid.

10       From the time we entered into the

11       agreement, March the 17th, until they

12       learned that they had to give the

13       timesheets and they refused to do so, I

14       referred these lawyers over 40 cases,

15       their lives.  I was trying to help them

16       even though they had tried to extort

17       me.  I wanted to ask Nicole Wade about

18       that today, but you can see from the

19       video camera that Nicole Wade is

20       nowhere to be found.  Because she is

21       running and hiding from the truth, but

22       the truth is going to catch up with her

23       in due time.

24              I have an impeccable Bar

25        record of 43 and a half, 44 years.  I

19

1         have been attacked because I support

2         vocally President Donald Trump.  The

3         lawyers that file claims regarding the

4         fraudulent election of 2020 have all

5         been persecuted by various grievance

6         committees around the state, and that

7         was all planned.  I never violated a

8         Bar rule.  When I found out the Bar

9         rule requiring consent from the client

10        from my lawyers who did not tell me

11        about it at the time, they should have,

12        Alston & Bird, Joy Burby and Chris

13        Marquardt, they malpracticed me.  I did

14        everything to adhere to the Bar rule.

15        This lawsuit filed against me is

16        frivolous.

17             I had the absolute right as

18        the Plaintiff to take the sworn

19        testimony of Nicole Wade to establish

20        the truth.  There is no legal right in

21        Georgia to avoid being deposed simply

22        because you filed a Motion for

23        Protective Order.  You have got to get

24        a ruling from the Court.  The Court

25      didn't rule, which is obligated under

20

1      the law of Georgia to show up and be

2      deposed.  She is not here.

3            I didn't come here prepared to

4      give a speech and there is a lot more

5      that I can say and it would have been

6      revealed by her testimony.  So I have

7      given you just a couple of the

8      highlights on the record so that it's

9      clear, I think, about why I have been

10      subjected to this nonsense and

11      fraudulent accusations themselves about

12      Nicole Wade, Jonathan Grunberg and

13      Taylor Wilson, and they don't have the

14      courage to show up and testify under

15      oath.  He who has nothing to hide,

16      hides nothing.  They got a lot to hide.

17      It would have come out today from

18      Nicole Wade.  She chose not to be here.

19            So we will be back tomorrow,

20      we will ask for these people to show up

21      and have G. Taylor Wilson's deposition

22      taken pursuant to notice.  Maybe he

23      will be someone as a lawyer that would

24      adhere to the law and show up, we will

25    see.  If not, we will make a record.

21

1     There is a lot to know about G. Taylor

2     Wilson.

3          Friday we have the deposition

4     noticed properly of Jonathan D.

5     Grunberg.  Well, maybe Jonathan as a

6     lawyer will show up according to law as

7     he is required to do and he will be

8     deposed.  We got a lot to ask Jonathan

9     Grunberg and we are entitled to know

10    it.

11         Are we not?

12         MR. EXUM:  We are.

13         MR. REYES:  We are.  Yes, sir.

14         MR. WOOD:  You don't use the

15    court system to extort people, you

16    don't use the court system to file

17    irrelevant, out of context, false

18    accusations against another person like

19    they did me.  I will not tolerate it.

20         So that will conclude my on

21    the record comments by simply saying

22    that at the appropriate time, if Taylor

23    Wilson who is trying to get into the

24    Tennessee Bar, he is applying for

25    membership in the Tennessee Bar, the

22

1    State Bar of Tennessee, people are

2    going to let them know about what G.

3    Taylor Wilson did if he doesn't show up

4    for a deposition.  G. Taylor Wilson

5    based on what I learned when they

6    didn't give the client the records and

7    then I learned that over a time period

8    they had been surreptitiously recording

9    me.  Can you imagine somebody doing

10    that to somebody they are doing

11    business with, where they try to make

12    you look bad knowing they are recording

13    it and they don't give you the full

14    context of the recording?  Any lawyer

15    that does that to another lawyer is not

16    fit to practice law, not in the State

17    of Georgia and not in the State of

18    Tennessee.  G. Taylor Wilson's

19    application to the State Bar of

20    Tennessee should be rejected.  He is

21    unfit.  If anybody needs to be

22    investigated by the Georgia Bar, it's

23    Nicole J. Wade, Jonathan D. Grunberg

24    and G. Taylor Wilson.  And Andy Beal,

25      the lawyer that filed this lawsuit, he

23

1       should be disbarred for filing a

2       frivolous lawsuit, and then publicizing

3       it, getting a gag order against me that

4       is on appeal that prohibited me from

5       telling people the truth while the

6       salacious, false accusations were being

7       spread by him and his clients all over

8       the country.  Andy Beal's law firm

9       Buckley Beal represented Ginger White

10       in litigation for legal matters that I

11       had with her on behalf of Herman Kane.

12       They got a political agenda.  There are

13       sanctions available to the Court for

14       lawyers that file frivolous lawsuits.

15       Andy Beal needs to be sanctioned.  The

16       State Bar needs to investigate Andy

17       Beal.  The State Bar of Georgia urges

18       all citizens now, don't have to be a

19       client, don't have to live in Georgia,

20       don't have to have any interaction with

21       the lawyer in Georgia, but the State

22       Bar of Georgia wants to hear from the

23       people.

24            If you think a lawyer is acted

25      inappropriately, for example, Sandy

24

1        Beal, write the State Bar of Georgia.

2        If you think that Nicole Wade, and

3        Jonathan Grunberg, and Taylor Wilson

4        have acted unethically and unlawfully,

5        write the State Bar of Georgia and file

6        a Complaint.  I am not asking you to do

7        it, I am just advising you that the

8        State Bar of Georgia wants you to do

9        it, because we got to weed out these

10       corrupt lawyers, we got to weed out the

11       unethical lawyers, we got to weed out

12       the people that abuse our system of law

13       like these people are abusing it before

14       you're very eyes today.  Where is

15       Nicole Wade?  That chair is empty.

16       Before this is over, she will be in

17       that chair, her day will come, the

18       truth will be revealed, every lie will

19       be revealed.

20            That concludes my comments on

21       the record at this time.

22            Ibrahim, do you have anything

23       to add?

24            MR. REYES:  No, sir.  Thank

25        you.

25

1        MR. WOOD:  All right.  Well,

2        the deposition is now suspended until

3        we can get before the Court after we

4        find out if Grunberg and Wilson are

5        going to do their duties as lawyers and

6        show up for their depositions, if not,

7        we will address this with the Court and

8        we will ask the Court to sanctions

9        these people.

10        Mr. Reyes came here from

11        Florida, I have got a summer associate

12        here, I have got a court reporter here,

13        I have got a videographer here in one

14        of the most beautiful, secure buildings

15        in Atlanta.  They have no excuse.  The

16        Judge ought to strike their Complaint

17        and give me attorneys' fees and

18        expenses, and then trust me, I have got

19        a claim against them for breach of

20        contract.  Because even if they had a

21        fraud claim against me, which they

22        don't, they released all their claims

23        in the agreement, then they breached

24        the agreement by suing me for fraud.

25      Their agreement they entered into with

26

1       me has been repudiated.  It's void.

2           I got that about right,

3       Ibrahim?

4           MR. REYES:  You did.

5           MR. WOOD:  I don't care how

6       long it takes, I don't care how much

7       money I have to spend, I will not let

8       the injustice inflicted upon me and my

9       reputation by Nicole Wade, and Jonathan

10      Grunberg, and G. Taylor Wilson, and

11      Andy Beal of Buckley & Beal, I will not

12      let it stand.

13          That concludes the deposition

14      at this point in time and we will

15      adjourn it until the Court can rule on

16      it and we will be back tomorrow at 9

17      o'clock to see if G. Taylor Wilson who

18      is going to do his duty and follow the

19      law and show up for his testimony.

20          Thank you very much.  Thank

21      you, madam reporter and thank you Mr.

22      Videographer.

23          VIDEO OPERATOR:  The time is

24      9:48.  We are going off record.

25          (Adjourned at 9:48 a.m.)

27

1          C E R T I F I C A T I O N

2

3          I HEREBY CERTIFY that the

4     proceedings and evidence are contained

5     fully and accurately in the

6     stenographic notes taken by me upon the

7     foregoing matter on Wednesday, June 16,

8     2021, and that this is a correct

9     transcript of same.

10

11

12

13

14

15

16          Celeste Perla, RPR, CSR, Merit
17           Reporter and Notary Public
             Registered ID #19508
18           CCR 6331-2589-3832-7040

19

20          (The foregoing certification of
      this transcript does not apply to any
21    reproduction of the same by any means, unless
      under the direct control and/or supervision of
22    the certifying reporter.)

23

24

1                    DISCLOSURE

2   SUPERIOR COURT
    COUNTY OF FULTON
3   DEPONENT:  NICOLE WADE (NO SHOW)

4

5               Pursuant to Article 10.B of the
    Rules and Regulations of the Board of Court
6   Reporting of the Judicial Council of Georgia, I
    make the following disclosure:

7

               I am a Certified Court Reporter.  I
8   am here as an independent contractor to Huseby
    Litigation.

9

               Huseby Litigation was contacted by
10  counsel to provide court reporting services for
    this deposition.  I am not disqualified for a
11  relationship of interest under the provisions of
    O.C.G.A. 9-11-28(c).  Huseby Litigation will not
12  be taking this deposition under any contract that
    is prohibited by the O.C.G.A. 15-14-37(a) and
13  (b).

14              Huseby Litigation has no
    contract/agreement to provide court reporting
15  services with any party to the case, any counsel
    in the case or any reporter or reporting agency
16  from whom a referral might have been made to
    cover this deposition.  Huseby Litigation has
17  charged its usual and customary rates to all
    parties in the case.

18

               This date of Wednesday, June 16,
19  2021.

20

21

    Celeste Perla
22  Certified Court Reporter
    Certificate #19508
23  CCR 6331-2589-3832-7040

24

NICOLE WADE, ET AL. vs L. LIN WOOD, ET AL.
Taylor Wilson on 06/17/2021

```
1              IN THE SUPERIOR COURT OF FULTON COUNTY
                        STATE OF GEORGIA
2

3   NICOLE WADE; JONATHAN        §
    GRUNBERG; TAYLOR WILSON;     § CIVIL ACTION FILE NO.
4   WADE, GRUNBERG & WILSON,     § 2020-CV-339937
    LLC,                         §
5                                §
                                 §
6             Plaintiffs,        §
                                 §
7        vs.                     §
                                 §
8                                §
    L. LIN WOOD and L. LIN       §
9   WOOD, PC,                    §
                                 §
10                               §
              Defendants.        §
11                               §
    ~~~~~~~~~~~~~~~~~~~~~~~~
12

13      VIDEOTAPED CERTIFICATE OF NON-APPEARANCE OF
                     TAYLOR WILSON
14

                        9:18 a.m.
15        Thursday, the 17th day of June 2021

16

             Suite 2300, One Atlantic Center
17            1201 West Peachtree Street, NW
                    Atlanta, Georgia
18

19

20

       Blanche J. Dugas, CRR, RPR, CCR No. B-2290
21

22

23

24

25
```

**NICOLE WADE, ET AL. vs L. LIN WOOD, ET AL.**
**Taylor Wilson on 06/17/2021**                                      **Pages 2..5**

---

Page 2

```
1              APPEARANCES OF COUNSEL
2   On Behalf of the Plaintiffs:
        No appearance
3
    On Behalf of the Defendants:
4       L. LIN WOOD, JR., Esquire
        L. Lin Wood, PC
5       Post Office Box 52584
        Atlanta, Georgia  30355-0584
6       (404) 891-1402
        (404) 506-9111 (facsimile)
7       lwood@linwoodlaw.com
8       IBRAHIM REYES, Esquire
        Reyes Lawyers, PA
9       236 Valencia Avenue
        Coral Gables, Florida  33134
10      (305) 445-0011
        (305) 445-1181 (facsimile)
11      lreyes@reyeslawyers.com
12  Also Present:
        A.J. Gallo, videographer
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 3

