ATTACHMENT C:

PLAINTIFF'S OUTLINE OF THE CASE

Factual Summary of Cause of Action

Defendant Wood repeatedly published to the world his false accusation that Plaintiffs committed criminal extortion, a crime so serious that Wood said Plaintiffs should be disbarred, that he was filing a grievance with the Georgia State Bar, that the public should also file grievances against them, and that Wood was considering initiating a criminal prosecution against them (which he stated publicly as well as under oath). The accusations that Plaintiffs committed criminal extortion are false and defamatory statements of fact, were published to third parties without privilege, and constitute defamation *per se* for which damages are presumed under Georgia law.

On March 22, 2022, Plaintiffs sent a retraction demand to Wood with respect to his defamatory statements listed more fully below accusing Plaintiffs of committing, or attempting to commit, criminal extortion (the "Accusations"). (Dkt. 1-4 at 4-12; Dkt. 71-4 (Wade Decl.) ¶ 48; Def.'s RFA Response ¶¶ 37-38). Defendant Wood refused to retract the Accusations, and this lawsuit followed.

This Court has already determined as a matter of law that the accusations of criminal extortion are of and concerning Plaintiffs, are false and defamatory, are not

protected opinion, and are not privileged. Thus, the only issues remaining for trial are whether Defendant acted with at least negligence, whether Defendant acted with actual malice such that presumed damages should be awarded (and if so, the amount), whether Defendant acted in bad faith and was stubbornly litigious such that attorneys' fees should be awarded (and if so, the amount), whether Defendant's actions show willful misconduct, malice, fraud, etc. such that punitive damages should be awarded (and if so, the amount), and whether Defendant acted with specific intent to harm such that punitive damages should be uncapped.

By way of background, Plaintiffs and Defendant were law partners in a law firm owned by Defendant Wood for several years where they enjoyed considerable success.  Throughout 2019, after a particularly stressful trial, Defendant Wood's behavior became increasingly erratic and abusive toward the Plaintiffs.  This behavior culminated in Defendant Wood's personal and repeated attacks against the Plaintiffs in written communications and recorded voicemails and phone calls, some of which Plaintiffs shall present as evidence of Defendant's state of mind and intent at the time.  As a direct result of this behavior, Plaintiffs left Defendant's law firm. As Defendant's vitriol continued, both Plaintiffs and Defendant hired counsel to wrap up all issues related to their work together. Plaintiffs hired the undersigned, and Defendants hired the law firm of Alston & Bird.

On March 17, 2020, the parties entered into a Settlement Agreement which should have resolved all issues between the parties, including the division of fees on all the firm's cases on which both Plaintiffs and Defendant jointly worked. One case in particular, the claims of Nicholas Sandmann, had settled but the settlement had not yet been funded, and this settlement represented the majority of the fees to be distributed under the Settlement Agreement.

Unbeknownst to Plaintiffs, before and after negotiating and executing the Settlement Agreement, Defendant had been taking steps to create a false narrative that client consent was required for the agreed-upon payments and to ensure that the client would not provide such consent. Once the Defendant had secured the cooperation of the client and the settlement fees were available for distribution, Defendant refused to pay Plaintiffs as required. On July 24th, 2020, Alston & Bird advised the undersigned that Defendant would not pay the fee amounts listed in the Settlement Agreement on the false premise that client consent to the fee split was necessary as Plaintiffs and Defendants were not lawyers of the same firm, when all the facts of their relationship showed otherwise, and the language of the Settlement Agreement they had drafted directly contradicted this position.

In response, Plaintiffs stated their intention to file suit to enforce the terms of the Settlement Agreement. The undersigned provided Defendant's counsel with a

draft complaint which included claims of breach of contract for Defendant's failure to pay the amounts owed and for breach of the non-disparagement clause contained in the Agreement. Plaintiffs also included a claim for fraud against Defendant for entering into the agreement with the present intention of not performing. The lawsuit was filed on August 31, 2020.

In May, 2021, almost a year into the Fulton County litigation, Defendant posted the statements which are the subject of this litigation. Defendant has testified that he believed he was being criminally extorted, 8 months before, by Plaintiffs who were subject to arrest and indictment for their conduct based on the demand their counsel sent to his counsel regarding his failure to make payment under the Settlement Agreement. Specifically, he testified that the demand (a) sought damages in excess of the amounts owed under the Settlement Agreement for the primary case which had already funded; (b) sought damages for both breach of contract and fraud; (c) allowed Defendant one day to accept the demand before filing suit, and (d) Plaintiffs were attempting to interfere with Defendants' relationship with his children and his attempts to secure the Presidential medal of Freedom for his deceased client Richard Jewell.

