# ATTACHMENT D:

# DEFENDANT'S OUTLINE OF THE CASE

Defendant incorporates Defendant's Trial Brief and Objection For Purposes of Preservation of Certain Issues For Appeal. Particularly, "the Court granted summary judgment to the Plaintiffs on the issues of falsity, defamatory nature, lack of privilege, and the presence of harm, all of which are issues of *fact* which should be determined and decided by the jury. Because this Court entered an opinion granting judgment as a matter of law on issues which can only be properly decided by a jury, the Defendant respectfully contends that the Court has committed error and wishes to preserve his objection upon the Court's Record, outside the presence of the jury and at a time designated and allowed by the Court.

Plaintiffs are only entitled to a recovery of provable actual damages based on proof of negligent publication of a false and defamatory statement of fact by a preponderance of the evidence. For the recovery of any other damages to be permitted, the Plaintiffs must prove, by clear and convincing evidence, publication of a false and defamatory statement of fact with Constitutional actual malice, i.e., actual knowledge of falsity or reckless disregard for truth or falsity.

This is a case of free speech, and not of contract breach or fraud. Plaintiffs are attempting to subvert a case of free speech into a case of contract breach and fraud.

In the process, they try to interject irrelevant information into evidence in an effort to confuse the jury into believing this case is about breach of contract and fraud, when in fact it is only about Mr. Wood's right of free speech, and whether he expressed it lawfully. Freedom of speech is a God-given right.

## Summary of Relevant Background Facts

Mr. Wood's then counsel at Alston & Bird ("A&B Counsel"), when working on an unrelated case well after the March 17, 2020 Settlement Agreement and General Release that A&B Counsel had drafted with Plaintiffs' counsel, discovered the need the for client consent to fee splits between different law firms. After substantial research, A&B Counsel advised Mr. Wood that client consent was likely required from then client Nicholas Sandmann ("the Client") in the disputed *Sandmann v. CNN* and *Sandmann v. Washington Post* cases before Mr. Wood could send Plaintiffs their fee. Mr. Wood followed that advice and sought, via A&B Counsel, the Client's consent on July 24, 2020, which was the Client's 18th birthday. The Client refused to provide consent without some documentation from Plaintiffs.

A&B Counsel emailed Plaintiffs' counsel on July 24th to apprise Plaintiffs of the Client's decision and to request from Plaintiffs documentation of their work on the Client's matter. Plaintiffs did not comply with that request.

Instead, Plaintiffs' counsel responded on Aug. 7, 2020 to accuse Mr. Wood of fraud and fraud in the inducement. In this same letter, Plaintiffs also imposed the deadline of Aug. 10, 2020 at noon for Mr. Wood transfer to Plaintiffs the amounts from the Client's contingency fee as provided in the March 17, 2020 Settlement Agreement.

A&B Counsel replied to Plaintiffs' counsel on Aug. 10, 2020, pointing out that A&B Counsel still had not received Plaintiffs' documentation of the work Plaintiffs had performed on the Client's matter. A&B Counsel stated, in relevant part, that Mr. Wood would not do any act prohibited by the Georgia Rules of Professional Conduct. Additionally, A&B Counsel pointed out how Plaintiffs' baseless allegations of fraud was one of numerous "bad-faith threats" Plaintiffs had made "to shake [Mr. Wood] down for money," and that Mr. Wood "would not be extorted."

Plaintiffs' Counsel's next communication with A&B Counsel was via email on Aug. 25, 2020 at 5:18 PM. Plaintiffs informed A&B Counsel that unless Plaintiffs heard from A&B Counsel sooner, Plaintiffs would not file the attached draft complaint before Aug. 27, 2020 at 5:00 PM EST. Plaintiffs' Counsel attached draft complaint would become Plaintiffs' Verified Original Complaint filed on Aug. 31, 2020.

Despite having heard from Plaintiffs in a telephone conversation on the afternoon of Aug. 26, 2020, Plaintiffs' Counsel emailed A&B Counsel that same night at 9:09 PM, acknowledging that as of the discussion, the parties were in settlement discussions. Plaintiffs counsel then informed A&B Counsel that Mr. Wood and L. Lin Wood, P.C. ("Wood Defendants") had until 5:00 PM the following day to pay Plaintiffs a sum of money nearly double the amount owed under the terms of the March 17, 2020 Settlement Agreement and General Release.

On Aug. 27, 2020 at 12:52, A&B Counsel emailed Plaintiffs' Counsel to request an extension of what A&B Counsel had described to be an artificial deadline within less than a 24 hour period, despite having taken two weeks to reply to A&B Counsel's letters from July 24, 2020 and Aug. 10, 2020. As A&B Counsel pointed out, Plaintiffs Counsel had not explained how Plaintiffs had arrived at the number nearly twice that of what had been provided in the Settlement Agreement.

The word extorted was used in a press release from Sept. 2020 that A&B Counsel assisted Mr. Wood in drafting. Plaintiffs did not sue on the initial publication of that Press Release.

Plaintiffs' Verified Original Complaint in the Fulton County case contained a count for Fraud in the Inducement, and not Fraud. On Aug. 31, 2020, A&B Counsel emailed an abusive litigation notice letter to Plaintiffs' counsel, pointing out how in

Georgia one cannot simultaneously sue for contract breach and fraud *in the inducement*. Plaintiffs filed their First Amended Complaint on September, changing Count II to Fraud, which included but was not limited to fraud in the inducement.

