## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

NICOLE JENNINGS WADE,
JONATHAN D. GRUNBERG, and
G. TAYLOR WILSON,

   Plaintiffs,

 v.

L. LIN WOOD,

   Defendant.

Case No. 1:22-CV-1073-MLB

## PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR APPROVAL OF SUPERSEDEAS BOND

Plaintiffs Nicole Wade, Jonathan Grunberg, and Taylor Wilson file this response to Defendant L. Lin Wood's Motion for Approval of Supersedeas Bond and Motion to Stay Execution of Judgment Pending Appeal (Dkt. 155). Plaintiffs have already moved separately for an order requiring Wood to post a supersedeas bond in the amount of $4,731,807.61. (Dkt. 154).

## INTRODUCTION

Defendant L. Lin Wood's ("Wood") request that this Court accept real property in lieu of a supersedeas bond is insufficient on many levels. Wood is lying to this Court about the property he is offering as collateral for his appeal of a $4.5 Million jury verdict. Additionally, Wood's claim of a lack of "liquid cash," although

insufficient to carry his burden, is very misleading to this Court as public records show that he grossed just under $6 million in 2023 alone from sales of land—including 295 of the 483 acres he has offered to this Court as "collateral."

Incredibly, unless the publicly recorded deed records of South Carolina cannot be trusted, **Wood has offered to provide as security 294.99 acres of real property that he sold a year ago for nearly $3 million**. Wood admits that he sold 232 acres of Cotton Hall in May 2023. But he does not disclose that the May sale was part of a three-part deal. The other two parts of that deal were a second sale of an additional 295 acres of Cotton Hall for $2,949,000 and a sale of a conservation easement for $450,000 restricting development of the 191 acres of Cotton Hall that Wood kept.

Thus, Lin Wood is lying to this Court. His claim that he owns 483.96 acres of Cotton Hall is a knowing falsehood. (*See* Dkt. 155, 4). He owns only 191 acres of the original property, which appears to be the least valuable portion. And Wood's claim that Cotton Hall is "fully owned by him without any encumbrances" is also false. (*See* Dkt. 155, 5). Putting aside that the property is owned in the name of The Tomotley Crew, LLC, and regardless of whether the property is mortgaged, Wood made $450,000 in 2023 for selling a conservation easement on the entirety of the

191 acres of the Cotton Hall property that he still owns.[1]

The real estate agent whose *purported* opinion Wood offers regarding the value of his remaining parcel of Cotton Hall Plantation, Todd Crosby, is the person who coordinated the deal for the sale of ***both parcels*** of Cotton Hall in 2023. To reiterate, Todd Crosby and Lin Wood both *know* that The Tomotley Crew, LLC does *not* own ~484 acres of Cotton Hall, but instead only ~191 acres which is encumbered by a conservation easement to prevent development. In any event, Mr. Crosby is not an appraiser, and his one paragraph assertion regarding the recommended list price for an undefined property identified only as "Cotton Hall Plantation"—nearly 75% of which Wood has already sold—is completely untrustworthy and unhelpful to this Court's analysis.

The burden is on Wood to establish that any "other security" he posts is sufficient to fully satisfy the judgment, together with costs and interest. Wood's lies about Cotton Hall do not meet his burden.

Wood also fails to sufficiently demonstrate that he cannot post a surety bond. Wood's attestation that he does "not have the liquid **cash**" for a bond is disingenuous on several fronts. He avoids disclosing whether he has sufficient liquid **assets**, such

---

[1] Through his falsehoods, Wood is clearly trying to avoid pledging as security the two other more valuable plantations he owns—Huspah and Tomotley.

as stocks and bonds. This dodge is all the more suspect because he is hiding his ~$3 million sale of the second Cotton Hall parcel—which is only half of the publicly documented revenue he generated in 2023 from property sales. Public records demonstrate conclusively that last year alone Wood received $6 million in gross sales of real property—specifically, from his sale of *two* parcels of the Cotton Hall Plantation he now offers as security. Wood has also sold *other* real estate to the tune of ~$4 Million since late 2020.

