EXHIBIT 1

DECLARATION OF NICOLE WADE

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

NICOLE JENNINGS WADE,
JONATHAN D. GRUNBERG, and
G. TAYLOR WILSON,

         Plaintiffs,

   v.

L. LIN WOOD,

         Defendant.

Case No. 1:22-cv-1073-MLB

## DECLARATION OF NICOLE JENNINGS WADE

I, Nicole Jennings Wade, declare as follows:

1.      I am one of the plaintiffs in this action.  I have personal knowledge of the facts set forth in this declaration, am over 18 years of age, and am otherwise competent to make this declaration.

2.      I submit this declaration in support of Plaintiffs' Response to Defendant's Motion for Approval of Supersedeas Bond.

3.      Attached hereto as Exhibit A is a true and correct copy of an article titled "Beaufort County buys 527 wild acres blending conservation and recreation," written by Tony Kukulich and published on or about July 12, 2023, in the Post and

Courier, a South Carolina paper. The article is available at https://www.postandcourier.com/hilton-head/beaufort-county-buys-527-wild-acres-blending-conservation-and-recreation/article_eae4cbfa-1f3c-11ee-af4a-c7d4703049ea.html.

4.      Attached hereto as Exhibit B is a true and correct copy of the Grant of Conservation Easement from The Tomotley Crew, LLC to Beaufort County Open Land Trust recorded on or about May 10, 2023, with the Beaufort County, South Carolina, Register of Deeds at Book 4240, Pages 2613-2692, which I obtained online from the website of the Beaufort County Register of Deeds at https://rod.beaufortcountysc.gov/BrowserViewDMP/.

5.      Attached hereto as Exhibit C is a true and correct copy of the Title to Real Estate (General Warranty Deed and Quit Claim Deed) from The Tomotley Crew, LLC to Open Space Institute Land Trust, Inc. recorded with the Beaufort County, South Carolina, Register of Deeds on or about August 11, 2023, at Book 4266, Pages 1553-1557, which I obtained online from the website of the Beaufort County Register of Deeds at https://rod.beaufortcountysc.gov/BrowserViewDMP/.

6.      Attached hereto as Exhibit D is a true and correct copy of the Title to Real Estate (Limited Warranty) from S.A. de Kock, Trustee for the 1992 Joseph C. Harden and Allyson J. Harden Irrevocable Trust, dated December 31, 1992, to The

Tomotley Crew, LLC recorded with the Beaufort County, South Carolina, Register of Deeds on or about October 19, 2020, at Book 3923, Pages 0539-0543, which I obtained online from the website of the Beaufort County Register of Deeds at https://rod.beaufortcountysc.gov/BrowserViewDMP/.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing testimony is true and correct to the best of my personal knowledge.

Executed this 19th day of September, 2024, in Atlanta, Georgia.

Nicole Jennings Wade

3

EXHIBIT A

POST AND COURIER ARTICLE

https://www.postandcourier.com/hilton-head/beaufort-county-buys-527-wild-acres-blending-conservation-and-recreation/article_eae4cbfa-1f3c-11ee-af4a-c7d4703049ea.html

EDITOR'S PICK

# Beaufort County buys 527 wild acres blending conservation and recreation

BY TONY KUKULICH TKUKULICH@POSTANDCOURIER.COM

JUL 12, 2023



The 527-acre Cotton Hall property features a diverse landscape in Yemassee, South Carolina, seen Wednesday, July 5, 2023. Beaufort County Council voted Monday, July 10 to approve the $6 million purchase of the tract through the county's Rural and Critical Lands Preservation Program. Tony Kukulich/Staff

YEMASSEE — The Cotton Hall property located in northern Beaufort County has long been high on the wish list of Lowcountry land conservation organizations.

When it went up for sale late last year, those organizations were well aware of the important role it could play creating a region-spanning conservation corridor.

"It's been a target of the conservation community for a long time," said Nate Berry, chief land protection officer for the Open Space Institute.

Beaufort County officials also recognized the chance to purchase land with strong recreation potential for county residents.

Closing a deal on the property would be a win on multiple fronts. Getting to that point, however, required aligning a lot of moving parts.

Those efforts came to a head July 10 when the Beaufort County Council approved the $6 million purchase of the 527-acre property by a unanimous vote, guaranteeing its preservation in perpetuity under the county's Rural and Critical Lands Preservation Program.

**HILTON HEAD**

**Neighbors call Hilton Head woman's death in alligator attack 'absolutely shocking'**

BY TONY KUKULICH TKUKULICH@POSTANDCOURIER.COM

"I'd just like to say that this is an outstanding use of our funds, and it will be an asset to everyone in the region," said Councilwoman Alice Howard as the motion went to a vote.

## What makes Cotton Hall important?

There are about 300,000 acres of protected land in the ACE Basin, which is the watershed formed by the Ashepoo, Combahee and Edisto rivers. To the south, the Savannah River Preserve includes approximately 430,000 acres of protected land anchored by the Savannah River National Wildlife Refuge.



Roseate spoonbills perch over a saltwater pond on the Cotton Hall property in Yemassee, South Carolina, seen Wednesday, July 5, 2023. Beaufort County Council voted Monday, July 10 to approve the $6 million purchase of the 527-acre tract through the county's Rural and Critical Lands Preservation Program. Tony Kukulich/Staff

Nestled between the ACE Basin and the Savannah River Preserve is Cotton Hall. Surrounded by other large tracts of preserved land, its location makes the property important in the long-term picture of Lowcountry conservation.

"It's really our goal to create a bridge of protected land that connects those two conservation hotspots," Berry explained.

The location also caught the county's eye. Mike McShane, chairman of the newly established Green Space Advisory Committee, said the county was interested in finding a property that wouldn't require a boat to gain access, which is the case for much of the preserved land that's open to the public.

Cotton Hall fronts U.S. Highway 17 for nearly 2.5 miles. Eventually, it will allow easy public access to fishing, hiking and other outdoor, recreational activities.

# Photos: Beaufort County Council approved purchase of 500-acre Cotton Hall parcel

At more than 500 acres, the Cotton Hall property features a diverse landscape located near Yemassee, South Carolina, seen Wednesday, July 5, 2023. Beaufort County Council voted Monday, July 10 to approve the purchase of the tract.

1 of 12



The 527-acre Cotton Hall property features a diverse landscape in Yemassee, South Carolina, seen Wednesday, July 5, 20... Beaufort County Council voted Monday, July 10 to approve the $6 million purchase of the tract through the county's Rur... Critical Lands Preservation Program. Tony Kukulich/Staff

**TONY KUKULICH**

"It'll be the only property in Beaufort County where the public will have access to the ACE Basin without needing a boat," said Beaufort County Administrator Eric Greenway.

The property features a variety of landscapes including mature upland forest, open fields, a saltwater pond, flooded impoundments and bottomland hardwoods.

"It's jaw-dropping gorgeous," said Berry.



**HILTON HEAD**

Beaufort County administrator named in misconduct complaint

BY TONY KUKULICH TKUKULICH@POSTANDCOURIER.COM

## Bringing the deal together

Cotton Hall hit the market in December 2022 as a 716-acre parcel brokered by Todd Crosby, who specializes in large-parcel land sales. Crosby also focuses on conservation opportunities and helped structure a deal between the land owner and the Open Space Institute.

"There are properties like this one that I just believe need to be protected," Crosby said. "If it's all developed, we've lost something that can't be replaced."

Once Berry was aware that Cotton Hall was available, he turned to Beaufort County officials knowing they were looking for an opportunity to put a passive park in the northern reaches of the county.

"We thought this would be perfect," Berry said.



Todd Crosby, who helped structure a deal that will result in the preservation of the 527-acre Cotton Hall property, is seen on the property in Yemassee, South Carolina, Wednesday, July 5, 2023. Beaufort County Council voted Monday, July 10 to approve the $6 million purchase of the tract through the county's Rural and Critical Lands Preservation Program. Tony Kukulich/Staff

Berry toured the property with county representatives, and they agreed with his assessment.



**HILTON HEAD**

**12,000 acres preserved in fast-developing part of SC**

BY TONY KUKULICH TKUKULICH@POSTANDCOURIER.COM

The challenge was then to get the land off the market before it could be scooped up by a developer. To that end, the Open Space Institute agreed to act as an intermediary, purchasing the land and holding it until the county was prepared to move forward.

"Government entities generally can't move as quickly as land trusts," Berry explained. "That's a big reason why we exist."



**COTTON HALL PLANTATION:** Beaufort County Council approved the purchase of the 527-acre Cotton Hall property in northern Beaufort County. An additional 190 acres will remain in private hands, but a conservation easement will prevent any future development. (Source: Esri)

**BRANDON LOCKETT/STAFF**

The Cotton Hall property was divided into three parcels to facilitate the purchase. The 232-acre Deveaux Hill parcel was purchased by the Open Space Institute with a grant from the State Conservation Bank. When that purchase closed in April 2023, the institute secured a one-year option to purchase the second parcel that included an additional 295 acres. The sale on the second parcel is expected to be completed this fall.

Approximately 190 acres will remain in private hands, though a conservation easement is already in place that will prevent future development.

While Crosby and Berry were working their end of the deal, the Rural and Critical Lands Preservation Board was going through its steps to approve to purchase the both parcels from the Open Space Institute. The board approved the deal during its June 8 meeting.



**NEWS**

**Ancient knife discovered near Pee Dee River could rewrite South Carolina history**
BY SETH TAYLOR STAYLOR@POSTANDCOURIER.COM

With County Council's approval now in hand, it's expected that Rural and Critical Lands will complete its purchase of all 527 acres from the Open Space Institute later this year.

Kate Schaefer, director of land protection for the Open Land Trust, praised all parties involved in making the Cotton Hall purchase a reality.

"When important conservation priorities emerge on the market, everyone needs to react quickly," Schaefer said. "It's wonderful thing for the Rural and Critical Program and it's a great investment for Beaufort County."

---

Reach Tony Kukulich at 843-709-8929

MORE INFORMATION

School bond seeking $439M to go to Beaufort County voters in November

Loss of trust leads to firing of 2 senior Parris Island leaders

Amid misconduct investigation, county administrator placed on administrative leave

**TONY KUKULICH**

EXHIBIT B

GRANT OF CONSERVATION EASEMENT

BEAUFORT COUNTY SC - ROD
BK 4240 Pgs 2613-2692
2023021569 EASM
05/10/2023 11:48:12 AM
RCPT# 1129573
RECORDING FEES 25.00
County Tax County 495.00
State Tax State 1,170.00

STATE OF SOUTH CAROLINA   )
                                 )     GRANT OF CONSERVATION EASEMENT

COUNTY OF BEAUFORT       )

THIS GRANT OF CONSERVATION EASEMENT (hereinafter "Easement") is made this ___10___ day of May, 2023, by THE TOMOTLEY CREW, LLC, a South Carolina limited liability company (hereinafter **"Grantor"**, having an address at 300 Cotton Hall Road, Yemassee, SC 29445 in favor of the Beaufort County Open Land Trust (hereinafter "**Grantee**"), a South Carolina charitable corporation and a publicly supported corporation organized and operated under §501(c)(3) of the Internal Revenue Code of 1986, as amended (hereinafter the "Code") and not a private foundation under Code §509, with a business address at P. O. Box 75, Beaufort, SC 29901.

WHEREAS, **Grantor** is the sole owner in fee simple of certain real property known as "Cotton Hall" containing approximately one hundred and ninety-one and thirty-nine hundredths (191.39) acres, identified as a portion of Beaufort County TMS# R170-012-000-0001-0000, more particularly described in Exhibit "A" and incorporated herein by this reference (hereinafter the "Protected Property"); and

WHEREAS, Grantor entered into an Option Agreement with Open Space Institute Land Trust, Inc., a New York not for profit corporation, dated February 27, 2023 to sell certain real property located in Beaufort County, South Carolina, and to place a conservation easement on the Protected Property; and

WHEREAS, Open Space Institute Land Trust, Inc. has Assigned to Grantee its obligation to act as the Grantee under the terms of the conservation easement to be placed on the Protected Property and Grantee has accepted the obligation to act as Grantee under the terms of the conservation easement to be placed on the Protected Property; and

WHEREAS, the Protected Property possesses significant ecological and natural resources, and open space and scenic value, and historic or cultural values of great importance to **Grantor**, to **Grantee** and to the people of South Carolina and this nation, the protection of which will yield significant public benefit; and

WHEREAS, in particular, the Protected Property in its existing relatively natural condition contributes very little nonpoint source pollution to the adjacent creeks and waterways due unobstructed wetlands and uplands surrounding all watercourses that provide for nutrient uptake and sediment deposition as well as the low percentage of impervious surface that reduces sources of pollution and nutrient loading; and

WHEREAS, the Property contains a diversity of relatively natural habitats including active and fallow agricultural fields, mixed pine/hardwood upland forest, and forested and non-forested wetlands, all of which can support a variety of floral and faunal species; and

WHEREAS the Protected Property consists of priority coastal plain bird stopover, foraging, and breeding habitat named in the regional South Atlantic Migratory Bird Initiative

WHEREAS, the Protected Property provides habitat or contains habitat with the potential to support numerous game and non-game mammals including, but not limited to white-tailed deer (*Odocoileus virginianus*), bobcat (*Lynx rufus*), fox squirrel (*Sciurus niger*), and numerous other avian, reptile, amphibian, insect, arachnid and mammal species that are of great importance to the public; and,

WHEREAS, the Protected Property provides habitat or contains habitat with the potential to support wildlife habitat functions for neotropical migratory songbirds, wading birds, and diversity of game and non-game avian species including, but not limited to mourning dove (*Zenaida macroura*), wild turkey (*Meleagris gallopavo*), bald eagle (*Haliaeetus leucocephalus*), and barred owl (*Strix varia*); and

WHEREAS, more specifically, the Protected Property contains habitat with the potential to support rare, threatened or endangered species and species of concern which have known occurrences in Beaufort County including but not limited to Spotted Turtle (*Clemmys guttata*), the Eastern Diamondback Rattlesnake (*Croatalus adamanteus*), the Broad-striped Dwarf Siren (*Pseudobranchus striatus*), Woolly Dutchman's-pipe (*Aristolochia tomentosa*), the Long-Horn Orchid (*Habenaria quinqueseta*), Creeping St. John's-wort (*Hypericum adpressum*), Boykin's Lobelia (*Lobelia boykinii*), Bluff Oak (*Quercus austrina*), Harper Beakrush (*Phynchospora harperi*) and Acid-swamp Yellow-eyed Grass (*Xyris serotina*); and

WHEREAS, all of the above fauna and flora in the list of threatened or endangered species and species of concern are listed as priority species for the South Carolina State Wildlife Action Plan; and

WHEREAS, the Protected Property is within the Broad River 8-digit HUC Watershed, and is part of a system supporting numerous high-quality wetland plant communities and highly intact, extensive riparian habitats;

WHEREAS, the Protected Property will provide critical habitat linkages to adjacent protected lands, including Ernest F. Hollings ACE Basin National Wildlife Refuge-Combahee Unit, Binden, Tomotley, Brewton, Rose Hill, Sheldon plantations, Mackay Point, Slater-Buckfield, Mount Repose; and

WHEREAS, Preservation of the Protected Property is pursuant to federal, state and local governmental conservation policy and may achieve a significant public benefit towards the fulfillments of these conservation policies, specifically:

i.   The protection of this property is pursuant to the SC right-to-farm law (SC Code §46-45-10) which states in part "The policy of the State is to conserve, protect, and encourage the development and improvement of its agricultural land and facilities for the production of food and other agricultural products" including silviculture or forestry; and

ii.  The Protected Property helps to fulfill the goals of the South Carolina Forest Legacy Program, including the following specified goals: "protect river systems, wetlands, and their associated upland habitats; reduce forest fragmentation caused by development;

provide buffer areas and connectivity to already protected areas; and promote Best Management Practices for forestry"; and

iii. South Carolina House Bill 4727 Section 48-59-50, B(5) identifies areas suitable for land protection according to conservation connectivity, ecological conservation priorities, and sustainable forestry and agriculture among other categories, of which this property is of high priority; and

iv. Beaufort County Comprehensive Plan and Greenprint Plan, adopted in 2020, identifying properties in rural areas, including the Protected Property, as important for the agricultural value, soil health, and contribution to a working rural landscape; and

WHEREAS, the Protected Property has approximately 175 acres of Soils of Statewide Importance as determined by USDA National Resources Conservation Service; and

WHEREAS, by act of the General Assembly of the State of South Carolina, as enacted in South Carolina Code Ann. (1976, as amended) (hereinafter the "SC Code") §48-59-10, et. Seq. (The South Carolina Conservation Bank Act of 2002) (hereinafter the "Bank"), South Carolina recognizes "There is a critical need to fund the preservation of, and public access to, wildlife habitats, outstanding natural areas, sites of unique ecological significance, historical sites, forestlands, farmlands, watersheds, and open space, and urban parklands as an essential element in the orderly development of the State" and "The protection of open space by acquisition of interests in real property from willing sellers is essential to ensure that the State continues to enjoy the benefits of wildlife habitats, forestlands, farmlands, parks, historical sites, and healthy streams, rivers, bays, and estuaries; for recreational purposes, for scientific study, for aesthetic appreciation, for protection of critical water resources, to maintain the state's position as an attractive location for visitors and new industry, and to preserve the opportunities of future generations to access and benefit from the existence of the state's outstanding natural and historical sites" is of great importance; and

WHEREAS, the specific Conservation Values, as detailed in the Recitals above and outlined in Paragraph 1 below, are summarized hereunder and documented in a report on file at the **Grantee**'s office and incorporated herein by this reference (hereinafter the "Baseline Documentation") and attached as Exhibit B, which consists of maps, reports and photographs (including aerial imagery and on-site photographs taken by a representative of the **Grantee**), and property review occurs prior to easement, and the parties agree that the Baseline Documentation provides, collectively, an accurate representation of the Protected Property at the time of this Easement and is intended to serve as an objective point of reference from which **Grantee** shall monitor and enforce compliance with the terms of this Easement; and

WHEREAS, **Grantor** believes that through this Easement, the natural resources, habitat, beauty and unique ecological character of the Protected Property can be protected in a manner that permits continuing private ownership of land and its continued use and enjoyment; and

