## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

NICOLE JENNINGS WADE,
JONATHAN D. GRUNBERG, and
G. TAYLOR WILSON,

      Plaintiffs,

    v.

L. LIN WOOD,

      Defendant.

Case No. 1:22-CV-1073-MLB

## PLAINTIFFS' RESPONSE TO DEFENDANT'S
## RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

Plaintiffs Nicole Wade, Jonathan Grunberg, and Taylor Wilson file this response in opposition to Defendant L. Lin Wood's ("Wood") Renewed Motion for Judgment as a Matter of Law (the "Motion") (Dkt. 147).

### INTRODUCTION

Wood asks this Court to be the first court in 150 years of jurisprudence to hold that O.C.G.A. § 13-6-11 is unconstitutional and/or applicable only to cases asserting breach of contract. There is no authority to support Wood's position, and it is patently frivolous to argue that the minor changes to the completely unrelated §§ 1-1-1 and 1-1-8 (also referred to as S.B. 238), somehow implicitly caused a sea change in law that has been consistently interpreted for 150 years.

Specifically, Wood's Motion attacks the legal basis of the jury's award of expenses of litigation pursuant to O.C.G.A. § 13-6-11. He does not challenge the jury's determination of liability or damages on the underlying claim for defamation, nor does he contest the sufficiency of the evidence to support the award of expenses of litigation.

Defendant Wood first argues that O.C.G.A. § 13-6-11 is unconstitutional "as applied in this case" because the relief it provides would not be available to defendants.  However, the expenses of litigation available pursuant to § 13-6-11 represent an additional category of special damages *flowing from the parties' underlying conduct*, not litigation conduct, and those damages can be awarded only as ancillary damages available to a party who otherwise proves a substantive claim for damages. In other words, the statute is, indeed, party neutral—it allows any party that succeeds on an affirmative underlying claim to seek an award of expenses and fees based on the requirements of the statute, including a defendant pursuing a counterclaim.

However, here, Wood asserted no claims against Plaintiffs and therefore is barred from asserting claims for ancillary damages under this statute.  In fact, Wood made no allegations that Plaintiffs somehow engaged in bad faith, have been stubbornly litigious, or otherwise engaged in conduct causing Wood unnecessary

trouble and expense. Without having asserted any claims or alleged any facts giving rise to any damages under this statute, Wood is left without standing to challenge the constitutionality of this statute based upon his incorrect belief about what might happen to some hypothetical defendant elsewhere.

Moreover, the statute does not operate in a vacuum; defendants who do not possess their own causes of action against a plaintiff may yet pursue attorneys' fees for litigation conduct through other means, such as O.C.G.A. §§ 9-15-14, 9-11-68, and/or Federal Rule of Civil Procedure 11. In short, the statute by no means treats *similarly situated* litigants differently—it treats those who committed legal wrongs in the course of the parties' underlying interactions differently from those who did not. Defendant can claim no curtailment of his rights to due process or equal protection under law where the statute merely authorizes damages to one party for the other's underlying tortious misconduct.

And there are obvious, rational bases for the State of Georgia to enact this statute: to encourage good faith and fair dealing, to discourage its citizens from engaging in misconduct that will result in litigation, and to prevent victims from being made something less than whole when a party acts in bad faith as when committing a tort.  Wood's argument is all the more absurd because it would lead to an untold number of federal and state attorneys' fees provisions being deemed

unconstitutional. If a statute can be construed in a constitutional manner, it must be, and here, it has been for 150 years.

Wood also contends that because O.C.G.A. § 13-6-11 and its precursors have always been under the Title related to "Contracts," it cannot be applied to tort actions. This argument fails to acknowledge 150 years of consistent precedent from Georgia courts that have uniformly held that this statute applies to tort actions. Attempting to avoid this long precedent, Wood attempts to argue that the Georgia legislature rewrote more than a century of case law construing O.C.G.A. § 13-6-11 by innocuous amendment to O.C.G.A. §§ 1-1-1 and 1-1-8 to purportedly give "force of law" to the name of every single Title and Code section in the Georgia Code, even in the absence of any expressed legislative intent to that effect. To the contrary, the purpose of the amendments is perfectly clear and has nothing to do with § 13-6-11. Wood does not even attempt to address the principles of statutory construction that preclude his fanciful argument that §13-6-11, along with every other statute in the Code, was somehow implicitly amended by changes to completely different statutes.

