IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Nicole Jennings Wade, Jonathan D. Grunberg, and G. Taylor Wilson,

    Plaintiffs,

v.

L. Lin Wood,

    Defendant.

_____/

Case No. 1:22-cv-1073-MLB

## ORDER

Before the Court are Plaintiffs' Motion to Require Defendant to Post Supersedeas Bond (Dkt. 154) and Defendant's Amended Motion for Approval of Supersedeas Bond and Motion to Stay Execution of Judgment Pending Appeal (Dkt. 178.)[1]

---

[1] Given Defendant's amended motion, the Court denies as moot his initial motion for bond and stay of execution of the final judgment in this case. (Dkt. 155.)

## I.  Background

A jury found Defendant liable for negligently defaming Plaintiffs and awarded Plaintiffs $3.75 million in damages. (Dkt. 137 at 1–2.) The jury also awarded Plaintiffs $750,000 for litigation expenses. (Dkt. 138 at 1.) The Court entered judgment on the jury's verdict in favor of Plaintiffs for a total of $4.5 million. (Dkt. 140 at 1–2.) Defendant appealed the judgment along with several other Court orders. (Dkt. 148.) Defendant now moves to post an alternative supersedeas bond pending appeal, saying he cannot post a standard bond. (Dkt. 178.) Defendant offers to secure the bond with: (1) $2 million in cash, which he proposes holding in an "interest-bearing, joint account that will list as account holders/signatories the Defendant and [his attorney] or the Defendant and another individual designated by Plaintiffs" and (2) a house he owns in Atlanta worth at least $1 million and land he owns in South Carolina—called Cotton Hall—worth approximately $5 million. (Dkt. 178 at 2–3.) Plaintiffs oppose, arguing Defendant failed to prove his inability to post a standard supersedeas bond rather than an alternative bond. (Dkt. 183 at 2–3.) They also ask that, if the Court allows Defendant to post an alternative bond, the Court impose certain

safeguards to ensure they receive the money to which they are entitled if the Eleventh Circuit affirms the Court's judgment. (Dkt. 184 at 4–11.)

## II. Discussion

Federal Rule of Civil Procedure 62(f) states that, "[i]f a judgment is a lien on the judgment debtor's property under the law of the state where the court is located, the judgment debtor is entitled to the same stay of execution the state court would give." Fed. R. Civ. P. 62(f). That applies here because, in Georgia, a judgment constitutes a lien against the property of the judgment debtor. O.C.G.A. § 9-12-80. Georgia law also says that a judgment debtor's notice of appeal and payment of costs serves as a supersedeas to stop execution of a judgment unless the prevailing party moves for the imposition of a supersedeas bond. O.C.G.A. § 5-6-46(a). When that happens, "the trial court shall require that supersedeas bond or other form of security be given with such surety and in such amount as the court may require, conditioned for the satisfaction of the judgment in full, together with costs, interest, and damages for delay if the appeal is found to be frivolous." *Id*.

"Once the appellee moves for a supersedeas bond, it is entitled to that bond, and the Court's discretion on the question of whether a bond

is necessary vanishes." *Auto. Prot. Corp.-APCO v. NBA Auto., Inc.* 2022 WL 18459153 *1 (N.D. Ga. Jan. 21, 2022) (internal quotation marks and citation omitted). As to the amount of the bond, Georgia law says the court must set a "supersedeas bond or other form of security . . . in such amount as the court may require" to ensure satisfaction of the judgment, costs, and interest. O.C.G.A. § 5-6-46(a). It further explains that, in the case of a money judgment, the amount of the bond or other security should cover these same things, "unless the court after notice and hearing and for good cause shown fixes a lesser amount." *Id.*

In a different case, this Court cited *Poplar Grove Planting & Refining Co., Inc. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189 (5th Cir. 1979) as authority for waiving the usual requirement of a full security supersedeas bond. *See, Automobile Protection,* 2022 WL 18459153 at *1.[2] But *Poplar Grove* considered the requirements of a supersedeas bond under former Federal Rule of Civil Procedure 62(d), which provided

---

[2] The issue of waiver was not actually before the Court in *Automobile Protection* but, in a footnote, the Court cited *Poplar Grove* in explaining situations in which a court may waive the necessity of a full supersedeas bond. 2022 WL 18459153, at *1 n.1. The Court no longer believes that footnote applies when considering a stay of execution under Federal Rule 62(f).