```
1   Videotaped Certificate of Non-Appearance of
                    Taylor Wilson
2                 June 17, 2021
3
4        VIDEOGRAPHER:  This will be Tape No. 1
5   to the videotaped deposition of Taylor
6   Wilson taken in the matter of Nicole Wade,
7   et al. versus L. Lin Wood, et al.  Today's
8   deposition is being held on June 17th,
9   2021, and the time is now 9:18 a.m.
10       Will all counsel please introduce
11  themselves for the record.
12       MR. WOOD:  Lin Wood.  I am one of the
13  defendants and I'm also co-counsel for
14  myself and my professional corporation, L.
15  Lin Wood, PC.
16       MR. REYES:  Ibrahim Reyes with Reyes
17  Lawyers, PA on behalf of defendants.  I am
18  here from the state of Florida to attend
19  these depositions.
20       I, Blanche J. Dugas, Certified Court
21  Reporter, do hereby certify that I was
22  present at Suite 2300, 1201 West Peachtree
23  Street, Atlanta, Georgia, on Thursday, the
24  17th day of June 2021, for the purpose of
25  reporting the deposition of TAYLOR WILSON,
```

Page 4

```
1   scheduled to begin at 9:00 a.m., and that
2   the deponent did not appear.
3        MR. WOOD, attorney for the Defendants,
4   made a statement for the record as follows:
5        MR. WOOD:  So the date is June
6   the 17th.  It's 9:19 a.m.  We are here
7   today to take the deposition upon
8   cross-examination of one of the plaintiffs
9   and opposite party, Taylor -- G. Taylor
10  Wilson.
11       Mr. Wilson's deposition was duly
12  noticed and served on May the 10th of this
13  year.  His counsel raised a concern that
14  the place for the deposition, which was
15  initially noticed for plaintiffs' counsel's
16  office, was too small.  So to accommodate
17  that concern, an amended notice of
18  deposition was duly filed and served on
19  June the 2nd, and we're here today at One
20  Atlantic Center on the 23rd floor, a very
21  secure building in Midtown Atlanta,
22  pursuant to the notices of depositions
23  served upon Mr. Wilson.
24       On Friday night, we've learned -- we
25  learned at around 8:30 p.m. there was a
```

Page 5

```
1   motion for protective order filed with the
2   Court.  We did not know about that motion
3   until Monday because the motion was filed
4   at 8:30 p.m. and the Court's filing system
5   serves the lawyers.  So clearly plaintiffs'
6   counsel, Mr. Wilson's counsel, knew that by
7   filing at 8:30 p.m., that we would not
8   learn about it until Monday, with the first
9   deposition being noticed of Nicole Wade
10  yesterday, on Wednesday.
11       There was no effort to contact any
12  counsel for the defendants to advise us
13  that they were going to file the motion or
14  contest the taking of the deposition.  So
15  having filed that, and we learned about it
16  on Monday, we wrote the Court and put our
17  position concerning the frivolity of the
18  motion before the Court.  The Court did not
19  set an emergency hearing and took no action
20  whatsoever.
21       Georgia law is clear, can be found in
22  the case of Rice versus Cannon, 283 Georgia
23  Appeals 438, a 2007 decision, that merely
24  filing a motion for protective order does
25  not relieve the plaintiffs from the duty to
```

**NICOLE WADE, ET AL. vs L. LIN WOOD, ET AL.**
Taylor Wilson on 06/17/2021                                          Pages 6..9

Page 6

1  appear at the plaintiffs' deposition.  The
2  Court went on to say even if the plaintiffs
3  could have prevailed on motions to compel
4  more complete responses to their discovery
5  efforts, this did not excuse the plaintiffs
6  from their duty to attend the plaintiffs'
7  depositions, and in that case, the Court of
8  Appeals affirmed that the motion for
9  protective order itself provided no legal
10 basis to relieve the plaintiffs from the
11 duty to appear at their depositions.  In
12 that case, Rice versus Cannon, the trial
13 court struck the plaintiffs' complaint for
14 failure to show for the deposition.
15      Now, Mr. Wilson has made a conscious
16 and intentional decision not to appear
17 today.  We intend to file with the Court at
18 the appropriate time after we confirm
19 tomorrow whether Jonathan Grunberg is going
20 to also fail to show up, a motion for
21 sanctions, which will include not only a
22 request for attorneys' fees and expenses --
23 Mr. Reyes has traveled here from Florida,
24 lost a lot of time from his other cases --
25 but we intend to ask for attorneys' fees

Page 7

1  and expenses, and also for the Court to
2  sanction the plaintiffs by striking their
3  complaint.
4       This lawsuit was filed under very
5  suspicious circumstances.  While there was
6  a bona fide disagreement on the question of
7  client consent to a shared fee, when that
8  issue arose, the plaintiffs, instead of
9  trying to discuss it, drafted and proposed
10 to file a complaint against me and L. Lin
11 Wood, PC.  The complaint is literally 70 --
12 77 or 78 pages -- 79 pages where they
13 allege any number of salacious, false,
14 out-of-context, immaterial, irrelevant
15 allegations that were clearly designed not
16 to address a breach of contract, but were
17 designed to smear me in the public's mind.
18 I wanted to ask Mr. Wilson why they
19 included those accusations in their
20 complaint since they have nothing to do
21 with breach of contract.
22      They did threaten to file the
23 complaint also on fraud in the inducement
24 claim claiming that somehow they had been
25 fraudulently induced into signing the

Page 8

1  settlement agreement I believe of March
2  the 17th of 2020.  Yet the accusations that
3  are contained -- the allegations contained
4  in this 78 or '9-page complaint do not
5  address any issue regarding fraud in the
6  inducement under Georgia law.  I wanted to
7  ask Mr. Wilson today if he understood what
8  fraud in the inducement meant under Georgia
9  law.
10      There are allegations in the
11 complaint, for example, that I committed an
12 assault and battery on Jonathan Grunberg in
13 October of 2019.  I dispute that
14 accusation.
15      There are also accusations that I
16 committed an assault when Mr. Taylor,
17 unannounced, came into my home, and I
18 pushed his chest and said, "What are you
19 doing here?"  I had no idea he was coming.
20 He just burst in the front door.  That, I
21 believe, was in February of 2020.
22      What do those, I contend, false
23 accusations have to do with fraud?  They
24 certainly have nothing to do with breach of
25 contract.  They were included just to smear

Page 9

1  me.  I wanted to ask Mr. Wilson today under
2  cross-examination about those incidents.  I
3  wanted to talk to him about who is
4  financing his lawsuit; find out whether or
5  not someone is paying them to pursue this
6  case against me.  I'm entitled to know how
7  much they've paid.  I'm entitled to know
8  how much they are owed -- or owe to their
9  lawyers.  I'm entitled to know whether any
10 third party has made any types of payments
11 to their lawyers on their behalf or to
12 them.  Those are relevant questions allowed
13 by law.  Mr. Wilson should have been here
14 today to answer those questions.
15      I also wanted to ask him about whether
16 he's had any conversations himself or
17 through counsel with Chris Steinmetz or
18 anyone connected with the State Bar of
19 Georgia, in particular the State Bar of
20 Georgia grievance committee.
21      The grievance committee of the State
22 Bar brought a charge against me alleging
23 that I had somehow breached my professional
24 obligations by filing a couple of lawsuits
25 in Georgia regarding the election of

**NICOLE WADE, ET AL. vs L. LIN WOOD, ET AL.**
**Taylor Wilson on 06/17/2021**                    Pages 10..13

1  November 2020 and the senate runoff of
2  January of 2021.  In one of the cases, I
3  was the plaintiff.  I had another law firm
4  that prepared and filed it.  Interestingly
5  that law firm did not get disciplined or
6  any grievance filed.
7      Those lawsuits were affirmed as being
8  legally correct by Justice Clarence Thomas
9  when he dissented to the failure of the
10  Court to grant certiorari review, the
11  Supreme Court, on a number of election
12  cases, including the case I filed in
13  Georgia.
14      There were other cases where I signed
15  on as co-counsel with Sidney Powell at her
16  request in case she needed a trial lawyer.
17  I had no active participation in the
18  drafting of the other lawsuits.  I did make
19  one brief appearance before Judge Timothy
20  Batten at her request where he agreed with
21  what my argument was.
22      So I've got the State Bar of Georgia
23  coming after me for filing legitimate
24  lawsuits.  They were dismissed on issues
25  relating to standing, but there was never

1  any finding that the lawsuits were
2  frivolous.  There were no efforts to file
3  motions for any type of sanctions under
4  Rule 11.  So all of a sudden, that falls by
5  the wayside, and the Bar is also trying to
6  improperly regulate my free speech on my
7  spare time when I comment on social media.
8      And then they're relying on this
9  lawsuit.  In fact, it appears that the
10  State Bar of Georgia's grievance against me
11  now is based on the unproven, disputed
12  accusations in Mr. Wilson's lawsuit.  Now,
13  that's nonsensical to me as a lawyer of
14  44 years.
15      Why would the State Bar of Georgia try
16  to persecute me over disputed allegations
17  in a civil dispute?  My goodness, if they
18  did that to every lawyer in the state of
19  Georgia and started looking into their
20  divorce complaints and the other types of
21  actions filed against them, the State Bar
22  of Georgia would find itself sitting as the
23  judge and jury and executioner over
24  people's civil disputes.  It's nonsensical.
25      I'd like to know what Mr. Taylor

1  Wilson knows about the Bar's efforts.  For
2  example, I'd like to know did the Bar, in
3  relying on his complaint, ever sit down and
4  interview him?  Who did the interview?  How
5  long did it take?  What was said?  Were
6  there efforts to interview Nicole Wade?
7  Were there efforts to interview Jonathan
8  Grunberg, or did the State Bar just rely on
9  the unproven, disputed accusations in the
10  complaint that was filed?
11      I'm curious to know that because I
12  wanted to ask Mr. Wilson whether or not he
13  was aware of a February 10th text message
14  that his now partner, Nicole Wade, sent to
15  me where she acknowledged that she knew
16  that I was extremely upset over some
17  problems with my children, and that she
18  affirmed that I was mentally well, told me
19  that no matter what happened, that she
20  would always love me, and if I needed her,
21  she'd always be there to help me just like
22  I was always there to help Nicole and
23  Jonathan and Mr. Wilson.
24      I wanted to go into that with
25  Mr. Wilson.  How he came to work for my

1  firm and what I did for him, and how well
2  he did under my supervision and how well he
3  was compensated, but he's not here to
4  answer those questions.  I don't understand
5  why not.  You file a lawsuit, you ought to
6  be willing to come in and discuss it.  The
7  law says you have an absolute duty to do
8  so.
9      One of the most important things I
10  wanted to talk to Mr. Wilson about was the
11  settlement agreement that the parties
12  reached regarding fee sharing.  I wanted to
13  talk to Mr. Wilson about his knowledge or
14  his lawyer's information to him regarding
15  Rule 1.5 of the State Bar of Georgia where
16  you're required to get client consent
17  before you can share a fee with an outside
18  law firm.
19      I wanted to ask him about his outside
20  law firm.  I know that he has G. Taylor
21  Wilson, PC.  I wanted to talk to him about
22  when that was formed, why.  I know that he
23  also is a member of Grunberg & Wilson, PC.
24  I wanted to talk to him about why that was
25  formed, when.  I know it was formed a

**NICOLE WADE, ET AL. vs L. LIN WOOD, ET AL.**
Taylor Wilson on 06/17/2021                    Pages 14..17

**Page 14**

1  couple of years ago because I always shared
2  a fee with him.  I paid his PC, Grunberg &
3  Wilson, PC.  I wanted to talk to him about
4  when they formed Wade, Grunberg & Wilson,
5  LLC.  It looks like they formed it in 2018.
6  I didn't know anything about it.
7      I wanted to ask him a lot of questions