However, as the Court has already held, Plaintiffs' actions do not constitute extortion. Further, the facts will show that each of these claims is utterly groundless.

Specifically, (a) Plaintiffs had numerous other claims for relief under the Settlement Agreement and otherwise, and Defendant has admitted as much; (b) as the Fulton County Superior Court ruled on August 22, 2023, the law is well settled that Plaintiffs were entitled to bring a claim for breach of contract and fraud in the same action, and (c) as this Court has correctly determined, Plaintiffs actually provided Defendant five days in which to respond, and under Georgia law, threatening a suit in a settlement negotiation does not rise to the level of extortion.  Finally, as to Defendant's claims of interference with his children or clients, Defendant has produced absolutely no evidence in support of any such claim of any efforts by Plaintiffs which could be construed as interference. And Plaintiffs will introduce at trial significant evidence of Defendant's negligence and actual malice, including, *inter alia*, (1) Defendant's common law malice, (2) Defendant's fabrication of accusations against Plaintiffs, (3) evidence showing Defendant accusing Plaintiffs of extortion long before the allegedly extortionate actions occurred, (4) Defendant's failure to do any investigation whatsoever prior to making his accusations, and (5) Defendant's misstating the facts when publicly accusing Plaintiffs of criminal extortion in order to fit his own preconceived narrative.

    For these reasons, this Court has granted Plaintiffs partial summary judgment on the issue of falsity and determined that the statements are not merely protected

opinion but are defamatory statements of fact. As a result of this Court's ruling, Plaintiffs now present evidence at trial on the ultimate issues as outlined above.

Assuming the jury finds Defendant acted with actual malice, Plaintiffs will be entitled to presumed damages for harm to reputation as the statements accused the Plaintiffs of a crime and dishonesty in their profession, as well as damages for emotional pain and suffering. Plaintiffs also seek punitive damages and attorneys' fees as set forth more fully below.

## Authorities Creating Specific Legal Duty

1) O.C.G.A. § 51-5-1, *et seq.* generally (Georgia's Libel and Slander code)

2) O.C.G.A. § 51-5-1(a) ("A libel is a false and malicious defamation of another, expressed in print, writing, pictures, or signs, tending to injure the reputation of the person and exposing him to public hatred, contempt, or ridicule.")

3) O.C.G.A. § 51-5-4(a) ("Slander or oral defamation consists in: (1) Imputing to another a crime punishable by law . . . (3) Making charges against another in reference to his trade, office, or profession, calculated to injure him therein. . . .")

4) O.C.G.A. § 51-5-9 ("In every case of privileged communications, if the privilege is used merely as a cloak for venting private malice and not bona

fide in promotion of the object for which the privilege is granted, the party defamed shall have a right of action.")

5) O.C.G.A. §§ 51-5-11 and 51-5-12 (governing retraction demand and failure to retract)

6) O.C.G.A. § 51-12-5.1 (governing punitive damages)

7) O.C.G.A. § 13-6-11 (governing award of attorneys' fees and costs)

8) *StopLoss Specialists, LLC v. VeriClaim, Inc.*, 340 F. Supp. 3d 1334, 1346 (N.D. Ga. 2018) ("To establish a viable claim sounding in defamation a plaintiff must plead and prove the following four elements: '(1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting to at least negligence; and (4) special harm or the actionability of the statement irrespective of special harm.'" (citation omitted)).

9) *Barnes v. O'Connell*, 300 Ga. App. 399, 400 (2009) (holding that "to impute the crime of theft to a person is actionable per se without proof of special damages")

10) *Herbert v. Lando*, 441 U.S. 153, 164 n.12, 165 (1979) (holding that "actual malice may be shown in many ways," including "all the relevant circumstances surrounding the transaction . . . including threats, prior or

subsequent defamations, subsequent statements of the defendant, circumstances indicating the existence of rivalry, ill will, or hostility between the parties")

11) *Harte-Hanks Commc'ns., Inc. v. Connaughton*, 491 U.S. 657, 668 (1989) (holding that although direct admissions are a rare plus, a "plaintiff is entitled to prove the defendant's state of mind through circumstantial evidence")

12) *Barber v. Perdue*, 194 Ga. App. 287, 289 (1989) ("Courts have traditionally admitted any direct or indirect evidence relevant to the state of mind of the defendant." (citation omitted))

13) *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968) ("Professions of good faith will be unlikely to prove persuasive, for example, where a story is fabricated by the defendant, is the product of his imagination, or is based wholly on an unverified anonymous telephone call. Nor will they be likely to prevail when the publisher's allegations are so inherently improbable that only a reckless man would have put them in circulation. Likewise, recklessness may be found where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports.")