On Oct. 10, 2020, the Superior Court of Fulton County Verified Original Complaint had "contain[ed] redundant, immaterial, impertinent, or scandalous matter." Yet, the Superior Court ordered the Verified Original Complaint along with any of Mr. Wood's legal defenses to it to be placed under seal, rather than strike any the allegations within that Verified Original Complaint as allowed by the applicable statute. On this same Oct. 10, 2020, the Court also enjoined Mr. Wood not to disparage Plaintiffs.

By March 4, 2021, A&B Counsel had withdrawn from its representation of the Wood Defendants. Mr. Wood substituted himself as counsel of record on March 4, 2021.

Mr. Wood respected the injunction against him by saying nothing further about the Plaintiffs until May of 2021. In the final weeks of an intense political campaign to be Chair of the South Carolina Republican Party, Mr. Wood learned that Verified Original Complaint supposedly under seal was somehow circulating because his then political opposition was the allegations within it for their political gain. Only in the heat of political battle, when Mr. Wood was confronted with the

salacious and scandalous allegations from the Verified Original Complaint, did Mr. Wood start making public statements about the Plaintiffs as permitted by *Gentile*, as he was representing himself and had a duty to do so. In all publications pertaining to the Plaintiffs, Mr. Wood spoke to the best of his experience of his 27 years as a defamation and first amendment lawyer, and he spoke in good faith as to his belief about the law.

Subject to the above, the Defendant sets forth the following defenses:

1. To the extent the Plaintiffs' claim that the Defendant did not fulfill the terms of the March 17, 2020 Agreement and/or made representations concerning the division of fees related to certain settlements, the Defendant acted on the advice of, relied on, and deferred to prior counsel.

2. The Court's March 12, 2024 Opinion and Order concluded, inter alia, the "Plaintiffs do not qualify as limited-purpose public figures…" (Docket No. 90, pp 19-20). As such, Plaintiffs are private individuals. In this private capacity, as established by the US Supreme Court in Gertz v. Welch, Inc., 94 S. Ct. 2997, 3012 (1974), it "is necessary to restrict defamation plaintiffs who do not prove knowledge of falsity or reckless disregard for the truth to actual injury."

3. Plaintiffs' claim for attorneys' fees and expenses of litigation pursuant to § O.C.G.A. 13-6-11 fails for multiple reasons. First, the statute is unconstitutional and in violation of the equal protection clauses of the United States Constitution and the Georgia Constitution because a defendant cannot utilize the statute to recover fees from a Plaintiff. Second, the statute is clearly a breach-of-contract damages statute and has no application to tort cases. Third, even assuming that the statute is not unconstitutional and somehow applies to tort actions, Plaintiffs' claim fails because Defendant did not publish the statements at issue with actual malice, i.e., actual knowledge of falsity or with reckless disregard for the truth.

4. Plaintiffs' claim for punitive damages pursuant to O.C.G.A. § 51-12-5.1 fails because Plaintiffs cannot prove actual malice by clear and convincing evidence under the *New York Times v. Sullivan* standard.

Citations to Authority:

1) O.C.G.A. § 51-5-1, *et seq.* generally (Georgia's Libel and Slander code)

2) *Gertz v. Welch, Inc.*, 94 S. Ct. 2997, 3011-3012 (1974): (holding "that the States may not permit recovery of presumed or punitive

        damages, at least when liability is not based on a showing of knowledge of falsity or reckless disregard for the truth"). It "is necessary to restrict defamation plaintiffs who do not prove knowledge of falsity or reckless disregard for the truth to actual injury." ("In short, the private defamation plaintiff who establishes liability under a less demanding standard than that stated by New York Times may recover only such damages as are sufficient to compensate him for actual injury.")

3) <u>Gentile v. State Bar of Nevada,</u> 501 U.S. 1030, 1043-44 (1991): "An attorney's duties do not begin inside the courtroom door. He or she cannot ignore the practical implications of a legal proceeding for a client. Just as an attorney may recommend a plea bargain or civil settlement to avoid the adverse consequences of a possible loss after trial, so too an attorney may take reasonable steps to defend a client's reputation and reduce the adverse consequences of indictment, especially in the face of a prosecution deemed unjust or commenced with improper motives. A defense attorney may pursue lawful strategies to obtain dismissal of an indictment or reduction of charges, including an attempt in the court of public opinion that the client does

not deserve to be tried.

4. *St. Amant v. Thompson*, 390 U.S. 727, 731, 20 L.Ed.2d 262, 267 (1968):

"[R]eckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the [****9] defendant in fact entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice."

"Failure to investigate does not in itself establish bad faith." *Id.* at 733.

"The finder of fact must determine whether publication was indeed made in good faith." *Id.* at 732.

Alleged defamor "St. Amant's mistake about his probable legal liability does not evidence a doubtful mind on his part. That he failed to realize the import of what he broadcast – and was thus "heedless" of the consequences for Thompson – is simply colorless." *Id.* at 733.

5) *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964):

"The constitutional guarantees require, [****49] we think, a

federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made [*280] with "actual malice" -- that is, with knowledge that it was false or with reckless disregard of whether it was false or not."

6) *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964):

"[O]nly those false statements made with the high degree of awareness of their probable falsity demanded by *New York* [****17] *Times* may be the subject of either civil or criminal sanctions."

7) *Curtis Pub. Co. v. Butts*, 388 U.S. 130, 153, 87 S. Ct. 1975, 1991, (1967):

"[Public] officials were permitted to recover in libel only when they could prove that the publication involved was deliberately falsified, or published recklessly despite the publisher's awareness of probable falsity."