Given Wood's falsehoods regarding the real property he offers as security, and Wood's failure to disclose the assets he could leverage to obtain a bond, Wood's request should be denied for these reasons alone. Additionally, Wood's request should be denied for wholly failing to meet his burden in establishing that he is entitled to post assets as security, instead of posting a supersedeas bond.

Ultimately, courts have been extremely circumspect of a defendant's attempt to provide "other security" in the form of real estate, and appropriately so. Wood should be required to post a supersedeas bond, as Plaintiffs have requested.

## FACTS

Wood has asked this Court to accept two pieces of real property in lieu of a supersedeas bond. One of those properties is identified as Cotton Hall Plantation. As Wood represents, his wholly owned shell company, The Tomotley Crew, LLC,

purchased that property, consisting of 716.14 acres, for $5,900,000 on October 15, 2020. (Dkt. 155-3). As Wood also represents, he sold a portion of the Cotton Hall property consisting of 232.18 acres on May 8, 2023, to Open Space Institute Land Trust, Inc. ("Open Space"), for $2,550,000. (Dkt. 155-5). The truth in Wood's Motion and supporting documents ends there.

According to recorded deeds, Wood's assertion that he owns the remaining 483.96 acres of Cotton Hall is false. (*See* Dkt. 155, 4). In fact, Wood sold *two* parcels of Cotton Hall—not just the one he admits—consisting of a total of 527.17 acres, to Open Space in 2023 in a three-part deal structured by Todd Crosby, as described in great detail in an article published in the Post & Courier in July 2023:



Todd Crosby, who helped structure a deal that will result in the preservation of the 527-acre Cotton Hall property, is seen on the property in Yemassee, South Carolina, Wednesday, July 5, 2023. Beaufort County Council voted Monday, July 10 to approve the $6 million purchase of the tract through the county's Rural and Critical Lands Preservation Program. Tony Kukulich/Staff

(*See* Declaration of Nicole Wade dated September 19, 2024 ("Wade Decl."), submitted herewith as Exhibit 1, at ¶ 3 and Ex. A at 5). Wood also sold a conservation easement for $450,000 on the 191.39-acre third parcel that he still owns through The Tomotley Crew, LLC as explained in the article:



The Cotton Hall property was divided into three parcels to facilitate the purchase. The 232-acre Deveaux Hill parcel was purchased by the Open Space Institute with a grant from the State Conservation Bank. When that purchase closed in April 2023, the institute secured a one-year option to purchase the second parcel that included an additional 295 acres. The sale on the second parcel is expected to be completed this fall.

**COTTON HALL PLANTATION:** Beaufort County Council approved the purchase of the 527-acre Cotton Hall property in northern Beaufort County. An additional 190 acres will remain in private hands, but a conservation easement will prevent any future development. (Source: Esri)

BRANDON LOCKETT/STAFF

(*Id.* at Ex. A at 6; *see also id.* ¶ 4 and Ex. B (recorded Grant of Conservation Easement, at 79)). The sale of the second parcel described in the July article, which was for $2,949,900, was completed on August 10, 2023, by deed recorded on August 11, 2023:

(*Id.* ¶ 5 and Ex. C). [2]

---

[2] There is no question that the August 10, 2023, sale was one of the parcels of the original Cotton Hall Plantation. The legal description for that sale identifies 294.99 acres, designated as Parcel C, which are a portion of the property conveyed to The Tomotley Crew, LLC by deed recorded on October 19, 2020 with the Beaufort County Register of Deeds Office in Record Book 3923, at Page 539. (Wade Decl. Ex. C). This reference matches the legal description in the deed Wood provided for the sale of the first parcel in May 2023. (*See* Dkt. 155-5, 3). Interestingly, Wood chose to submit the Buyer's Settlement Statement to demonstrate his ownership of Cotton Hall instead of providing the deed. (*See* Dkt. 155-3). But Plaintiffs have provided a copy of the original deed through which Wood obtained Cotton Hall, which was recorded at Record Book 3923, at Page 539. (Wade Decl. at Ex. D).