WHEREAS, **Grantor** intends to preserve and protect the Conservation Values, as detailed in the Recitals above and outlined in Paragraph 1 below, in perpetuity; and

3

WHEREAS, **Grantor** is willing to forego forever the right to fully exploit the financial potential of the Protected Property by encumbering the Protected Property with this Easement; and

WHEREAS, by act of the General Assembly of the State of South Carolina, as enacted in South Carolina Code Ann. (1976, as amended) (hereinafter the "SC Code") §27-8-10, et. seq. (The South Carolina Conservation Easement Act of 1991) (hereinafter the "Act"), South Carolina recognizes and authorizes the creation of conservation restrictions and easements; and

WHEREAS, this Easement contains the conservation purposes pursuant to the Act, as outlined therein and stated below:

(A) "retaining or protecting natural, scenic, or open-space aspects of real property";

(B) "ensuring the availability of real property for agricultural, forest, recreational, educational, or open-space use";

(C) "protecting natural resources";

(D) "maintaining or enhancing air or water quality" and

WHEREAS, **Grantor** and **Grantee** recognize the natural, scenic, aesthetic, and special character and opportunity for enhancement of the Protected Property, and have the common purpose of the conservation and protection in perpetuity of the Protected Property pursuant to Code §170(h) and in the regulations promulgated thereunder by the United States Department of the Treasury (hereinafter "Treasury Regulations") as follows:

(I)   Preservation of open space (including farmland and forest land) within the meaning of Code §170(h)(4)(A)(iii)(I) for the scenic enjoyment of the general public which will yield a significant public benefit, including the opportunities for scenic enjoyment and the public benefits described in the recitals to this Easement; and

(II)   Preservation of open space (including farmland and forest land) within the meaning of Code §170(h)(4)(A)(iii)(II) pursuant to clearly delineated Federal, state, or local governmental conservation policies which will yield a significant public benefit, including the policies and public benefits described in the recitals to this Easement;

WHEREAS, **Grantor** and **Grantee** agree these purposes can be accomplished by the **Grantor** voluntarily placing perpetual restrictions upon the use of the Protected Property and by providing for the transfer from the **Grantor** to the **Grantee** of affirmative rights for the protection of the Protected Property so as to be considered a "qualified conservation contribution" as such term is defined in Code §170(h) and the Treasury Regulations promulgated thereunder; and

WHEREAS, the **Grantee** is a corporation of which its purposes and powers include one or more of the purposes set forth in SC Code §27-8-20(1); and **Grantee** is a holder of conservation easements as conservation easements are defined by the Act; and, **Grantee** is a publicly supported, tax-exempt, nonprofit corporation organized and operated under Code §501(c)(3) dedicated to the preservation of the irreplaceable natural and historical resources of

4

the South Carolina Lowcountry landscape by protecting significant lands, waters and vistas and is not a private foundation under Code §509;

NOW, THEREFORE, in consideration of the above and in further consideration of the mutual covenants, terms, conditions and restrictions contained herein, and pursuant to §§170(h) and 2031(c) of the Code and pursuant to the laws of the State of South Carolina, the **Grantor** hereby voluntarily grants and conveys to **Grantee** this Easement in perpetuity over the Protected Property of the nature and character and to the extent hereinafter set forth. **Grantor** herein declares that the Protected Property shall be held, transferred, sold, conveyed and occupied subject to the covenants, conditions, and restrictions hereinafter set forth, which covenants, conditions, and restrictions shall be deemed to run with the land in perpetuity and to be a burden on the Protected Property in perpetuity.

1.   Purpose.   The purpose of this Easement (hereinafter the "Purpose") is to protect the Conservation Values (detailed in the Recitals above and outlined below) and to preserve the Protected Property for the continuation of historic and traditional uses and activities, as well as other limited uses, provided no such uses significantly impair or degrade the Conservation Values.  The Conservation Values of the Protected Property include the following:

   1)  Relatively natural habitat and biological diversity,
   2)  Open space for agricultural or forestry use,
   3)  Preservation or enhancement of downstream water quality in Huspah, Broad River and Port Royal Sound watersheds,
   4)  Scenic views of the Protected Property from Cotton Hall Road and public vantage points.

The protection of these Conservation Values by stewardship, enforcement, and monitoring in perpetuity is set forth in this Easement.

**This Purpose is to ensure that the Protected Property will be retained in perpetuity predominantly in its relatively natural and scenic condition for conservation purposes and to prevent any use of the Protected Property that would significantly impair or interfere with the Conservation Values of the Protected Property, while allowing for limited low-impact rural residential, recreational, agricultural, forestry and other open-space uses of the Protected Property that are compatible with and not destructive of those Conservation Values.  It is the intent of the parties that Grantor will not perform, nor knowingly allow others to perform, any act on or affecting the Protected Property that is inconsistent with the Purpose of this Easement.  Grantor understands that nothing in this Easement relieves Grantor of any obligation or restriction on the use of the Protected Property imposed by law.**

2.   Definitions.   For the purposes of this Easement, **Grantor** and **Grantee** agree that those bold-faced terms that appear throughout this Easement shall be defined as follows:

   **Agricultural Activities** shall be defined as activities directly related to the production of plant or animal products on the Protected Property including crop

production, animal husbandry, floriculture and horticulture, in a manner that preserves the long-term productivity of the soil. Permitted activities shall not include **Feedlots**, intensive livestock production facilities nor any type of large-scale operation where animals are unnecessarily confined to maximize intensive large-scale production; however, non-intensive small-scale farming uses for the benefit of **Grantor, Grantor's** family or local agriculture shall be allowed which may include fences, pens and similar containment methods. Notwithstanding the above, commercial aquaculture and/or mariculture activities must have **Approval**.

**Agricultural Structure** shall be defined as any building designed to be used or currently used in conjunction with permitted **Agricultural Activities** or **Forest Management Practices**, not including any structure used as a dwelling for human beings.

**Approval** shall be defined as the prior written consent of the **Grantee** to permit **Grantor** to exercise certain rights described in Paragraphs 4 and 5, or to undertake any activity otherwise permitted as described in Paragraph 10. The rationale for requiring the **Grantor** to receive **Approval** is to afford **Grantee** an adequate opportunity to evaluate the activities in question to confirm if they are designed and will be carried out in a manner that is not inconsistent with the Purpose of this Easement. **Approval** does not relieve **Grantor** of the obligation to obtain all other necessary permits, consents and approvals.

**Building Height** shall be measured, for the purposes of any permitted Residential Structure, from ground elevation or the legal building elevation within a Federal Emergency Management Agency (or successor agency) flood zone, whichever is greater, to the top of the highest structural component, excluding chimneys, antennas and weather vanes.

**Conservation Values** shall mean those values outlined in recitals to this Easement.

**Designated Building Area** shall be defined as those four (4) areas, each no larger than approximately five (5) acres in size, designated for the siting of all **Residential Structures** the location and configuration of which shall be as set forth in Exhibit B to this Conservation Easement and subject to 150' setback from jurisdictional wetlands. Once a **Designated Building Area** is selected for reserved rights, remaining **Designated Building areas** are eliminated from future use.

**Electric Transmission Towers** shall mean "H-shape" towers and power lines or subsequent infrastructure provided by Dominion Energy South Carolina or its successor within the right of way located on the western boundary line of the Land as shown on plat by Thomas G. Stanley, Jr., PLS, of TGS Land Surveying dated March 30, 2023 and entitled "This Plat Prepared at the Request of The Tomotley Crew, LLC A Division of Tax Map # R710 012 000 001 0000 Sheldon Area, Beaufort County, South Carolina". Said plat being recorded April 21, 2023 in Plat Book 161 at Page 136 , aforesaid records.

**Feedlot** shall be defined as any confined area or facility for feeding livestock for commercial purposes, or within which the land is not grazed or cropped at least annually, or which is used to receive livestock that have been raised off the Protected Property for feeding and fattening for market.

**Forest Management Plan** shall be defined as a written plan subject to periodic updates, on file with the **Grantee** and agreed upon by both **Grantor** and **Grantee**, which outlines **Forest Management Practices** on the Protected Property. The **Forest Management Plan** shall be compatible with the terms of this Easement and shall not significantly impair or degrade any of the Conservation Values of the Protected Property at the property level.

**Forest Management Practices** shall be defined as the production, improvement and maintenance of pine and hardwood forest lands for timber production and commercial harvesting, wildlife management, aesthetics or any other purpose. **Forest Management Practices** include silvicultural practices, which are used to control the establishment, growth, composition, health, quality and utilization of forestlands for multiple-use purposes and include, but are not limited to, harvesting, thinning, reforestation, competition control, prescribed fire or fire breaks. **Forest Management Practices** shall follow best management practices of the SC Forestry Commission or successor agency and be compatible with the terms of this Easement and shall not significantly impair or degrade any of the Conservation Values of the Protected Property at the property level.

**Grantee** shall be defined as the above-named §501(c)(3) South Carolina charitable corporation, designated as the holder of this Easement, and its successors and assigns.

**Grantor** shall be defined as the original donor of this Easement and his (or her, their or its) personal representatives, heirs, successors, assigns, and subsequent owners of record.

**Greentree Reservoir** shall be defined as a forested wetland that can be temporarily and periodically flooded.

**Impervious Surface** shall be defined as a hard surface area which either prevents or significantly retards the entry of water into the soil mantle at a rate lower than that present under natural conditions prior to development. Impervious surfaces can include, but are not limited to, roof tops, walkways, patios and decking, enclosed and unenclosed porches, paved driveways, paved parking lots, covered storage areas, concrete or asphalt paving, swimming pools, or other surfaces which similarly impede the natural infiltration of surface and stormwater runoff. **Impervious Surface** specifically excludes ground surfaces covered with sand, gravel, shell sand, crushed stone, or other similar traditional permeable materials.

**Notice** shall be defined as a written communication, not a request for **Approval**, prior to undertaking a permitted activity, as defined in Paragraph 27.

**Recreational Structure** shall be defined as any building designed or used in conjunction with recreational activities on the property, and shall not include any structure used as a permanent or temporary **Residential Structure**.

**Related Outbuilding** shall be defined as any auxiliary structure customarily used as an accessory to a private **Residential Structure** in the South Carolina Lowcountry, including but not limited to utility sheds, detached garages.

**Request for Approval** shall be defined as a written request by **Grantor** for **Approval** by **Grantee** of a defined activity proposed by the **Grantor**.

**Residential Structure** shall be defined as any dwelling having sleeping quarters, sanitary facilities, and cooking facilities, all three of which must be present, which constitutes temporary or permanent residential use or occupancy on the Protected Property by the **Grantor**, permitted lessee, and guests or employees of the **Grantor** or permitted lessee.

**Significant Tree** shall be defined as any *cypress,* Southern Magnolia (*Magnolia grandiflora or* Live Oak *(Quercus virginiana)* having a diameter at breast height of twelve (12) inches or greater.

**Subdivided Tract** shall be defined as a legally divided, transferable parcel of land having a unique tax identification number according to Beaufort County real property tax records.

**Subdivision** shall be defined as the permitted creation of a **Subdivided Tract** after the date of this Easement.

**Upland Impoundments** shall be defined as non-wetland fields with water control structures and dikes, created to control the water levels within the field.

**Water Line** shall be defined as the edge of a waterway or waterbody which is either the critical line as defined by S.C Office of Ocean and Coastal Resource Management or, if no critical line has been established, the mean high water line as defined by the Army Corps of Engineers or established by a surveyor employing the regulatory standards then in effect for its determination. If the critical line or the mean high water line cannot be established or are no longer used to define the edge of a waterway or waterbody, then the comparable defining line as defined by successor entities of the above named agencies shall be used.

**Wetlands** shall be defined as "those areas that are inundated or saturated by surface or ground water at a frequency and duration sufficient to support, and that under normal circumstances do support, a prevalence of vegetation typically adapted for life in

saturated soil conditions," as stated in the United States Army Corps of Engineers Wetlands Delineation Manual (1987, or as amended).

3.    Rights of **Grantee**. **Grantor** hereby conveys the following rights to the **Grantee**:

(A)    Right of Visual Access. To have visual access to the Protected Property, provided that such right shall not be construed to permit general public access over or upon the Protected Property;

(B)    Right to Monitor. To enter upon the Protected Property in a reasonable manner, at reasonable times, with reasonable notice, to monitor compliance with this Easement and to further document natural and manmade features of the Protected Property. The **Grantee** shall limit entry to annual visits (after completion of the Baseline Documentation) unless the **Grantee** has reason to believe there is a violation of the terms of this Easement. **Grantee** shall not unreasonably interfere with **Grantor**'s quiet use and enjoyment of the Protected Property;

(C)    Right to Prevent Inconsistent Uses. To prevent **Grantor** or third parties from conducting any activity or use inconsistent with the Purpose;

(D)    Right to Require Restoration. To require **Grantor** to restore such Conservation Values that may be damaged by any uses or activities prohibited by this Easement, or any activity or use inconsistent with the Purpose to include third party activities.

4.    Reserved Rights. **Grantor** reserves all the rights, uses and activities (collectively, the "Reserved Rights") inherent in fee simple ownership of the Protected Property in its entirety, subject to the specific Restrictions and Limitations of Paragraph 5, which are included to accomplish the Purpose of this Easement stated in Paragraph 1.   In addition, the exercise of all Reserved Rights shall be in full accordance with all applicable local, state and federal laws and regulations, as well as in accordance with the Purpose of this Easement stated in Paragraph 1.

5.    Restrictions and Limitations. **Grantor** will not perform or permit or will perform or permit, as specified below, the following acts or uses on, over or under the Protected Property:

(A)    Subdivision. The Protected Property is currently composed of one (1) tract, which is a portion of Beaufort County TMS# R170-012-000-0001-0000.

**Subdivision** is limited to the reconfiguration and division of the Protected Property into a maximum of two (2) tracts. The configuration of each such **Subdivided Tract** shall be at the **Grantor**'s discretion. **Grantor** shall allocate Reserved Rights among such **Subdivided Tracts** at the time of each **Subdivision** with such allocation being specifically described and noted in the deed transferring ownership of any **Subdivided Tract,** specifically quantitative Reserved Rights including allowances for **Impervious Surface, Residential Structures**, Docks, or any other Reserved Rights as applicable within this Easement.   **Grantor** shall give **Notice** to **Grantee** of any **Subdivision** or reconfiguration of a **Subdivided Tract**.

(B)   Structural Limitations.   The construction, enlargement, removal and replacement of **Residential Structures, Related Outbuildings, Recreation/Education Structures, Agricultural Structures** and all other structures, other than the Electric Transmission Towers, are subject to the following limitations:

I.   Total **Impervious Surface** on the Protected Property shall not exceed a maximum of forty thousand (40,000) square feet in the aggregate.

II.   No **Residential Structure**, **Related Outbuilding**, **Recreational Structure** or **Agricultural Structure** shall exceed forty (40) feet in **Building Height**.

III.   One (1) **Residential Structure** exists for temporary, or permanent/long-term residency, which may be rebuilt and repaired as needed. One (1) new **Residential Structure** may be constructed. **Grantor** is required to obtain **Approval** from **Grantee** prior to the construction, enlargement, removal and replacement of any permitted **Residential Structures**. Each **Residential structure** may be associated with one guest cottage, a guest cottage, not to exceed 2800 square feet in size, may be used for temporary or permanent residency as an accessory dwelling unit to the **residential structure**. **related outbuildings** may include utility sheds, one detached garage, a paved parking area, patios, paved entry roads and walkways, and one swimming pool per Residential Structure.

IV.   **Related Outbuildings, Recreational Structures** and **Agricultural Structures** shall be permitted, provided that the square footage of all **Impervious Surface** on the Protected Property does not exceed the allowance stated in Paragraph 5(B)(I).

IV.   All permitted **Residential Structures,** shall be located within a permitted **Designated Building Area** to be consistent with Exhibit B.   Prior to beginning construction of any **Residential Structure, Grantor** shall select a **Designated Building Area** by providing **Grantee** with signed written **Notice** of the selected **DBA**.   The selection of a **DBA** shall be irrevocable.

V.   Other than permitted **Residential Structures** and their permitted guest cottage, no other structure on the Protected Property shall be used as a temporary or permanent dwelling for human beings.

VII.   Towers.   There shall be no towers on the Protected Property, including, but not limited to, radio, microwave, broadcast, communication and cellular towers, other than the Electric Transmission Towers.

Notwithstanding the above, (i) **Grantor** retains the right to construct, maintain, improve, repair and replace wildlife observation towers; such towers shall not exceed 35 feet in height and shall not be visible from off the Protected Property when viewed from ground elevation, and (ii) Dominion Energy South Carolina or its successor shall have the

right to construct, maintain, improve, repair, and replace the Electric Transmission Towers.

(C)     Buffers.   Buffer Areas, as shown in Exhibit B, the Baseline Documentation Report, shall be subject to the following restrictions:

Grantor and Grantee acknowledge the existing power line easements, "Overhead Transmission Line", and railroad bed, "(Railroad Bed) Old Port Royal Railroad" as recorded in the plat by Thomas G. Stanley, Jr., PLS, of TGS Land Surveying dated March 30, 2023 and entitled "This Plat Prepared at the Request of The Tomotley Crew, LLC A Division of Tax Map # R710 012 000 001 0000 Sheldon Area, Beaufort County, South Carolina". Said plat being recorded April 21, 2023 in Plat Book 161 at Page 136 and any existing powerline easements as shown on a recorded plat or actually on the ground upon inspecting of the property as of the date of the Conservation Easement as noted in the Baseline Documentation Report.

"Setback" Road Buffer. In order to protect the scenic view along public roadways, there shall be no **Impervious Surface**, structures (other than Electric Transmission Towers mailboxes, fencing and gates, including those with columns and fenceposts, utility and service lines for any permitted use under the terms of this Easement, boardwalks, or other structures existing at the time of this Easement as documented in the Baseline Documentation), nor new roads (other than those necessary to access the permitted **Subdivided Tracts**) on that portion of the Protected Property within three hundred (300) feet of the legal or established right-of-way along Cotton Hall Road. **Grantor** reserves the right to engage in **Agriculture Practices** and **Forest Management Practices**, provided there shall be no clearcutting and no activities that endanger the health or survival of **Significant Trees** without **Approval**.   Set back road buffer can occur from the property line and include a firebreak.