But even if Wood's argument about the effect of S.B. 238 made sense, his point is academic. If the amended statutes effected a substantive change to § 13-6-11—as Wood supposes and which they certainly did not—the amended statutes still cannot be retroactively applied to Plaintiffs' claims. The effective date of the

amended statutes was July 1, 2021—which is *after* Plaintiffs' claims arose in May and June of 2021. Therefore, nothing has changed about Plaintiffs' substantive rights under the version of the Code in effect when Wood committed his tortious conduct. The Motion should be denied.

## FACTS

Plaintiffs asserted defamation claims for statements Wood made between May 12 and June 18, 2021. [Dkt. 102-4, 9]. As the jury determined, Wood was liable for defamation, and Plaintiffs proved by a preponderance of the evidence that they were entitled to recovery of expenses of litigation from him pursuant to O.C.G.A. § 13-6-11. [Dkt. 137]. After considering evidence regarding the reasonable amount of such expenses, the jury awarded $750,000.00 to Plaintiffs. [Dkt. 138].

The 2021 amendments to O.C.G.A. §§ 1-1-1 and 1-1-8—which Wood claims potentially changed every single law in the State of Georgia—went into effect on July 1, 2021. *See* O.C.G.A. § 1-1-1 at "Credits"; Georgia General Assembly (SB 238), avail. at https://www.legis.ga.gov/legislation/60005.

The Court already rejected Wood's arguments and denied his oral motion for judgment as a matter of law. Wood reasserts those baseless arguments in his renewed Motion. [Dkt. 147].

## ARGUMENT

### I.   O.C.G.A. § 13-6-11 Is Not Unconstitutional.

Wood asserts that O.C.G.A. § 13-6-11 violates (1) Equal Protection, (2) Due Process, and (3) the Right to the Courts, as guaranteed by the Constitution of the State of Georgia. [Dkt. 147 at 2]. His sole basis for making that assertion is his claim that the statute "treats similarly situated litigants differently and sets forth an award which is available to plaintiffs, but not to defendants," and "authorizes an award recoverable *due to conduct of an opposing party*, which is available to all Plaintiffs but not to defendants." [*Id.*]. As applied, Wood is simply wrong—the statute authorizes a recovery to all parties who have a substantive cause of action for wrongdoing and can satisfy the statute's elements.

Wood bears the "burden to show that there is a 'clear and palpable' conflict" between O.C.G.A. § 13-6-11 and the Georgia Constitution, "and this court must be clearly satisfied of its unconstitutionality." *Taylor v. Devereux Found., Inc.*, 316 Ga. 44, 81 (2023) (citing *Barnhill v. Alford*, 315 Ga. 304, 311 (2022)). Wood's burden is significant, because under the rational basis test, "if it is shown that under any conceivable set of facts the classifications created by the statute bear a reasonable relationship to legitimate, constitutional governmental objectives, then the statute will be upheld." *Love v. Whirlpool Corp.*, 264 Ga. 701, 702 (1994). Moreover, the

"doctrine of constitutional avoidance is a 'cardinal principle' of statutory interpretation. It provides that, 'if an otherwise acceptable construction of a statute would raise serious constitutional problems, and where an alternative interpretation of the statute is fairly possible, [courts] are obligated to construe the statute to avoid such problems.'" *Mize v. Pompeo*, 482 F. Supp. 3d 1317, 1332-33 (N.D. Ga. 2020) (internal citations omitted). That is exactly how Georgia's appellate courts have construed this statute—the opposite of Wood's contentions—to make it available to any party asserting an underlying claim.

The absurdity of Wood's argument is brought home by the destruction that would be wrought upon an untold number of federal and state provisions that award attorneys' fees to plaintiffs, which would likewise be deemed unconstitutional under Wood's twisted logic. This includes 18 U.S.C. § 1964(c) [RICO], O.C.G.A. § 16-14-6(c) [Georgia RICO], 29 U.S.C. § 216(b) [FLSA], 29 U.S.C. § 2617(a)(3) [FMLA], 15 U.S.C. § 1640(a)(3) [TILA], and 15 U.S.C. § 1692k(a)(3) [FDCPA].

As a threshold matter, Wood has no standing to bring this "similarly situated" argument here as he has never alleged that Plaintiffs engaged in bad faith, either before or during the litigation, and in fact has asserted no claims whatsoever against Plaintiffs. Instead, he alleges in the abstract that O.C.G.A. § 13-6-11 does not allow some hypothetical defendant to "recover litigation expenses under the statute from

a plaintiff *even if* said plaintiff clearly engaged in bad faith during the underlying transaction". [Dkt. 147 at 3-4]. *See, e.g.*, *Meltzer v. Board of Public Instruction of Orange County*, 548 F.2d 559, 569-570 (5th Cir. 1977) (internal citations omitted) ("Thus, there can be no case or controversy where parties seek adjudication of only a political question, or merely seek an advisory opinion, or where the litigation presents merely an abstract, academic or hypothetical question, or where the question sought to be adjudicated has been mooted by subsequent developments, or where the plaintiff has no standing to maintain the action.").