4

federal courts the general authority to allow a litigant to post a supersedeas bond to stay the execution of a judgment pending appeal. *See* 7 Moore's Federal Practice, § 62.06 (2d ed. 1972).[3] This case—and the Court's prior case—arise under Federal Rule 62(f), which specifically tells the federal court to look to state law for the extent of its discretion. But maybe that difference doesn't really matter. *Poplar Grove* and its progeny concluded a judgment debtor can avoid the requirement of a supersedeas bond by showing his or her "present financial condition is such that the posting of a full bond would impose an undue financial burden[.]" *Poplar Grove*, 600 F.2d at 1191. As explained above, the Georgia statute provides a court the discretion to require a supersedeas bond "or other form of security" and also says a judgment debtor (or judgment creditor) may establish good cause for a lesser (or greater) supersedeas bond (or other form of security). O.C.G.A. § 5-6-46(a). So, Georgia law expressly provides a court the flexibility to allow a judgment debtor to post security other than cash and to modify the presumed

---

[3] The general provision in former Rule 62(d) is now found—slightly modified—in Rule 62(b). *See* Fed. R. Evid. 62, advisory committee's notes.

amount of the bond for "good cause." While Georgia courts have not identified what constitutes "good cause" under the bond statute, the Court concludes that an appellant's inability to post an all-cash bond in the full amount of the judgment, interests, costs, and expenses of delay constitutes good cause to allow the appellant to pledge alternative security that satisfies that amount.

In this case, Defendant testified by affidavit that he tried to obtain a surety bond but could not do so because he does "not have the liquid cash necessary for the issuance of a bond," is "unable to practice law and ha[s] lost [his] livelihood," and his liquidity continues to diminish. (Dkts. 155-2 ¶ 10; 184-1 ¶ 13–14.) He also testified at a hearing that he cannot afford a traditional bond because he does not have the "cash liquid for the amount of the bond" and that he hasn't "had an income since 2021." (Dkt. 186 at 101, 104.) This shows an inability to post the full cash bond.

Plaintiffs say Defendant's testimony is not enough because courts require additional evidence—like tax returns or other financial documents—to prove a debtor's inability to post a standard bond. (Dkt. 184 at 2.) In support, they primarily rely on *Latino Enters., Inc. v. Taco Maker, Inc.*, 2018 WL 10128074, at *2 (N.D. Ga. Apr. 27, 2018). That

case recognized no hard-and-fast requirement for documentation.[4] It merely acknowledged the need for the party seeking a waiver of a traditional supersedeas bond to "objectively demonstrate" valid reasons for the waiver. *Id.* at *1. The court found the defendant's affidavit of financial hardship lacking because, while the affiant referred to a loan agreement with a third party, the affiant failed to introduce the document at issue and because, while the affiant alleged financial hardship due to a hurricane, the affiant failed to explain how the hurricane impacted its ability to post the bond. *Id.* at *2. Rather than imposing a documentation requirement, the court merely assessed the evidence presented and found it insufficient.

The evidence here is not like that. Defendant makes a simple presentation. He has lost his law license, does not work, and has no money coming in from the practice of law. He has tried to obtain a surety bond but has been unable to do so because he does not have the necessary cash. Initially, Plaintiffs challenged Defendant's factual assertion about

---

[4] The Court recognizes *Latino Enterprises* cited *Poplar Grove* as a source of authority for waiving the usual requirement of a full security supersedeas bond. Despite its discussion above about that conclusion, the Court cites *Latino* for its analysis of how a judgment debtor can establish valid reasons for a waiver and because the parties discussed it.

his lack of money based on Defendant's sale (during the pendency of this issue) of a property for approximately $4 million. (Dkt. 166 at 2.) Defendant responded that he used about half the money to pay a mortgage on the property, he needed $500,000 to pay his capital gains taxes, and he would pledge the remaining $2 million as a "partial supersedeas bond." (Dkt. 171-5 at 3.) Despite that injection of cash, Defendant continues to insist he has insufficient cash to post the full bond. *Id.* He testified to the same thing. (Dkt. 186 at 101.) No evidence suggests otherwise. The Court credits Defendant's testimony and concludes he has objectively demonstrated his financial inability to post a full cash supersedeas bond. The Court thus waives that requirement and permits Defendant to post an alternative bond.

When waiving the requirement for a standard bond, a court must "fashion some other arrangement for substitute security . . . which would furnish equal protection to the judgment creditor." *Poplar Grove*, 600 F.2d at 1191; *see also* O.C.G.A. § 5-6-46(a) (allowing court to order appellant to post standard bond or "other form of security"). After all, a supersedeas bond "should cover the potential judgment, appeal costs, interest, and damages for the delay." *Latino Enters.*, 2018 WL 10128074,

at *2 (citing *Poplar Grove*, 600 F.2d at 1191). When allowing alternative bond, courts applying the federal bond rules typically require the value of the collateral to significantly exceed the amount of the judgment given the risks and complexity of collection efforts and delays the judgment creditor might face in obtaining the value of the alternative collateral. *See Allied Erecting & Dismantling Co. v. United States Steel Corp.*, 2016 WL 1106854, at *19 (N.D. Ohio Mar. 21, 2016) (collecting cases); *Lech v. Jackson*, 2018 WL 2183984, at *2 (D. Colo. May 10, 2018); *see also, e.g.*, *LPP Mortg. Ltd. v. J. Gardner & J. Gardner Co.*, 2005 WL 2078339, at *2 (D. Ore. Aug. 16, 2005) (requiring debtor to post nearly twice the amount of the judgment in alternative collateral). And as said a couple of times already, that is what Georgia law requires.