8  about his professional corporations and his
9  knowledge of the other lawyers who have
10  sued me, their professional corporations.
11  I wanted to talk to him about the fact that
12  he's never had any type of a partnership
13  agreement with L. Lin Wood, PC in writing.
14  He's never been privy to nor would he have
15  been allowed to see any profit and loss
16  statements of L. Lin Wood, PC.
17      There are a lot of allegations that
18  he's making in his complaint that don't
19  make sense, they are not factually
20  supported, and many of them are just plain
21  false.  I wanted to ask him about those
22  today, and I'm entitled to do it.
23      I wanted to ask him about this part of
24  the settlement agreement where he say s
25  very clearly, and I think the State Bar of

**Page 15**

1  Georgia needs to understand this, "The
2  parties further agree that upon information
3  and belief, each party to this agreement is
4  mentally and physically competent in all
5  respects."  I was a party to that
6  agreement.  That agreement is dated March
7  the 17th of 2020.
8      Now, the State Bar of Georgia made a
9  request -- I think they've withdrawn it
10  now -- to have me undergo a mental health
11  exam; wouldn't tell me why they wanted to
12  do it, the basis for it.  They wouldn't
13  even tell me what it was, and we filed a
14  lawsuit about that that's now on appeal.
15      But if the State Bar of Georgia is
16  relying on the Wade, Grunberg & Wilson
17  complaint against me, then Taylor Wilson
18  and Nicole Wade and Jonathan Grunberg will
19  be the first to testify that I was mentally
20  competent in all respects.  What's going on
21  here?
22      Nicole Wade, back in February, in her
23  text message, said the same thing.  Nicole
24  Wade, if she had testified yesterday, would
25  have told you that I was probably the best

**Page 16**

1  lawyer she's ever worked with and seen in
2  action.  I suspect ol' young Taylor Wilson
3  would say the same thing, but he didn't
4  want to show up and admit the truth today.
5      I wanted to find out what potential
6  involvement there may be in this lawsuit
7  with Black Lives Matter, BLM, because
8  Jonathan Grunberg is a public supporter of
9  BLM.  I support Donald Trump.  I know that
10  Jonathan Grunberg's political position is
11  such that I think it would be fair to
12  say -- and we could ask him tomorrow if he
13  shows up -- he has a very deep and
14  longstanding dislike for President Trump
15  politically.
16      Jonathan used to correct me when we'd
17  kid him and say he was a -- from Chile.  He
18  said, "No, I'm from Chile," and then he'd
19  say, "I'm a Chilean Jew."
20      Jonathan is Jewish.  I've known that
21  since he started working for me.  I knew
22  that when he fell off of a rock-climbing
23  wall 40 feet and crushed his feet and for
24  one year couldn't come to work, and I paid
25  him every dime under the agreement.  I

**Page 17**

1  never let that boy go a day without getting
2  paid; even gave him a $200,000 bonus in a
3  case he didn't work on to pay off his
4  student loans.  I tried to help Jonathan
5  Grunberg.  I tried to help Mr. Wilson too.
6  We were going to talk about that today at
7  length.
8      And then, all of a sudden, when we'd
9  kid Jonathan in the office -- Taylor was
10  present -- we'd say, "Well, Jonathan,
11  you're just a Chilean Jew."  He'd laugh.
12  We'd all laugh.  Now they filed a lawsuit
13  and tried to tell me that I'm an
14  anti-Semite.  These people have no shame.
15  Their greed and their desire for whatever
16  reasons to try to destroy my reputation is
17  hard to describe how someone could do that
18  type of -- those types of things to
19  somebody that has been so good to them.
20      But I wanted to talk to Mr. Wilson
21  about that today.  I wanted to talk to
22  Mr. Wilson about his involvement with my
23  son, Matt Wood, my daughter, Chandler Wood,
24  and to whether he talked to my other
25  children.  Because I told these gentlemen,

**NICOLE WADE, ET AL. vs L. LIN WOOD, ET AL.**
Taylor Wilson on 06/17/2021                    Pages 18..21

Page 18

1   including Mr. Wilson, that they were
2   interfering with my children's relationship
3   with their father and contributing to my
4   children violating one of God's Ten
5   Commandments to honor thy father.  When
6   Mr. Wilson did that repeatedly, you'll see
7   from some of the things I said to him that
8   had been taken out of context that I was
9   hot-blooded.  You don't mess with me and my
10  children.  Mr. Wilson did.  I wanted to ask
11  him about that today in detail, but he's
12  not here.
13       Now, the State Bar of Georgia wanted
14  to see these depositions before the end of
15  June to consider them in their July meeting
16  as to what to do with their frivolous
17  grievance complaint filed against me.  I
18  don't know whether there's a strategy here
19  to avoid being deposed so that the Bar will
20  not see the truth.  Seems to me now the Bar
21  has to, in fairness, delay its report until
22  I can get these depositions, if I ever do,
23  because I believe the judge ought to strike
24  this lawsuit.  So we'll see what the Court
25  does.

Page 19

1        In any event, there's more going on
2   here than meets the eye, and I think that
3   not only do I have an absolute right as a
4   litigant to know the full truth on all
5   relevant issues, but since this lawsuit has
6   been made so public and used against me
7   around the nation, I think the public has a
8   right to know because apparently these
9   lawyers tried to convict me as guilty in
10  the court of public opinion based on their
11  accusations, disputed and unproven.  They
12  apparently didn't learn anything from
13  working with me over the years, in terms of
14  defamation law.
15       At any rate, I know that they sued me
16  for a claim that was released.  If there
17  was a fraud claim -- which there's not --
18  it was released.  They breached the
19  contract by doing so.  The settlement
20  agreement that we've entered into is now
21  void.  It's been rescinded.  For that and
22  other reasons, it's been repudiated.
23       So Mr. Wilson, I wanted to let him
24  know, in terms of the questioning today,
25  how he's going to deal with the fact that

Page 20

1   his lawsuit has no merit whatsoever, and
2   how is the State Bar of Georgia going to
3   rely on any part of it when it's not even
4   going to be upheld if I can ever get a
5   Court -- the Court of Appeals to rule
6   fairly on the matter.
7        So I'm a little frustrated.  You get
8   sued for this money -- and it was really
9   interesting, by the way, to make the
10  record, I wanted to ask Mr. Taylor why they
11  told me instead of paying them some
12  $600,000, that they wanted to now have me
13  pay them $1.5 million, and if I didn't,
14  they were going to file this lawsuit they
15  sent to me to try to smear my name.  They
16  were trying to extort me.  Almost blackmail
17  me.  $1.5 million?  How did the value of
18  the case go up three times?  I told them to
19  file it.  They did.
20       The law does not sanction lawyers'
21  engaging in such conduct to try to extort
22  money from another party based on threats
23  of filing frivolous and smears in a
24  lawsuit.  It shouldn't be tolerated.
25       The State Bar of Georgia does need to

Page 21

1   know what's happened in this litigation
2   because the State Bar of Georgia, I know,
3   has a number of grievance complaints filed,
4   including one that I filed because they
5   failed to give the client his time records
6   that he was entitled to see, and then when
7   they refused to give them to him, then they
8   claim that I breached the contract.  I was
9   following the Bar rule.  They broke -- they
10  breached it, didn't show up for a
11  deposition, possible extortion.
12       I think the State Bar of Georgia needs
13  to know what's going on in this litigation,
14  not to prosecute me or discipline me.  I
15  think that should be dismissed, should have
16  never been brought.  I think they need to
17  discipline G. Taylor Wilson, Nicole Wade
18  and Jonathan Grunberg because this type of
19  conduct is well beneath the professional
20  standards of a lawyer or a party litigant.
21  Shouldn't be tolerated in our society or in
22  our legal system.
23       Well, I've gone on a little bit longer
24  than I meant to, Ibrahim, but there's so
25  many questions that I have for Mr. Wilson,

NICOLE WADE, ET AL. vs L. LIN WOOD, ET AL.
Taylor Wilson on 06/17/2021                                Pages 22..25

Page 22

1  just like we had for Nicole Wade, just like
2  we have for Jonathan Grunberg, that it's
3  frustrating to be falsely accused and then
4  to have the accusers run and hide and
5  violate the law and not show up to be
6  confronted with the truth and
7  cross-examined to show that their lawsuit
8  was frivolous and that they are, in fact,
9  the ones liable to me for money damages.  I
10 don't owe them a dime.
11     Do you want to add anything in,
12 Ibrahim?
13     MR. REYES:  Very little.  I am
14 disillusioned and appalled by what these
15 lawyers have done, including their counsel,
16 Andy Beal.  This is not the way that law is
17 practiced.  These plaintiffs sued Mr. Wood,
18 and today and yesterday and tomorrow is the
19 opportunity that we have to depose these
20 witnesses.  They are plaintiffs in a case
21 and they have chosen not to testify.
22     It is frustrating, and we will raise
23 it with the Court.  This case must be
24 dismissed with prejudice.  Thank you.
25     MR. WOOD:  Well, I guess that will

Page 24

1  (Deposition suspended at 9:44 a.m.)

Page 23

1  conclude, to the extent we're not ending
2  the deposition, but we are concluding this
3  portion of it because we would obviously
4  suspend it at this point depending on the
5  Court's ruling.  The Court, we believe,
6  will either dismiss their complaint or,
7  after they pay us significant attorneys'
8  fees and expenses, he may require them to
9  complete the deposition, which they should
10 do.
11     So at this point in time, the
12 deposition is suspended subject to further
13 ruling by Court.  Thank you very much.
14     Thank you, Madam Reporter.  It's good
15 to see you again.  And thank you,
16 Mr. Videographer.  Good to see you again.
17 We'll see y'all again tomorrow to see if
18 Jonathan Grunberg wants to obey the law or
19 whether he wants to violate the law and not
20 show up himself.
21     MR. REYES:  And we'll get a
22 certificate of non-appearance, and thank
23 you.
24     VIDEOGRAPHER:  The time is 9:44.
25 We're going off the record.

Page 25

1                 DISCLOSURE
2
3     Pursuant to Article 10.B of the Rules
   and Regulations of the Board of Court
   Reporting of the Judicial Council of
4  Georgia which states:  "Each court reporter
   shall tender a disclosure form at the time
5  of the taking of the deposition stating the
   arrangements made for the reporting
6  services of the certified court reporter,
   by the certified court reporter, the court
7  reporter's employer or the referral source
   for the deposition, with any party to the
8  litigation, counsel to the parties, or
   other entity.  Such form shall be attached
9  to the deposition transcript," I make the
   following disclosure:
10
      I am a Georgia Certified Court
11 Reporter.  I am here as a representative of
   Huseby Global Litigation.  Huseby Global
12 Litigation was contacted to provide court
   reporting services for the deposition.
13 Huseby Global Litigation will not be taking
   this deposition under any contract that is
14 prohibited by O.C.G.A. 9-11-28(c).
15    Huseby Global Litigation has no
   contract/agreement to provide reporting
16 services with any party to the case, any
   counsel in the case, or any reporter or
17 reporting agency from whom a referral might
   have been made to cover this deposition.
18
      Huseby Global Litigation will charge
19 its usual and customary rates to all
   parties in the case, and a financial
20 discount will not be given to any party to
   this litigation.
21
22
23                    Blanche J. Dugas
24                    CCR No. B-2290
25

**NICOLE WADE, ET AL. vs L. LIN WOOD, ET AL.**
Taylor Wilson on 06/17/2021                                    **Page 26**

Page 26

```
 1   STATE OF GEORGIA:

 2   COUNTY OF FULTON:

 3

 4        I hereby certify that the foregoing

 5   transcript was reported, as stated in the

 6   caption, and the questions and answers

 7   thereto were reduced to typewriting under

 8   my direction; that the foregoing pages

 9   represent a true, complete, and correct

10   transcript of the evidence given upon said

11   hearing, and I further certify that I am

12   not of kin or counsel to the parties in the

13   case; am not in the employ of counsel for

14   any of said parties; nor am I in any way

15   interested in the result of said case.

16

17

18

19

20        BLANCHE J. DUGAS, CCR-B-2290

21

22

23

24

25
```

**NICOLE WADE, ET AL. vs L. LIN WOOD, ET AL.**

**working**
  16:21
  19:13

**writing**
  14:13

**wrote**  5:16

---

**Y**

---

**y'all**  23:17

**year**  4:13
  16:24

**years**  11:14
  14:1  19:13

**yesterday**
  5:10  15:24
  22:18

**young**  16:2

NICOLE WADE vs L. LIN WOOD, ET AL.
Jonathan Grunberg on 06/18/2021

```
 1            IN THE SUPERIOR COURT OF FULTON COUNTY
                        STATE OF GEORGIA
 2

 3   NICOLE WADE; JONATHAN      §
     GRUNBERG; TAYLOR WILSON;   § CIVIL ACTION FILE NO.
 4   WADE, GRUNBERG & WILSON,   § 2020-CV-339937
     LLC,                       §
 5                              §
                                §
 6           Plaintiffs,        §
                                §
 7      vs.                     §
                                §
 8                              §
                                §
 9   L. LIN WOOD and L. LIN     §
     WOOD, PC,                  §
10                              §
                                §
11           Defendants.        §
                                §
12   ~~~~~~~~~~~~~~~~~~~~~~~~~

13      VIDEOTAPED CERTIFICATE OF NON-APPEARANCE OF
                    JONATHAN GRUNBERG
14

15                     9:18 a.m.
            Friday, the 18th day of June 2021
16

17         Suite 2300, One Atlantic Center
            1201 West Peachtree Street, NW
18                  Atlanta, Georgia

19

20

21      Blanche J. Dugas, CRR, RPR, CCR No. B-2290

22

23

24

25
```

**NICOLE WADE vs L. LIN WOOD, ET AL.**
**Jonathan Grunberg on 06/18/2021**                                    **Pages 2..5**

---

**Page 2**

                    APPEARANCES OF COUNSEL
1
2  On Behalf of the Plaintiffs:
       (No Appearance)
3
4  On Behalf of the Defendants:
       L. LIN WOOD, JR., Esquire
5      L. Lin Wood, PC
       Post Office Box 52584
6      Atlanta, Georgia  30355-0584
       (404) 891-1402
7      (404) 506-9111 (facsimile)
       lwood@linwoodlaw.com
8
       IBRAHIM REYES, Esquire
9      Reyes Lawyers, PA
       236 Valencia Avenue
10     Coral Gables, Florida  33134
       (305) 445-0011
11     (305) 445-1181 (facsimile)
       lreyes@reyeslawyers.com
12
13  Also Present:
       A.J. Gallo, videographer
14     John Exum
15
16
17
18
19
20
21
22
23
24
25

---

**Page 3**

1  Videotaped Certificate of Non-Appearance of
             Jonathan Grunberg
2              June 18, 2021
3      I, Blanche J. Dugas, Certified Court
4  Reporter, do hereby certify that I was
5  present at Suite 2300, 1201 West Peachtree
6  Street, NW, Atlanta, Georgia, on Friday,
7  the 18th day of June 2021, for the purpose
8  of reporting the deposition of JONATHAN
9  GRUNBERG, scheduled to begin at 9:00 a.m.,
10  and that the deponent did not appear.
11      VIDEOGRAPHER:  This will be Tape No. 1
12  to the videotaped deposition of Jonathan
13  Grunberg taken in the matter of Nicole
14  Wade, et al. versus L. Lin Wood, et al.
15  Today's deposition is being held on
16  June 18, 2021, and the time is now
17  9:18 a.m.
18      Will all counsel please introduce
19  themselves for the record.
20      MR. WOOD:  My name is Lin Wood.  I am
21  co-counsel for the defendants, that
22  includes myself as a defendant, and my
23  professional corporation, L. Lin Wood, PC,
24  which was formed in -- good gracious --
25  September of 1997.

---

**Page 4**

1      MR. REYES:  Good morning.  My name is
2  Ibrahim Reyes with Reyes Lawyers.  I am
3  co-counsel for the defendants.
4      MR. EXUM:  Good morning.  My name is
5  John Exum.  I am a summer associate at L.
6  Lin Wood, PC.
7      MR. WOOD:  Let the record reflect that
8  counsel for defendants are present here
9  today at the location identified in a
10  notice of deposition filed in this case for
11  the deposition of Jonathan D. Grunberg, a
12  plaintiff.  The original deposition notice
13  was filed and duly served on May the 10th.
14      The lawyer for plaintiffs, including
15  the lawyer for Mr. Grunberg, Andy Beal of
16  Buckley Beal in Atlanta, Georgia, raised a
17  concern about the fact that his office,
18  which was the location of the original
19  deposition notice, was too small.  So to
20  accommodate his concern, we arranged to
21  have the deposition taken here at One
22  Atlantic Center, one of the premier office
23  buildings in Atlanta, an office building
24  where Nicole Wade worked for probably
25  20 years.  It's got great security, a large

---

**Page 5**

1  conference room.  We changed the location
2  to accommodate Mr. Grunberg and his lawyer,
3  and we filed an amended notice on June
4  the 2nd of this year.
5      Last Friday night, we learned on
6  Monday, the 14th, that Mr. Grunberg's
7  lawyer, Andy Beal, filed a motion for
8  protective order claiming that his clients
9  had received some -- they called them
10  threatening social media messages from
11  unidentified individuals, and that they
12  also felt that the location was not safe or
13  secure.  That's nonsense.
14      We learned about it on Monday.
15  Mr. Beal sought to have the Court hear the
16  motion.  We filed a response, pointed out
17  that it was frivolous.  The judge declined
18  to hear the motion.  Under Georgia law, in
19  a case that I cited yesterday in the
20  deposition of Taylor Wilson, an individual
21  party is not allowed to file a motion for
22  protective order and use that as an excuse
23  to avoid the deposition unless that
24  individual or party has obtained a court
25  order relieving him or her of the

---

**Page 6**

```
 1   obligation to appear.  No such court order
 2   was entered in this case.
 3        Jonathan D. Grunberg is a lawyer in
 4   the state of Georgia.  He knows the law.
 5   He defied the law today by knowingly and
 6   intentionally refusing to appear for his
 7   deposition.  Under Rice versus Cannon, 283
 8   Georgia Court of Appeals 438, a 2007
 9   decision, the Georgia Court of Appeals
10   affirmed the dismissal of a plaintiff's
11   complaint for failing to show up for a
12   deposition even though that person had
13   filed a motion for protective order which
14   had not been granted, and then unilaterally
15   decided not to show up.  The Court entered
16   sanctions, which in that case included the
17   dismissal of the complaint.
18        On Monday or Tuesday of next week, now
19   that we have had three plaintiffs -- Nicole
20   J. Wade, G. Taylor Wilson, and Jonathan D.
21   Grunberg -- defy the law and the notice
22   which has the legal equivalency of a
23   subpoena, we intend to move for sanctions,
24   including attorneys' fees, costs and also a
25   dismissal and striking of the plaintiffs'
```

**Page 7**

```
 1   complaint in this action.  We have a number
 2   of other grounds pending before the Court
 3   to justify legally the dismissal of this
 4   complaint filed against me and my law firm.
 5        So we're entitled and have an
 6   obligation to make a record so that the
 7   Court will have some indications of what we
 8   have been deprived of in not having
 9   Mr. Grunberg sit here under oath upon
10   cross-examination and be forced to tell the
11   truth or to be confronted with the truth in
12   the event he decided to lie under oath and
13   commit perjury.
14        Mr. Grunberg sued me, along with his
15   two partners in the law firm of Wade,
16   Grunberg & Wilson, LLC in Atlanta, Georgia.
17   They have a website at www.wg -- excuse
18   me -- wjwlawfirm.com.  It's
19   www.wjwlawfirm.com [sic].  I wanted to ask
20   Mr. Grunberg when that professional
21   corporation, Wade, Grunberg & Wilson, LLC,
22   when it was formed.  I wanted to ask him --
23   because it shows an address of 1629 Monroe
24   Drive, Northeast, Atlanta, Georgia 30324, I
25   wanted to ask Mr. Grunberg when he or his
```

**Page 8**

```
 1   law partners at Wade, Grunberg & Wilson
 2   signed a lease for that space.  That date,
 3   I believe, is relevant to the issues in the
 4   case.
 5        I wanted to ask Mr. Grunberg about his
 6   knowledge of the Georgia Professional Rules
 7   of Conduct.  I wanted to ask him how many
 8   individuals have filed bar complaints
 9   against him with the State Bar of Georgia
10   because of their belief that Mr. Grunberg
11   has engaged in unethical and possibly even
12   unlawful conduct as a lawyer in the state
13   of Georgia.
14        I wanted to ask Mr. Grunberg about his
15   knowledge of the Georgia Professional Rules
16   of Conduct as it relates to
17   misrepresentations and falsehood --
18   falsehoods posted on a lawyer's website.  I
19   wanted to ask him, looking at his website
20   where it describes his alleged experience,
21   that he says he's represented individuals
22   and companies in high-profile defamation
23   matters across the country, including
24   against large media companies such as CNN.
25   I'm only aware of Mr. Grunberg being an
```

**Page 9**

```
 1   assistant to me in cases that I filed for
 2   my clients against CNN.  He says CBS he
 3   represented cases against.  Well, I'm only
 4   aware of two cases where Jonathan was an
 5   assistant working under my supervision in a
 6   case filed against CBS for Burke Ramsey, my
 7   client, and the case filed by ████████
 8   ████████, also my client.
 9        I wanted to ask Jonathan about his
10   claim that he sued Viacom.  I'm only aware
11   of one case where Jonathan Grunberg ever
12   had a -- any involvement against Viacom,
13   and that was on behalf of my client, Perri
14   Reid, in a lawsuit that was filed against
15   Viacom for defamation.
16        He also claims that he had represented
17   people in large media companies where he
18   filed -- against the Washington Post and
19   NBC Universal.  Well, that's news to me.
20   I'm only aware of Jonathan Grunberg playing
21   a minor role in my lawsuit filed against
22   the Washington Post for my client, ████████
23   ████████, and my lawsuit filed against NBC
24   Universal on behalf of my client, ████████
25   ████████.  I wanted to ask Jonathan whether
```

**NICOLE WADE vs L. LIN WOOD, ET AL.**
**Jonathan Grunberg on 06/18/2021**                    **Pages 10..13**

Page 10

1  or not he was misrepresenting to the public
2  his experience as a lawyer to try to lure
3  people into his law firm under false
4  pretenses.
5       Jonathan says on his website he serves
6  as more than an attorney; he's often a
7  crisis manager.  Wow.  I'd like to ask him
8  about his experience as a crisis manager.
9  I never heard of him doing anything like
10 that, and I know Jonathan Grunberg.
11      I wanted to establish the history of
12 Jonathan Grunberg.  He was a law clerk for
13 a federal judge, Jones, here in Atlanta,
14 and he was hired initially as an associate
15 by a law firm that I had established in
16 2011, Wood, Hernacki & Evans, LLC, after I
17 had left Bryan Cave to take on a case
18 against DaVita for two whistleblowers, a
19 case that Bryan Cave had turned down.  I
20 believed in the whistleblowers, and I left
21 my practice at Bryan Cave in order to fight
22 for them against DaVita in a False Claims
23 Act case.
24      At the time that Wood, Hernacki &
25 Evans dissolved in 2014, I wanted to ask

Page 11

1  Mr. Grunberg if he would admit that the
2  other two partners in that firm, Katherine
3  Hernacki and Stacey Evans, would not hire
4  him to go to work for their new firms.  I
5  wanted to ask him if he acknowledged that I
6  gave him a job and I kept him on at full
7  salary so he would have a job as an
8  associate with L. Lin Wood, PC, a firm that
9  I have always maintained as an ongoing
10 professional corporation in Georgia since
11 it was founded in September of 1997.
12      So I know Jonathan Grunberg's legal
13 practice from roughly 2011 through at least
14 a portion of 2020.  I wanted to ask him
15 about the crisis manager role because I --
16 I've never seen him do that.  Jonathan
17 said -- and this disturbed me, so I really
18 wanted to question him about this.
19 Jonathan said that his work includes -- and
20 I quote here -- "Precedent-setting
21 litigation against CNN that freed
22 plaintiffs from the risk of paying
23 defendant's attorney's fees."
24      Well, Jonathan did help me on a case
25 for David Carbone in which my theory

Page 12

1  regarding the Georgia anti-SLAPP statute
2  not being applicable in federal court was
3  held to be a correct theory.  Jonathan
4  helped write the brief.  Looks like
5  Jonathan is taking full credit for that.
6  That's a lie.  I wanted to ask him about
7  that.  He's not here.
8       And then here's a doozy.  I wanted to
9  ask him about this.  He says he has helped
10 victims and their families recover millions
11 of dollars.  I think if he testified
12 truthfully, he would say that he helped me
13 in my efforts for my clients to recover
14 millions of dollars.  I don't think
15 Jonathan Grunberg, from my experience, ever
16 had any case where he handled himself for a
17 client where he got anything close to
18 millions of dollars, but I wanted to ask
19 him about that.
20      And then on his website, he says in
21 the False Claims Act arena, Jonathan has
22 extensive experience involving Medicare
23 fraud, including representing
24 whistleblowers in a record-setting case
25 that settled for $450 million.  I wanted to

Page 13

1  ask Jonathan if that's the DaVita case that
2  I handled in front of Judge Pannell here in
3  Atlanta, Georgia, where I traveled all over
4  the country taking depositions and worked
5  on that case for four years and expended
6  hundreds of thousands of dollars in
7  expenses.  Jonathan had very little work on
8  that case.
9       Stacey Evans was my partner.  When she
10 and I dissolved in 2014, she stayed on as
11 an independent contractor, Stacey Evans,
12 LLC, and continued to work with me, and I
13 reached an agreement with her to pay her a
14 fair fee for what her efforts were.
15      Jonathan did very little, but I -- but
16 I gave Jonathan a $200,000 bonus from that
17 case so that he could pay off his student
18 loans.  I wanted to ask Jonathan about
19 that.  I was going to ask him about what he
20 did in the case because he didn't do very
21 much.  But then again, I don't know what
22 he's going to tell me.  He might have lied
23 under oath, but he's not here to answer the
24 questions.
25      There are other parts of the website

**Page 14**

1  of Wade, Grunberg & Wilson regarding the
2  firm itself and the partners in that firm
3  where they take on representing to the
4  public success in a variety of states.
5  You'd read their website and think, whoa,
6  those people have been all over the United
7  States handling cases.  Every one of the
8  states that they represent in their website
9  refers to cases that I handled for my
10 clients where, in some instances, I allowed
11 them to help me.
12      So I wanted to ask Jonathan Grunberg
13 if he thought it was appropriate in a
14 lawyer's website under the Georgia Rules of
15 Professional Conduct to misrepresent his
16 experience.  I don't believe it is.  I
17 believe it's a violation, an ethical
18 violation.
19      I noted that my name and my law firm's
20 name doesn't appear on the website of Wade,
21 Grunberg & Wilson.  I know in this lawsuit,
22 they are claiming that they were my law
23 partners.  I dispute that agreement.  But
24 they sure don't identify themselves as
25 having formerly been my law partners in

**Page 15**

1  their website.  I guess they didn't want to
2  lie on their website.  I don't know.  I
3  wanted to ask him about that, but he chose
4  not to show up in violation of his lawful
5  duty to be here.
6      I wanted to ask Jonathan Grunberg
7  about the professional rules of conduct in
8  Georgia that require that a lawyer obtain
9  the consent of a client if there's going to
10 be a fee division with an outside law firm.
11      For example, here, in this matter, I
12 had agreed under circumstances which
13 ultimately, if given the opportunity, I
14 will explain to the Court, I believe that
15 amount to extortion.  I had agreed to pay
16 Jonathan and his two law partners in Wood
17 Grunberg & Wade -- let me not make that
18 mistake -- Wade, Grunberg & Wilson -- I
19 never was a law partner of Nicole Wade --
20 and Wade, Grunberg & Wilson, LLC, I wanted
21 to resolve the dispute where they were
22 trying to extort money from me they didn't
23 have.  But I, at the time, had efforts
24 underway to try to have Richard Jewell, a
25 client that I love, to try to have

**Page 16**

1  President Trump award posthumously to
2  Richard the Presidential Medal of Freedom.
3  I also was heavily involved in representing
4  ███████████, and these lawyers
5  started making outrageous claims about my
6  mental health.  Ol' Jonathan told me I need
7  to be on lithium.  I said, Jonathan, when
8  did you get your medical degree?
9      They were using my children, who had
10 some concerns about my conduct, and I
11 understood those concerns because I
12 surrendered my life to Jesus Christ and God
13 in 2018 and my life changed.  They fostered
14 in my children conduct which I felt
15 strongly violated one of God's Commandments
16 to honor thy father.  I was not happy with
17 Jonathan Grunberg, Nicole Wade or Taylor
18 Wilson for that involvement with my
19 children.  I wanted to ask him about that
20 today in detail.
21      But I wanted to ask him about Rule 1.5
22 where the Bar requires that I get
23 Nicholas's consent to a lawsuit that I
24 settled for him with CNN and a second
25 lawsuit I settled with him -- for him with

**Page 17**

1  the Washington Post, his consent to giving
2  these lawyers their unfortunately -- it's
3  the truth -- extortion they tried to
4  successfully, now unsuccessfully obtain
5  from me.
6      When I resolved the matter with CNN
7  and the Washington Post, Todd McMurtry, a
8  lawyer who had retained me to represent,
9  along with him, ███████████
10 presented to ███████████ the
11 agreement that I had entered into with
12 Wade, Grunberg & Wilson, and told the
13 client that I recommended he agree to it.
14 ███████████ asked Mr. McMurtry
15 what the law was.  The law is, just as it
16 is in Georgia, the same in Kentucky, has to
17 be a reasonable relationship between the
18 fee and the services rendered.  So
19 ███████████ asked for Grunberg and Wade
20 and Wilson to provide him with their
21 timesheets so that he could evaluate the
22 work they did on the case.  They refused to
23 give it to the boy.  That's a violation, I
24 believe, of the Georgia Professional Rules
25 of Ethics.

**Page 18**

1    I wanted to ask Jonathan about that
2  today.  I wanted to ask him, Why didn't you
3  give ▮▮▮▮▮▮▮ your timesheets?  I
4  wanted to ask Jonathan today how much time
5  he put into the files of the CNN case and
6  the Washington Post.  Because I believe if
7  he testified truthfully, his time on those
8  cases was very, very little.  But he didn't
9  show up today.  I guess he didn't want to
10  admit that truth.
11    Instead of giving ▮▮▮▮▮▮ the
12  timesheets, his own client file material,
13  which you're required to give to the
14  client, Mr. Grunberg and his two partners
15  at Wade, Wilson and Grunberg drafted up a
16  lawsuit and said, We're going to sue you
17  for breach of contract.  I thought, Well,
18  what in the heck did I do wrong?
19    I was willing to live up to the
20  agreement even though it was extortion.  I
21  told the client that I recommended he agree
22  to the fee division.  The client exercised
23  his lawful right not to do so without
24  seeing the timesheets they refused to give
25  him, and they turn around and said they're

**Page 19**

1  going to sue me for breach of contract.
2  Are you kidding me?  I wanted to ask
3  Jonathan about that today because I don't
4  believe Jonathan Grunberg, if he tells the
5  truth, is going to be able to avoid the
6  truth.  I didn't breach the contract.  He
7  did.
8    I wanted to ask him if he was aware of
9  the Georgia law that has an implied
10  covenant of good faith and fair dealings,
11  and whether he agreed that he violated that
12  when he refused to give ▮▮▮▮▮▮ the
13  timesheets.  I wanted to ask him about that
14  today.
15    But then when they said they were
16  going to sue me for breach of contract,
17  they also said they were going to sue me
18  for fraud, fraud in the inducement.  And
19  they sent me a draft of a complaint that
20  had -- a 79-page complaint that had a
21  good -- I don't even know -- 40, 50 pages
22  of salacious, out-of-context, false and
23  misrepresentative statements about me.
24    But in the agreement that I reached
25  with Mr. Grunberg and his cronies, Wade and

**Page 20**

1  Wilson, they had released all their claims
2  against me.  So even if there was a fraud
3  claim -- which there's not -- it had been
4  released.  So Grunberg was going to try to
5  enforce the agreement to get paid, but he
6  was going to break the agreement by suing
7  me in violation of the release and covenant
8  not to sue.
9    I wanted to ask him if he was aware of
10  the fact that under Georgia law that was a
11  repudiation of the contract, so that his
12  contract is now void.  I wanted to ask him
13  about that today, but he didn't show up.
14    I also wanted to ask him about some of
15  the specifics in that complaint.  Because
16  they told me if I didn't agree to pay them
17  $1.5 million, 1.25 in cash, and to pay for
18  their share of the office lease -- which
19  the building had told them they owed
20  three-fourths of -- we had an
21  office-sharing arrangement -- that if I
22  didn't pay $1.5 million to him immediately,
23  he was going to sue that case and, you
24  know, in essence, listen, do exactly what
25  he did, smear my name, have that complaint

**Page 21**

1  circulated all over the country for people
2  to attack me and to accuse me and to smear
3  my reputation.  That's blackmail.  That's
4  extortion, in my view.  I wanted to ask
5  Jonathan about that today.
6    But some of the stuff in the complaint
7  didn't make sense.  I needed to clarify it
8  with Jonathan.  Like he claimed that I
9  assaulted him in October of 2019.  I know
10  exactly what happened.  I talked about it a
11  little bit in Taylor Wilson's deposition
12  yesterday.
13    I was in California.  We were taking
14  depositions in the Elon Musk case where I
15  represented Vernon Unsworth, a hero who
16  helped save the children in the Thai cave
17  rescue.  We had a long day of depositions.
18  Went back to the Beverly Hilton.  I had to
19  prepare for depositions early the next
20  morning.  I couldn't find my briefcase.
21    Well, if you've ever been a lawyer out
22  of town and you're getting ready to take
23  depositions and you can't find your
24  briefcase that's got everything in it, you
25  tend to panic, and I did.  I was looking

NICOLE WADE vs L. LIN WOOD, ET AL.
Jonathan Grunberg on 06/18/2021                    Pages 22..25

Page 22

1  all over the Beverly Hilton trying to find
2  out if I left it down in the lobby, if I
3  left it outside where we unloaded, and I
4  was repeatedly calling Jonathan to see if
5  he had picked it up and taken it to his
6  room or if he had it with him.  He didn't
7  answer his phone.
8      So after about 45 minutes to an hour
9  of frantically searching and making several
10 calls to Jonathan asking him to please call
11 me back, someone told me they thought they
12 saw him and he was downstairs at the
13 Beverly Hilton.  When I got to -- saw him
14 down there, he was sitting there at a table
15 with a nice dinner spread out in front of
16 him next to a fountain pool of water --
17 beautiful scenery -- and his phone was
18 turned off.
19     As any lawyer -- and I wanted to ask
20 him about this.  You go out of town with a
21 senior partner in a law firm and you're
22 basically an associate or an assistant, you
23 leave your phone on, especially when you
24 know you've got important depositions the
25 next day.

Page 23

1      Well, I had some choice words for
2  Mr. Grunberg, and I wanted to ask him if he
3  remembered what I said to him.  I didn't
4  threaten him, but I wasn't happy with him.
5  So we get on the elevator after I told him
6  to get his -- we'll just say rear end up
7  and get to my briefcase in his room.
8      We get on the elevator, and ol'
9  Jonathan bows up his chest, bumps up
10 against my chest like he's a bull getting
11 ready to go to war, and I shoved him
12 against the elevator wall and I said, You
13 do that again -- I drew my fist back and I
14 said, If you do that again, I will whip
15 your ass.
16     Now, if anybody assaulted anybody,
17 Jonathan assaulted me, but I didn't -- I
18 didn't go out and start yelling assault.
19 Jonathan was just showing his A-S-S, and so
20 it was what it was.
21     Never heard another word about it from
22 the boy until I -- all of a sudden, to try
23 to extort me, he puts in a claim that I
24 assaulted him.  I wanted to ask him about
25 that in detail because the State Bar of

Page 24

1  Georgia is relying on this lawsuit that he
2  filed against me to try to discipline me
3  and disbar me against -- based on
4  allegations that are false that, at best,
5  with respect to an assault, there's two
6  sides to it.  Only two people on the
7  elevator.  Wonder why the State Bar would
8  be inclined to believe Mr. Grunberg and not
9  me.
10     Maybe that's part of the State Bar's
11 political agenda to try to discipline me
12 because my politics don't match the
13 politics of the grievance committee members
14 of the State Bar of Georgia in the
15 political witch-hunt that they have
16 instituted against me.  I wanted to ask
17 Jonathan about all that.
18     I wanted to also ask him if he talked
19 to Chris Steinmetz of the Georgia Bar or
20 anybody in the Georgia Bar where they
21 interviewed him to find out the truth about
22 these allegations in their complaint.  I
23 wanted to find out when he was interviewed;
24 who interviewed him; how long the interview
25 lasted; what was said by both participants

Page 25

1  in the interview.  A lot of questions about
2  that on a very important issue because this
3  lawsuit filed by Jonathan Grunberg has now
4  become totally intertwined as the basis for
5  the State Bar's disciplinary action against
6  me.  Never in my career, now 44 years, have
7  I seen a State Bar go after a lawyer based
8  on unproven and disputed allegations in a
9  civil lawsuit.  It's unheard of.  I wanted
10 to ask Jonathan what the State Bar told him
11 about that; why they were doing that in
12 this instance to me.
13     I wanted to talk to Jonathan Grunberg
14 about that incident.  I wanted to also talk
15 to him about what he knew about the
16 allegation of Taylor Wilson where he now
17 claims that I assaulted him when he burst
18 into my home unannounced after I had had a
19 very difficult conversation with my
20 daughter, and I pushed his chest and said,
21 What are you doing here?  I wanted to ask
22 Jonathan what he knew about that because,
23 again, that's two people in a situation
24 where I don't know what Taylor is going to
25 say about it because he didn't show up

Page 26

1   either.  I don't know how Jonathan knows
2   anything about it, but nothing was ever
3   said about it after the event until they
4   put it into this lawsuit where they tried
5   to extort me to have me pay them
6   $1.5 million in a case that even they claim
7   is only worth $647,000, after they get the
8   benefit of $280,000 that I was to pay for
9   their share of the lease.  They owe me
10  $280,000.  I wanted to ask Jonathan when he
11  was going to pay me, but he didn't come
12  today.
13      Jonathan always would jab me when I
14  would say he was from Chile.  He would say,
15  No, I'm from Chile.  We used to have a joke
16  in the office -- because Jonathan is
17  Jewish -- and I would sometimes look at him
18  and say, Jonathan, you're just a Chilean
19  Jew.  He'd laugh.  Taylor would laugh.
20  Nicole would laugh.  And then he files this
21  lawsuit and accuses me of being an
22  anti-Semite because I called him a Chilean
23  Jew.  He took a joke and turned it into a
24  heinous accusation of anti-Semitism.  I
25  wanted to ask him about that in detail

Page 27

1   today, but he didn't show up.
2       I wanted to ask Jonathan about his
3   expressed hatred for President Donald J.
4   Trump.  We used to have a lot of political
5   discussions in the office.  They didn't
6   last too long because Jonathan would
7   usually storm out because he couldn't -- he
8   didn't like my position.  He knew that I
9   was a loyal and avid supporter of President
10  Trump and his efforts to make America great
11  again.
12      Some of our political discussions, I
13  used to look over and say to Jonathan, Good
14  gracious, Jonathan, you're so far left, I
15  think you're a communist.  I wanted to ask
16  him if he is a member of the Communist
17  Party of the United States of America
18  because based on what I've seen in 2020
19  with Jonathan Grunberg, I wanted to ask him
20  that question.
21      I know I have seen Twitter posts that
22  he has retweeted support for Black Lives
23  Matter, BLM.  I did not know that when he
24  worked for me that he was a supporter of
25  BLM.  I wanted to ask him about his

Page 28

1   involvement with Black Lives Matter.  I
2   also wanted to ask him about his
3   involvement potentially with the communist
4   party in this country, but he is not here
5   to answer those questions.
6       I also wanted to go back and ask
7   Jonathan about the time he left work, and
8   about 8:00 at night, he went to rock climb
9   and -- at a facility in Atlanta, and he
10  fell because his rope broke when they went
11  to let him down.  He fell 40 feet, landed
12  on his feet, crushed his feet.  His life
13  was threatened, his extremities were
14  threatened, but he received excellent care
15  at Grady Hospital.  And after one year of
16  treatment and recovery, he was able to come
17  back to work.
18      I wanted Jonathan to acknowledge that
19  during that one year, I did something I
20  don't believe many employers would do, I
21  paid him his full salary as an associate
22  and supported his family and his recovery
23  in any way possible.  I wanted to ask
24  Jonathan if he forgot about that.
25  Apparently he did.  I also wanted to ask

Page 29

1   him if he forgot about the $200,000 bonus I
2   gave him to help him pay off his student
3   loans.  I wanted to find out if he forgot
4   about that, but he's not here to tell me.
5       Jonathan was around me when I was
6   representing whistleblower Elin Kunz in a
7   matter against Halifax which I, working
8   with other lawyers -- not Jonathan, but
9   lawyers outside of my firm, we resolved for
10  $92 million, the largest settlement of a
11  Stark -- that's capital S-T-A-R-K -- Stark
12  case, Medicare fraud case in the history of
13  the country.
14      Also, I would have -- I would have
15  asked him at length about what I did for
16  two great men, Alon Vainer, a medical
17  doctor, and Daniel Barbir, a medical nurse,
18  who were whistleblowers in a case against
19  DaVita, the second largest owner and
20  operator of dialysis clinics in a case of
21  Medicare fraud where they were wasting
22  medicines that I resolved for $450 million
23  plus fees they had to pay for a total of
24  $492 million, which was a record in the
25  United States in a False Claims Act case

NICOLE WADE vs L. LIN WOOD, ET AL.
Jonathan Grunberg on 06/18/2021                    Pages 30..33

Page 30

1  for recovery where the United States
2  government refused to intervene.  We
3  handled it on our own.  Jonathan played
4  very little role in that.  But I wanted to
5  ask him about those two cases because I
6  wanted to have Jonathan acknowledge that I
7  had great credibility in ascertaining the
8  credibility of whistleblowers.
9      Because there's been a lot of
10 accusations made, and the State Bar is
11 relying on some of them about comments that
12 I made publicly based on a whistleblower's
13 statements to me about Vice -- former Vice
14 President Mike Pence, Chief Justice John
15 Roberts and former Deputy Attorney General
16 Rod Rosenstein.  I didn't make accusations.
17 I published accusations made by a person I
18 believe was a credible whistleblower.  I
19 wanted to ask Jonathan about his knowledge
20 of my abilities to evaluate the credibility
21 of witnesses, including whistleblowers.
22     I also wanted to ask Jonathan about
23 whether he's had any conversations with
24 Rick Miller of Bryan Cave.  Ol' Rick Miller
25 and his wife, Cherie Fuzzell, who is a

Page 31

1  lawyer licensed in Georgia but has been an
2  executive for several years at Apple.  Back
3  in February of 2020, I received information
4  that raised concerns to me that ol' Rick
5  and Cherie had potentially defrauded me out
6  of $10 million in the DaVita case and
7  another case that I had handled for Rick
8  for his -- for the sister of his
9  administrative assistant at Bryan Cave.
10     Rick Miller's a longstanding partner
11 at Bryan Cave, used to be my best friend,
12 especially when I was making him
13 $10 million in the DaVita case, then I had
14 some concerns that perhaps that had not
15 been done correctly when I found out that
16 Bryan Cave actually had and was
17 representing DaVita at a time when Rick
18 Miller's wife was receiving $10 million
19 under an agreement where she was going to
20 help finance expenses, and she put in about
21 600,000 and got $10 million, I began to be
22 concerned that that was not a legal,
23 ethical arrangement, and I wanted to know
24 what Jonathan knew about Rick Miller and
25 whether he had -- was aware of any efforts

Page 32

1  by Rick Miller with Jonathan, Nicole or
2  Taylor, to potentially hack into my firm
3  computer system to get documents related to
4  the payment to Cherie Fuzzell.
5      I wanted to ask him if he was aware
6  and would acknowledge that I ascertained
7  that my computer system in February of 2020
8  had been hacked, my e-mails had been
9  hacked, the Wi-Fi at my house and my lake
10 house had been violated.
11     At the time, I had a security person
12 named Anthony Armstrong, who had been
13 recommended by Rick Miller.  I was
14 concerned that Rick and Jonathan and even
15 Nicole and Taylor might have been involved
16 in trying to get Rick information about
17 that DaVita case.
18     I also wanted to ask Jonathan if he
19 knew about what Rick Miller had said to my
20 son, raising suspicions in my son's mind
21 about a bishop of a church that I had made
22 a significant donation to.  Rick made my
23 son be concerned about it so much so that I
24 asked for the money back, and then found
25 out later that Rick Miller had known the

Page 33

1  bishop for years.  He knew he was
2  legitimate.  All of which culminated at the
3  time in my filing a complaint with the FBI
4  because I thought these people had gotten
5  together to defraud me, including computer
6  fraud, but I later dismissed it.
7      I wanted to ask Jonathan all about
8  that because he put that in his lawsuit.
9  What that had to do with fraud in a
10 settlement agreement, alleged fraud, I had
11 no idea.  I wanted to ask Jonathan about
12 that, but he's not here to answer those
13 questions.
14     I wanted to ask Jonathan about all of
15 his conversations with Steve Wynn, a former
16 client of mine who I have subsequently
17 learned since the time he fired me under
18 suspicious circumstances the day I was
19 supposed to have dinner with President
20 Trump at Mar-a-Lago back in March 2020.  I
21 wanted to find out if he had been talking
22 to Steve Wynn because I've learned that
23 Steve Wynn has almost been a lifelong
24 informant for the government with respect
25 to matters related to gaming, et cetera.  I

NICOLE WADE vs L. LIN WOOD, ET AL.
Jonathan Grunberg on 06/18/2021                    Pages 34..37

Page 34

1  didn't know what Steve Wynn was up to based
2  on what I learned about him after the fact.
3      So I wanted to ask Jonathan if he
4  talked to Steve Wynn.  Whether Steve Wynn,
5  who defamed me and was probably worried
6  that I was going to sue him -- whether
7  Steve Wynn might have been involved in
8  helping Jonathan and Taylor and Nicole
9  finance the case.  I don't know.  I'm not
10 making that accusation, but I wanted to ask
11 about whether that was, in fact, the truth.
12     I wanted to find out if anybody has
13 been providing any money to Jonathan,
14 Taylor, and Nicole to pursue this
15 litigation against me, which seems to be
16 more litigation designed to smear me than
17 to collect money on a fee dispute.
18     Those are legitimate questions.  I was
19 entitled to answers.  How much have you
20 been billed?  How much are you owed?
21 They're suing me for attorney's fees, even
22 though they don't have a claim under
23 Georgia law for it, but nonetheless, I have
24 the right to know all that information.
25 Jonathan had a duty to come here today and

Page 35

1  tell me about the answers to those
2  questions.  He violated the law in not
3  coming.  People have to draw their own
4  conclusions.
5      I'm very concerned about the
6  conversations that Jonathan and his other
7  partners, Taylor Wilson and Nicole Wade,
8  may have had with my children.  Although
9  Nicole Wade has already admitted in a text
10 that she gave me that my mental health was
11 fine, and she knew how upset I was about
12 the problems with my children because she
13 knows, as Jonathan and Taylor, how dearly I
14 love my children, how I've dedicated my
15 life to my children.  I was going to ask
16 Jonathan about that today.  He'd tell you
17 the truth -- I hope -- about what a
18 wonderful father I have been, but he's not
19 here to answer those questions.
20     I wanted to ask Jonathan about his
21 knowledge that the CNN case, the major
22 factor in that case was my longstanding
23 decade relationship with David Vigilante,
24 general counsel, in-house counsel for CNN,
25 who knows my abilities and skills and my

Page 36

1  credibility as a plaintiff's defamation
2  lawyer.  And also same questions I wanted
3  to ask him about the Washington Post and
4  Kevin Baine, a lawyer on the other side
5  that I believe in large part resolved that
6  case based on my reputation, experience and
7  skill as a defamation lawyer.  Kevin Baine
8  represented Tom Brokaw and NBC back when I
9  settled the case for Richard Jewell against
10 Tom Brokaw and NBC back in 1996.
11     I wanted to ask Jonathan about that
12 since Jonathan seems to be claiming credit
13 for it on his website and in this lawsuit.
14 It's utter nonsense.  I wanted to ask him
15 about that.
16     I wanted to ask Jonathan if he ever
17 watched the two-hour presentation I gave at
18 the request of Mercer University in January
19 of 2020, I believe January the 16th, where
20 I spoke on professionalism at the request
21 of Mercer Dean Cathy Cox, what most people
22 have seen and recognize as one of the best
23 speeches ever given on professionalism
24 where I made clear you put your client
25 first, not your money, not yourself, but

Page 37

1  your client first.  I wanted to ask
2  Jonathan if he watched that, and then ask
3  him why he apparently did not learn
4  anything from it.
5      I wanted to ask him if -- in watching
6  if he thought there was anything that was
7  mentally wrong with me in January of 2020
8  when I gave that two-hour presentation
9  without notes.
10     I wanted to ask Jonathan if he was
11 aware of the fact that Mercer University
12 asked me to give remarks by video for the
13 graduation of the Mercer law school class
14 of 2020 in May of 2020.  I wanted to ask
15 him if he saw my comments which Dean Cathy
16 Cox said she put at the end after former
17 Governor Nathan Deal's comments to the
18 graduates because, as she told me, she said
19 she wanted to save the best for last.  That
20 was the end of May of 2020.
21     I wanted to ask Jonathan if he had
22 seen my remarks and if he thought there was
23 anything about them that raised any
24 concerns about my mental health.  I wanted
25 to ask him if he thought there were any

**Page 38**

```
1   concerns about my mental health when I
2   negotiated a settlement for ███████
3   ███████ against CNN in January and
4   February of 2020, when I negotiated a
5   settlement for David Carbone against CNN in
6   January and February of 2020, and when I
7   negotiated a settlement against the
8   Washington Post for ███████████ in
9   May and June of 2020, because I can't
10  understand why the State Bar of Georgia is
11  relying on Jonathan's lawsuit to raise the
12  slightest question about my mental health.
13       Because during the time period of the
14  lawsuit's allegations, all of the objective
15  criteria suggested that not only was I
16  mentally sound, I was doing a pretty good
17  job as a lawyer for my clients and trying
18  to help the legal community with my
19  speeches and the graduates of Mercer
20  University with my comments upon their
21  graduation, but Jonathan is not here to
22  answer any of those questions.
23       But I can tell you one of the
24  questions is answered, and I want Jonathan,
25  when the time comes, to admit the truth and
```

**Page 39**

```
1   I want him to send it to Chris Steinmetz at
2   the Georgia Bar and all of those people on
3   that grievance committee, some of whom have
4   ties to George Soros.  We've looked into
5   them.
6        I want him to -- put this right in
7   front of him where he said in this
8   settlement agreement in Paragraph 6D that
9   as a party to that agreement, he
10  acknowledged, as did Nicole Wade and Taylor
11  Wilson, that I was mentally competent in
12  all respects, including my ability to enter
13  into the agreement, and in any and all
14  prior agreements which form the basis, in
15  whole or in part, for certain disputes
16  between the parties, agreements that had
17  been made months before.
18       Jonathan Grunberg knows as a matter of
19  fact that I have been and at all times
20  remain mentally competent as a lawyer and
21  as a person, and the State Bar's efforts to
22  use his litigation against me to the
23  contrary is arrant nonsense.  It's
24  frivolous.  I wanted to ask Jonathan
25  Grunberg about all that information too.
```

**Page 40**

```
1        I have a lot of other questions that I
2   want to put to Jonathan Grunberg.  I had a
3   lot of questions I wanted to put to Taylor
4   Wilson.  I had a lot of questions I wanted
5   to put to Nicole Wade.  All of those
6   lawyers have seen me take depositions
7   before.  I play by the rules, but I do not
8   tolerate lies.  And they know that I have a
9   God-given talent to cross-examine a
10  witness, and I can expose the lies.  Maybe
11  that's why they were scared to show up for
12  their depositions because they knew that I
13  would take a deposition that would reveal
14  the truth and show that the frauds in this
15  matter are Jonathan Grunberg, Nicole Wade,
16  Taylor Wilson, Chris Steinmetz of the
17  Georgia Bar, and anybody on that grievance
18  committee.  They're all frauds trying to
19  persecute me for political agenda because I
20  fought for President Trump, and I filed
21  lawsuits to expose what I still believe,
22  and we're beginning to learn more and more
23  about, was fraud and illegality in the
24  November 2020 election.
25       This is America.  This is not
```

**Page 41**

```
1   communism, except that's what they're
2   doing.  It's like living in a communist
3   state.  When the rule of law is ignored and
4   people go out for political agendas and
5   they have a witch-hunt against you, I
6   wanted to find out whether Jonathan
7   Grunberg was on a political witch-hunt
8   against me because of his support for BLM
9   or his possible involvement in the
10  Communist Party of America, but he's not
11  here.
12       So I'm going to end my recitation of
13  making a record to demonstrate to the Court
14  that I had a valid purpose in deposing him,
15  that I had and have a multitude of relevant
16  questions to ask him, and that I've been
17  deprived of the ability to defend myself
18  against his false lawsuit by his failure to
19  show up, and I've been hampered in my
20  ability to prosecute my counterclaim
21  against Jonathan Grunberg, Nicole Wade and
22  Taylor Wilson, because I've got one.  I've
23  got one, and I'm going to pursue it.
24       So I'm going to end my remarks at this
25  time.  If there's anything you believe I've
```

**NICOLE WADE vs L. LIN WOOD, ET AL.**
**Jonathan Grunberg on 06/18/2021**                                   **Pages 42..45**

Page 42

```
 1   left out that I should say, Ibrahim or
 2   John, please tell me.  I reserve --
 3   obviously I have so many more questions for
 4   these lawyers, who I don't believe, as I'll
 5   state on the record, are fit to practice
 6   law in this state or any state.
 7       Oh, I did want to ask him one other --
 8   I wanted to make the record.  I wanted to
 9   ask Jonathan Grunberg and Taylor Wilson why
10   in the world were they surreptitiously
11   recording me back in February.  What was
12   that all about?  They're in a relationship
13   with me, an office-sharing relationship.  I
14   have them working on a case-by-case basis
15   as lawyers to assist me in certain files.
16   They have a fiduciary duty.  What in the
17   world were they doing surreptitiously
18   recording me?  What was their motive?  What
19   were they planning?  Were they trying to
20   set me up?  Were they trying to say things
21   that would make me look bad while they
22   would look good?
23       You know, when you start
24   surreptitiously recording someone, that
25   raises a lot of questions in your mind
```

Page 43

```
 1   about the motive of the person doing the
 2   recording.  They're sure not going to make
 3   themselves look bad.
 4       I wanted to ask Jonathan about that
 5   too because I find that to be unethical.  I
 6   find that to be offensive, especially when
 7   he's talking about matters of my faith and
 8   my children.  So that would have been
 9   another area I wanted to go into.
10       But I had more, and if given the
11   opportunity, as part of my counterclaim
12   against them, I'll take Mr. Grunberg's
13   deposition.  You can run, but you cannot
14   hide.  And the long arm of justice is
15   eventually going to cause that boy to sit
16   down and be under oath and be deposed, and
17   the truth is going to come out.
18       Ibrahim, anything else?
19       MR. REYES:  We're good, sir.
20       MR. WOOD:  All right.  Well, at this
21   point, we'll then conclude this portion of
22   the deposition of Jonathan D. Grunberg.
23   Obviously, it's continued.  We reserve the
24   right to complete the examination after we
25   have a chance to address these issues with
```

Page 44

```
 1   the Court.
 2       So we're continued for the day.  Thank
 3   you, Madam Reporter.  Thank you my
 4   wonderful videographer, Mr. Gallo,
 5   Alexander Gallo.
 6       B.J., how long have you known me?
 7       COURT REPORTER:  I was going to ask
 8   you that question.
 9       MR. WOOD:  A long time, isn't it?
10       COURT REPORTER:  Uh-huh (affirmative).
11       MR. WOOD:  A good lawyer, aren't I?
12       COURT REPORTER:  You are.
13       MR. WOOD:  Thank you.
14       Alexander, I knew you when you were a
15   little boy.
16       I'm proud of both of you.  Deposition
17   is now suspended.  Thank you.
18       VIDEOGRAPHER:  The time is 10:08.
19   We're going off the record.
20       (Deposition suspended at 10:08 a.m.)
21
22
23
24
25
```

Page 45

```
 1              DISCLOSURE
 2
 3       Pursuant to Article 10.B of the Rules
     and Regulations of the Board of Court
     Reporting of the Judicial Council of
 4   Georgia which states:  "Each court reporter
     shall tender a disclosure form at the time
 5   of the taking of the deposition stating the
     arrangements made for the reporting
 6   services of the certified court reporter,
     by the certified court reporter, the court
 7   reporter's employer or the referral source
     for the deposition, with any party to the
 8   litigation, counsel to the parties, or
     other entity.  Such form shall be attached
 9   to the deposition transcript," I make the
     following disclosure:
10
         I am a Georgia Certified Court
11   Reporter.  I am here as a representative of
     Huseby Global Litigation.  Huseby Global
12   Litigation was contacted to provide court
     reporting services for the deposition.
13   Huseby Global Litigation will not be taking
     this deposition unless any contract that is
14   prohibited by O.C.G.A. 9-11-28(c).
15       Huseby Global Litigation has no
     contract/agreement to provide reporting
16   services with any party to the case, any
     counsel in the case, or any reporter or
17   reporting agency from whom a referral might
     have been made to cover this deposition.
18
         Huseby Global Litigation will charge
19   its usual and customary rates to all
     parties in the case, and a financial
20   discount will not be given to any party to
     this litigation.
21
22       _Blanche J. Dugas_
23       Blanche J. Dugas
         CCR No. B-2290
24
25
```

**NICOLE WADE vs L. LIN WOOD, ET AL.**
**Jonathan Grunberg on 06/18/2021**                                    Page 46

Page 46

```
1   STATE OF GEORGIA:

2   COUNTY OF FULTON:

3

4          I hereby certify that the foregoing

5   transcript was reported, as stated in the

6   caption, and the questions and answers

7   thereto were reduced to typewriting under

8   my direction; that the foregoing pages

9   represent a true, complete, and correct

10  transcript of the evidence given upon said

11  hearing, and I further certify that I am

12  not of kin or counsel to the parties in the

13  case; am not in the employ of counsel for

14  any of said parties; nor am I in any way

15  interested in the result of said case.

16

17

18

19

20       BLANCHE J. DUGAS, CCR-B-2290

21

22

23

24

25
```

14:12
15:3,6,20
16:19,21
18:1,2,4
19:2,8,13
20:9,12,14
21:4 22:19
23:2,24
24:16,18,
23 25:9,
13,14,21
26:10,25
27:2,15,
19,25
28:2,6,18,
23,25 29:3
30:4,6,19,
22 31:23
32:5,18
33:7,11,
14,21
34:3,10,12
35:20
36:2,11,
14,16
37:1,5,10,
14,19,21,
24 39:24
40:3,4
41:6 42:8
43:4,9

**war**   23:11

**Washington**
9:18,22
17:1,7
18:6 36:3
38:8

**wasting**
29:21

**watched**
36:17 37:2

**watching**
37:5

**water**   22:16

**website**   7:17
8:18,19
10:5 12:20
13:25
14:5,8,14,
20 15:1,2
36:13

**week**   6:18

**West**   3:5

**whip**   23:14

**whistleblower**
29:6 30:18

**whistleblower's**   30:12

**whistleblowers**
10:18,20
12:24
29:18
30:8,21

**whoa**   14:5

**Wi-fi**   32:9

**wife**   30:25
31:18

**Wilson**   5:20
6:20 7:16,
21 8:1

14:1,21
15:18,20
16:18
17:12,20
18:15 20:1
25:16 35:7
39:11
40:4,16
41:22 42:9

**Wilson's**
21:11

**witch-hunt**
24:15
41:5,7

**witnesses**
30:21

**wjwlawfirm.
com.**   7:18

**wonderful**
35:18 44:4

**Wood**   3:14,
20,23 4:6,
7 10:16,24
11:8 15:16
43:20
44:9,11,13

**word**   23:21

**words**   23:1

**work**   11:4,
19 13:7,12
17:22
28:7,17

**worked**   4:24
13:4 27:24

**working**   9:5
29:7 42:14

**world**   42:10,
17

**worried**   34:5

**worth**   26:7

**Wow**   10:7

**write**   12:4

**wrong**   18:18
37:7

**www.wg**   7:17

**www.
wjwlawfirm.com**
7:19

**Wynn**   33:15,
22,23
34:1,4,7

---

|   **Y**   |

**year**   5:4
28:15,19

**years**   4:25
13:5 25:6
31:2 33:1

**yelling**
23:18

**yesterday**
5:19 21:12

EXHIBIT 6"

# B U C K L E Y | B E A L

**ANDREW M. BEAL**
Direct Dial: (404) 688-2685
Email: ABEAL@BUCKLEYBEAL.COM

August 7, 2020

**VIA ELECTRONIC MAIL ONLY**
**(chris.marquardt@alston.com)**

Christopher C. Marquardt, Esq.
Alston & Bird
1201 West Peachtree Street
Atlanta, GA  30309

      Re:    Demand for Payment

Dear Chris:

Yes, thank you, we are all doing well, and we hope you are as well.

As you know, the settlement agreement between your clients L. Lin Wood, Esq. and L. Lin Wood, P.C. and my clients dated March 17, 2020 ("Agreement") required payment by your clients of the amounts set forth in the Agreement within 72 hours of your clients' receipt of payment.  In your letter of July 24$^{th}$, you have stated that it is your client's intention to withhold payment of the primary fee because █████████████████ has allegedly declined to consent to the agreed-upon fee sharing.  If this is your position, it is meritless, and your client has engaged in fraud.

First, Rule 1.5(e) of the Georgia Rules of Professional Conduct specifically governs only "lawyers who are not in the same firm," and specifies that "Paragraph (e) does not prohibit or regulate division of fees to be received in the future for work done when lawyers were previously associated in a law firm." *See* Rule 1.5, cmt. 8.  Moreover, the Georgia Bar has made clear through a formal advisory opinion that client consent is not required when sharing fees with attorneys from the same firm who are working under the supervision of the firm.  In other words, Rule 1.5 is irrelevant here.

In light of the clear inapplicability of Rule 1.5(e), it appears that your client is simply declining to make payment in bad faith and in keeping with his repeated statements that he would never pay my clients "one thin dime" and would destroy their careers.  These statements of his intent, coupled with his physical assaults and threats of harm, form the hallmarks of malicious intent.  Your client's own conduct shows that this rule is inapplicable as he routinely requested that my clients work on cases with him, under his supervision, and share in fees with him without any

Christopher Marquardt, Esq.
August 7, 2020
Page 2

special authority from clients.   Your client did so because he knew that no other consent or
authority was required.

In fact, it is plain that your clients never intended to perform under the Agreement as evidenced
by the fact that you were able to write and send to me this detailed letter on Nicholas' 18th
birthday.  Regardless, the Agreement specifically states that at all times
              were the clients of L. Lin Wood and L. Lin Wood, P.C.  As such, even if settled law
were turned on its head and client consent were relevant here, your clients would have had a duty
to obtain the consent of all of their clients prior to entering into this agreement.  In fact, Mr.
McMurtry, also the            counsel, made just such a representation.  For your clients to
enter into an agreement, deliberately misrepresenting their actual authority to enter into the
agreement, constitutes fraud in the inducement, allowing my clients to rescind the contract and to
sue in fraud and for all the damages they incurred as a result of  your client's tortious behavior
during their work with your clients.

It is clear that your clients' recent position has no legal basis and reflects a fraudulent scheme.
Please have your client wire the funds as required by the Agreement, which are now severely
past due.  My clients' offer to accept the amounts set forth in the Agreement shall remain open
through noon EST on Monday, August 10th.

Finally, my clients are still receiving notices from the courts as counsel of record in the
Sandmann matters, despite my numerous requests to file the Notices of Withdrawal which I sent
to your clients in March.  Per Mr. Wood's requests, my clients did not contact the            or
file into the            cases.  Please have those withdrawals filed immediately and have Mr.
Wood or Mr. McMurtry confirm that my clients are no longer counsel for the            .

Sincerely,

Andrew M. Beal

cc:     clients (via email)

**Subject:** FW: WGW

**Date:** Tuesday, August 25, 2020 at 5:17:00 PM Eastern Daylight Time

**From:** Andrew Beal

**To:** Marquardt, Chris

**CC:** Andrew Beal

**Attachments:** 20.08.25 Verified Complaint.pdf, 20.08.25 Plaintiffs First Requests for Admissions to Defendant LLW.pdf, 20.08.25 P's First RPDs to D.pdf, 20.0825 P's First Rogs to D.pdf

Chris

Attached please find my clients' verified complaint and initial discovery (which will be served with the complaint but not filed with the court for confidentiality reasons). We also have subpoenas for Nick Sandmann and Todd McMurtry, which are being finalized now, and we will get these to you shortly.

We wanted to share these with you prior to filing. These documents are sent to you with your agreement that your client will not attempt to file a complaint against my clients during the time in which you are reviewing these documents and until you have spoken with me and affirmatively notified me of your client's change of position on this issue. Accordingly, my client will hold off on filing suit for now, until I hear back from you. We would like to mail down a process for engaging in settlement discussions or filing suit in this matter this week. The parties are all well aware of the issues and the law here, and any delay does not really serve either of us. For this reason, unless we hear from you sooner, my clients will not file the above complaint before 5:00 pm EST on Thursday, August 27th. Hopefully, we will have an agreement to resolve this by then.

If any of this is incorrect, please let me know. I look forward to working with you on this.

**ANDREW M. BEAL | BUCKLEY BEAL, LLP**
**Direct:** 404-688-2685 | **Fax:** 404-688-2988 | **Email:** abeal@buckleybeal.com
Bank of America Plaza, Suite 3900 | 600 Peachtree Street, N.E. | Atlanta, Georgia 30308

**Subject:** Settlement Demand
**Date:** Wednesday, August 26, 2020 at 9:09:00 PM Eastern Daylight Time
**From:** Andrew Beal
**To:** Marquardt, Chris, Burby, Joey

Chris and Joey

As we discussed this afternoon, the parties are engaging in settlement discussions by exchanging written offers of terms.  This offer will remain open until 5:00 pm Eastern tomorrow, Thursday August 27.

Here is our proposal.  Your client pays my clients $1,250,000.00 immediately in satisfaction of the existing claims my clients intend to file and which you have reviewed, to buy them out of the existing settlement agreement, attorneys' fees for this matter, and claims for defamation and breach of non-disparagement based upon today's events.  Further, your client will withdraw from the ███████, and █████ cases and the █████ matters (for █████ he will assign all fees to my clients) provided each client consents and will issue a retraction for his libel and slander in the form below to all persons he contacted today.  My clients will remit no fees to your client, and your client will have no further responsibilities to make any payments to my clients.  Your client will acknowledge responsibility for the Lease and the parties will execute mutual releases.  Nothing further is required.

Retraction:  "I wanted to take this opportunity to contact you and personally retract the statements I made about my former partners:  Nicole Wade, Jonathan Grunberg and Taylor Wilson.  I was angry, and those statements are not true."

Drew

**ANDREW M. BEAL**

Buckley Beal, LLP
Bank of America Plaza, Suite 3900
600 Peachtree Street
Atlanta, GA. 30308
(404) 688-2685

EXHIBIT "40"

**Subject:** RE: Settlement Demand
**Date:** Thursday, August 27, 2020 at 3:47:00 PM Eastern Daylight Time
**From:** Andrew Beal
**To:** Burby, Joey, Marquardt, Chris

Joey

Your request seems reasonable. We will extend the deadline until Monday at noon (I am booked in the afternoon, and you probably would not be able to get in touch with me anyway). This extension is based on the same understanding we are traveling under that the parties will refrain from filing suit while we are discussing settlement (at noon on Monday).

If you cannot agree with any of this, please let me know. We have sent you a demand for retraction by separate email.

Thanks.

Drew.

**ANDREW M. BEAL | BUCKLEY BEAL, LLP**
**Direct:** 404-688-2685 | **Fax:** 404-688-2988 | **Email:** abeal@buckleybeal.com
Bank of America Plaza, Suite 3900 | 600 Peachtree Street, N.E. | Atlanta, Georgia 30308

**From:** Burby, Joey [mailto:Joey.Burby@alston.com]
**Sent:** Thursday, August 27, 2020 12:52 PM
**To:** Andrew Beal; Marquardt, Chris
**Subject:** RE: Settlement Demand

Drew,

During yesterday's call, we proposed mediation (on a fast track) or at least a meeting where the parties would sit down and have an adult conversation about this dispute and how to resolve it, and you indicated you would share that proposal with your clients. We assume based on your email below that the proposal is rejected, but can you please confirm that?

Assuming that's the case, we will certainly discuss your demand with our client and respond in good faith. We need more time to do that, though. The demand is for nearly twice what Lin would have paid your clients under the Settlement Agreement, and you offer no explanation of how you arrived at it. Chris and I both have other commitments today and tomorrow, and Lin is traveling and handling other litigation matters. We'd like to have until Monday to respond so that we have an opportunity to fully discuss this with Lin, and he has time to seriously consider it. In the interim, Lin would agree not to communicate further with any joint clients or otherwise make any statements to third parties about your clients.

There's no reason to impose an artificial deadline given where we are in this process, and sending us a demand after 9pm last night and insisting on a response by 5pm today is simply not reasonable or productive. You sat on our letter, informing you of the consent issue, for 2 weeks, and didn't respond to our August 10 letter for another 2 weeks. Once a lawsuit is filed, any chance of settlement goes away.

Please let us know if your clients will agree to extend the deadline to Monday at 5pm.  If you want to discuss this, feel free to call me or Chris.

Joey

R. Joseph Burby
**ALSTON & BIRD LLP**
One Atlantic Center
1201 W. Peachtree Street
Atlanta, GA 30309-3424
404.881.7670 (o)
404.441.6928 (m)
Joey.Burby@alston.com

EXHIBIT "10"

# ALSTON & BIRD

One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424
404-881-7000 | Fax: 404-881-7777

**Christopher C. Marquardt**                    Direct Dial: **404-881-7827**                    Email: **chris.marquardt@alston.com**

August 31, 2020

*VIA EMAIL*

Andrew M. Beal, Esq.
Buckley Beal LLP
600 Peachtree Street NE, Suite 3900
Atlanta, GA 30308
ABeal@buckleybeal.com

      Re:    Rule 408 Settlement Communication

Dear Drew:

I write in response to your clients' recent $1.25 million settlement demand. We have spent considerable time discussing the threatened lawsuit and demanded settlement amount with our client. Because the demand is unreasonable, Lin rejects it.

During one of the phone conversations that you and I had last week about the complaint that your clients have threatened to file, you opined that no one in the public will care about it because, in your words, "it's just a fee dispute between lawyers." Lin agrees that this is a just fee dispute, despite your clients' efforts to transform it into something different.

Lin has been practicing law for more than 40 years. He loves the law. He loves our profession. He believes that public disputes over fees and Rules of Professional Conduct impugn the profession in the eyes of the public. He further believes that, when disagreements over fees arise, lawyers owe it to themselves, their clients, and our profession to sit down and attempt to work the issues out in good faith. This is a situation where Lin believes that he had a professional obligation to obtain client consent for the fee-split contemplated by the parties' settlement agreement, and he endeavored to get that consent from the client. Accusations of fraud and wrongdoing are wholly misplaced.

Lin has offered to have an in-person settlement meeting with your clients, and he stands by that offer. Thus far they have not accepted it. Lin has also offered to mediate this dispute with your clients, and he stands by that offer. Thus far they have not accepted it. And after discussing the dispute with us in more detail this weekend, Lin instructed us to

Alston & Bird LLP                                                                                                    www.alston.com

Andrew M. Beal, Esq.
Page 2

make another offer: binding arbitration regarding the Rule 1.5 fee split issue. That would obviously allow a neutral party to determine which side is correct about the application of ethics Rule 1.5 and the fee-split provision in the settlement agreement.  Any one of these options would, in our view, be an appropriate method for lawyers who have handled cases together to resolve a fee dispute.

Please talk to your clients about our offer to submit the fee dispute to binding arbitration, if they are not interested in a sit-down meeting or a mediation. We reiterate our request to see WGW's billing records for purposes of these settlement discussions. As I have noted several times, the client has formally requested them, and those records could make this a moot issue. Your recent email expressly acknowledged that we would be requesting them through discovery in the event that your clients carry through with their threat to sue Lin. Providing them now when we are trying to settle the case should not, therefore, be an issue. In an email you sent on Friday night, you asserted for the first time that your clients do not have access to certain information they would need for the purpose of providing billing records. That is news to us. Joey and I are certainly open to discussing that issue with you if you can provide some details.

When you first reached out last week about this threatened lawsuit – as a professional courtesy, you told me – you offered to share a draft complaint for Lin's review and consideration if Lin would agree not to file a lawsuit without me telling you first. We have lived up to that agreement. Later in the week, you asked me to instruct Lin not to engage in further communications with his clients regarding WGW pending these settlement talks, and Lin has lived up to that agreement. If we agree to mediate or arbitrate this dispute, we will instruct Lin to continue abiding by those agreements. We have every expectation that he will follow those instructions.

Lin has supported your clients and their practices for many years. That support continued after this dispute arose. When the █████████████ settlement was delayed, Lin offered to provide an unsecured Line of Credit to your clients in the amount of $500,000 to assist them. He has also referred numerous cases to them over the past few months. Those are not the acts of one with alleged malice for your clients; to the contrary, those and other actions show that Lin cares for them and hopes that they succeed. Lin will work in good faith to resolve this dispute in any one of the ways we have proposed: a meeting, a mediation, or binding arbitration. The communications with his clients that you complained about last week only occurred in response to your clients' explicit threat to make patently false accusations of fraud against Lin in a public filing. If those false allegations are filed, Lin will have no choice but to defend himself and to have further privileged communications with his clients to counter the false narrative from WGW. Because that scenario is not in the interest of our respective clients, or their own clients, we hope that WGW will be open to one of the settlement options I have set forth in this letter.

As always, please feel free to give me a call if you have any questions. I look forward to hearing from you. We believe the parties should get together to work this all out.

Andrew M. Beal, Esq.
Page 3

                                        Sincerely yours,

                                        */s/ Christopher C. Marquardt*

                                        Christopher C. Marquardt

cc:  R. Joseph Burby