14) Additional authorities cited below under "Damages Claimed" for specific damages sought.

**List of Defamatory Statements**

Through his social media posts on Telegram between May 12 and June 18, 2021, and in the context set forth above, Defendant Wood published the following false and defamatory statements about Plaintiffs on both his Lin Wood Speaks Truth Telegram channel and his Reply to Lin Wood Telegram channel (collectively, the "Defamatory Statements"), all of which convey the false and defamatory accusation that Plaintiffs committed criminal extortion:

a) "In an effort to extort money from me, Nicole J. Wade, Jonathan D. Grunberg, and G. Taylor Wilson of the Atlanta law firm of Wade, Grunberg & Wilson, LLC interfered with my relationship with my children…. I had some choice words for these extortionists…. I told these extortionist lawyers … These extortionist lawyers … these extortionist lawyers who should be disbarred." (May 12) (*see* Dkt. 1 ¶ 82)

b) "I'm gonna tell you the truth about that lawsuit. These people tried to extort money out of me that they didn't have and didn't deserve…. So the truth of the matter is it was an extortionist type attempt by these lawyers." (May 13) (*see id.* ¶ 86)

c) "Does that sound like criminal extortion to you?" (May 19 at 12:11 pm) (*see id.* ¶ 88)

d) "If you believe Person A is attempting to criminally extort you …if Person A is a lawyer, should . . . Person A . . . be subject to potential disbarment for engaging in an attempt to criminally extort you?" (May 19 at 12:20 pm) (*see id.* ¶ 88)

e) "[C]oncerned citizens can file Bar complaints against lawyers who they believe have violated disciplinary rules or engaged in possible criminal conduct (such as attempted extortion). . . . Here is the link which I

provide as a public service. By the way, . . . Nicole, Jonathan & Taylor are Georgia lawyers." (May 19 at 12:54 pm) (*see id.* ¶ 88)

f) "Yesterday, I posted the email below and suggested that in my opinion, this demand by . . . Atlanta lawyers Nicole J. Wade, Jonathan D. Grunberg, and G. Taylor Wilson of Wade, Grunberg, & Wilson, LLC constituted an attempt to extort me." (May 20) (*see id.* ¶ 91)

g) "Plaintiffs committed the crime of attempted extortion and Mr. Wood is still considering whether to pursue criminal actions against Plaintiffs. . . ." (May 26) (*see id.* ¶¶ 93-94)

h) "These accusations against me … were filed for an attempt … to extort from me monies that the Plaintiffs … are not entitled to recover." (June 16) (*see id.* ¶ 98(a))

i) "So then I had these lawyers trying to threaten me that they were going to make public their accusations about my mental health…. It was an extortion played by these lawyers…. It was extortion." (June 16) (*see id.* ¶ 98(b))

j) "I recommended to the client through his local counsel, that they agree to the deal even though I knew it was extortion." (June 16) (*see id.* ¶ 98(c))

k) "They presented me with a draft of their lawsuit, which in the fraud portion of the case went into detail about issues that arose out of their interference with my children's relationship with me … They put that stuff in the fraud complaint among other things that were scandalous, irrelevant, immaterial, to even a fraud claim. They did that to smear me and to try to get me to pay this money." (June 16) (*see id.* ¶ 98(d))

l) "I was trying to help them even though they had tried to extort me." (June 16) (*see id.* ¶ 98(e))

m) "You don't use the court system to extort people." (June 16) (*see id.* ¶ 98(f))

n) "They were trying to extort me. Almost blackmail me…. The law does not sanction lawyers' engaging in such conduct to try to extort money from another party…" (June 18) (*see id.* ¶ 98(g))

o) "[T]heir unfortunately – it's the truth – extortion that they tried to successfully, now unsuccessfully obtain from me." (June 18) (*see id.* ¶ 98(h))

p) "I was willing to live up to the agreement even though it was extortion." (June 18). (*see id.* ¶ 98(i))

q) "Because they told me if I didn't agree to pay them $1.5 million, 1.25 in cash, and to pay for their share of the office lease … that if I didn't pay $1.5 million to him immediately, he was going to sue that case and … smear my name, have that complaint circulated all over the country for people to attack me and to accuse me and to smear my reputation. That's blackmail. That's extortion, in my view." (June 18) (*see id.* ¶ 98(j))

r) "Never heard another word about it from the boy until I – all of a sudden, to try to extort me, he puts in a claim that I assaulted him." (June 18) (*see id.* ¶ 98(k))

s) "[N]othing was ever said about it after the event until … they tried to extort me to have me pay them $1.5 million in a case that even they claim is worth only $647,000…" (June 18) (*see id.* ¶ 98(l))

**Damages Claimed**

**1. Compensatory Damages**

(a) <u>Description</u>: Plaintiffs are entitled to recover compensatory damages, including presumed damages for injury to their reputations, for their personal humiliation, and for their mental anguish and suffering, as a result

      of Defendant's false and *per se* defamatory statements about them to his hundreds of thousands of followers.

(b) <u>Dollar Amount Claimed</u>: Plaintiffs will request an amount in excess of $75,000.00, to be determined by the enlightened conscience of the jury as fair compensation for Defendant's false and *per se* defamatory statements to his hundreds of thousands of followers. Plaintiffs currently anticipate that they are likely to suggest to the jury that an award in the millions of dollars would be appropriate compensation for the presumed damage to their reputations, their personal humiliation, and their mental anguish and suffering resulting from Defendant's false and defamatory statements about them.

(c) <u>Citation to Authority Authorizing Recovery</u>:

   i. O.C.G.A. § 51-5-4(b): in the case of defamation *per se*, "damage is inferred"

   ii. O.C.G.A. § 51-12-2(a): General damages are presumed to flow from any tortious act, "they may be recovered without proof of any amount"

   iii. O.C.G.A. § 51-12-12: "The question of damages is ordinarily one for the jury. . . ."

    iv.    *Melton v. Bow*, 241 Ga. 629, 630 (1978) (citations omitted): "To impute the crime of theft to a person is actionable per se without proof of special damages. [Plaintiff] had no burden to prove that his reputation had been damaged by the statements imputing a crime to him. The law infers injury to his reputation."

    v.    *John D. Robinson Corp. v. Southern Marine & Indus. Supply Co.*, 196 Ga. App. 402, 405-06 (1990): "Where, as here, evidence was presented from which the jury could find libel per se, the plaintiff may recover general damages without a showing of special damages."

    vi.    *Riddle v. Golden Isles Broadcasting, LLC*, 292 Ga. App. 888, 891 (2008) (citations omitted): "[T]he more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering. And where, as here, the words uttered constituted slander per se by imputing the commission of a crime to another, the law infers an injury to the reputation without proof of special damages. Such an injury falls within the category of general damages. . . . Therefore, in this case, the 'measure or criterion of the general damages which the

law infers as flowing from a slanderous statement which is actionable per se is the enlightened consciences of an impartial jury.'"

## 2. Attorneys' Fees and Expenses of Litigation

(a) <u>Description</u>: Plaintiffs are entitled to recover attorneys' fees and expenses of litigation pursuant to O.C.G.A. § 13-6-11 because Defendant has acted in bad faith, been stubbornly litigious, and caused Plaintiffs unnecessary trouble and expense.

(b) <u>Dollar Amount Claimed</u>: Plaintiffs will request an award of attorneys' fees in the amount of 33% of their total recovery. Plaintiffs will also request an award of expenses, in an amount to be proven at trial.

(c) <u>Citation to Authority Authorizing Recovery</u>

i. O.C.G.A. § 13-6-11: "The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specifically pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them."

ii. *Southern Co. v. Hamburg*, 220 Ga. App. 834, 841 (1996) (cleaned up): "A plaintiff may recover for bad faith concerning the transactions and dealings out of which the cause of action arose. OCGA § 13-6-11. . . .

>
> Despite the existence of a bona fide controversy as to liability, a jury may find that defendant 'acted in the most atrocious bad faith in his dealing with the plaintiff. . . . [Defendants] had interests (conflicts) which may have motivated baseless charges concerning illegal activities by [plaintiff]."

iii. *Harcrow v. Struhar*, 236 Ga. App. 403, 404 (1999): affirming jury award for damages for defamation and for attorneys' fees and expenses pursuant to O.C.G.A. § 13-6-11.

iv. *Zedan v. Bailey*, 522 F. Supp. 3d 1363, 1380 (M.D. Ga. 2021) (citation omitted): "Defendant's bad faith in the underlying conduct is evidenced by his continuing to publish defamatory articles after being informed that their content was false and defamatory. Indeed, it is well-established Georgia law that '[e]very intentional tort invokes a species of bad faith that entitles a person wronged to recover the expenses of litigation including attorney fees.'"

v. *Home Depot U.S.A., Inc. v. Tvrdeich*, 268 Ga. App. 579, 584-85 (2004):
   1) "'A court may consider a contingent fee agreement and the amount it would have generated as evidence of usual and customary fees in determining both the reasonableness and the amount of an

award of attorney fees.' When a party seeks fees based on a contingent fee agreement, the party must show that the contingency fee percentage was 'a usual or customary fee for such case' and that 'the contingency fee was a valid indicator of the value of the professional services rendered.' In addition, the party seeking fees must also introduce 'evidence of hours, rates, or [some] other indication of the value of the professional services actually rendered.'" *Id.* at 584 (citations omitted).

2) "Although the attorney did not keep a record of the time devoted to the case because it was a contingency case, he testified that [plaintiff]'s case 'probably got into five boxes and a full table of things. And it took a great deal of work, out-of-pocket expenses incurred.' Because, construing the evidence in favor of [plaintiff], there was evidence that the contingency fee she agreed to pay was a valid indicator of the value of her attorney's services, the trial court did not err in denying [defendant]'s motions . . . on [plaintiff]'s fee claim." *Id.* at 584-85.

vi. *Holland v. Cypress Ins. Co.*, 2022 WL 4289144, at *3-8 (N.D. Ga. Sept. 12, 2022):

1) "Georgia law provides 'no specific formula to calculate attorney's fees' for bad faith. 'The issue of attorney fees under OCGA § 13-6-11 is a question for the factfinder and an award will be upheld if any evidence is presented to support the award.'" *Id*. at *3 (citations omitted).

2) "§ 13-6-11 fees are based on bad faith. A party has engaged in conduct that warrants imposition of a sanction. . . . The statute contemplates that all of a plaintiff's fees and costs will be paid by the defendant so long as they are customary and reasonable. A contingent fee is customary and reasonable in personal injury cases. Almost without exception, that is the cost the plaintiff will have in the case." *Id.* at *7

3) "[A] jury is not required to base its award solely on the contingent fee. . . . If the amount a jury awarded as damages were of a magnitude that the jury concluded that the contingent fee resulting for that award was unreasonable, the jury would be authorized to award fees in an amount other than that called for by the fee agreement. Even though the plaintiff would owe her attorney fees greater than were awarded by the jury, such an award would be

consistent with Georgia law and consistent with the instructions given to the jury at trial in this case." *Id.* at *8.

3. **Punitive Damages**

   (a)  <u>Description</u>: Damages awarded under O.C.G.A. § 51-12-5.1 intended to deter, penalize, or punish the defendant.

   (b)  <u>Dollar Amount Claimed</u>: Plaintiffs will request an amount determined by the enlightened conscience of the jury to be commensurate with the harm done and calculated to be sufficient to deter such conduct in the future. Plaintiffs seek punitive damages without any statutory cap as a result of Defendant's specific intent to harm. Plaintiffs currently anticipate that they are likely to suggest to the jury that an award of millions of dollars in punitive damages would be appropriate.

   (c)  <u>Citation to Authority Authorizing Recovery</u>:

       i.  O.C.G.A. § 51-5-11: Plaintiffs made a request for retraction at least seven days prior to the filing of the action and are therefore entitled to seek punitive damages.

       ii. O.C.G.A. § 51-12-5.1: Punitive damages may be awarded where "it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or

      that entire want of care which would raise the presumption of conscious indifference to consequences."

iii. *Action Marine, Inc. v. Continental Carbon Inc.*, 481 F.3d 1302, 1313 (11th Cir. 2007): "Specific intent to cause harm is where the actor desires to cause the consequences of his act or where the actor believes that the consequences of his act are substantially certain to result from it."

iv. *McGinnis v. Am. Home Mortg. Serv., Inc.*, 240 F. Supp. 3d 1337, 1349 (M.D. Ga. 2017): "Intent to harm thus does not require direct proof. A jury can find intent through consideration of the words, conduct, demeanor, motive, and circumstances connected with the defendant's actions."

v. *Scott v. Battle*, 249 Ga. App. 618, 622 (2001) (citation omitted): "In Georgia, the purpose of punitive damages is to deter the repetition of reprehensible conduct by the defendant, and they are not awarded as compensation to a plaintiff. Subject to OCGA § 51-12-5.1(g), the amount of punitive damages to be awarded (if any) is determined according to the enlightened conscience of a fair and impartial jury. 'There is no other measure of damages for such a case.'"

    vi.   *McDaniel v. Elliott*, 269 Ga. 262, 265 (1998): requiring "a party to request both a charge on specific intent to cause harm and a separate finding of specific intent to cause harm by the trier of fact in order to avoid the cap on punitive damages."

Defendant objects to Plaintiffs' outline of the case. The outline is not succinct, assumes facts not proven or that may not be in evidence, is argumentative, and recites evidence.