Thus, Wood purchased the 716-acre Cotton Hall Plantation in 2020 for $5,900,000. In 2023, he sold nearly 75% of the total acreage, consisting of the most valuable portion of the property, in two sales for a total of $5,499,900, and he sold a conservation easement in 2023 for $450,000 covering the ~25% of the property that he kept. Wood thus received $5,949,900, less expenses, from sales related to Cotton Hall in 2023—an amount sufficient to satisfy Plaintiff's judgment or to post a supersedeas bond, and an amount which represents the *entire* purchase price he paid for the property in late 2020. Plaintiffs do not know the current value of the remaining 191-acre parcel, but it is now subject to a conservation easement and obviously not worth anywhere near the *purported* $5 million "valuation" claimed by Wood, via the same broker who helped sell the ~527 acres of Cotton Hall already sold.

With respect to Wood's home at Greenview, Plaintiffs do not dispute that Wood owns the property (although Wood's assertion that the property is "unencumbered" is questionable given Wood's attempted deception regarding Cotton Hall). Further, Zillow and Redfin do not establish the appraised value of a piece of real property, and Wood failed to submit any appraisal evidence sufficient to support his claim regarding the appraisal value of Greenview.

Wood owns other properties through The Tomotley Crew, LLC, and, upon information and belief, Wood is allegedly in the process of negotiating the sale of at least one of those pieces of property, Huspah Plantation, for in excess of $2 million, and that property reportedly could be sold at any moment. That would not only be a hindrance to Plaintiffs' collection efforts but explains why Wood has not offered that property as collateral—to shield the proceeds and move them somewhere Plaintiffs will have a difficult time reaching.

## ARGUMENT

As set forth in Plaintiffs' Motion for Supersedeas Bond, Plaintiffs have requested, and are therefore absolutely entitled to, a supersedeas bond during the pendency of Wood's appeal. *See, e.g.*, *Auto. Prot. Corp.—APCO v. NBA Auto., Inc.*, No. 1:18-cv-620-MLB, 2022 WL 18459153, at *1 (N.D. Ga. Jan. 21, 2022). Plaintiffs have requested a bond in the amount of at least $4,731,807.61, which is the amount of their judgment plus costs and one year of post-judgment interest.[3] Wood has requested to post two pieces of real property in lieu of a surety bond, but

---

[3] The Notice of Appeal was filed just under 30 days after entry of judgment, and according to the most recent statistics available from the Administrative Office of the United States Courts, the median time interval in the Eleventh Circuit Court of Appeals between the filing of a Notice of Appeal and entry of the final order on the merits was 10.6 months. *See* Table B-4A—U.S. Courts of Appeals Judicial Business (Sept. 30, 2023), *avail. at* https://www.uscourts.gov/statistics/table/b-4a/judicial-business/2023/09/30.

he has failed to establish that it would be appropriate for the Court to accept his alternative security in lieu of a bond.

## I.   Wood's Renewed Rule 50(b) Motion Does Not Obviate the Required Bond.

As an initial matter, Wood incorrectly contends that his filing of a motion pursuant to Federal Rule of Civil Procedure 50(b) entitles him to supersedeas without a bond. (*See* Dkt. 155, 11). That argument has been explicitly rejected by this Court, which recognized that "[e]ven if the motion for a new trial shall act as 'supersedeas,' the Court would still be obligated to honor the Plaintiff-appellee's request for bond under O.C.G.A. § 5-6-46(a)." *Bennett v. Hendrix*, No. 1:00-CV-2520-TWT, 2007 WL 2668134, at *2 (N.D. Ga. Sept. 5, 2007) (also recognizing that "[n]othing in the statute prevents this Court from requiring the Defendant to post a bond."). Plaintiffs have requested a bond and are entitled to one.

## II.   Wood Has the Burden of Demonstrating the Value of Alternative Security.

Both federal and Georgia law give the Court discretion to require a supersedeas bond "or other security." Fed. R. Civ. P. 62(b); *accord* O.C.G.A. § 5-6-46(a) (providing that "the trial court shall require that supersedeas bond or other form of security be given with such surety and in such amount as the court may require"). But regardless of the form of security, the amount posted should "preserve the status quo while protecting the non-appealing party's rights pending appeal" and

"generally should cover the potential judgment, appeal costs, interest and damages for the delay." *Auto. Prot. Corp.*, 2022 WL 18459153, at *1 (quotations omitted).

The burden is on Wood to justify anything less than a full supersedeas bond. This Court has recognized that "[t]here are two circumstances where a supersedeas bond can be waived, each of which requires the party seeking waiver to 'objectively demonstrate' valid reasons for the waiver." *See, e.g., id*. at *1 n.1 (quoting *Poplar Grove Planting & Refining Co. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1191 (5th Cir. 1979))[4]. One of those circumstances is the one obliquely claimed by Wood: that he lacks ability to post the full amount of the bond. If Wood proffers evidence to establish that he cannot post a bond, then the court "is required to 'fashion some other arrangement for substitute security . . . which would furnish equal protection to the judgment creditor.'" *Latino Enters. v. Taco Maker, Inc.*, No. 1:17-cv-649-TCB, 2018 WL 10128074, at *1 (N.D. Ga. Apr. 27, 2018) (quoting *Poplar Grove*, 600 F.2d at 1191). The Court in *Poplar Grove* directed that "[i]f a court chooses to depart from the usual requirement of a full security supersedeas bond to suspend the operation of an unconditional money judgment, it should place the burden on the moving party to objectively demonstrate the reasons for such a departure. It is not

---

[4] The Eleventh Circuit has adopted as binding precedent all decisions of the former Fifth Circuit decided before October 1, 1981. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

the burden of the judgment creditor to initiate contrary proof." *Poplar Grove*, 600 F.2d at 1191.

Wood's motion does not satisfy his burden to establish that he cannot post a supersedeas bond. This Court has held that vague assertions in a declaration are insufficient to show a financial inability to post a full supersedeas bond. In *Latino Enterprises*, for example, the Court rejected the defendant's declaration where it "failed to provide evidence such as its most recent tax returns, a 2017 profit-and-loss statement, reports on accounts receivable aging or accounts payable aging, a 2017 balance sheet, or financial statements filed with a bank in the last five years to support a loan application or line of credit." *Latino Enters.*, 2018 WL 10128074, at *2*; accord Federal Trade Comm'n v. Nat'l Urological Grp., Inc.*, No. 1:04-CV-3294-CAP, 2017 WL 7731215, at *2 (N.D. Ga. Dec. 20, 2017) (rejecting individual's claim that he could not post bond where "[t]he record contains evidence that [defendant] has previously dissipated assets . . . and had other forms of liquidity, so the absence of documents pertaining to his finances leaves doubt" regarding his inability to meet the bond requirement). The court in *Latino Enterprises* also rejected the defendant's attempt to rely on documents that were not properly authenticated and otherwise inadmissible under the Federal Rules of Evidence. *Latino Enters.*, 2018 WL 10128074, at *2 and n.1.

Wood has stated vaguely and in one self-serving statement only that he "made an effort to obtain a supersedeas bond" and "cannot obtain a surety bond because I do not have the liquid cash necessary for the issuance of a bond." (Dkt. 155-2 ¶ 10). He does not provide any further detail, including describing what efforts he made to obtain a supersedeas bond or providing any evidentiary support for his claim. Nor does he provide any evidence to support his assertion that he otherwise has insufficient liquidity—an assertion belied by the recent sale of the very same property he now offers as collateral. Indeed, it is unclear what Wood means by "liquid cash," and he does not explain what collateral he attempted to use to obtain a bond other than "liquid cash." For example, he does not explain whether he has investment accounts that he attempted to use for collateral. Nor does he indicate whether he attempted to use the properties he offers in his motion as collateral for a bond or to obtain a mortgage or whether he attempted to use the Inn at Cotton Hall, which he operates on the remaining piece of the Cotton Hall Plantation, as collateral.

Moreover, in addition to the two properties identified in his motion, **Wood owns at least two other properties—Tomotley Plantation, which he purchased in April 2020 for $5,900,000, and Huspah Plantation, which he purchased in December 2020 for $2,700,000**. Wood does not describe whether he attempted to use these properties as collateral or whether he has attempted to obtain mortgages

on any of these properties to obtain funds for a bond. Wood does not offer any information about his apparent proposed sale of Huspah or what he plans to do with the funds generated from any such sale.

In short, Wood has wholly failed to satisfy his obligation to establish that he cannot post a surety bond.

## III. Wood Has Not Shown that the Alternative Security Would Adequately Protect Plaintiffs' Interest.

Nor does Wood's Motion demonstrate that his proposed alternative form of security would adequately protect Plaintiffs during the appeal, including because of the obviously false representations about the Cotton Hall property and the generally recognized need to pledge far more than the value of the judgment when using real estate as "other security."

### A. Wood has not shown the value of the alternative security.

Wood must demonstrate the value of the proposed alternative security. At the outset, Wood wholly failed to take any steps to establish the value of the Greenview property, beyond pointing this Court to Redfin and Zillow website links. The purported Redfin and Zillow "estimates" on which Wood relies, which were not

even attached to his declaration, are inadmissible hearsay under Federal Rule of Evidence 803(17) and should not be considered by this Court.[5]

Regardless, even if this Court were to accept Wood's insufficient "valuation" of Greenview, the Cotton Hall property offered by Wood is not what he purports it to be. The remaining portion that Wood owns is clearly not worth $4 million, and Wood would have needed to provide actual appraisals to justify the use of any of his real property in South Carolina as collateral in place of a supersedeas bond.[6]

---

[5] Defendant wholly failed to lay any foundation to establish that the values reported by these Internet sites meet any hearsay objection, and Plaintiffs' supporting authority and response in this regard is extremely limited given Defendant's failure to even attempt to lay a foundation. *See, e.g.*, *In re Cocreham*, 2013 WL 4510694 (Bankr. E.D. Cal. 2013) ("[R]eports such as Zillow are not compilations made admissible by Fed. R. Evid. 803(17)."); *In re Slovak*, 489 B.R. 824, 826 (D. Minn. 2013) (declining to consider the debtor's estimates of the value of his property obtained from Zillow.com and Appraisal.com, the court stated that "[i]nternet searches are insufficient evidence of property value because they are at best questionable and at worst evidence of nothing"). Additionally, many Courts have further noted the unreliability of online estimates, such as Zillow. *See, e.g.*, *Baaith v. Bank of America, N.A.*, 2017 WL 11068554 (N.D. Ga. July 21, 2017) (noting "Zillow's own website characterizes its estimated home values as merely "a starting point in determining a home's value and [they are] not an official appraisal." *See* "Zestimate," https://www.zillow.com/zestimate"); *In re DaRosa*, 442 B.R. 173, 177 (Bankr. D. Mass. 2010) (noting Zillow is "inherently unreliable" because "it is a participatory [s]ite almost like Wikipedia. Whereas Wikipedia allows anyone to input or change specific entries, Zillow allows homeowners to do so.").

[6] Even if this Court were to assume, *arguendo*, the accuracy of the purported and insufficient valuation proffered by Todd Crosby, on a per acre basis, because Wood apparently owns only ~190 acres rather than ~484 acres, the value of the property would be less than $2 million and nowhere near the $5 Million range.

Wood's only legal support for providing real property as security in lieu of a supersedeas bond is an opinion from the Western District of Tennessee in which the court did ***not*** accept the offered collateral. *Uballe v. Lieberman*, 2023 WL 5621914 (W.D. Tenn. Aug. 30, 2023). The defendant in *Uballe* offered her own assertions that her properties were unencumbered and provided tax notices to establish value. Similarly, Wood offers his own assertion that his properties are unencumbered (one of which is known to be false) together with Zillow and Redfin estimates for one property and a one-paragraph assessment from a real estate agent which is deliberately misleading as to the appropriate listing price for the other property as the majority of the property has already been sold by Wood. Despite Wood's claim that he "provides straight-forward appraisals of the property," (*see* Dkt. 155, 8), he has clearly done no such thing. Nowhere attached to his Motion is there a single appraisal of any of the property he has proffered. He likely has appraisals for Cotton Hall, and he could get an appraisal of Greenview for a couple of hundred dollars, but he has failed to do so. Nor has he obtained a title search—which again should cost no more than a few hundred dollars—for either property to demonstrate that he owns the properties free of liens.

A case relied on by the *Uballe* court is instructive. In *Allied Erecting & Dismantling Co. v. United States Steel Corp.*, the Northern District of Ohio rejected

the defendant's proposed alternative security where it could not be certain of the value of the property, and "there are significant reasons to doubt Allied's valuation of its proposed alternative security." 2016 WL 1106854, at *19 (N.D. Ohio Mar. 21, 2016); *accord Advanced Estimating Sys., Inc. v. Riney*, 171 F.R.D. 327, 328 (S.D. Fla. 1997) (rejecting a copyright as alternative security because "[t]he Court does not believe that the exception to the rule requiring full security should be construed to permit a defendant to post security of uncertain value in place of a full supersedeas bond"). The *Allied* court recognized that other courts that have accepted alternative security have required "**nearly twice the value** of the judgment debt in alternative security" or that the judgment debtor "place into escrow all outstanding shares of the company." 2016 WL 1106854 at *19 (emphasis added); *accord Brooktree Corp. v. Advanced Micro Devices, Inc.*, 757 F. Supp. 1101, 1104-05 (S.D. Cal. 1990) (permitting company to post alternative security of real estate but noting that "[r]eal property values are subject to substantial variation," and requiring company "to post real property security with a **value of twice the amount** of the judgment") (emphasis added).[7] The *Allied* court further found that "[i]t is also noteworthy that the proposed alternative security was rejected by the sureties that Allied approached in its attempts

---

[7] Double the amount of the judgment here would be $9 million, and double the amount requested by Plaintiffs for a supersedeas bond would be $9,463,615.22.

to obtain a supersedeas bond. The fact that three independent, third party sureties have rejected as collateral for the bond the very assets Allied is now offering to U.S. Steel as alternative security is strong evidence that the alternative security is inadequate and should be rejected." *Id.*

In this case, Wood has not even demonstrated that he attempted to obtain a bond using the property as collateral, and he has provided no reliable evidence as to the value of the property.

**B. Wood has not shown how the "collateral" will protect Plaintiffs.**

Additionally, Wood has not explained exactly how the use of real property as "collateral" in this case would work—particularly given that the Cotton Hall property (and every property owned by Wood except for Greenview) is titled in the name of The Tomotley Crew, LLC—or how Plaintiffs would be sufficiently protected to the same degree as if Wood posted a supersedeas bond.

One factor that courts consider when assessing the value of alternative security compared to a full supersedeas bond is "the complexity and length of the collection process." *Denver Global Prods., Inc. v. Leon*, 2019 WL 2057277, at *2 (W.D.N.C. May 9, 2019). The court in *Denver Global* rejected the debtor's attempt to substitute a judicial lien on a home for a supersedeas bond, noting that "[f]aced with similar proposed alternatives, courts have rejected a judgment creditor's lien

on real property as a suitable alternative to the 'full and fast relief' offered by a supersedeas bond because of the lengthy and burdensome process required to enforce the lien through an execution sale of the property." *Id.*; *accord Lech v. Jackson*, 2018 WL 2183984, at *2 (D. Colo. May 10, 2018) ("The fact that defendants could place a lien on plaintiffs' property is not a proper substitute for the supersedeas bond requirement given that defendants would have to wait until the property is sold to recover the amount of the lien."); *Sierra Club v. El Paso Gold Mines, Inc.*, 2003 WL 25265871, at *9-10 (D. Colo. Apr. 21, 2003) (rejecting real property as alternative security where there was no "assessment of property value" and "the collection process proposed by defendant is cumbersome because the [plaintiff] would be forced to conduct a sheriff's sale of the real property to satisfy the judgment").

Alternative security, particularly real property, is routinely rejected where the appealing party does not demonstrate that the security will adequately protect the prevailing party. The court in *Sierra Club* stated that the defendant's offer "to post security in the form of deeds covering all of the assets that it owns" provided insufficient protection to the prevailing party because "Defendant's proposal does not ensure that the real estate will not be encumbered or transferred during the pendency of the appeal." *Sierra Club*, 2003 WL 2526581, at *9. The court found it

relevant that the defendant had not "attempted to use the real properties as collateral to obtain a bank loan to finance a supersedeas bond" despite maintaining that the property was sufficiently valuable to act as security on appeal. *Id.* at *10.

In the Eleventh Circuit, the Middle District of Florida similarly rejected a defendant's argument that a federal tax lien on his home was sufficient security in lieu of a supersedeas bond. *U.S. v. O'Callaghan*, 805 F. Supp. 2d 1321, 1325-26 (M.D. Fla. 2011). The court first recognized that "to secure a judgment, real property must typically retain higher value than the base value of the judgment." *Id.* at 1325. Otherwise, the judgment would be "subject to the whims of the housing market and [defendant]'s willingness to maintain the value of the residence." *Id.* The court, noting that "a person has little incentive to maintain a property he is likely to lose," recognized that the defendant in that case had even less incentive to maintain a property he was likely to relinquish to the plaintiff, especially given the impression that Defendant was "overtly hostile" to Plaintiff. *Id.* at 1326. And even if the defendant did maintain the property, "absent a bond the [prevailing party] lacks protection against damage to the house." *Id.* Thus, the proposed security was "of both uncertain and inadequate value" and therefore insufficient "to protect the judgment creditor's position from erosion during [the] period that its right to execute is obstructed by a stay pending appeal." *Id.* (quoting *Olympia Equip. Leasing Co. v.*

*Western Union Tel. Co.*, 786 F.2d 794, 800 (7th Cir. 1986) (Easterbrook, J., concurring)).[8] Defendant Wood is, quite obviously following trial, "overtly hostile" to Plaintiffs, and he has routinely promised that he would not "voluntarily" pay Plaintiffs "one thin dime."

A recent opinion from the Eastern District of Missouri rejected real estate in lieu of a supersedeas bond where "Defendants have not cited, and the Court has not found, any precedent in the Eighth Circuit for accepting real property as security in lieu of a supersedeas bond under Rule 62(b)." *United States ex rel. Cairns v. D.S. Medical, L.L.C.*, 2020 WL 2556991, at *2 (E.D. Mo. May 20, 2020). The *Cairns* court continued:

> And from the Court's review, the few district courts in other jurisdictions that have done so have required that the value of the property exceed the judgment amount. . . .
>
> Moreover, the collection process with respect to real property is neither simple nor certain to provide the 'full and fast relief' that a supersedeas bond would. Further complicating the process is that the Property is not owned by a named party. Finally, the Court is not convinced that Defendants' only option to obtain a supersedeas bond is to require [the property owner] to sell the real property.

---

[8] In *Olympia*, the Seventh Circuit approved alternative security of $10 million in cash, $10 million in accounts receivable, and a $70 million security interest in physical assets to secure a judgment of $35 million. 786 F. 2d at 796.

*Id.* Here, as in *Cairns*, the defendant does not actually own the property in his own name, and he provided no explanation whatsoever as to how the property would be securely pledged by a non-party in a way that would protect Plaintiffs.

Even if real estate could be used to provide some collateral, there is no reason it should be the sole collateral. The Central District of California, for example, rejected the proffer of real property in lieu of a surety bond due to the "uncertainty and variability" of the value of the property, "along with the potential complexity of the collection process." *MAG Aerospace Indus., LLC v. Precise Aerospace Mfg., Inc.*, 2019 WL 13136758, at *1 (C.D. Cal. Oct. 1, 2019). But the court recognized that "the pledged properties do provide [plaintiff] with 'at least some degree of security.'" *Id*. Thus, the court required that the defendant post the properties in addition to a smaller supersedeas bond. *Id.*

Courts have even rejected alternative security that was based on financial instruments instead of real estate where the defendant did not demonstrate that the prevailing party's rights would be sufficiently protected. For example, a California district court rejected either the maintenance of "an investment account with cash and/or marketable securities worth at least the amount of the judgment" or a "standby letter of credit" where the defendant did not provide information, such as a copy of the letter of credit, to "establish that it would be as secure as a supersedeas bond."

*Clark v. Hidden Valley Lake Ass'n*, 2018 WL 2412136, at *4 (N.D. Cal. May 29, 2018). And a New York district court rejected a proposal to place the amount of the judgment in escrow in an interest-bearing account where the defendants did not "provide[] any details as to how such a process would work, including who would be the escrowee and what rate of interest would be acceptable." *Leevson v. Aqualife USA, Inc.*, 2017 WL 6541766, at *4 (E.D.N.Y. Dec. 8, 2017), *R&R adopted,* 2017 WL 6550683 (E.D.N.Y. Dec. 21, 2017); *accord One Bank & Trust, N.A. v. Galea*, 2013 WL 679901, at *2 (E.D. Ark. Feb. 25, 2013) (rejecting certificate of deposit as alternative security where collection could be disrupted by bankruptcy of the defendant or failure of the bank).

Absent evidence of *legitimate* appraisals of property valued well in excess of the amount of the judgment to protect against potential damage to the property and the vagaries of the real estate market, and a specific plan demonstrating that Plaintiffs' rights would be absolutely protected, there is no reason for this Court to depart from the standard requirement that Wood post a supersedeas bond for the privilege of preventing Plaintiffs from collecting their judgment while he pursues his frivolous appeal.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs request that the Court deny Wood's Motion for Approval of Supersedeas Bond and order Wood to post a customary supersedeas bond in the amount of $4,731,807.61 instanter.

Respectfully submitted this 20th day of September, 2024.

/s/*Milinda Brown*
Andrew M. Beal
Georgia Bar No. 043842
drew@beal.law
Milinda L. Brown
Georgia Bar No. 363307
milinda@beal.law

Beal Sutherland Berlin & Brown LLP
2200 Century Parkway NE, Suite 100
Atlanta, GA 30345
Telephone: (678) 449-0422
*Attorneys for Plaintiffs*

## CERTIFICATE UNDER L.R. 7.1D

Pursuant to Northern District of Georgia Civil Local Rule 7.1D, the undersigned counsel certifies that the foregoing document is a computer document and was prepared in Times New Roman 14-point font, as mandated in Local Rule 5.1C.

Dated: September 20, 2024.

/s/ *Milinda Brown*
*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| NICOLE JENNINGS WADE, JONATHAN D. GRUNBERG, and G. TAYLOR WILSON,<br><br>    Plaintiffs,<br><br>  v.<br><br>L. LIN WOOD,<br><br>    Defendant. | Case No. 1:22-cv-1073-MLB |

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day served a copy of the foregoing pleading upon all parties of record by filing same with the Court's electronic filing system which will deliver a copy to all counsel of record.

Respectfully submitted, this the 20th day of September, 2024.

**BEAL SUTHERLAND**
**BERLIN & BROWN, LLC**


/s/ *Milinda Brown*
Milinda Brown
Georgia Bar No. 363307

-26-