Notwithstanding the above, **Grantor** reserves the right to cut any tree, in accordance with applicable governmental laws and regulations, when it is necessary to salvage timber damaged by natural causes, when cutting is necessary to prevent further such damage or personal injury, or when a permitted structure is in danger.

"Waterfront buffers" In order to protect the scenic view from public vantage points along the waterway, as well as to provide an ecological transition zone for wildlife and water quality protection along the waterway, there shall be no **Impervious Surface**, **Agricultural Activities**, structures (other than fencing and gates, utility and service lines for any permitted use under the terms of this Easement, permitted docks or boat ramps, boardwalks, or other structures) nor new roads (other than those necessary to access the permitted Subdivided Tracts) on that portion of the Property within three hundred (300) feet of the existing ponds and impoundments.  Grantor reserves the right to engage in limited **Forest Management Practices**, provided there shall be no clearcutting and no activities that endanger the health or survival of Significant Trees, other than as provided in the easement recorded April 21, 2023 in Plat Book 161 at Page 136 for the Electric

Transmission Towers.  Tree density within the buffer must remain at or above 50 basal area.

(D)  <u>Industrial Uses</u>.  Other than the Electric Transmission Towers, there shall be no industrial uses, activities, or structures.  No right of passage, other than the Electric Transmission Towers, across or upon the Protected Property shall be allowed or granted if that right of passage, other than the Electric Transmission Towers, is used in conjunction with any industrial uses or activities.

(E)  <u>Commercial Uses</u>.  There shall be no commercial uses, activities or structures permitted; with exceptions to include home-based business that do not impair the Conservation Values.  Any such home-based business requires prior **Approval** by the **Grantee**.  No right of passage across or upon the Protected Property shall be allowed or granted if that right of passage is used in conjunction with any commercial uses or activities not permitted in this Easement, other than the Electric Transmission Towers.  For the purposes of this Easement, **Agricultural Activities**, **Forest Management Practices** and the leasing of hunting, trapping and fishing rights, and seasonal daily "pay-to-hunt" activities traditional to the Lowcountry shall not be considered commercial uses.  However, to qualify this Easement for treatment under §2031(c)(8)(B) of the Code, any use of the Protected Property for more than a <u>de minimis</u> use for a commercial recreational activity is prohibited.

Nothwithstanding the above provision, the following activities are permitted:

I.  Weddings and/or special events are allowed on the Protected Property, so long as both the scale and frequency are consistent with the Purpose and Conservation Values of this easement;
II.  Nature-based tourism, agritourism and educational activities associated with the historic, cultural or ecological aspects of the Protected Property and surrounding neighborhood;
III.  Short-term rentals that support I and/or II.

(F)  <u>Services</u>.  Construction of water wells, septic systems, and utility services is limited to serve the allowed uses in Paragraph 4, subject to the Restrictions and Limitations of Paragraph 5, and subject to all applicable governmental laws and regulations. It is permitted to drill water wells of sufficient size and nature for on-site irrigation.

Fuel storage tanks are limited to aboveground or underground gaseous (not liquid) fuel storage tanks and/or aboveground liquid fuel storage tanks to serve the allowed uses in Paragraph 4, subject to the Restrictions and Limitations of Paragraph 5, subject to all applicable governmental laws and regulations.

Grantor and Grantee acknowledge the existing power line easements, "Overhead Transmission Line", and railroad bed, "(Railroad Bed) Old Port Royal Railroad" as recorded in the plat by Thomas G. Stanley, Jr., PLS, of TGS Land Surveying dated March 30, 2023 and entitled "This Plat Prepared at the Request of The Tomotley Crew, LLC A Division of Tax Map # R710 012 000 001 0000 Sheldon Area, Beaufort County, South Carolina". Said plat being recorded April 21, 2023 in Plat Book 161 at Page 136 and any existing powerline easements as

shown on a recorded plat or actually on the ground upon inspecting of the property as of the date of the Conservation Easement as noted in the Baseline Documentation Report.

(G)   <u>Roads and Driveways</u>.  Roads shall be limited to those required to facilitate the uses permitted by this Easement, provided there shall be no road or driveways constructed or covered with **Impervious Surface**.  Maintenance of driveways, roads and roadside ditches shall be limited to standard practices for non-paved roads.

(H)   <u>Boardwalks.</u>  **Boardwalks** providing access to any freshwater **Wetlands** or ponds may be constructed, maintained, repaired, improved, removed or replaced, provided they shall be limited to walkways wider than four (4) feet and associated observation platforms with a maximum of three hundred (300) square feet in the aggregate. There shall be no adverse impact to the freshwater **Wetlands** during construction. This does not count toward impervious surface.

(<u>I</u>)   <u>Landscaping</u>.   Landscaping shall be limited to the management of vegetation associated with the uses allowed by this Easement, including but not limited to, mowing, pruning, trimming, and gardening.  Structural elements of landscaping, including but not limited to walkways and patios, shall be subject to **Impervious Surface** restrictions and limitations as provided for in this Easement.

(J)   <u>Signs</u>.  Signs visible from off the Protected Property shall be limited to a maximum of eight (8) square feet in size.  Billboards are expressly prohibited. Signs shall be placed so as to minimally impact the scenic view as seen from the public roadway.

(K)   <u>Archeological and Paleontological Excavations</u>.   **Grantor** shall give **Notice** to **Grantee** prior to undertaking archeological or paleontological excavation.  Any archeological or paleontological site shall, upon completion of any excavation, be returned to, or as close as possible to, its previous state, unless the site is to be maintained in an excavated condition for interpretive purposes related to education.

(L)   <u>Forestry Uses</u>.  A **Forest Management Plan** prepared by a Registered Forester is required for the Protected Property when deemed appropriate by the **Grantee**. Forestry Uses are limited to those **Forest Management Practices** defined in the **Forest Management Plan** or recommended by the South Carolina Forestry Commission or successor agency. Timber harvests require prior **Approval** by the **Grantee**. **Forest Management Practices** specifically permitted under the terms of this easement include clearing small patch openings and wildlife food plots.

Notwithstanding the above, **Grantor** reserves the right (i) to cut any tree, in accordance with applicable governmental laws and regulations, when it is necessary to salvage timber damaged by natural causes, when cutting is necessary to prevent further such damage or personal injury, or when a permitted structure is in danger, and (ii) permit <u>Dominion Energy South Carolina</u> to maintain the right of way under the Electric Transmission Towers.

(M)   <u>Agricultural Uses</u>.  **Agricultural Activities** are restricted to the recommended or accepted practices recommended by the South Carolina Cooperative Extension Service, the United States Natural Resources Conservation Service, their successors or other entities mutually

acceptable to the **Grantor** and **Grantee**.   **Grantor** shall have the right to utilize Pond(s), center pivot irrigation, and/or wells to irrigate for Agricultural Uses. **Grantor** and **Grantee** recognize that changes in agricultural technologies, including accepted management practices, may result in an evolution of **Agricultural Activities**.  Such evolution shall be permitted so long as it is consistent with the Purpose of this Easement.

(N)    <u>Significant Trees</u>.    Other than in the Electric Transmission Towers' right of way, there shall be no activities that endanger the health or survival of **Significant Trees** without **Approval.**

(O)    <u>Impoundment(s)</u>. **Grantor** reserves the right to improve, repair, or maintain existing upland impoundments and/or historic wetland impoundments, green tree reservoirs, dikes, ditches and water control **Structures**, subject to prior **Approval** from the **Grantee,** and in compliance with the Purpose as stated in Paragraph 1 and with all applicable local, state and federal statutes and regulations. Impoundments are recognized by the **Grantor** and **Grantee** as beneficial to waterfowl and other wetland dependent plants and animals. It is permitted to drill water wells of sufficient size and nature to service the ponds, Upland Impoundments or Greentree Reservoirs, extract water therefrom, and establish utilities and driveways to the well or wells in order to service them.

New Greentree Reservoirs or Upland Impoundments may be created for aesthetic, fishing, hunting, educational and/or recreational purposes. The use, management, and maintenance of Greentree Reservoirs or Upland Impoundments may not adversely affect the Conservation Values of the Property.

The sale of extracted soil, sand, gravel, or other materials produced in connection with the enlargement or construction of pond(s), or any other permitted or non-permitted use, is strictly prohibited in accordance with Paragraph 5(P) Mining.

(P)    <u>Mining</u>.  Mining and recovery of any oil, gas or minerals are restricted to extraction methods in accordance with Code §170(h)(5)(B) prohibiting surface mining.

(Q)    <u>Topography and Hydrology</u>.  There shall be no adverse material alteration of the topography or hydrology, unless otherwise provided for in Paragraphs 4 or 5. Exceptions for wildlife management, as permitted by local, state, and federal authorities, are allowed.

(R)    <u>Refuse</u>.  There shall be no placing of refuse on the Protected Property of vehicle bodies or parts or refuse not generated on the Protected Property.  Temporary piles for collection of refuse generated on the Protected Property established between regular removals are permitted provided such piles do not contain hazardous substances, pollutants, or wastes and do not impair the Conservation Values of the Protected Property.

(S)    <u>Right to Lease</u>.  Subject to the other provisions of this Conservation Easement, Grantor reserves the right to lease all or a portion of the Protected Property for any purpose permitted under this Conservation Easement, including permitted Commercial Uses.

14

(T)    Eligibility for Conservation Programs.  **Grantor** reserves the right to participate in conservation, preservation, or mitigation programs existing now or permitted in the future for any activity or use permitted (or restricted, as the case may be) on the Protected Property under this Easement, including but not limited to carbon sequestration credits and greenhouse gas credits.

(U)    Adverse or Inconsistent Uses.  Other than the Electric Transmission Towers, there shall be no other use or activity that is inconsistent with the Purpose of this Easement as stated in Paragraph 1.

6.    Third Party Activities.  The **Grantor** shall keep the **Grantee** reasonably informed as to activities being conducted on the Protected Property which are within the scope of this Easement and as to the identity of any third parties who are conducting or managing such activities.  The **Grantor** shall ensure that all third parties who are conducting activities relating to permitted uses of the Protected Property are fully and properly informed as to the restrictions and covenants contained within this Easement which relate to such uses, including without limitation, the provisions of this Paragraph and of Paragraphs 4 and 5.

7.    **Grantee**'s Remedies.  If **Grantee** determines that **Grantor** is in violation of the terms of this Easement or that a violation is threatened, the **Grantee** shall notify the **Grantor** of the violation (hereinafter, "First **Notice**") and request voluntary compliance.  In the event that voluntary compliance is not agreed upon within ninety (90) days of receipt of First **Notice**, the **Grantee** shall give written notice to **Grantor** of such violation (hereinafter, "Second **Notice**") and demand corrective action sufficient to cure the violation and, where the violation involves injury to the Protected Property resulting from any use or activity inconsistent with the Purpose, to restore the portion of the Protected Property so injured.

If **Grantor** fails to cure the violation within sixty (60) days after receipt of Second **Notice** thereof from **Grantee** (or under circumstances where the violation cannot reasonably be cured within a sixty (60) day period, if **Grantor** shall fail to begin curing such violation within said sixty (60) day period, or shall fail to continue diligently to cure such violation until finally cured), **Grantee** may bring an action at law or in equity in a court of competent jurisdiction to enforce the terms of this Easement, to enjoin the violation ex parte as necessary, by temporary or permanent injunction, to recover any damages to which it may be entitled for violation of the terms of this Easement, including damages for the loss of the Conservation Values, and to require the restoration of the Protected Property to the condition that existed prior to any such injury. Without limiting **Grantor**'s liability therefore, **Grantee**, in its sole discretion, may either apply any damages recovered to the cost of undertaking any corrective action on the Protected Property or may apply any damages recovered towards activities relating to monitoring and enforcing compliance with the terms of this Easement and other similar conservation easements.

If **Grantee**, in its sole discretion, determines that circumstances require immediate action to prevent or mitigate significant damage to the Conservation Values, **Grantee** shall give immediate notice of the circumstances to **Grantor**, as described in Paragraph 28, and may immediately pursue its legal and equitable remedies under this Paragraph without waiting for the

period provided for cure to expire. **Grantor** agrees that if such emergency arises, **Grantee** may obtain injunctive relief without the necessity of posting a bond.

**Grantee**'s rights under this Paragraph apply equally in the event of either actual or threatened violations of the terms of this Easement. **Grantor** agrees that if **Grantee**'s remedies at law for any violation of the terms of this Easement are inadequate, the **Grantee** shall be entitled to seek the injunctive relief described in this Paragraph, both prohibitive and mandatory in addition to such other relief to which **Grantee** may be entitled, including specific performance of the terms of this Easement, without the necessity of proving either actual damages or the inadequacy of otherwise available legal remedies, and without the necessity of posting a bond. **Grantee**'s remedies described in this Paragraph shall be cumulative and shall be in addition to all remedies now or hereafter existing at law or in equity.

8.     <u>Costs of Enforcement.</u>  If **Grantee** prevails in any action to enforce the terms of this Easement, any costs incurred by **Grantee** in enforcing the terms of this Easement against **Grantor**, including without limitation, costs of suit (which includes reasonable attorneys' fees), and any reasonable costs of restoration necessitated by **Grantor**'s violation of the terms of this Easement, shall be borne by **Grantor**.  If **Grantor** prevails in any action to enforce the terms of this Easement, any costs incurred by **Grantor**, including without limitation **Grantor**'s cost of the suit (which includes reasonable attorneys' fees) shall be borne by **Grantee**.

9.     <u>Successors; Benefits and Burdens.</u>  The covenants, terms, conditions, easements, benefits, and burdens of this Easement shall be binding upon and inure to the parties hereto and their respective successors, personal representatives, heirs, and assigns and shall continue as a restriction running in perpetuity with the Protected Property.  An owner of the Protected Property shall only be responsible for those violations first occurring on the Protected Property during such owner's ownership, and while still an owner of the Protected Property (although notwithstanding the foregoing, a subsequent owner may also be held responsible for those violations first occurring during another's prior ownership of the Protected Property unless an estoppel certificate or compliance certificate was obtained from **Grantee** prior to or at the time of the transfer of the Protected Property's ownership to such subsequent owner). Any of the rights herein reserved to **Grantor** may be exercised by any owner of the Protected Property.

10.    <u>Compliance Certificates</u>.  Upon request by **Grantor**, **Grantee** shall within thirty (30) days execute and deliver to **Grantor** any document that may be requested by **Grantor**, including an estoppel certificate or compliance certificate, to certify to the best of **Grantee**'s knowledge **Grantor**'s compliance with any obligation of **Grantor** contained in this Easement or otherwise to evidence the status of this Easement.

11.    <u>Representation of Authority</u>.  Each signatory to this Easement represents and warrants that he or she is duly authorized to enter into and execute the terms and conditions of this Easement and to legally bind the party he or she represents.

12.    <u>Forbearance Not a Waiver.</u>  Any forbearance by **Grantee** to exercise its rights under this Easement in the event of any breach of any terms of this Easement by **Grantor** shall not be deemed or construed to be a waiver by **Grantee** of such term or of any subsequent breach of the

same or any other term of this Easement or of any of **Grantee**'s rights under this Easement.  No delay or omission by **Grantee** in the exercise of any right or remedy upon any breach by **Grantor** shall impair such right or remedy or be construed as a waiver.

13.    Reasonableness Standard.  **Grantor** and **Grantee** shall follow a reasonableness standard and shall use their best efforts to make any determinations that are necessary or are contemplated to be made by them (either separately or jointly) under this Easement in a timely manner, and shall cooperate with one another and shall take all other reasonable action suitable to that end.

14.    **Grantor**'s Environmental Warranty.   The **Grantor** warrants that **Grantor** has no knowledge of the existence or storage of hazardous substances, pollutants, or wastes on the Protected Property or a release or threatened release of hazardous substances, pollutants or wastes on the Protected Property and promises to defend and indemnify the **Grantee** against all litigation, claims, demands, penalties, and damages, including reasonable attorney's fees, arising from breach of this warranty.

15.    Acts Beyond **Grantor**'s Control.  Nothing contained in this Easement shall be construed to entitle **Grantee** to bring any action against **Grantor** for any injury to or change in the Protected Property resulting from causes beyond **Grantor**'s control, including but not limited to trespass, fire, hurricane, flood, storm and earth movement, or from any prudent action taken by **Grantor** under emergency conditions to prevent, abate or mitigate significant injury to the Protected Property resulting from such causes.

16.    Access. No right of public access to any portion of the Protected Property is conveyed by this Easement, except as expressly provided herein.

17.    Costs, Liabilities, and Taxes.  **Grantor** retains all responsibilities and shall bear all costs and liabilities of any kind related to the ownership, operation, upkeep and maintenance of the Protected Property, including, but not limited to, clean up or remediation costs due to chemical contamination and payment of taxes. Furthermore, if the **Grantor** maintains general liability insurance coverage for the Protected Property, **Grantor** will be responsible for such costs.

Each party agrees to release, hold harmless, defend and indemnify the other from any and all liabilities including, but not limited to, injury, losses, damages, judgments, costs, expenses and fees that the indemnified party may suffer or incur as a result of or arising out of wrongful or negligent activities of the indemnifying party on the Protected Property.

18.    Transfer Fee.  There shall be assessed by the **Grantee** a transfer fee equal to one (1) percent of the sales price and/or other consideration paid in connection with the transfer of any freehold or fee simple interest in the Protected Property, including but not limited to any conveyance by warranty deed, limited warranty deed, or quitclaim deed, sale, mortgage foreclosure, or conveyance in lieu of foreclosure.  The transfer fee shall be paid to the **Grantee** on the date of the closing of the transfer.

Exemptions from assessment of transfer fee:

17

(A)    The sale of timber rights or products produced from permitted **Forest Management Practices** and/or permitted **Agricultural Activities** of such Protected Property.

(B)    Any transfer subsequent to the conveyance of this Easement:

    I.    Without consideration, or

    II.    To a spouse, a lineal descendant, an ancestor or ancestors, a spouse of a lineal descendent (collectively, "Immediate Family Members"), or

    III.    To or from a trust whose beneficiaries or presumptive beneficiaries are the **Grantor** or Immediate Family Member, or both, or

    IV.    To an entity at least 50% of the equity interest of which is owned by **Grantor** or Immediate Family Member, or

    V.    If the **Grantor** of this Easement is a corporation, limited liability company or a partnership, to an owner/partner/member of such entity or to an Immediate Family Member thereof, or

    VI.    To a charitable organization which is tax exempt under §501(c)(3), or

    VII.    Any transfer under a will, or

    VIII.    Any transfer implemented or effected by court order, except foreclosure, or

    IX.    Any transfer that corrects, modifies, or confirms a transfer previously made.

(C)    If a creditor purchases the Protected Property at a foreclosure sale or takes title to the Property in lieu of foreclosure, the transfer fee shall be due and paid at the time the creditor takes title. The transfer fee shall be based on the total bid for the Protected Property if purchased at a foreclosure sale or on the amount of the accrued indebtedness if the creditor accepts a deed in lieu of foreclosure.  An additional transfer fee shall be due if the creditor who takes title through foreclosure or a deed in lieu of foreclosure sells the Protected Property for an amount higher than the amount subject to the transfer fee at the time the creditor took title; the additional transfer fee due shall be based on the additional amount alone, not the entire sales price. Creditor for purposes of this Paragraph shall include an assignee of the creditor who purchases the Protected Property at a foreclosure sale or takes a deed in lieu of foreclosure.

An exchange of properties pursuant to Code §1031, or similar statute, shall be deemed to be for consideration based on the market value of the property plus boot, if applicable, received at the time of such transfer. Market value of the Protected Property shall be determined by agreement of the **Grantor** and the **Grantee**, or in the absence of such agreement by a South Carolina certified appraiser selected by the **Grantee**, whose appraisal fee shall be paid by the **Grantee**.

**Grantor** grants **Grantee** a lien against the Protected Property for all or any part of the transfer fee that is unpaid at the time of the conveyance or assignment triggering the transfer fee. **Grantee**'s lien shall be subordinate to this Easement and to the lien of any first mortgage on the Protected Property. **Grantee** shall have the right to record a notice of lien for such unpaid transfer fee.  Any such lien may be enforced and/or foreclosed in accordance with the laws of the State of South Carolina.  **Grantee** may require the **Grantor** and/or any subsequent purchaser to

provide reasonable written proof of the applicable sales price, such as executed closing statements, contracts of sale, copies of deeds or other such evidence.

19.    <u>Extinguishment, Condemnation and Fair Market Value.</u>  If circumstances arise in the future that render the Purpose of this Easement impossible to accomplish, this Easement can only be terminated or extinguished, whether in whole or in part, by judicial proceedings in a court of competent jurisdiction.  As required by §1.170A-14(g)(6)(ii) of the Treasury Regulations, in the event of any extinguishment or termination of this Easement, any sale, exchange, or involuntary conversion of the Protected Property entitles **Grantee** to a percentage of the gross sale proceeds, equal to the ratio of the appraised value of this Easement to the unrestricted fair market value of the Protected Property established as of the date donated.

    If all or a part of the Protected Property is taken by exercise of the power of eminent domain, **Grantor** and **Grantee** shall be respectively entitled to compensation in accordance with applicable law and as provided in this Paragraph.  **Grantor** and **Grantee** shall divide the net proceeds after the payment of all expenses of the condemnation in accordance to the ratio of the appraised value of this Easement to the fair market value of the Protected Property unrestricted by the Easement established as of the date conveyed.

    For the purpose of the above Paragraphs, the parties hereto stipulate that the value of this Easement and the value of the restricted fee interest in the Protected Property each represent a percentage interest in the fair market value of the Protected Property.  The percentage interests shall be determined by the ratio of the value of this Easement to the value of the Protected Property, without reduction for the value of this Easement. All such proceeds received by **Grantee** shall be used in a manner consistent with **Grantee**'s mission.  This provision is not intended to violate the provision required by Code §170(h)(2)(C) that requires this Easement to be granted <u>in perpetuity</u>.

20.    <u>Limitations on Extinguishment.</u>  If a sudden or unexpected change in the conditions surrounding the Protected Property have made impossible or impractical the continued use of the Protected Property for conservation purposes, this Easement can only be terminated or extinguished, whether with respect to all or part of the Protected Property, by judicial proceedings in a court of competent jurisdiction.  Unless otherwise required by applicable law at the time, in the event of any sale of all or a portion of the Protected Property (or any other property received in connection with an exchange or involuntary conversion of the Protected Property) after such termination or extinguishment, and prior to the payment of any costs or expenses associated with such sale, **Grantee** shall be entitled to an amount no less than **Grantee**'s proportionate share of the gross proceeds of such sale, as such proportionate share is determined under the provisions of Paragraph 21, adjusted, if necessary, to reflect a partial termination or extinguishment of this Easement.  If sufficient funds are not available for **Grantee** to be paid its entire proportionate share out of such proceeds, or if for any other reason **Grantee** is not paid its entire proportionate share, **Grantee** has the right to recover such deficiency (including the right to record a lien to secure its recovery of such deficiency) from the record owner of the Protected Property at the time of such sale.  All such proceeds received by **Grantee** shall be used by **Grantee** in a manner consistent with the conservation purposes of this Easement as of the effective date of this grant.  In the event of extinguishment of this Easement in whole or

in part, the provisions of this Paragraph 20 shall survive such extinguishment.

21.    Percentage Interests.    **Grantor** and **Grantee** hereby confirm that the donation of this Easement gives rise to a property right immediately vested in **Grantee**, with a value for purposes of this Paragraph 21 determined as follows. The parties hereto stipulate that as of the effective date of this grant the Easement and the restricted fee interest in the Protected Property each represent a percentage interest in the fair market value of the Protected Property (**Grantee**'s percentage interest is referred to herein as **Grantee**'s "proportionate share").  For the purposes of this paragraph, **Grantee's** proportionate share of the fair market value of the Protected Property shall remain constant.

22.    Condemnation.    If all or any part of the Protected Property is taken under the power of eminent domain by public, corporate, or other authority, or otherwise acquired by such authority through a purchase in lieu of a taking, **Grantor** and **Grantee** shall join in appropriate proceedings at the time of such taking to recover the full fair market value (without regard to any diminution in value attributable to the Easement) of the interests in the Protected Property subject to the taking and all incidental or direct damages resulting from the taking.  Prior to the payment of any expenses reasonably incurred by the parties to this Easement in connection with such taking, **Grantee** shall be entitled to its proportionate share from the recovered proceeds in conformity with the provisions of Paragraphs 19 and 21 (with respect to the allocation of proceeds).  The respective rights of **Grantor** and **Grantee** set forth in this Paragraph 22 shall be in addition to, and not in limitation of, any rights they may have at common law.  All such proceeds used by **Grantee** shall be used by **Grantee** in a manner consistent with the conservation purposes of this Easement as of the effective date of this grant.

23.    Assignment.    The benefits of this Easement shall not be assignable by the **Grantee**, except if as a condition of any assignment, (i) the **Grantee** requires that the terms and conditions of this Easement continue to be carried out in full as provided herein, (ii) the assignee has a commitment to protect the Purpose and the resources to enforce the restrictions contained herein, and (iii) if the assignee, at the time of assignment, qualifies under §170(h) of the Code, and applicable Treasury Regulations promulgated thereunder, and under State of South Carolina law as an eligible donee to receive this Easement directly. In the event that **Grantee** ceases to exist or exists but no longer as a tax-exempt, nonprofit corporation, qualified under §§501(c)(3) and 170(h)(3) and not a private foundation under §509(a) of the Code, then this easement shall be assigned to Beaufort County or a tax-exempt, nonprofit organization, qualified under §§501(c)(3) and 170(h)(3) and not a private foundation under §509(a) of the Code, which has a mission of protecting open lands or natural resources in the South Carolina Lowcountry.

24.    No Extinguishment Through Merger.    **Grantor** and **Grantee** herein agree that should **Grantee** come to own all or a portion of the fee interest in the Protected Property, (i) **Grantee** as successor in title to **Grantor** shall observe and be bound by the obligations of **Grantor** and the restrictions imposed upon the Protected Property by this Easement; (ii) this Easement shall not be extinguished, in whole or in part, through the doctrine of merger in view of the public interest in its enforcement; and (iii) **Grantee** as promptly as practicable shall assign the **Grantee** interests in this Easement of record to another holder in conformity with the requirements of this Paragraph 25.  Any instrument of assignment of this Easement or the rights conveyed herein

shall refer to the provisions of this Paragraph 24 and shall contain language necessary to continue it in force.

26.    Transfers.  **Grantor** agrees to incorporate by reference the terms of this Easement in any deed or other legal instrument by which **Grantor** transfers any interest in all or a portion of the Protected Property, including, without limitation, a leasehold interest. The **Grantor** shall give the **Grantee Notice** of any change of possession, ownership or control of the Protected Property within thirty (30) days after such change takes place, including without limitation notice of any transfer, lease, or sale of all or a part of the Protected Property.  The failure of **Grantor** to perform any act required by this Paragraph shall not impair the validity of this Easement or limit its enforceability in any way.

27.    **Approvals; Notice; Breach.**

(A)    Grantee's Approval or Withholding of Approval. When **Grantee Approval** is required, **Grantee** shall grant or withhold its approval in writing within sixty (60) days of receipt of **Grantor**'s written request therefor.  In the case of withholding of **Approval**, **Grantee** shall notify **Grantor** in writing with reasonable specificity of the reasons for withholding of **Approval**, and the conditions, if any, on which **Approval** might otherwise be given.  Failure of **Grantee** to respond in writing within such sixty (60) days shall be deemed to constitute denial by **Grantee** of any such **Request for Approval**.

(B)    Approval by **Grantee** of Sites or Activities.  The exercise of any right to engage in the specified activities permitted by the provisions of Paragraphs:

| | |
|---|---|
| 2 | Impervious Surfaces; |
| 5(B)(III) | Residential Structures; |
| 5(B)(IV) | Designated Building Area; |
| 5(E) | Commercial Uses; |
| 5(G) | Roads; |
| 5(L) | Forestry Uses; |
| 5(N) | Significant Trees; |
| 5(O) | Ponds; |

shall be subject to the prior **Approval** by **Grantee** of the activity and/or of the site for such proposed activity, as the case may be.  **Grantor** shall request such **Approval** in writing and shall include therewith information identifying the proposed site or activity with reasonable specificity, evidencing conformity with the requirements of the applicable paragraphs under which the right is reserved hereunder, and, when applicable, evidencing conformity with existing land use regulations. **Grantee's Approval**, which shall not be unreasonably withheld, shall take into account the following criteria:

I.    The extent to which use of the site and/or the proposed activity would impair the scenic qualities of the Protected Property that are visible from public roads or waterways;

II.     The extent to which use of the site and/or the proposed activity would destroy an important habitat or would have a material adverse effect on the movement of wildlife;

III.    The extent to which use of the site for the proposed activity would impair water quality;

IV.     In the case of any proposal to build new structures or roads, the extent to which the scenic quality of the Protected Property may be adversely impacted; and

V.     The extent to which the proposed activity or use of the site for the proposed activity would otherwise significantly impair the Conservation Values. **Grantor** and **Grantee** shall cooperate and shall act in good faith to arrive at agreement in connection with any determinations that are necessary to be made by them (either separately or jointly) under this Paragraph 27. Notwithstanding the foregoing, **Grantee's Approval** of a proposed site or activity shall be withheld if the site for the proposed activity would interfere with the essential scenic quality of the Protected Property.

(C)     Notice to **Grantee**.   Following the receipt of **Grantee's Approval** when required under Paragraph 27(B) and not less than thirty (30) days prior to commencing activity requiring **Approval** or any activity where **Notice** is required, including Paragraphs:

5(A)     Subdivision;
5(K)     Archeological and Paleontological Excavations; and
26       Transfer of Property

**Grantor** agrees to provide **Notice** to **Grantee** in writing of the intention to exercise such right. The **Notice** shall describe the nature, scope, location, timetable, and any other material aspect of the proposed activity in sufficient detail to permit **Grantee** to monitor such activity.  When such information was not provided to **Grantee** under the requirements of Paragraph 27(B), the **Notice** shall also include information evidencing the conformity of such activity with the requirements of the applicable paragraphs under which the right is reserved hereunder, and, when applicable, evidencing conformity with existing land use regulations.   At **Grantee's** sole discretion, **Grantee** may permit commencement of the activity less than thirty (30) days after receiving **Grantor's Notice**.  See also Paragraph 26, with respect to **Grantor's** written notice to **Grantee** concerning a transfer of any interest in all or a portion of the Protected Property.

(D)     Notice.     As required by Treasury Regulations 1.170A-14(g)(5)(ii). Notwithstanding any other provision of this Easement, Grantor must notify **Grantee,** in writing, before exercising any reserved right which may have an adverse impact on the Conservation Values of this Easement.

(E)     Breach.  Failure to secure such **Approval** or give such **Notice** as may be required by this Paragraph 27 shall be a material breach of this Easement notwithstanding any other provision of this Easement and shall entitle **Grantee** to such rights or remedies as may be available under Paragraph 7.

other communications to **Grantee** may be communicated by United States Postal Service first class mail, hand courier, electronic mail or facsimile, and shall be deemed sufficiently given or rendered and effective only when acknowledged in writing by **Grantee**. All such correspondence and communications shall be addressed as follows:

| | |
|---|---|
| If to **Grantor**: | The Tomotley Crew, LLC<br>300 Cotton Hall Road<br>Yemassee, SC 29945 |
| If to **Grantor's** Attorney: | Thomas I. Howard<br>148 S. Jefferies Blvd<br>Walterboro, SC 29488<br>843-549-9225 |
| If to **Grantee**: | Beaufort County Open Land Trust<br>P. O. Box 75<br>Beaufort, SC  29901<br>Attn:  Executive Director<br>info@openlandtrust.org<br>(843) 521-2175 (office)<br>(843) 521-1946 (fax) |

or to such other person or place as a party may designate by correspondence as aforesaid. Correspondence by mail or overnight courier service shall be deemed given on the date of receipt as shown on the return receipt, or receipt or records of the courier service, as the case may be.  In the event any such correspondence is mailed via the United States Postal Service or shipped by overnight delivery service to a party in accordance with this Paragraph and is returned to the sender as undeliverable, then such correspondence shall be deemed to have been delivered or received on the third day following the deposit of such correspondence in the United States Mail or the delivery of such correspondence to the overnight delivery service.  **Grantor** has the responsibility of promptly notifying **Grantee** of **Grantor**'s current address and other contact information. **Grantor** shall promptly notify **Grantee** of (i) any changes of **Grantor**'s address or other changes in **Grantor**'s contact information, and (ii) the name, address, and contact information of any transferee of the Protected Property if **Grantor** conveys the Protected Property. Any communications or Correspondence by **Grantee** to or with **Grantor** sent to the last address provided by **Grantor** shall be deemed sufficient to provide notice to **Grantor**.

29.    <u>Recordation.</u>  **Grantor** or **Grantee** shall record this instrument in timely fashion in the Register of Deeds Office for Beaufort County, South Carolina, and may re-record it at any time as may be required to preserve its rights in this Easement.

30.    <u>Effective Date.</u>  **Grantor** and **Grantee** intend that the restrictions arising hereunder take effect on the day and year this Easement is recorded in the Register of Deeds Office for Beaufort County, South Carolina, after all required signatures have been affixed hereto.

30.     <u>Effective Date.</u>  **Grantor** and **Grantee** intend that the restrictions arising hereunder take effect on the day and year this Easement is recorded in the Register of Deeds Office for Beaufort County, South Carolina, after all required signatures have been affixed hereto.

31.     <u>Controlling Law.</u>  The interpretation and performance of this Easement shall be governed by the laws of South Carolina.

32.     <u>Liberal Construction.</u>  Any general rule of construction to the contrary notwithstanding, this Easement shall be liberally construed in favor of this Easement to uphold the Purpose as stated in Paragraph 1.  If any provision in this instrument is found to be ambiguous, an interpretation consistent with the Purpose that would render the provision valid should be favored over any interpretation that would render it invalid.

33.     <u>Severability.</u>  If any provision of this Easement or the application thereof to any person or circumstance is found to be invalid, the remainder of the provisions of this Easement shall not be affected thereby.

34.     <u>Entire Agreement.</u>  The covenants, terms, conditions and restrictions of this Easement shall be binding upon, and inure to, the benefit of the parties hereto and their respective personal representatives, heirs, successors and assigns and shall continue as a servitude running <u>in perpetuity</u> with the Protected Property.  All terms used in this Easement, regardless of the number or gender in which they are used, shall be deemed and construed to include any other number, singular or plural, and any other gender, masculine, feminine, or neuter, as the context or sense of this Easement, any Paragraph, Subparagraph, or clause herein may require as if such terms had been fully and properly written in such number or gender.

          TO HAVE AND TO HOLD the Easement interests herein described unto **Grantee** forever.

          By execution of this Easement, the **Grantee** accepts this Easement and the rights and obligations recited herein.

          **GRANTOR** HEREBY WARRANTS and represents that the **Grantor** is seized of the Protected Property in fee simple and has the right to grant and convey this Easement, that the Protected Property is free and clear of any and all encumbrances, except existing easements of record and prescriptive easements, if any, and that the **Grantee** shall have the use of and enjoy all of the benefits derived from and arising out of this Easement.

          IN WITNESS WHEREOF, **Grantor** and **Grantee** have set their hands to this original copy of this Easement under seal on the day and year first above written.

THE REST OF THIS PAGE INTENTIONALLY LEFT BLANK.

WITNESSES:

**GRANTOR**:

THE TOMOTLEY CREW, LLC,
a South Carolina limited liability company

*Dawn S. Fraser*

By: _____
      Lucian Lincoln Wood, Jr.
Its: Sole Member

STATE OF SOUTH CAROLINA   )
                           )    ACKNOWLEDGMENT
COUNTY OF *Colleton*      )

      The foregoing instrument was acknowledged this _____ day of May, 2023, before me the undersigned Notary, and I do hereby certify that the above named **Grantor**, by Lucian Lincoln Wood, Jr., its Sole Member, personally appeared before me and acknowledged the due execution of the foregoing instrument.

_____ (SEAL)
      (Signature of Notary)
Notary Public for the State of South Carolina
My commission expires: *6/15/2026*

Printed Name of Notary: *THOMAS I. HOWARD*

WITNESSES:                              **GRANTEE**:

                                        BEAUFORT COUNTY OPEN LAND TRUST

                                        By: _____

                                        Its: _Executive Director_


STATE OF SOUTH CAROLINA    )
                           )            ACKNOWLEDGMENT
COUNTY OF BEAUFORT         )

The foregoing instrument was acknowledged this _3rd_ day of _May_, 2023, before me the undersigned Notary, and I do hereby certify that the above named duly authorized officer of the **Grantee** personally appeared before me and acknowledged the due execution of the foregoing instrument.

_____
(Signature of Notary)

Notary Public for the State of South Carolina
My commission expires: _5/5/2027_


             Ashley M. Rhodes
              NOTARY PUBLIC
         Beaufort County, South Carolina
         My Commission Expires 5/5/2027

EXHIBIT A

Legal Description and Derivation of Protected Property

All that certain piece, parcel or tract of land, situate, lying and being in the County of Beaufort, State of South Carolina, containing One Hundred Eighty-three and Sixteen Hundredths (**183.16**) acres and being more particularly shown and described as "**Easement Property Parcel B**" on that certain plat by Thomas G. Stanley, Jr., PLS, of TGS Land Surveying dated March 30, 2023 and entitled "This Plat Prepared at the Request of The Tomotley Crew, LLC  A Division of Tax Map # R710 012 000 001 0000  Sheldon Area, Beaufort County, South Carolina".  Said plat being recorded April 21, 2023 in Plat Book 161 at Page 136 in the ROD Office for Beaufort County, reference to which is craved for a more complete description.

AND ALSO

All that certain piece, parcel or tract of land, situate, lying and being in the County of Beaufort, State of South Carolina, containing Eight and Twenty-three Hundredths (**8.23**) acres and being more particularly shown and described as "**Easement Property Parcel B2**" on that certain plat by Thomas G. Stanley, Jr., PLS, of TGS Land Surveying dated March 30, 2023 and entitled "This Plat Prepared at the Request of The Tomotley Crew, LLC  A Division of Tax Map # R710 012 000 001 0000  Sheldon Area, Beaufort County, South Carolina".  Said plat being recorded April 21, 2023 in Plat Book 161 at Page 136 in the ROD Office for Beaufort County, reference to which is craved for a more complete description.

Beaufort County Tax Map# Portion of R710 012 000 0001 0000

Grantee's Address:    P. O. Box 75
                      Beaufort, SC  29901

EXHIBIT B

Baseline Documentation Report

# Conservation Easement
# Baseline Documentation Report

### ±191.39-Acre Cotton Hall Homesite

Condition of Property as of March 22, 2023



Cotton Hall Homesite
Sheldon, Beaufort County, South Carolina



Prepared By:   Caylor Romines, Director of Stewardship
PO Box 75, Beaufort, SC 29901
905 Charles Street, Beaufort, SC 29902

Grantor                         OLT

## Table of Contents

1. Acknowledgement of Property Condition

2. Baseline Documentation

    A.  Property Information
    B.  Conservation Purposes and Values of the Property
    C.  Natural Features of the Property
    D.  Manmade Features

3. Baseline Documentation Exhibits:

    Exhibit A:  Legal Description
    Exhibit B:  Beaufort County Parcel Data
    Exhibit C:  Location Map
    Exhibit D:  Regional Protected Lands
    Exhibit E:  Aerial Imagery Showing Current Conditions
    Exhibit F:  Boundary Buffers and Designated Building Areas Map
    Exhibit G:  USDA Soils Map
    Exhibit H:  Land Cover Map
    Exhibit I:  Vegetation Imagery (as of 3.19.2023)
    Exhibit J:  Plat
    Exhibit K:  Photopoint Map and Photos
    Exhibit L:  Open Land Trust Board Approval
    Exhibit M:  Preparer's Qualifications

*Note:  Each page of this report and each page of any attachment should be initialed by all parties.*

              _____ Grantor                     _____ OLT

# 1. Acknowledgement of Property Condition

This acknowledgement constitutes part of a Conservation Easement Baseline Documentation Report prepared in conjunction with a Conservation Easement granted on May 10, 2023 to the Beaufort County Open Land Trust, a non-profit corporation organization, on a ±191.39-acre property known by its owners as "Cotton Hall Homesite" in Sheldon, Beaufort County, South Carolina. The property is owned by The Tomotley Crew, LLC.

The Conservation Easement Baseline Documentation Report contains a natural resources description of the Property consisting of ±191.39 acres. Lucian Lincoln Wood, Jr., on behalf of The Tomotley Crew, LLC and Caylor Romines of Beaufort County Open Land Trust acknowledge and agree that upon information and belief the Conservation Easement Baseline Documentation Report is a reasonably accurate representation of the Cotton Hall Homesite at the time of the execution of the Conservation Easement.

In the event that there is a conflict between the Conservation Easement Baseline Documentation Report and the Conservation Easement's terms, the Conservation Easement shall prevail.

WITNESSES:

GRANTOR:

By: _____
　　　Lucian Lincoln Wood, Jr.
　　　Its: Sole Member

STATE OF SOUTH CAROLINA　)
　　　　　　　　　　　　　　　)
COUNTY OF BEAUFORT　　　　)

The foregoing instrument was acknowledged before me this tenth day of May 2023, by Lucian Lincoln Wood, Jr.

_____
Notary Public for South Carolina
MY COMMISSION EXPIRES: ___6/15/2026___

Grantor　　　　　　　　　　　CR OLT

3

WITNESSES:

GRANTEE:
Beaufort County Open Land Trust

By: _____
       Caylor Romines
Its:  Director of Stewardship

STATE OF SOUTH CAROLINA    )
                               )

COUNTY OF BEAUFORT         )

      The foregoing instrument was acknowledged before me this third day of May 2023, by Caylor Romines, Director of Stewardship for the Beaufort County Open Land Trust.

_____
Notary Public for South Carolina
MY COMMISSION EXPIRES:  **5/5/2027**

**Ashley M. Rhodes**
**NOTARY PUBLIC**
**Beaufort County, South Carolina**
**My Commission Expires 5/5/2027**

_____Grantor                 _____OLT

4

# 2. Baseline Documentation

**A. Cotton Hall Homestie Property Information**:

| | |
|---|---|
| <u>Grantor</u>:<br><u>Mailing Address</u>: | The Tomotley Crew, LLC<br>300 Cotton Hall Road<br>Yemassee, SC 29945 |
| <u>Property Address</u>: | 200 Cotton Hall Road<br>Yemassee, SC 29945 |
| <u>Grantee</u>:<br><u>Address</u>: | Beaufort County Open Land Trust<br>PO Box 75<br>Beaufort, SC 29901 |
| <u>Site Name</u>:<br><u>County</u>: | Cotton Hall Homesite a.k.a "Cotton Hall"<br>Beaufort |
| <u>Beaufort County Parcels</u>: | Portion of R700 012 000 0001 0000 |

<u>Description of Location</u>:
Cotton Hall is located southeast of the Town of Yemassee on Cotton Hall Road and approximately 0.5 miles east of U.S. Highway 21 (Trask Parkway) in Beaufort County, South Carolina. The primary access entrance to Cotton Hall is a dirt road heading southeast off Cotton Hall Road.

The property is gated.

<u>Landmarks and Travel Directions</u>:
The Town of Yemassee is located approximately 4.5 miles northwest of the subject tract while Gardens Corner is located approximately 3.5 miles southeast.

From Beaufort, travel on U.S. Highway 21 west approximately 14.9 miles to turn bear left North towards Charleston at the round-about. Travel 0.4 miles on Highway 21 North, turn right on Old Sheldon Church Road. Travel 2.5 miles then turn left on Cotton Hall Road. Arrive at 200 Cotton Hall Road in approximately 1.5 miles and the gate will be on your left. Access entrances to the conservation easement parcel are from Cotton Hall Road. There are well-maintained access roads and interior roads throughout the property.

**For the purposes of this document, "Cotton Hall", "Cotton Hall Homesite" and "Property" are used interchangeably to refer to the subject parcel.**

_____Grantor                    _____OLT

## B. Conservation Purposes and Associated Values of the Property

**Conservation Purposes** under South Carolina Conservation Easement Act of 1991, Title 27, Chapter 8
(A) retaining or protecting natural, scenic, or open-space aspects of real property;
(B) ensuring the availability of real property for agricultural, forest, recreational, educational, or open-space use;
(C) protecting natural resources;
(D) maintaining or enhancing air or water quality.

**Conservation Purposes** under Code §170(h) and in the regulations promulgated thereunder by the United States Department of the Treasury:

(I)      Protection of a relatively natural habitat of fish, wildlife, or plants, or similar ecosystem within the meaning of Code §170(h)(4)(A)(ii) which will yield a significant public benefit;

(II)     Preservation of open space (including farmland and forest land) within the meaning of Code §170(h)(4)(A)(iii)(I) for the scenic enjoyment of the general public as viewed from public vantage points which will yield a significant public benefit;

(III)    Preservation of open space (including farmland and forest land) within the meaning of Code §170(h)(4)(A)(iii)(II) pursuant to clearly delineated Federal, state, or local governmental conservation policies which will yield a significant public benefit.

## Conservation Values

Habitat and Water Quality: Cotton Hall contains significant natural habitat of fish, wildlife, or plants, or similar ecosystems which will yield a significant public benefit and open-space value associated with long-term agricultural and forestry use and scenic views of the property from public Cotton Hall Road; the assurance of long-term availability of agricultural and forest property; and water quality value associated with its proximity to headwater impoundments of Stony Creek draining into Stony Creek, the Pocotaligo River and ultimately into the Broad River, as well as limited impervious surface. The waterfront remains undeveloped.

The Property contains a diversity of natural habitats including agricultural fields, mixed pine/hardwood upland forest, forested and non-forested wetlands, all of which can support a variety of floral and faunal species.

The Property contains forested wetlands, which function to improve water quality by providing for nutrient uptake and sediment deposition from runoff draining from upstream lands, and also provide many wildlife habitat components such as breeding grounds, nesting sites and other critical habitat for a variety of wildlife species.

The Property provides a diversity of natural habitats, all of high quality. The array of habitat types individually and/or collectively provide feeding, nesting and roosting areas for migratory songbirds, ground nesting birds, waterfowl and other avian species. The natural habitat also provides feeding, breeding and resting areas for native small and large game and non-game mammals, as well as feeding and breeding areas for amphibians and reptiles. Protection of these natural habitats is afforded by continuing property management for agriculture, timber, and rural recreational uses.

The Property in its existing condition contributes no known nonpoint source pollution to Stony Creek as well as the Pocotaligo and Broad Rivers which flow into the Port Royal Sound. This is due to the amount and

_____ Grantor                              _____ OLT

6

quality of vegetation and forested wetland that provides for nutrient uptake and sediment deposition, as well as the limited impervious surface. Protection of water quality is supported by the property continuing in forestry and farming, rural recreational uses and afforded by extensive buffers.

<u>Contribution to Landscape Conservation and the Port Royal Sound Area:</u>  The Property is located in close proximity to other protected lands: Stony Creek at Bindon Plantation (1,317 acres) and Tomotley Plantation (770 acres) three OLT Fee Owned properties (55 acres) protected by Beaufort County Open Land Trust; Nemours Plantation (6,014 acres) protected by the Nemours Wildlife Foundation and Ducks Unlimited; Huspah (319 acres), Oak Grove (1040 acres), Prescott (327 acres) Rose Hill (1200 acres) protected by Ducks Unlimited; Mackay Point (6,376 acres) and Sheldon Plantation (240 acres) protected by Lowcountry Land Trust; Brewton Plantation (2,398 acres) and Old Combahee (1,800 acres) protected by The Nature Conservancy; Stony Creek Battery Heritage Preserve (4.5 acres) protected by SC DNR. All of these permanently protected lands being a part of the larger area of conserved land in the South Lowcountry and Port Royal Sound Area as well as the ACE Basin. Thus, the Property contributes to the extensive network of protective wildlife corridors, the protection of water quality in the Port Royal Sound watershed, and the scenic natural and rural character of the area[1].

Port Royal Sound is a marriage of the ocean and land, a relationship created by the combination of rising sea level, exceptionally high tides, and its unique geology. The Port Royal Sound system is unique compared to other coastal areas in North America because it is a large embayment dominated by expansive salt marshes and an area with high salinity water. An embayment was created when rising sea levels submerged valleys along the coast. The net result was and is that Port Royal Sound represents a marine habitat that extends inland for nearly 20 miles.

While this property is not directly in the boundary of the ACE Basin, it is on the edge of the boundary therefore likely contributing to the health and wellbeing of the ACE Basin on a landscape scale as well. The Property is situated near the nearly 1.7 million acres of the Ashepoo, Combahee, and Edisto (ACE) Basin Focus Area featuring diverse ecosystems and a wealth of wildlife, all of which is the focus of a consortium of private landowners, conservation groups, and federal and state agencies, working to protect and enhance the region's natural resources and traditional agricultural and recreational uses.

Conservation of the Property complements the mission and goals of the ACE Basin Project, launched by South Carolina Department of Natural Resources, the U.S. Fish and Wildlife Service, various private and non-profit organizations, and private landowners, and operated under the ACE Basin Task Force[2]. The mission of the ACE Basin Project is to maintain the natural character of the basin by promoting wise resource management on private lands and protecting strategic tracts by conservation agencies. A major goal of the protection efforts is to ensure that traditional uses such as farming, forestry, recreational hunting and commercial fishing will continue in the area.

The ACE Basin is one of the largest relatively undeveloped wetland ecosystems remaining along the Atlantic Coast. It has been identified as a unique coastal ecosystem of national and regional significance under the National Wetlands Priority Conservation Plan. The habitats of the ACE Basin are exceptionally diverse and rich supporting more than 267 species of terrestrial and aquatic birds, 83 species of reptiles and amphibians, 20 species of mammals, and 130 species of fish and shellfish. Included in this tremendous array of wildlife, the ACE Basin provides nesting, foraging, and wintering habitat for a number of endangered and threatened species.

---

[1] Protected lands data is provided by Open Land Trust and The Nature Conservancy.
[2] ACE Basin Project is recognized by the South Carolina Department of Natural Resources and supported by a variety of programs and regulations: www.dnr.sc.gov/marine/mrri/acechar/index.html

_____/Grantor                    _____ OLT

Agriculture and Forestry: The Property has historically been used in active agriculture and timber operations, stabilizing the traditional, rural land uses in this area. Protection of this property will help to stabilize and support the farming industry in the area, preventing conversion of agricultural and timber lands to industrial or residential development and the incompatible resources uses that result from that land conversion. Beaufort County, as one of the state's top growers of agricultural crops, provides a tremendous benefit to the people of the Lowcountry, South Carolina and this nation by providing land for local food production, biofuels, and other important consumer products.

Protection of this property is pursuant to the SC right-to-farm law (SC Code §46-45-10) which states in part "The policy of the State is to conserve, protect, and encourage the development and improvement of its agricultural land and facilities for the production of food and other agricultural products" including silviculture or forestry.

The preservation of open space (including farm and forest land) is recognized by the Farmland Protection Policy Act, P.L. 97-98, 7 U.S.C. 4201, et seq., whose purpose is "to minimize the extent to which Federal programs and policies contribute to the unnecessary and irreversible conversion of farmland to nonagricultural uses, and to ensure that Federal programs are administered in a manner that, to the extent practicable, will be compatible with State, unit of local government, and private programs and policies to protect farmland".

The Property has approximately twelve and one half (12.5) acres of Prime Farmland and one hundred and seventy-seven and six tenths (177.6) acres of Farmland of Statewide Importance as determined by the US Department of Agriculture National Resources Conservation Service.

Scenic qualities: Cotton Hall is situated on and occasionally visible by the public from impoundments of Stony Creek and is prominently visible from public Cotton Hall Road, having approximately 4,235 feet of scenic rural road frontage from that road. Cotton Hall Road is a direct secondary road to US Highway 17[2]. Additionally, property is in close relation to a large amount of other protected lands adding to the rural scenic qualities given by those protected properties.

Local land uses: The protection of this property is pursuant to the 2010 Beaufort County Comprehensive Plan, in which the property is designated in a 'T2 Rural Zone' and will support Beaufort County's Rural Land Use Policies to "promote the permanent preservation of open spaces in the rural areas," "promote the long term viability of agricultural uses" and "preserve and protect sensitive natural features in rural areas".

## C. Natural Features of the Property

**Background**

The landowner has owned the Property for a few years, however the property has historically been used for rural recreation, hunting and fishing, timber production and agriculture. Cotton Hall Homesite is adjacent to and in close proximity to other open space, rural recreation, agricultural and timber tracts in northern Beaufort County, the preservation of which ensures stability of rural land uses. As of the date of this report, the site is comprised of loblolly/slash pine forests, mixed upland hardwood/pine forests, unpaved interior roads and firelanes, a system of drainage ditches, several areas of cleared agricultural fields, pastures and forested/nonforested wetlands.

---

[2] These road frontages were measured using Beaufort County Geographical Information Systems data sets, as publicly provided.

_____ Grantor                                    _____ OLT

**Soils**

As defined and mapped using information provided by U.S. Department of Agriculture Natural Resource Conservation Service, the Cotton Hall property contains ± 12.5 acres of Prime Farmland, and ± 177.6 acres of Farmland of Statewide Importance.

Definitions are provided by U.S. Department of Agriculture Natural Resource Conservation Service.

*Prime farmland* is of major importance in meeting the nation's short- and long-range needs for food and fiber. Prime farmland, as defined is land that has the best combination of physical and chemical characteristics for producing food, feed, forage, fiber, and oilseed crops and is available for these uses. It could be cultivated land, pastureland, forestland, or other land, but it is not urban or built-up land or water areas. The soil quality, growing season, and moisture supply are those needed for the soil to economically produce sustained high yields of crops when proper management, including water management, and acceptable farming methods are applied. In general, prime farmland has an adequate and dependable supply of moisture from precipitation or irrigation, a favorable temperature and growing season, acceptable acidity or alkalinity, an acceptable salt and sodium content, and few or no rocks. The water supply is dependable and of adequate quality. Prime farmland is permeable to water and air. It is not excessively erodible or saturated with water for long periods, and it either is not frequently flooded during the growing season or is protected from flooding. Slope ranges mainly from 0 to 6 percent.

*Farmland of statewide importance* is land that does not meet the national criteria for prime or unique farmland but has been identified by state agencies as important for protection, including areas of soils that nearly meet the requirements for prime farmland and that economically produce high yields of crops.

Cotton Hall contains approximately the following soil types of Prime Farmland and Farmland of Statewide Importance:

| **Prime Farmland** | **Acres** |
|---|---|
| Nemours fine sandy loam, 0-2% slopes | 4.7 |
| Nemours fine sandy loam, 2-6% slopes | 7.8 |
| **Farmland of Statewide Importance** | |
| Bladen fine sandy loam | 107.1 |
| Coosaw loamy fine sand | 4.6 |
| Santee fine sandy loam | 8.3 |
| Wahee fine sandy loam | 57.6 |
| | 190.1 |

The Cotton Hall Homesite soil map and chart are shown in Exhibit G.

**Land Cover Types and Natural Communities**

Land Cover Data is reported by the United States Geological Survey National Land Cover Database (NLCD), multi-resolution Land Characteristics Consortium, a partnership of Federal agencies working together to produce current, nationally consistent, land cover products for all 50 states and Puerto Rico. The latest iteration of the NCLD is from 2016.  It is updated every five years and stands as the definitive land cover database for the United States. Using this Land Cover data provides a snapshot of the Property at the

Grantor                          OLT

time of the easement. Land Cover as noted in this Baseline Report may change over time but Conservation Values are protected by the easement.

### Cropland/Pasture : Shrub/Brush Rangeland
The dominant habitat cover type on the property consists of open area crop and pasture lands with some shrub and brush rangeland, which makes up approximately ± 95.6 acres of the subject tract. The areas are managed for wildlife habitat, open space rural recreation and scenic views.

### Mixed Pine/Hardwood Upland Forest
Located in several areas and also as hedges throughout the tract, the mixed pine/hardwood upland forest habitat consists of various species of timber and vegetation typical of the habitat type. This habitat makes up approximately ± 42.7 acres.

These landscapes consist of evergreen broadleaved canopy trees with interspersed pine, such as loblolly pine (*Pinus taeda*), slash pine (*Pinus elliottii*), southern magnolia (*Magnolia grandiflora*), sweetbay magnolia (*Magnolia virginiana*), redbay (*Persea borbonia*), loblolly-bay (*Gordonia lasianthus*), sabal palm (*Sabal palmetto)*, and several evergreen oaks such as myrtle oak (*Quercus myrtifolia*), and the iconic southern live oak (*Quercus virginiana*) often covered with Spanish moss (*Tillandsia usneoides*). The understory is also often evergreen in these forests, with southern wax myrtle (*Myrica cerifera*) and American olive (*Osmanthus americanus*) very common to also include a variety of grasses and forbs such as broomsedge *(Andropogon virginicus)*, wiregrass *(Eleusine indica)*, partridge pea *(Chamaecrista fasciculata)* and American goldenrod *(Solidago altissima)*, while several evergreen species of *Ericaceae*, *Ilex*, and scrub palms (*Sabal minor* and *Serenoa*) are common on more moist sites.

### Freshwater Emergent Wetland / Forested Wetland / Open Water
Cotton Hall Homesite contains ± 51.7 acres of freshwater, emergent herbaceous wetlands, forested wetlands and open water, that are often important for many avian species as well as herptofauna. Wetlands are essential for the survival and reproduction of many species of amphibians, reptiles, birds, fish, and various species of mammals. The dominate overstory within the forested wetland areas include live oak (*Quercus virginiana*), water oak (*Quercus nigra*), eastern red cedar (*Juniperus virginiana*), loblolly pine (*Pinus taeda*), sabal palmetto (*Sabal palmetto*). Vegetation typical within the understory of the forested wetland areas and the non-forested wetland areas includes, but is not limited to saltbush (*Baccharis halimifolia*), wax myrtle (*Myrica cerifera*), blackberry (*Rubus spp.*), panic grass (*Panicum spp.*), Virginia chain-fern (*Woodwardia virginica*), netted chain-fern (*Woodwardia areolata*), cinnamon fern (*Osmunda cinnamomeum*), soft rush (*Juncus effusus*), woolgrass (*Scirpus cyperinus*), and various sedges (*Carex spp.*).

The land cover map and acreages for the Cotton Hall are shown in Exhibit H.

_____ Grantor                                    _____ OLT

## D.  Manmade Features

**Structures**

As of the date of this report, one (1) residential structure with one (1) tenant structure exists on the property. Several other farm related buildings exist on the property and can be found in the table below. These structures exist at the time of the conservation easement and are subject to the restrictions of the conservation easement

| Structure | Total SqFt | Photo # |
|---|---|---|
| Main House | 7,734 | 6 |
| Pool + Patio | 2,631 | 6 |
| Rear Pathway | 222 | 7 |
| Rear Storage | 72 | 7 |
| Garden Pump House | 56 | 8 |
| Tenant House | 2,411 | 9 |
| Club House | 600 | 10 |
| Horse Barn and Shop | 2,200 | 10 |
| Carriage House | 1,800 | 11 |
| Tractor Shed | 1,920 | 11 |
| Grit Grinding Shed | 510 | 21 |
| Restroom Building | 176 | 21 |
| Cane Grinding Shed | 1,080 | 22 |
| Pump House | 25 | 24 |
| Total Existing Impervious Surfaces: 21,437 square feet | | |

| Tracking List of Future Structures: | | |
|---|---|---|
| Structure | Total SqFt | Year Constructed |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

**Other**

There are various decoration and benches placed throughout the property as well as numerous tree mounted deer stands. Neither of these shall be considered in the impervious surface limitation. All roads present within the property are pervious in nature.

**Impervious Surface**

The impervious surface allowance in the conservation easement totals 40,000 square feet for future structures and surfaces. At the time of this report, the total impervious surface that exists on the property is approximately 21,437 square feet including all above structures.

Grantor                    OLT

## E. Restrictions and Limitations:

| | |
|---|---|
| ** NOTE: Recorded Conservation Easement Document Terms Supersede the Following Terms Shall There Be Any Discrepancies. ** | |
| **Subdivision:** | Property currently exists as one (1) parcel. Two (2) subdivided parcels in total will be permitted. Leases are permitted. |
| **Impervious Surface Limitation:** | 40,000 square feet of impervious surface in aggregate will be permitted. All Residential Structures, Agricultural Structures, Related Outbuildings and Recreational Structures are included in this allocation, as well as any other impervious surfaces identified herein. |
| **Residential Structures:** | Two (2) Residential Structures for permanent/long-term residency as well as associated outbuildings including utility sheds, one detached garage, a paved parking area, patios, paved entry roads and walkways, and one swimming pool per Residential Structure. Each Residential structure may be associated with one guest cottage, not to exceed 2800 square feet in size, and may be used for temporary or permanent residency. One residential structure and guest house exist. The other residential structure and guest house must be placed within one of four Designated Building Areas denoted herein. |
| **Building Height:** | 40 foot maximum above the minimum 1st floor FEMA elevation. |
| **Towers:** | Recreational towers for wildlife observation of less than thirty-five (35) feet in height are permitted. |
| **Road Buffer:** | 300' structure/impervious surface set back buffer from the public roads. |
| **Waterfront Buffers:** | 300' structure/ impervious surface set back from ponds with limited forest management (refer to easement). |
| **Industrial Uses:** | All industrial uses, activities, structures, or right of passage are prohibited. |
| **Commercial Uses:** | Commercial uses, activities, structures, or right of passage not specifically permitted herein are prohibited without prior Approval. For the purposes of this Easement, Agricultural Activities (including Commercial Timber Farming), Forest Management Practices and the leasing of hunting, trapping and fishing rights are not be considered Commercial Uses. <br> Nothwithstanding the above provision, the following activities are permitted: <br> I.   Weddings and/or special events are allowed on the Protected Property, so long as both the scale and frequency are consistent with the Purpose and Conservation Values of this easement; <br> II.  Nature-based tourism, agritourism and educational activities associated with the historic, cultural or ecological aspects of the Protected Property and surrounding neighborhood; <br> III. Short-term rentals that support I and/or II. |
| **Services:** | Construction of water wells, septic systems, utility services and service roadways are limited to serve allowed uses and subject to all restrictions and limitations and all applicable governmental laws and regulations.  Owner is permitted to grant utility and other easements as necessary to enable the delivery of these services. |
| **Roads:** | Roads shall be limited to those required to facilitate the uses permitted by this Easement, provided there shall be no road constructed or covered with Impervious Surface except as delineated herein or otherwise required by law. |

Grantor                                                OLT

| | |
|---|---|
| **Landscaping:** | Permitted, limited to the management of vegetation associated with the uses allowed by this Easement. |
| **Signs:** | Limited to 8 square feet in size when visible from off the Property. |
| **Archeological and Paleontological Excavations:** | Notice required for archeological or paleontological excavation.  Sites shall be returned to, or as close as possible to, its previous state, unless to be maintained for interpretive purposes related to education. |
| **Forestry Uses and Practices:** | Commercial and Recreational Forest Management practices including those associated with Commercial Timber Farming are permitted. Approval is required for timber harvests occurring per Timber Management practices. |
| **Agricultural Uses:** | Permitted. Notice is required for controlled burns occurring in the course of Agriculture Management practices. |
| **Rural Recreational Uses:** | Hunting, fishing, shooting, swimming, camping, tennis, equine and other sports are permitted. |
| **Impoundments:** | Refer to Conservation Easement |
| **Mining:** | Surface mining prohibited. |
| **Topography and Hydrology:** | No adverse material alteration of the topography or hydrology, unless otherwise provided for in Paragraphs 4 or 5. Exceptions for wildlife management, as permitted by local, state, and federal authorities, are allowed. |
| **Significant Tree Protection:** | Live oaks, magnolia and cypress trees with DBH of 12 inches or greater protected unless Approved by Grantee. Additional Exclusions to this rule will be allowed with permission not unreasonably withheld for salvage operations and other needs as requested by the Owner. |

Grantor                         OLT

# 3. Baseline Documentation Exhibits

## Exhibit A: Legal Description

All that certain piece, parcel or tract of land, situate, lying and being in the County of Beaufort, State of South Carolina, containing One Hundred Eighty-three and Sixteen Hundredths (183.16) acres and being more particularly shown and described as "Easement Property Parcel B" on that certain plat by Thomas G. Stanley, Jr., PLS, of TGS Land Surveying dated March 30, 2023 and entitled "This Plat Prepared at the Request of The Tomotley Crew, LLC  A Division of Tax Map # R710 012 000 001 0000  Sheldon Area, Beaufort County, South Carolina".  Said plat being recorded April 21, 2023 in Plat Book 161 at Page 136 in the ROD Office for Beaufort County, reference to which is craved for a more complete description.

AND ALSO
All that certain piece, parcel or tract of land, situate, lying and being in the County of Beaufort, State of South Carolina, containing Eight and Twenty-three Hundredths (8.23) acres and being more particularly shown and described as "Easement Property Parcel B2" on that certain plat by Thomas G. Stanley, Jr., PLS, of TGS Land Surveying dated March 30, 2023 and entitled "This Plat Prepared at the Request of The Tomotley Crew, LLC  A Division of Tax Map # R710 012 000 001 0000  Sheldon Area, Beaufort County, South Carolina".  Said plat being recorded April 21, 2023 in Plat Book 161 at Page 136  in the ROD Office for Beaufort County, reference to which is craved for a more complete description.

Beaufort County Tax Map#  R710 012 000 001 0000

**Grantee**'s Address:   Open Land Trust
c/o: Executive Director
P. O. Box 75
Beaufort, SC  29901

_____ Grantor                          _____ OLT

14

**Exhibit B: Beaufort County Parcel Information**

As reported by Beaufort County and accessed on March 24, 2023:

Property ID (PIN): R700 012 000 0001 0000
Alternate ID (AIN): 00522875
Parcel Address: 401 Trask Pkwy

Owner: The Tomotley Crew, LLC
Owner Address: 663 GREENVIEW AVE NE, ATLANTA GA 30305
Property Class Code: AgImp Classified
Acreage: 716.1400

Sales and Disclosure
Grantor: The Tomotley Crew, LLC
Book and Page: 3923 539
Date: 10/15/2020

_____Grantor                    _____OLT

**Exhibit C: Location Map**



 Grantor          OLT

**Exhibit D: Protected Properties Map**



Grantor                    OLT

**Exhibit E: Aerial Imagery Showing Current Conditions**



500 ft

CAPTURE DATE
January 26, 2023

SOURCE
Airbus Pléiades (0.5m)
© CNES 2023, Distribution AIRBUS DS

_____ Grantor                    _____ OLT

## Exhibit F: Buffers and Designated Building Areas



_____/ Grantor          _____ OLT

## Exhibit G: USDA Soils Map and Index

Farmland Classification—Beaufort County, South Carolina
(Cotton Hall Homesite Conservation Easement)



Map Scale: 1:9,320 if printed on A portrait (8.5" x 11") sheet.

Map projection: Web Mercator   Corner coordinates: WGS84   Edge tics: UTM Zone 17N WGS84

____Grantor                    ____OLT

## Farmland Classification

| Map unit symbol | Map unit name | Rating | Acres in AOI | Percent of AOI |
|---|---|---|---|---|
| Bd | Bladen fine sandy loam | Farmland of statewide importance | 107.1 | 56.4% |
| Cs | Coosaw loamy fine sand | Farmland of statewide importance | 4.6 | 2.4% |
| NeA | Nemours fine sandy loam, 0 to 2 percent slopes | All areas are prime farmland | 4.7 | 2.5% |
| NeB | Nemours fine sandy loam, 2 to 6 percent slopes | All areas are prime farmland | 7.8 | 4.1% |
| Sa | Santee fine sandy loam | Farmland of statewide importance | 8.3 | 4.3% |
| Wa | Wahee fine sandy loam | Farmland of statewide importance | 57.6 | 30.3% |
| **Totals for Area of Interest** | | | 190.1 | 100.0% |

## Description

Farmland classification identifies map units as prime farmland, farmland of statewide importance, farmland of local importance, or unique farmland. It identifies the location and extent of the soils that are best suited to food, feed, fiber, forage, and oilseed crops. NRCS policy and procedures on prime and unique farmlands are published in the "Federal Register," Vol. 43, No. 21, January 31, 1978.

## Rating Options

*Aggregation Method:* No Aggregation Necessary

*Tie-break Rule:* Lower

Grantor            OLT

# Exhibit H: Land Cover Map

*NOTE: All Measurements Calculated in ArcGIS and May Not Be Accurate*



**Property:** Cotton Hall
**Acreage:** ~187 acres
**County:** Beaufort
**Map Type:** Land Use

Cotton Hall CE

Cotton Hall CE - Land Use

| | |
|---|---|
| CROPLAND/PASTURE | 68.6 ac |
| FORESTED WETLAND | 41.6 ac |
| MIXED UPLAND FOREST | 42.7 ac |
| NON-FORESTED WETLAND | 4.9 ac |
| OPEN WATER | 5.2 ac |
| SHRUB/BRUSH RANGELAND | 27 ac |

Disclaimer: all measurements and area calculations may not represent the exact size and are calculated using GIS

550 Feet
275
0

_____ Grantor          _____ OLT

22

**Exhibit I: Vegetation Imagery (as of March 19, 2023)**



_____Grantor                    _____OLT

23

**Exhibit J: Plat**



## Exhibit K: Photopoint Map and Photos

Cotton Hall Homesite

Visited on 3/22/2023

Collected by Caylor Romines

**Photopoint Map**



Grantor                    OLT

**Photo Point Map (Focused)**



- ● Visit Points
- ▬ Visit Lines
- ⌐⌐ All Properties
- ☐ Cotton Hall Homesite Boundary
- ☐ Property Areas - 300' Pond Buffer
- ☐ Property Areas - 300' Road Buffer
- ☐ Property Areas - Designated Building Area Options

___ Grantor                    ___ OLT

26



_____Grantor          _____OLT

*Photo #1*



Boundary line intersection with Cotton Hall Road.

*Taken 3/22/2023 by Caylor Romines.*

Facing Southeast @ 136.77° / 32.62974, -80.80694

*Photo #2*



Abandoned railroad bed right of way.

*Taken 3/22/2023 by Caylor Romines.*

Facing East-Northeast @ 54.37° / 32.63049, -80.80915

_____ Grantor                    _____ OLT

28



Alternate entrance to property.

*Taken 3/22/2023 by Caylor Romines.*

Facing Southeast @ 135.76° / 32.63049, -80.80915

***Photo #3***



Power line right of way and property corner.

*Taken 3/22/2023 by Caylor Romines.*

Facing South-Southwest @ 199.4° / 32.63391, -80.81981

_____ Grantor                    _____ OLT

*Photo #4*



Main entrance into Cotton Hall.

*Taken 3/22/2023 by Caylor Romines.*

Facing South @ 188.21° / 32.6312, -80.81145

*Photo #5*



Driveway into the property.

*Taken 3/22/2023 by Caylor Romines.*

Facing West @ 262.86° / 32.63071, -80.81185

Grantor                                    OLT

*Photo #6*



Front of mainhouse and pervious parking area. Verification with Google Earth shows the house has approximately a 7,734 square foot footprint.

*Taken 3/22/2023 by Caylor Romines.*

Facing West-Southwest @ 242.18° / 32.62892, -80.81515



Swimming pool and surrounding concrete patio (2,631 sqft of Impervious Surface).

*Taken 3/22/2023 by Caylor Romines.*

Facing South-Southwest @ 200.96° / 32.62892, -80.81515

Grantor                    OLT

31

Photo #7



Azalea hedge located behind the mainhouse.

*Taken 3/22/2023 by Caylor Romines.*

Facing West-Southwest @ 246.11° / 32.62871, -80.81568



Impervious sidewalk around the rear of the house (222 square feet of impervious surface).

*Taken 3/22/2023 by Caylor Romines.*

Facing Northwest @ 301.14° / 32.62871, -80.81568

_____ Grantor          _____ OLT



Rear of main house and event space.

*Taken 3/22/2023 by Caylor Romines.*

Facing North-Northeast @ 21.16° / 32.62871, -80.81568



Small garden area located west of the mainhouse.

*Taken 3/22/2023 by Caylor Romines.*

Facing North-Northeast @ 26.79° / 32.62871, -80.81568

_____ Grantor                    _____ OLT



Storage Shed at rear of main house (72 square feet of impervious surface).

*Taken 3/22/2023 by Caylor Romines.*

Facing South-Southwest @ 190.4° / <u>32.62871, -80.81568</u>



Wedding and event area.

*Taken 3/22/2023 by Caylor Romines.*

Facing South @ 167.11° / <u>32.62871, -80.81568</u>

Grantor                              OLT

34

*Photo #8*



Garden pump house (56 square feet of impervious surface).

*Taken 3/22/2023 by Caylor Romines.*

Facing North-Northwest @ 343.08°  / 32.62922, -80.81613



View of well maintained pervious roads and live oaks leading to the main house from the other structures.

*Taken 3/22/2023 by Caylor Romines.*

Facing South-Southwest @ 195.61°  / 32.62922, -80.81613

Grantor                                        OLT

*Photo #9*



Tenant house (2,411 square feet of impervious surface).

*Taken 3/22/2023 by Caylor Romines.*

Facing North-Northwest @ 329.15°  / 32.63009, -80.81533

*Photo #10*



Club house (600 square feet of impervious surface).

*Taken 3/22/2023 by Caylor Romines.*

Facing East-Southeast @ 106.87°  / 32.6306, -80.81524

_Grantor                          _ OLT



Horse barn and shop building (2,200 square feet of impervious surface).

*Taken 3/22/2023 by Caylor Romines.*

Facing North-Northeast @ 20.51° / 32.6306, -80.81524

**Photo #11**



Carriage house (1,800 square feet of impervious surface).

*Taken 3/22/2023 by Caylor Romines.*

Facing West-Northwest @ 293.91° / 32.63161, -80.81569

_____ Grantor                    _____ OLT



Tractor shed (1,920 square feet of impervious surface).

*Taken 3/22/2023 by Caylor Romines.*

Facing South @ 184.44° / 32.63161, -80.81569

***Photo #12***



Barn pasture located near the barns.

*Taken 3/22/2023 by Caylor Romines.*

Facing West-Northwest @ 290.98° / 32.63194, -80.81598

Grantor                    OLT

*Photo #13*



Miscellaneous farm supplies located adjacent to tractor shed.

*Taken 3/22/2023 by Caylor Romines.*

Facing East-Southeast @ 101.74° / 32.63166, -80.81573

*Photo #14*



Power line from Cotton Hall Road to farm structures.

*Taken 3/22/2023 by Caylor Romines.*

Facing Northeast @ 44.33° / 32.63122, -80.81517

Grantor                    OLT

39

Photo #15



Dumpster and fuel storage.

*Taken 3/22/2023 by Caylor Romines.*

Facing East-Southeast @ 113.46° / 32.63088, -80.81488

Photo #16



Hardwood stand near the farm structures leading to Cotton Hall Road.

*Taken 3/22/2023 by Caylor Romines.*

Facing East-Southeast @ 105.09° / 32.6307, -80.81468

_____/Grantor          _____ OLT

*Photo #17*



"Gator Pond" located along the boundary. Boundary along the dike on right side of pond.

*Taken 3/22/2023 by Caylor Romines.*

Facing Southeast @ 134.47° / 32.62775, -80.8185



"Little Salt Pond" with Redfish fishing. Property boundary is located along the dike on the left side of the photo .

*Taken 3/22/2023 by Caylor Romines.*

Facing North @ 357.88°  / 32.62775, -80.8185

Grantor                                          OLT

41

*Photo #18*



Easement property is located along the dike and everything to the right. Left of hand is Deveux Hill.

*Taken 3/22/2023 by Caylor Romines.*

Facing North-Northwest @ 330.53°  /  32.62783, -80.81846

*Photo #19*



Property corner then follows left side of power line right of way.

*Taken 3/22/2023 by Caylor Romines.*

Facing North-Northwest @ 339.76°  /  32.62819, -80.81882

_____ Grantor          _____ OLT

*Photo #20*



Property line to the right of the dike.

*Taken 3/22/2023 by Caylor Romines.*

Facing Southeast @ 142.08° / 32.62766, -80.81867

*Photo #21*



Grit grinder for making Sugar Cane syrup.

*Taken 3/22/2023 by Caylor Romines.*

Facing South @ 177.16° / 32.62837, -80.81402

_____ Grantor                              _____ OLT

43



Grit grinding shed (510 square feet of impervious surface).

*Taken 3/22/2023 by Caylor Romines.*

Facing Northeast @ 50.14° / 32.62837, -80.81402



Recent timber harvest between Main House and Tomotley.

*Taken 3/22/2023 by Caylor Romines.*

Facing South @ 167.24° / 32.62837, -80.81402

_____ Grantor                    _____ OLT



Restroom Building (176 square feet of impervious surface).

*Taken 3/22/2023 by Caylor Romines.*

Facing West-Northwest @ 299.99°  / 32.62837, -80.81402

*Photo #22*



Cane Grinding Shed (1,080 square feet of impervious surface).

*Taken 3/22/2023 by Caylor Romines.*

Facing West @ 277.6°  / 32.62604, -80.81348

Grantor                                    OLT



Possible civil war site located along the shore of the ponds.

*Taken 3/22/2023 by Caylor Romines.*

Facing West-Southwest @ 253.63° / 32.62604, -80.81348

***Photo #23***



View of the impoundments along the southern boundary.

*Taken 3/22/2023 by Caylor Romines.*

Facing South-Southwest @ 197.56° / 32.62594, -80.8138

_____ Grantor                    _____ OLT

*Photo #24*



Pump house near grinding sheds (25 square feet of impervious surface).

*Taken 3/22/2023 by Caylor Romines.*

Facing East-Southeast @ 115.81° / 32.62622, -80.81307

*Photo #25*



Open  field with planted pines looking toward Cotton Hall Road. Designated Building Area options are within this view.

*Taken 3/22/2023 by Caylor Romines.*

Facing Northeast @ 51.64° / 32.62633, -80.81106

Grantor                                   OLT



Open field with planted pines looking towards the impoundments.

*Taken 3/22/2023 by Caylor Romines.*

Facing South-Southwest @ 202.77° / <u>32.62633</u>, <u>-80.81106</u>

**Photo #26**



Access point from east boundary. View from neighboring Tomotley.

*Taken 3/22/2023 by Caylor Romines.*

Facing Northwest @ 322.97° / <u>32.6244</u>, <u>-80.80894</u>

Grantor                                        OLT

## Exhibit L: Open Land Trust Board Approval



WHEREAS, Tomotley Crew, LLC wishes to grant a conservation easement on a 194.41 acres of their property (portion of Beaufort County TMS# R700 012 000 0001 0000 ) known as "Cotton Hall Homesite" located off Cotton Hall Road in Yemassee, South Carolina; and

WHEREAS, the Property contributes to the extensive network of protective wildlife corridors, the protection of water quality in the Port Royal Sound watershed, and the scenic natural and rural character of the area; and

WHEREAS, the Property is proximate to Open Land Trust conservation easements at Stony Creek at Bindon Plantation (1,317 acres) and Tomotley Plantation (770 acres) and three OLT Fee Owned properties (55 acres); and

WHEREAS, preservation of the Property shall serve the following purposes: preservation as a relatively natural habitat of fish, wildlife, or plants or similar ecosystem; and, the preservation of open space (including farmland and forest land) for scenic enjoyment by the public and/or maintaining or enhancing air or water quality; and

WHEREAS, the Property provides a diversity, quality, and combination of natural habitats significant to wildlife habitat functions including feeding, nesting and roosting areas for migratory songbirds, ground-nesting birds, waterfowl and other avian species, and also including feeding, breeding and resting areas for native small and large game and non-game mammals, as well as feeding and breeding areas for amphibians and reptiles; and

WHEREAS, the perpetual protection of the natural, scenic, and aesthetic values, and special character of the Protected Property will yield significant benefit; and

NOW THEREFORE BE IT RESOLVED, by vote on March 27, 2023 the Board of Directors of the Open Land Trust unanimously approved the Conservation Easement on Cotton Hall Homesite.

Kristin Williams
Executive Director

The Board of Directors: Katie C. Phifer *President*, Dean Moss *Vice President*, Al Segars *Secretary*, Alex Shuford *Treasurer*
Colden R. Battey, Jr., Vernita F. Dore, Edward Dukes, Terry Murray, Al Stokes, Thomas Tayloe, Beekman Webb
Executive Director: Kristin Williams Founding Trustees: Marguerite Broz, John M. Trask, Jr., Betty Waskiewicz

P.O. Box 75, Beaufort, SC 29901  •  O: (843) 521-2175  •  F: (843) 521-1946  •  info@openlandtrust.com  •  www.openlandtrust.org

Grantor                                        OLT

**Exhibit M:  Preparers Qualifications**

**Caylor G. Romines**
**Associate Wildlife Biologist®**
Open Land Trust, Director of Stewardship
905 Charles Street, Beaufort, SC 29902
Caylor@OpenLandTrust.org

## Education

*University of Tennessee*                                      May 2015 – August 2017
Master of Science, Wildlife and Fisheries Science
    Master's Thesis Project: Developing a restoration suitability index for the
    Southern Appalachian Brook Trout on the North Zone of the Cherokee
    National Forest based on habitat characteristics to provide a model for
    long-term restoration practices.
*University of Tennessee*                                      August 2011 - May 2015
Bachelor of Science, Wildlife and Fisheries Management and a Minor in Forestry

## Relevant Work Experience

*Open Land Trust*   -   May 2019 – present
*905 Charles Street, Beaufort, SC 29902*
    **Director of Stewardship**
    Oversees the Open Land Trust's land stewardship program. Nurtures strong
    relationships with neighbors/owners of conservation properties. Assists Director
    of Land Protection with landowner, partner and stakeholder meetings in order to
    identify easement or fee acquisition properties and prepares maps for Land
    Protection purposes
*Chelsea Plantation Partnership*                              September 2017 – May 2019
*1000 Chelsea Plantation Drive, Ridgeland, SC 29936*
    **Wildlife Biologist / Hunting Guide**
    Performed various wildlife management techniques in order to further enhance the
    wildlife benefit and use of the 6,000 acre property in order to have better quality
    hunting experiences. I worked predominantly on manipulating property as well as
    leading guests on various hunts of several upland species.
*USDA Forest Service, Osceola National Forest*                May 2017 - July 2017
*Sanderson, FL*
    **Wildlife Technician Detailer**
    Monitoring the reproductive and nest success of the endangered Red Cockaded
    Woodpecker across the Osceola National Forest was predominately my position
    as well as monitoring gopher tortoise burrows. I also conducted numerous timber
    sale surveys.
*USDA Forest Service, Cherokee National Forest*              June 2011 – August 2017
*Greeneville, TN*
    **Biological Science Student Trainee**
    Worked directly under the Wildlife and Fisheries Biologist assisting in various
    wildlife and fisheries management techniques. I also worked in various other
    departments to include: Timber Resources, Watershed Management, Recreation,
    Wetland and Water Resources, Botanical Department as well as the National
    Environmental Policy Act department.

    /Grantor                                                 OLT

| STATE OF SOUTH CAROLINA | ) | |
|---|---|---|
| | ) | **AFFIDAVIT FOR TAXABLE OR EXEMPT TRANSFERS** |
| COUNTY OF BEAUFORT | ) | |

PERSONALLY appeared before me the undersigned, who being duly sworn, deposes and says:

1.  I have read the information on this affidavit and I understand such information.

2   The property being encumbered is located along Cotton Hall Road and bears Beaufort County Tax Map Number R710 012 000 0001 0000 (portion of).

3.  Check one of the following: The deed is

   (a)  __XX__   subject to the deed recording fee as a transfer for consideration paid or to be paid in money or money's worth.
   (b)  _____   subject to the deed recording fee as a transfer between a corporation, a partnership, or other entity and a stockholder, partner, or owner of the entity, or is a transfer to a trust or as a distribution to a trust beneficiary.
   (c)  _____ exempt from the deed recording fee because (See Information section of affidavit): No. 1
 (If exempt, please skip items 4 - 7, and go to item 8 of this affidavit.)

If exempt under exemption #14 as described in the Information section of this affidavit, did the agent and principal relationship exist at the time of the original sale and was the purpose of this relationship to purchase the realty?  Check Yes _____ or  No __

4.  Check one of the following if either item 3(a) or item 3(b) above has been checked (See Information section of this affidavit.):

   (a)  __XX__   The fee is computed on the consideration paid or to be paid in money or money's worth in the amount of $450,000.00.
   (b)  _____   The fee is computed on the fair market value of the realty which is _____.
   (c)  _____   The fee is computed on the fair market value of the realty as established for property tax purposes which is _____.

5.  Check Yes_____ or No ___X_____ to the following: A lien or encumbrance existed on the land, tenement, or realty before the transfer and remained on the land, tenement, or realty after the transfer. (This includes, pursuant to Code Section 12-59-140(E)(6), any lien or encumbrance on realty in possession of a forfeited land commission which may subsequently be waived or reduced after the transfer under a signed contract or agreement between the lien holder and the buyer existing before the transfer.) If "Yes," the amount of the outstanding balance of this lien or encumbrance is:_____.

6.  The deed recording fee is computed as follows:

   (a)  Place the amount listed in item 4 above here:       $ 450,000.00
   (b)  Place the amount listed in item 5 above here:       $_____0.00
         (If no amount is listed, place zero here.)
   (c)  Subtract Line 6(b) from Line 6(a) and place result here:   $ 450,000.00

7.  The deed recording fee due is based on the amount listed on Line 6(c) above and the deed recording fee due is:  $1,665.00.

8.  As required by Code Section 12-24-70, I state that I am a responsible person who was connected with the transaction as Attorney.

9.     I understand that a person required to furnish this affidavit who willfully furnishes a false or fraudulent affidavit is guilty of a misdemeanor and, upon conviction, must be fined not more than one thousand dollars or imprisoned not more than one year, or both.

David M. Swanson

SWORN to and subscribed before me this
_____9th_____ day of May, 2023.

Notary (L.S.):
Notary Public for South Carolina
My Commission Expires: February 15, 2032
Notary (printed name):  A. Neyle Jervey

EXHIBIT C

DEED FOR SALE OF PARCEL C OF
COTTON HALL PLANTATION

RECORDED
2023 Aug -28 08:46 AM
BEAUFORT COUNTY AUDITOR

BEAUFORT COUNTY SC - ROD
BK 4266 Pgs 1553-1557
2023038331 RED
08/11/2023  02:14:44 PM
RCPT# 1140419
RECORDING FEES 15.00
County Tax County 3,245.00
State Tax  State 7,670.00

ADD DMP Record  8/17/2023 04:45:50 PM
BEAUFORT  COUNTY  TAX  MAP  REFERENCE

| Dist | Map | SMap | Parcel | Block | Week |
|------|-----|------|--------|-------|------|
| R710 | 012 | 000 | 0072 | 0000 | 00 |

**RETURN ORIGINAL DEED TO:**
Haynsworth Sinkler Boyd PA
134 Meeting Street, 3rd Floor
Charleston, SC 29401

| STATE OF SOUTH CAROLINA | ) | **TITLE TO REAL ESTATE** |
|---|---|---|
| | ) | **(GENERAL WARRANTY DEED AND** |
| COUNTY  OF  BEAUFORT | ) | **QUIT CLAIM DEED)** |

   **KNOW ALL MEN BY THESE PRESENTS**, that **The Tomotley Crew, LLC, a South Carolina limited liability company (the "Grantor")**, in the State aforesaid, for and in consideration of the sum of **Two Million Nine Hundred Forty Nine Thousand Nine Hundred and 00/100 ($2,949,900.00) Dollars,** to it in hand paid at and before the sealing of these presents by **Open Space Institute Land Trust, Inc., a New York not for profit corporation (the "Grantee")**, in the State and County aforesaid, the receipt and sufficiency of which is hereby expressly acknowledged, has granted, bargained, sold, transferred, conveyed, and released, and by these presents does hereby grant, bargain, sell, transfer, convey, and release unto the said **Grantee,** its successors and assigns forever, the following described real estate, to-wit:

   **SEE EXHIBIT "A" ATTACHED HERETO FOR LEGAL DESCRIPTION**

   **THIS CONVEYANCE IS MADE SUBJECT TO** the Permitted Exceptions more particularly described on Exhibit "B" attached hereto.

   **TOGETHER** with all and singular, the Rights, Members, Hereditaments and Appurtenances to the said premises belonging or in anywise incident or appertaining.

   **TO HAVE AND TO HOLD**, all and singular, the said premises before mentioned unto the said **Grantee,** its successors and assigns forever in fee simple.

   **AND** Grantor does hereby bind itself and its successors and assigns to warrant and forever defend, all and singular, the said premises unto the said **Grantee,** its successors and assigns, against it and its successors and assigns, and all persons whomsoever lawfully claiming, or to claim, the same or any part thereof, and with respect to the that portion of the property lying below the mean highwater mark of abutting waterways, shown on the survey referenced in the legal description, this conveyance is by quitclaim only.

**WITNESS** the Hand and Seal of the undersigned Grantor this the _10th_ day of August, in the year of our Lord Two Thousand Twenty Three (2023).

Signed, Sealed And Delivered
In The Presence Of:

The Tomotley Crew, LLC, a South Carolina limited liability company (Grantor)

_Dawn S. Fraser_
Witness Number One

By: Lucian Lincoln Wood, Jr.
Its: Sole Member

_Witness Number Two_

STATE OF SOUTH CAROLINA    )
                                                       )          **ACKNOWLEDGMENT**
COUNTY   OF COLLETON        )

I, the undersigned Notary Public, do hereby certify that **The Tomotley Crew, LLC, a South Carolina limited liability company, by and through Lucian Lincoln Wood, Jr., its Sole Member,** personally appeared before me this day and acknowledged the due execution of the foregoing instrument, and who is personally known to me, or who has proved to me on the basis of satisfactory evidence to be the person who executed the foregoing instrument.

Witness my hand and official seal this the _10th_ day of August, 2023.

Sworn to before me this
_10th_ day of August, 2023

_____ (Seal)
Signature of Notary Public
Printed Name: _Thomas I. Howard, Jr._
Notary Public for the State of South Carolina
My Commission Expires: _6/15/2026_

**GRANTEE'S ADDRESS:**          1350 Broadway, Ste. 201
                                                    NY, NY  10018

Deed Prepared By:
Thomas I. Howard
Attorney at Law
P. O. Box 693
Walterboro, SC 29488
Attorney File No: 23-9578B.abs

### *EXHIBIT "A"*
### *LEGAL DESCRIPTION*

All that certain piece, parcel or tract of land, containing 294.99 acres, more or less, known and designated as Parcel C, situate, lying and being in Beaufort County, State of South Carolina, with such property being more fully shown, described, and delineated by reference to a Plat thereof entitled "THIS PLAT PREPARED AT THE REQUEST OF THE TOMOTLEY CREW, LLC A DIVISION OF TAX MAP # R710 012 000 001 0000, SHELDON AREA, BEAUFORT COUNTY, SOUTH CAROLINA" prepared by Thomas G. Stanley, Jr., SCPLS No. 18269, dated March 30, 2023 and recorded on April 21, 2023 with the Beaufort County Register of Deeds Office in Plat Book 161, at Page 136, to which aforesaid Plat reference is hereby specifically craved for a full and complete description of the subject 294.99 acre tract of land.

This being a portion of the property conveyed to The Tomotley Crew, LLC, a South Carolina limited liability company by deed dated October 15, 2020 from S. A. de Kock, as Trustee for the 1992 Joseph C. Harden and Allyson J. Harden Irrevocable Trust, dated December 31, 1992. Said deed being recorded on October 19, 2020 with the Beaufort County Register of Deeds Office in Record Book 3923, at Page 539.

TMS No.: R710 012 000 0072 0000

Grantee's address:   1350 Broadway, Suite 201
New York, NY 10018

EXHIBIT "B"
Permitted Exceptions

1.  Taxes and assessments for the year 2023, and subsequent years, which are a lien but are not yet due and payable.

2.  Any taxes assessed under the roll-back provisions of Section 12-43-220-(D-4), South Carolina Code of Laws 1976, as amended.

3.  Rights of upper and lower riparian owners in and to the backwaters crossing or adjoining the Land, and the natural flow thereof, free from diminution or pollution.

4.  Possible rights of others in and to the use of the dirt roads located on the Land.

5.  Easement from The Tomotley Crew, LLC to Dominion Energy South Carolina, Inc. dated September 28, 2022 and recorded in **Book 4187, at Page 263** in the ROD Office for Beaufort County, S.C.

6.  Easement from Joseph C. Harden and Allyson J. Harden to South Carolina Electric & Gas Company recorded August 14, 1991 in **Book 581, at Page 726**, aforesaid records.

7.  Easement from Harold W. Allen to South Carolina Electric & Gas Company recorded December 6, 1957 in **Book 88, at Page 36**, aforesaid records.

8.  "South Carolina Electric & Gas Easement" as shown on plat by Rod C. Spann, RLS, dated July 1, 1981 and recorded in **Plat Book 29, at Page 148**, aforesaid records.

9.  "Overhead Transmission Line" as shown on plat by Thomas G. Stanley, Jr., PLS, of TGS Land Surveying dated March 30, 2023 and entitled "This Plat Prepared at the Request of The Tomotley Crew, LLC   A Division of Tax Map # R710 012 000 001 0000  Sheldon Area, Beaufort County, South Carolina".  Said plat being recorded April 21, 2023 in **Plat Book 161, at Page 136** in the ROD Office for Beaufort County.

10.  Interests created by, or limitations on use imposed by, the Federal Coastal Zone Management Act or other federal law or by SC Code, Chapter 39, Title 48, as amended, or any regulations promulgated pursuant to said state or federal laws.

11.  Title to that portion of the property which is or may be filled-in land, or which is or has been under water, or which lies below the mean high water mark of abutting tidal waters, or which may be marshlands.

12.  Jurisdiction of the US Corps of Engineers with respect to any portion of the Land which may constitute wetlands or navigable waters and any regulations imposed on the insured Land by the Coastal Division of DHEC and/or the Water Resources Division of the Department of Natural Resources.

| STATE OF SOUTH CAROLINA | ) | RECORDING FEE AFFIDAVIT |
|---|---|---|
| | ) | |
| COUNTY OF BEAUFORT | ) | |

PERSONALLY appeared before me the undersigned attorney, Thomas I. Howard, of 148 S. Jefferies Blvd., P.O. Box 693, Walterboro, S.C. 29488, who being duly sworn, deposes and says:

1. That I have read the information on this Recording Fee Affidavit and that I understand such information.

2. The property being transferred herein is for 294.99 acres, more or less, located in Beaufort County, South Carolina, and designated as TMS No.: R710 012 000 0001 0000 (portion).

3. Check one of the following: The Deed is

     (a) __X__     Subject to the deed recording fee as a transfer for consideration paid or to be paid in money or money's worth.

     (b) _____     Subject to the deed recording fee as a transfer between a corporation, a partnership, or other entity and a stockholder, partner, or owner of the entity, or is a transfer to a trust or as a distribution to a trust beneficiary.

     (c) _____     Exempt from the deed recording fee because (See Information section of affidavit):
                      (If exempt, please skip items 4 - 7, and go to item 8 of this affidavit.)

4. Check one of the following if either item 3(a) or item 3(b) above has been checked (See Information section of this affidavit):

     (a) __X__     The fee is computed on the consideration paid or to be paid in money or money's worth in the amount of: **$2,949,900.00.**

     (b) _____     The fee is computed on the fair market value of the realty which is _____

     (c)_____     Exempt from the deed recording fee because   (See Information section of affidavit):
                      (If exempt, please skip items 4-7, and go to item 8 of this affidavit.)

5. Check Yes ___ or No _X__ to the following: A lien or encumbrance existed on the land, tenement, or realty before the transfer and remained on the land, tenement, or realty after the transfer.  If "Yes," the amount of the outstanding balance of this lien or encumbrance is: $ _____.

6. The deed recording fee is computed as follows:

     (a) _____ Place the amount listed in item 4 above here:     $2,949,900.00
     (b) _____ Place the amount listed in item 5 above here:     $0
              (If no amount is listed, place zero here.)
     (c) _____ Subtract Line 6(b) from Line 6(a) and place result here: $2,949,900.00

7. The deed recording fee due is based on the amount listed on Line 6 (c) above and the deed recording fee due is: $10,915.00.

8. As required by Code Section 12-24-70, I state that I am a responsible person who was connected with this real estate transaction as:  Attorney.

9. I understand that a person required to furnish this affidavit who willfully furnishes a false or fraudulent affidavit is guilty of a misdemeanor and, upon conviction, must be fined not more than one thousand dollars or imprisoned not more than one year, or both.

Thomas I. Howard (Attorney)

SWORN to and subscribed before me
on this the 10th day of August, 2023.

_Dawn S. Fraser_
Signature of Notary Public
Printed Name: Dawn S. Fraser
Notary Public for South Carolina
My Commission Expires: 8/29/2024

DAWN S. FRASER
NOTARY
PUBLIC
SOUTH CAROLINA

EXHIBIT D

DEED FOR SALE OF COTTON HALL
PLANTATION TO THE TOMOTLEY CREW, LLC

BEAUFORT COUNTY SC - ROD
BK 3923 Pgs 0539-0543
FILE NUM 2020059902
10/19/2020  02:38:08 PM
RCPT# 998741
RECORDING FEES 15.00
County Tax County 6,490.00
State Tax  State 15,340.00

ADD DMP Record  11/19/2020 11:24:53 AM
BEAUFORT COUNTY TAX MAP REFERENCE

| Dist | Map | SMap | Parcel | Block | Week |
|------|-----|------|--------|-------|------|
| R700 | 012 | 000 | 0001 | 0000 | 00 |

RECORDED
2020 Nov -19 01:08 PM

BEAUFORT COUNTY AUDITOR

This instrument prepared by/after recording return to:
**BURR · FORMAN McNAIR**
23B Shelter Cove Lane Suite 400
Hilton Head Island SC 29928
843-785-2171 (CSG:LHT)

STATE OF SOUTH CAROLINA          )
                                 )          **TITLE TO REAL ESTATE**
COUNTY OF BEAUFORT               )          (Limited Warranty)

    **KNOW ALL MEN BY THESE PRESENTS**, that S.A. de Kock, Trustee for the 1992 Joseph C. Harden and Allyson J. Harden Irrevocable Trust, dated December 31, 1992 ("**Grantor**") in the State aforesaid, for and in consideration of the sum of Five Million Nine Hundred Thousand and 00/100 Dollars ($5,900,000.00) to Grantor in hand paid by:

    The Tomotley Crew, LLC, a South Carolina limited liability company
    1180 West Peachtree Street Suite 2040
    Atlanta, GA 30309

("**Grantee**") the receipt of which is hereby acknowledged, has granted, bargained, sold and released and by these presents does grant, bargain, sell and release, subject to the Permitted Exceptions defined below, unto the said Grantee, the following described property:

    ALL that certain piece, parcel or tract of land, with improvements thereon, situate, lying and being in Sheldon Township, County of Beaufort, South Carolina, and being more particularly shown and described on a plat prepared for Cotton Hall Plantation by Rod C. Spann, S.C.R.L.S., dated July 1, 1981, and recorded in the Beaufort County Records in Plat Book 29 at Page 148. Cotton Hall Plantation, as shown on said plat, contains 719.23 acres less 3.09 acres for a railroad right-of-way, leaving a net acreage of 716.14 acres. Cotton Hall Plantation, as shown on said plat, is bounded on the North by South Carolina Highway 48; on the East by lands of Tomotley Plantation; on the South and Southwest by U. S. Highway 21; and on the Northwest by South Carolina Highway 48. For a more detailed description as to the courses, metes and bounds of said Cotton Hall Plantation, reference may be had to the above referred to plat of record.

    The property intended to be conveyed herein is a portion of the same property conveyed to the within Grantor by Deed from Joseph C. Harden and Allyson J. Harden, dated December 31, 1992, and recorded in Book 615 at Page 2470, Beaufort County Records, on January 4, 1993.

PIN #R700 012 000 0001 0000                    - 1 -

DOC #2

This Deed was prepared in the Law Offices of Burr & Forman LLP, Post Office Drawer 3, Hilton Head Island, South Carolina 29938, by Cary S. Griffin.

**THIS CONVEYANCE IS MADE SUBJECT TO** the Permitted Exceptions set forth on the attached **Exhibit A**.

**TOGETHER** with all and singular the Rights, Members, Hereditaments and Appurtenances to the said Premises belonging, or in anywise incident or appertaining.

**TO HAVE AND TO HOLD** all and singular the said premises before mentioned, unto the Grantee, its successors and assigns forever.

**AND** subject to the Permitted Exceptions, Grantor does hereby bind himself and his successors and assigns to warrant and forever defend all and singular the said premises unto Grantee, its successors and assigns, against Grantor and his successors and assigns, and all persons whomsoever lawfully claiming or to claim the same, or any part thereof, but only for the time the Grantor held title to the Property.

*[Signatures on Following Page]*

**IN WITNESS WHEREOF**, the Grantor has caused these presents to be executed in its name by its duly authorized officer and its seal to be hereto affixed, this __*15*__ day of October, 2020.

SIGNED, SEALED AND DELIVERED
IN THE PRESENCE OF:

(1) _____
S. A. de Kock, as Trustee for the 1992 Joseph C.
Harden and Allyson J. Harden Irrevocable Trust,
dated December 31, 1992

(2) _____
Signature of 1st Witness

(3) _____
Signature of 2nd Witness/Notary Public

STATE OF GEORGIA          )
                          )        ACKNOWLEDGMENT
COUNTY OF *PAULDING*      )

I, the undersigned Notary Public, do hereby certify that   S.A. de Kock, as Trustee of the 1992 Joseph C. Harden and Allyson J. Harden Irrevocable Trust, Dated December 31, 1992, personally appeared before me this day and acknowledged the due execution of the foregoing instrument.

Witness my hand and official seal this the *15* day of October, 2020.

(4) _____
Notary Public for Georgia
My Commission Expires: *2/10/2024*

ANNE W. PARISE
NOTARY
EXPIRES
GEORGIA
FEBRUARY 10, 2024
PUBLIC
PAULDING COUNTY

- 3 -

Exhibit A

Permitted Exceptions

1.    Taxes for the year __2021__ and subsequent years, a lien not yet due and payable.

2.    Matters which would be shown by a current and accurate survey of the Property.

3.    Riparian rights or any claim adverse to the owner of any property below mean high water mark of rivers, creeks, ocean and to any property which is or might be considered marsh, swamp, ponds or tidal flow areas, or which may be claimed by any governmental or quasi-governmental entity, or title to any portion of the insured premises that may be accreted as defined in the Coastal Tideland, and Wetland Act, Section 48-39-10 of the South Carolina Code of Laws, 1976, as amended.

4.    Any loss or damage resulting from any portion of subject property insured hereunder being located within a flood plain hazard area as established by the Federal Insurance Administration.

5.    Subject to the provisions of Zoning and Development Standards Ordinance of Beaufort County, South Carolina.

6.    The exact amount of acreage contained in the property described herein is not guaranteed.

7.    Roll-back taxes as contemplated under Title 12, Article 3 of the South Carolina Code of Laws of 1976 as amended, Provision-Sections 12-43-220.

8.    Rights of others in and to any roads that may cross the Land.

9.    Flood gate provisions contained in the instrument between R. E. Turner and SC State Highway Department dated August 25, 1960 and recorded in Book 103, at Page 212, Beaufort County records.

3.    Right of Way Easement from H. J. Rast to the South Carolina Highway Commission recorded March 7, 1928 in Book 45 at Page 149, Beaufort County records.

4    Right of Way from Harold W. Allen to SCE&G dated November 26, 1957 and recorded in Book 88, Page 36 and 37, Beaufort County records.

5.    Right of Way from Harold W. Allen to SCE&G recorded in Book 74 Page 339, Beaufort County records.

13.    Flood gate provisions contained in the Deed from R. Edward Turner to Edmund Dorr Griffin, Jr. and Dorothy A. B. Griffin dated March 28, 1961 and recorded March 28, 1961 in Book 106 at Page 7, Beaufort County records.

14.    Easement from S. A. de Kock, as Trustee for the 1992 Joseph C. Harden and Allyson J. Harden Irrevocable trust dated December 31, 1992 to South Carolina Electric & Gas Company recorded in Book 581 at Page 726, Beaufort County records.

15.    Easement from S. A. de Kock, as Trustee for the 1992 Joseph C. Harden and Allyson J. Harden Irrevocable trust dated December 31, 1992 to South Carolina Electric & Gas Company dated June 19, 2014 and recorded July 15, 2014 in Book 3334 at Page 136, Beaufort County records.

16.    Provisions of the Quit Claim Deed from S. A. deKock, as Trustee for the 1992 Joseph C. Harden and Allyson J. Harden Irrevocable trust dated December 31, 1992 to the Beaufort-Jasper Water and Sewer Authority dated October 13, 2015 and recorded October 19, 2015 in Book 3436 at Page 3278, Beaufort County records.

STATE OF SOUTH CAROLINA       }
COUNTY OF BEAUFORT           } AFFIDAVIT FOR TAXABLE OR EXEMPT TRANSFERS

PERSONALLY appeared before me the undersigned, who being duly sworn, deposes and says:

1. I have read the information on this affidavit and I understand such information.

2. The property was transferred by <u>S. A. deKock, Trustee of the 1992 Joseph C. Harden & Allyson J. Harden Irrevocable Trust established by Trust Agreement dated December 31, 1992</u> to <u>The Tomotley Crew, LLC</u> on <u>October 19, 2020</u>.

3. Check one of the following: The deed is
        (A) <u> x </u> subject to the deed recording fee as a transfer for consideration paid
                or to be paid in money or money's worth.
        (B) <u>     </u> subject to the deed recording fee as a transfer between a corporation, a
                partnership, or other entity and a stockholder, partner, or owner of the
                entity, or is a transfer to a trust or as distribution to a trust beneficiary.
        (C) <u>     </u>exempt from the deed recording fee because (See Information section of
                affidavit):_____(Explanation required)
                (If exempt, please skip items 4-7, and go to item 8 of this affidavit.)
       If exempt under exemption #14 as described in the Information section of this affidavit, did the agent and
       principal relationship exist at the time of the original sale and was the purpose of this relationship to
       purchase the realty? Check Yes _____ or No _____

4. Check one of the following if either item 3(a) or item 3(b) above has been checked. (See Information
       section of this affidavit):

        (A) <u> x </u> The fee is computed on the consideration paid or to be paid in money or
                money's worth in the amount of $5,900,000.00 _____.
        (B) <u>     </u>The fee is computed on the fair market value of the realty which is _____.
        (C) <u>     </u>The fee is computed on the fair market value of the realty as established for
                property tax purposes which is _____.

5. Check YES____ or NO x___to the following: A lien or encumbrance existed on the land, tenement, or realty before the transfer and remained on the land, tenement, or realty after the transfer. If "YES," the amount of the outstanding balance of this lien or encumbrance is _____.

6. The deed recording fee is computed as follows:
        (A) Place the amount listed in item 4 above here:            5,900,000.00
        (B) Place the amount listed in item 5 above here:            _____
            (If no amount is listed, place zero here.)
        (C) Subtract Line 6(b) from Line 6(a) and place the result here:    5,900,000.00

7. The deed recording fee is based on the amount listed on Line 6(c) above and the deed recording fee due is: <u>$21,830.00</u>.

8. As required by Code Section '12-24-70, I state that I am a responsible person who was connected with the transaction as:

<u>Attorney for Buyer</u>.

9. I understand that a person required to furnish this affidavit who wilfully furnishes a false or fraudulent affidavit is guilty of a misdemeanor and, upon conviction, must be fined not more than one thousand dollars or imprisoned not more than one year, or both.

                                                        _____
                                   Responsible Person Connected with the Transaction
                                   David H. Crawford
Sworn to before me this 19th day of October, 2020.    Womble Bond Dickinson (US) LLP

_____
Notary Public for South Carolina
My Commission Expires:

MAGDA K. USERA
Notary Public, South Carolina
My Commission Expires
August 21, 2023

WBD (US) 50219448v1