Nevertheless, even with proper standing Wood's arguments must fail as a defendant can recover attorneys' fees under § 13-6-11 in exactly the same manner as a plaintiff and under the exact same circumstances. A defendant who files a counterclaim and satisfies the elements of O.C.G.A. § 13-6-11 with respect to that counterclaim can recover his expenses of litigation. *See Canton Plaza, Inc. v. Regions Bank, Inc.*, 315 Ga. App. 303, 310 (2012) (noting that "O.C.G.A. § 13-6-11 does not bar recovery when a defendant incurs expenses in prosecuting an independent claim") (citation omitted). "O.C.G.A. § 13-6-11 expressly makes its litigation expenses 'part of the damages' to be awarded by the jury" in an appropriate case. *Alston & Bird, LLP v. Hatcher Mgmt. Holdings, LLC*, 312 Ga. 350, 359 (2021) (internal citations omitted). And because "[t]here is no magic in mere

nomenclature," the statute permits "any party prosecuting a viable, independent claim to recover attorney fees whenever the enumerated statutory criteria for such an award are met." *Ballenger Corp. v. Dresco Mech. Contractors, Inc.*, 156 Ga. App. 425, 431 (1980) (citation omitted) (discussing former § 13-6-11 code section).

Importantly, *neither a plaintiff nor a defendant* can recover expenses of litigation under § 13-6-11 based on the opposing party's pursuit of a groundless claim, *i.e.*, for an opposing party's litigation conduct. *See, e.g.*, *David G. Brown, P.E., Inc. v. Kent*, 274 Ga. 849, 850 (2002) (holding that "an award under O.C.G.A. § 13-6-11 … relate[s] to the conduct arising from the transaction underlying the cause of action being litigated, not conduct during the course of the litigation itself"); *City of Warner Robins v. Holt*, 220 Ga. App. 794, 796 (1996). Nor can either party bring an independent claim for expenses of litigation under § 13-6-11, because such damages "are ancillary and may only be recovered where other elements of damage are also recoverable." *Steele v. Russell*, 262 Ga. 651, 651 (1993).

Instead, if any party is to seek a recovery of litigation expenses independent of bringing an affirmative claim for underlying wrongdoing, they are to look to statutes such as O.C.G.A. § 9-15-14, O.C.G.A. § 9-11-68, or Rule 11. Indeed, contrary to Wood's assertion, O.C.G.A. § 13-6-11 does not "den[y] *defendants* the ability to recover attorney's fees, regardless of how much bad faith may have been

exhibited by the opposing party, and regardless of how frivolous the claim asserted against them may be," [Dkt. 147 at 2 (emphasis added)], as *both* plaintiffs and defendants are precluded from recovery of such fees under § 13-6-11 but are entitled to seek those fees under the statutes which specifically provide for them.

Ultimately O.C.G.A. § 13-6-11 does not treat similarly situated litigants differently, as can be seen here. Plaintiffs and Wood are not similarly situated within the context of O.C.G.A. § 13-6-11—Defendant Wood committed torts and Plaintiffs did not, and the statute merely represents an additional category of special damages afforded to a party who prevails on a claim and also demonstrates evidence that satisfies the elements of O.C.G.A. § 13-6-11.

 Wood's attempt to find precedent in the overturning of  Georgia's former "live in lover" statute is misplaced here for a number of reasons. [Dkt. 147 at 5]. In *Sims v. Sims*, the disparate treatment of divorce litigants was based solely on gender—allowing modification of alimony in the event that a former wife cohabitated with another man. 243 Ga. 275, 275 (1979).[1] There is no comparison

---

[1] Interestingly, the Georgia Supreme Court made no merits determination on the constitutionality of even the gender-biased attorneys' fees provision, instead ultimately holding a year later only that "[w]hen Mrs. Sims succeeded in having the live-in-lover statute struck down as unconstitutional, that portion of the statute which authorized an award of attorney fees to her also fell." *Sims v. Sims*, 245 Ga. 95, 96 (1980).

between this case and *Sims* as Wood concedes he is not a member of a protected class, and the "live-in-lover" statute was not neutral on its face, whereas O.C.G.A. § 13-6-11 applies to any party who brings an underlying claim.

As Defendant Wood concedes, his constitutional challenge is subject to the "rational basis test," which means the statute need only be "'*rationally related* to a *legitimate* state interest.'" [Dkt. 147 at 6-7 (quoting *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976)) (emphasis added)]. O.C.G.A. § 13-6-11 is rationally related to the legitimate state interest of "compensat[ing] an injured party for the costs incurred as a result of having to seek legal redress for the injured party's legitimate grievance." *See Forsyth County v. Martin,* 279 Ga. 215, 219 (Ga. 2005) (describing the statute's intent).

For some reason, Wood proposes that the state's interest in O.C.G.A. § 13-6-11 is punitive, relying on a 1995 bankruptcy court opinion. [*Id*. at 7].[2] But the Georgia Supreme Court has rejected any attempt to characterize § 13-6-11 as punitive, holding that the statute "is not intended to penalize or punish." *Forsyth County,* 279 Ga. at 219; *accord Elberta Crate & Box Co. v. Cox Automation Sys.,*

---

[2] Wood, however, ignores the portion of the quote in which the bankruptcy court recognized that the rationale for § 13-6-11 requires that the "additional and needless costs or damage" in question must be "the consequence of the underlying tort." *See* Dkt. 147 at 7-8 (quoting *In re Ellerbee*, 177 B.R. 731, 746 (Bankr. N.D. Ga. 1995)).

*LLC*, 6:05-CV-03(HL), 2005 WL 1972599, at *6 (M.D. Ga. Aug. 16, 2005)

(recognizing that "an award under § 13-6-11 does not further a Georgia public policy

to punish or penalize").

There is no need to twist the bankruptcy court's reasoning to invent public

policy where Georgia courts have explained the policy behind the statute—

including, specifically, why a defendant is entitled to recover under § 13-6-11 only

when asserting an independent counterclaim:

> The underlying policy of [former § 13-6-11] barring a defendant from transforming a plaintiff's case into that defendant's damage suit for having been sued in no manner relates to cases wherein the defendant has asserted a viable, independent claim against the plaintiff. A rigid rule preventing any defendant from recovering litigation expenses works particular inequity when a defendant . . . is required by law to file a counterclaim or be deemed to have waived the claim altogether. . . .
>
> Let there be no confusion as to our holding here. Nothing in what we have said is intended to disturb that earlier cited line of authority holding that a defendant cannot recover in a given lawsuit the expenses of defending that suit. Such a holding would undermine the existence of the malicious use of legal process cause of action. We simply hold today that when a defendant asserts a claim for relief independent of a claim for litigation expenses incurred in defending against a plaintiff's case-in-chief, [former § 13-6-11] does not automatically operate to bar any recovery by the defendant of litigation expenses incurred in prosecuting such an independent claim.

*Ballenger*, 156 Ga. App. at 432; *accord Canton Plaza*, 315 Ga. App. at 310 (same).

Thus, the court in *Ballenger* made clear that a defendant who seeks fees based

on having to defend against groundless claims has other remedies, but a defendant who asserts an independent counterclaim is essentially a "plaintiff" and is entitled to seek recovery of expenses of litigation under § 13-6-11. Any other application of the statute would distort the statute's purpose of providing a separate basis for special damages arising from harm caused and would undermine the existence of other statutes intended to deal with abuse of the litigation process. Further, as the court in *Ballenger* noted, it "would be directly contrary to the principles of judicial economy which the Civil Practice Act was in part enacted to foster" if a defendant had to file a separate lawsuit as a "plaintiff" to recover attorney's fees. 156 Ga. App. at 432. These are legitimate state interests, and the statute passes the rational basis test.

The construction placed upon the statute for 150 years is a constitutional one, by ensuring that the statute *is in fact available* to all parties to litigation as compensation for wrong done. If this statute can be construed in a constitutional manner, it must be, and it has been for more than a century.

## II. The July 2021 Amendments to O.C.G.A. §§ 1-1-1 and 1-1-8 Cannot Be Applied Retroactively to Cancel Plaintiffs' O.C.G.A. § 13-6-11 Claim.

Wood completely ignores that he is stuck in the exact Catch-22 faced by the unsuccessful defendant in the only case he discusses for his argument about O.C.G.A. §§ 1-1-1 and 1-1-8: (1) either these statutes are substantive and thus cannot be retroactively applied to Plaintiffs' O.C.G.A. § 13-6-11 claim; or (2) they are

-13-

procedural and can be applied retroactively, but in a manner that has no impact on Plaintiffs' O.C.G.A. § 13-6-11 claim. Under Wood's theory of these amendments, they are plainly substantive and thus cannot be applied retroactively. This is fatal for Wood, because the point in time for determining retroactivity is when Plaintiffs' claim accrued—which was when Wood made the defamatory statements, each of which predated S.B. 238's effective date. Thus, the amended statutes can only be applied here if they are procedural—an application that would preclude canceling Plaintiffs' substantive rights under O.C.G.A. § 13-6-11.

In *Willis v. Blunt*—which Wood discusses at length, while seemingly missing the point—Judge Ross considered the exact argument that Wood is parroting in his Motion: "that because S.B. 238 gives 'the force of law' to the 'arrangement and numbering system' of the Code, the Georgia appellate courts' longstanding holding that allows for the recovery of attorneys' fees and litigation expenses [under O.C.G.A. § 13-6-11] in both contract and tort actions 'is no longer permissible.'"[3] 2022 WL 1714857, at *3 (N.D. Ga. May 4, 2022) (citing to defendants' briefing).

---

[3] At times, Wood more than misses the point in *Willis*—he misrepresents it. *Willis* did not find that "*S.B. 238 could not be applied retroactively.*" (Dkt. 147 at 13). *Willis* held that it need not reconcile the Catch-22, because either way, just like Wood, the defendant would lose. And the court in *Willis* was clear that it did "not herein decide what effect, if any, S.B. 238 has on the scope of O.C.G.A. § 13-6-11." *Willis*, 2022 WL 1714857, at *5 n.5.

*Willis* thoughtfully focused on the defendants' conundrum, setting aside the need to decide whether S.B. 238 worked a sea change to more than a century of jurisprudence. The plaintiff in *Willis* filed suit two days before S.B. 238 went into effect. *Id.* Legislation constituting "mere procedural or evidentiary changes may operate retrospectively; however, legislation which affects substantive rights may only operate prospectively." *Id.* at *4 (citing, *e.g.*, *Fowler Props., Inc. v. Dowland*, 646 S.E.2d 197, 200 (Ga. 2007); Ga. Const. art. I, § 1, para. X). Further, the court in *Willis* explained that if "S.B. 238 narrowed the scope of O.C.G.A. § 13-6-11 [and thus affected the plaintiff's substantive rights], it would be improper for the Court to retroactively apply this supposed new rule regarding attorneys' fees and litigation expenses to the case . . . because S.B. 238 took effect two (2) days after Plaintiff filed this case." *Id.*

Conversely, if "S.B. 238 only clarified what portions of the Official Code of Georgia Annotated have legal effect and what portions do not, the S.B. 238 Amendments would be procedural in nature because they would **not create or cancel any party's 'rights, duties, and obligations**.'" *Id.* (quoting *Fowler*, 646 S.E.2d at 200) (emphasis added). In that scenario S.B. 238 would be retroactive, but "would not affect the ability of a plaintiff suing solely in tort to recover attorneys' fees and litigation expenses pursuant to O.C.G.A. § 13-6-11," because such affect

would cancel Plaintiffs' substantive rights under O.C.G.A. § 13-6-11—which is fundamentally inconsistent with the law being procedural. *Id.*

Wood attempts to avoid *Willis* by latching onto a distinction without a difference: there, the plaintiff filed suit before S.B. 238's effective date, while here Plaintiffs filed suit after the effective date. This avoids the dispositive point: both here and there, the defendant's conduct for which the plaintiffs sought to recover under O.C.G.A. § 13-6-11 occurred prior to S.B. 238's effective dates, and thus the defendants' reading of S.B.'s 238 as substantive necessarily precluded its retroactive application to the plaintiffs' claims.

The relevant point in time is when the claim arose, thereby vesting rights under existing law. "The Georgia Constitution prohibits retroactive laws that affect or impair substantive rights under prior law which have vested at the time the subsequent law takes effect." *Kromer v. Bechtel*, 289 Ga. App. 306, 307 (2008). Thus, in *Minter v. Tyson Foods, Inc.*, an attorneys' fees statute was deemed substantive and inapplicable because the plaintiff's injury occurred before the statute was enacted. 271 Ga. App. 185, 188 (2004); *accord Willis*, 2022 WL 1714857, at *4 (citing cases for premise that "Georgia courts have classified as substantive statutes" regarding "attorneys' fees or litigation expenses").

A claim under O.C.G.A. § 13-6-11 accrues when the underlying tort claim

accrues because O.C.G.A. § 13-6-11 "does not create an independent cause of action[,] . . . authorization for an award under O.C.G.A. § 13-6-11 must be found in the conduct arising from the transaction underlying the cause of action being litigated, not conduct during the course of the litigation itself." *See Alston & Bird*, 312 Ga. at 359 (internal citations and quotation marks omitted). That is, "the element of bad faith, stubborn litigiousness, or unnecessary trouble must relate to the acts in the transaction itself prior to the litigation, not to the motive with which a party proceeds in the litigation." *Id.* (internal quotation marks omitted).

Here, because Plaintiffs' claims accrued prior to the effective date of S.B. 238, the amended statutes cannot retroactively be applied as substantive laws that would erase Plaintiffs' previously vested right to attorneys' fees under O.C.G.A. § 13-6-11. Plaintiffs' defamation claims accrued from May 12, 2021, to June 18, 2021, which, as *Alston & Bird* provides, is necessarily when their O.C.G.A. § 13-6-11 claims accrued. This predates the July 1, 2021, effective date of the amended versions of O.C.G.A. §§ 1-1-1 and 1-1-8.

As in *Willis*, the amended statutes could thus only apply retroactively to Plaintiffs' claims if the statutes are deemed procedural. In which case, the amended statutes neither cancel Plaintiffs' vested rights under O.C.G.A. § 13-6-11, nor cancel Wood's duties and obligations thereunder, which were in effect when Plaintiffs'

claims arose prior to the effective date of the amendments in §§ 1-1-1 and 1-1-8.

By way of comparison, the Georgia Supreme Court has held that O.C.G.A. § 9-11-68—Georgia's offer of judgment statute that explicitly shifts fees based solely on conduct *during* the litigation—did apply where the underlying cause of action accrued prior to enactment of the statute but the lawsuit was filed after the effective date. *Crane Composites, Inc. v. Wayne Farms, LLC*, 296 Ga. 271, 273 (2014). That holding was based on the fact that "the rights created by the statute pertain to attorney fees and expenses arising out of litigation, *not damages stemming from injury*." *Id.* (emphasis added). That reasoning underscores the conclusion required here that the supposedly revamped § 13-6-11, which is available only for "damages stemming from injury," cannot be applied where the claim for the underlying injury accrued prior to the effective date of the statute.

## III.  O.C.G.A. § 13-6-11 and Its Precursors Have Always Applied to Torts.

Wood's argument that the placement of O.C.G.A. § 13-6-11 in Title 13 relating to "Contracts" limits the application of the statute to contract cases has been rejected by Georgia courts for 150 years. *See, e.g.*, *Vogtle v. Coleman*, 259 Ga. 115, 117 n.2 (1989) ("While OCGA § 13-6-11 appears in the contracts section of our code, it has been universally applied where the underlying suit is not in contract.") (collecting cases); *SRM Grp., Inc. v. Travelers Prop. Cas. Co.*, 308 Ga. 404, 406 n.4

-18-

(2020) (same).[4] The provisions of the statute have always applied in tort cases and other cases beyond contract claims, and the Georgia Court of Appeals recognized this as recently as 2023—well after the effective date of the July 2021 amendments to §§ 1-1-1 and 1-1-8. *See Brooks v. Brooks*, 366 Ga. App. 650, 658 (2023) (holding that defendant's "premise is fundamentally flawed, however, because OCGA § 13-6-11 is not only available in contract cases").

The essential elements of O.C.G.A. § 13-6-11 have been included in every iteration of the Georgia Code since the very first codification of Georgia law in 1860. *See Taylor*, 316 Ga. at 117 n.95 (Ellington, J., dissenting in part, concurring in the judgment only in part); Code 1860, § 2883; Code 1868, § 2891; Code 1872, § 2942; Civil Code 1895, § 3796; Civil Code 1910, § 4392; Code 1933, § 20-1404; Laws 1984, § 13-6-11. The statute has always been located in the Title related to "Contracts" and never included in the Title of the Code related to "Torts." *Id*. But the statute nevertheless has always—at least back to 1873—been applied in tort claims. *See Selma, Rome & Dalton R. Co. v. Fleming*, 48 Ga. 514, 515 (1873) ("Under section 2891, Irwin's Revised Code, damages for a *tort* may be increased

---

[4] *Accord* Cynthia Trimboli Adams & Charles R. Adams III, *Torts*, 43 Mercer L. Rev. 395, 432 (1990) (noting that § 13-6-11, "[t]he most venerable fee-shifting statute in Georgia is, ironically, found in the contracts title to the code, but applies to tort cases as well").

by the expenses of litigation, if the defendant have shown himself specially litigious in the matter."). In fact, the Georgia Supreme Court in 1903 undertook a lengthy analysis of the predecessor to the statute at issue and determined it applied to both tort and contract cases. *See Traders' Ins. Co. v. Mann*, 118 Ga. 381, 45 S.E. 426, 428 (1903); *see also Brooks v. Steele*, 139 Ga. App. 496, 498 (1976) ("Code s 20-1404 allowing expenses of litigation in certain circumstances, is generally applied to ex delicto actions. . . .").

Thus, as Georgia Supreme Court Justice Ellington recognized in 2023—two years after the amendments to O.C.G.A. §§ 1-1-1 and 1-1-8—"even if this Court in the past incorrectly allowed the predecessors to OCGA § 13-6-11 to authorize expenses of litigation in tort cases, the General Assembly has since embraced that interpretation." *Taylor*, 316 Ga. at 117 n.95.

## IV. The Amendments to O.C.G.A. §§ 1-1-1 and 1-1-8 Do Not Impact the Application of O.C.G.A. § 13-6-11.

Wood has not provided any support for his contention that the amendments to O.C.G.A. §§ 1-1-1 and 1-1-8 were intended to cause any change to O.C.G.A. § 13-6-11, and principles of statutory interpretation do not support his attempt to rewrite Georgia history regarding that statute. In determining what impact an amended statute has on existing law, "statutes are presumed to be enacted by the legislature with full knowledge of the existing condition of the law and with reference to it; that

they are to be construed in connection and in harmony with the existing law; and that their meaning and effect will be determined in connection, not only with the common law and the Constitution; but also with reference to other statutes and the decisions of the courts." *Wilson v. Miles*, 218 Ga. App. 806, 808 (1995).

Perhaps most importantly, "[t]he General Assembly may 'amend an existing law by implication; but such amendments are not favored, and never occur except where the later act is clearly and indubitably contrary to the existing law.'" *Brooks v. State*, 170 Ga. App. 440, 441 (1984) (quoting *Brinkley v. Dixie Constr. Co.*, 205 Ga. 415, 416 (1949)). Where there is an argument that the amendment of one statute was intended to implicitly amend another statute—as Wood argues here—"it becomes proper to consider whether a meaning may be given to the amendment which will harmonize it with the earlier act instead of effecting a partial repeal by implication, since **the intention of the legislature to amend an existing law by implication 'must be clearly and unquestionably shown by the provisions of the amending act**.'" *Carter v. Oxford*, 102 Ga. App. 762, 767 (1960) (quoting *Brinkley*, 205 Ga. at 416) (emphasis added). Thus, absent clear indication of the legislature's intent to change the law, stare decisis requires that courts not change interpretation of a statute based only on an *implied* change to a statute. The Georgia Supreme Court has recognized that "'even those who regard 'stare decisis' with something less than

enthusiasm recognize that the principle has even greater weight where the precedent relates to interpretation of a statute.' A reinterpretation of a statute after the General Assembly's implicit acceptance of the original interpretation would constitute a judicial usurpation of the legislative function." *Etkind v. Suarez*, 271 Ga. 352, 358 (1999) (quoting *Abernathy v. City of Albany*, 269 Ga. 88, 90 (1998)).

There is no evidence that the Georgia Legislature intended to destroy 150 years of settled jurisprudence, implicitly or otherwise. It makes no difference that this statute "appears in the contracts section of our code," as it "has been universally applied where the underlying suit is not in contract." *Vogtle,* supra, 259 Ga. 115, 117, n.2 (collecting cases). In fact, nothing in the legislature's description of the purpose of Act 306 references any intent to *change* any other law, much less a law as well established as the application of § 13-6-11 to tort actions. Every sign is that the statutory amendments on which Wood relies had nothing to do with § 13-6-11 and cannot be reasonably read to have any impact on that statute.[5] As Act 306's

---

[5] 2021 Georgia Laws Act 306 (S.B. 238) was enacted "to **clarify** the portions of the Code which have the effect of law; to **clarify** the matter included in the Code that does not have the effect of law . . . to **clarify** the oversight of the commission with respect to state content; to **clarify** the oversight of the commission with respect to supplementary content; to revise a provision relating to copyright of the Code; to provide for related matters; to repeal conflicting laws."  Ga. Legis 306 (2021) (emphasis added). The word "clarify" means "to make understandable" or "to free of confusion." *See* https://www.merriam-webster.com/dictionary/clarify.  By definition therefore, "to clarify" is not to change.

sponsor, Senator Brian Strickland explained, "I sponsored Senate Bill 238. Currently, Georgia Code contains annotations and other information that, while important for understanding the law, is not explicitly legally binding. SB 238 **clears up this ambiguity and clarifies** that only the official code should be considered law, and not the annotations." https://www.stricklandforgeorgia.com/blog/this-week-in-the-senate-march-8-11-2021 (last accessed September 26, 2024) (emphasis added). Indeed, reading such a change into the Act would be violative of the Georgia Constitution by causing the Act to refer to more than one subject matter.[6]

---

[6] Act 306 was clearly a response to the United States Supreme Court's opinion in *Georgia v. Public.Resource.Org, Inc.*, 590 U.S. 255 (2020), in which the State of Georgia lost its attempt to assert a copyright over its annotated Official Code. Particularly at issue in that case was the question of whether annotations created by the Code Revision Commission had the force of law. *Id*. at 267-68. The State of Georgia argued that "OCGA annotations [are] non-binding and non-authoritative," although the Supreme Court characterized that position as "undersell[ing] their practical significance." *Id.* at 274. The changes in Act 306 were clearly intended to *limit* the portions of the Code that could be construed as having the force of law, consistent with the State's arguments in *Public.Resource.Org*, thereby arguably affording copyright protections to wide swaths of the Annotated Official Code—not to expand the portions of the Code having the force of law as argued by Wood. Although Wood references the changes only to O.C.G.A. §§ 1-1-1 and 1-1-8, it is necessary to review all portions of the Act to interpret its import. Considering the other statutes that were amended, §§ 1-1-7, 28-9-3, and 28-9-5, makes it evident that the intent was—as indicated in the description—to answer the issues raised in *Public.Resource.Org* relating to the legal effect of non-text portions of the Code to limit the interpretation of such portions as carrying the force of law. This is particularly relevant because Georgia released the entire Official Code Annotated

Wood's argument is a time bomb, poised to wreak havoc on Georgia law—as every single statute would be up for reinterpretation based on words and phrases in the titles, articles, chapters, and sections, as well as its location in the Official Code. There is no basis upon which this Court—or any other court—could presume that the legislature intended such a result.

To upend the long-established construction of § 13-6-11 and its precursors, Wood would need to demonstrate *clearly* legislative intent to make such a drastic change. Not only is there nothing whatsoever to support the notion that the legislature intended such a change, but the evidence is clear that the legislature was focused on responding to a very specific issue arising from the United States Supreme Court's ruling against Georgia the previous year. There is simply no reasonable argument that the legislature intended to make any change to § 13-6-11.

## CONCLUSION

For the foregoing reasons, this Court should deny Defendant Wood's Renewed Motion for Judgment as a Matter of Law.

---

publicly in March 2022, less than a year after the effective date of Act 306. *See, e.g.*, Matt Reynolds, *After Supreme Court copyright fight, Georgia makes annotated legal code freely available*, ABA Journal (Mar. 23, 2022), avail. at https://www.abajournal.com/news/article/after-supreme-court-copyright-fight-georgia-makes-annotated-legal-code-freely-available.

Respectfully submitted this 26th day of September, 2024.

/s/Andrew M. Beal
Andrew M. Beal
Georgia Bar No. 043842
drew@beal.law
Milinda L. Brown
Georgia Bar No. 363307
milinda@beal.law

Beal Sutherland Berlin & Brown LLP
2200 Century Parkway NE, Suite 100
Atlanta, GA 30345
Telephone: (678) 449-0422
*Attorneys for Plaintiffs*

## CERTIFICATE UNDER L.R. 7.1D

Pursuant to Northern District of Georgia Civil Local Rule 7.1D, the undersigned counsel certifies that the foregoing document is a computer document and was prepared in Times New Roman 14-point font, as mandated in Local Rule 5.1C.

Dated: September 26, 2024.

/s/ *Andrew M. Beal*
*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| NICOLE JENNINGS WADE, JONATHAN D. GRUNBERG, and G. TAYLOR WILSON, <br><br> Plaintiffs, <br><br> v. <br><br> L. LIN WOOD, <br><br> Defendant. | Case No. 1:22-cv-1073-MLB |

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day served a copy of the foregoing pleading upon all parties of record by filing same with the Court's electronic filing system which will deliver a copy to all counsel of record.

Respectfully submitted, this the 26th day of September, 2024.

**BEAL SUTHERLAND**
**BERLIN & BROWN, LLC**

<u>/s/ Andrew M. Beal</u>
Andrew M. Beal
Georgia Bar No. 043842

-27-