The Court concludes the value of the collateral Defendant offers—about $8 million dollars or a little under twice the judgment—is sufficient to protect Plaintiffs' interests. But it does not find adequate Defendant's proposal for keeping the value of that collateral safe. First, as for Defendant's suggestion that he keep $2 million in a joint account, Defendant fails to provide any plan for how this account will be maintained and the mechanism, timing, or any other details regarding

9

the money's distribution in the event his appeal is unsuccessful. Even if Plaintiffs appointed a representative to act as a joint owner of the account, given his status as a co-owner, Defendant could simply refuse to relinquish the funds to Plaintiffs, leading to additional, needless litigation. He says he won't, but he could always change his mind. A promise or best intentions is not the guarantee required of a bond. Defendant's only reasoning for keeping the funds in a joint account is so he can receive the interest it generates to maintain his properties. That alone is not a basis for refusing to post the necessary bond. Defendant also offers no proof he *needs* that money to do so. He simply "requests" those funds "to offset the ongoing cost of upkeep and maintenance" of the properties. (Dkt. 184-1 ¶ 6.) Absent affirmative evidence of an inability to maintain the property without the interest earned from the $2 million, the Court declines to take the risks involved with holding the money in a joint account rather than the Court registry. And the time for Defendant to make that showing has passed.

    Second, as for Defendant's offer to pledge the two properties as collateral, he fails to provide any mechanism for Plaintiffs to access this collateral in the event his appeal is unsuccessful, nor does he propose any

method for ensuring the properties maintain their value through the pendency of his appeal beyond a Court order directing him not to encumber or sell the properties.  For example, he does not offer to grant Plaintiffs a mortgage lien on the properties or provide any method to ensure he maintains the properties in good repair.  In addition, it appears Cotton Hall is owned by a business called The Tomotley Crew, LLC.  (Dkt. 186 at 112.)  Defendant claims to be the sole owner of the LLC.  (Dkt. 186 at 113.)  But the LLC is actually owned by a trust called the Tomotley Crew Trust.  (Dkt. 179-4 at 3, 29.)[5]  Plaintiffs ask that the Court require Defendant to transfer ownership of Cotton Hall from The Tomotley Crew, LLC to his individual ownership to ensure Defendant can sell the property in the event of an unsuccessful appeal.  (Dkt. 183 at 9.) Defendant testified he did not intend "to have the shares of Tomotley Crew be owned by a trust as long as I was in life."  (Dkt. 186 at 113.) Accordingly, the Court assumes Defendant does not object to transferring

---

[5] Defendant maintains that the Trust does not own the LLC.  (Dkts. 184 at 3; 184-1 ¶ 5; 186 at 108, 111.)  But through the Trust Agreement, Defendant "transfer[red], convey[ed], and assign[ed] . . . the property described in the attached Schedule A" to the Trust.  (Dkt. 179-4 at 3.) Schedule A includes "100% Membership Interest in the The Tomotley Crew, LLC."  (Dkt. 179-4 at 29.)

Cotton Hall from the Trust to his individual ownership to ensure there are no complications should he need to sell the property.

Accordingly, the Court orders Defendant to post a supersedeas bond as follows:

- The Court **ORDERS** Defendant, within **fourteen (14) days** from the date of this Order, to:

    1) Pay $2 million into the registry of the Court;

    2) File an affidavit or some other sworn documentary evidence showing the Atlanta and Cotton Hall properties are unencumbered and there is no other claim of ownership on those properties' titles;

    3) Transfer Cotton Hall to Defendant in his individual capacity and maintain Cotton Hall in Defendant's individual ownership;

    4) Grant and file with the Court an appropriate deed evidencing Defendant transferred Cotton Hall to his individual ownership;

    5) Grant Plaintiffs a mortgage lien to file on the Atlanta and Cotton Hall properties.

- The Court further **ORDERS** Defendant, through the pendency of the appeal, to:

    1) Maintain homeowners insurance on the Atlanta and Cotton Hall properties and provide Plaintiffs a right to information regarding the policies;

    2) Pay all taxes on the Atlanta and Cotton Hall properties; and

3) Maintain the Atlanta and Cotton Hall properties in good repair.

Consistent with the discussion above, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion to Require Defendant to Post Supersedeas Bond (Dkt. 154) and Defendant's Amended Motion for Approval of Supersedeas Bond and Motion to Stay Execution of Judgment Pending Appeal (Dkt. 178). The Court **DENIES AS MOOT** Defendant's initial motion for bond and stay of execution of the final judgment in this case. (Dkt. 155.) The Court **STAYS** execution of the judgment pending the disposition of Defendant's appeal.

**SO ORDERED** this 16th day of December, 2024.



MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE